| | |
|---|---|
| **KELLEY DRYE & WARREN LLP** | **MASLON LLP** |
| 101 Park Avenue | 3300 Wells Fargo Center |
| New York, New York 10178 | 90 South Seventh Street |
| Tel: (212) 808-7800 | Minneapolis, Minnesota 55402 |
| Fax: (212)-808-7897 | (612) 672-8200 |
| James S. Carr, Esq. | Clark T. Whitmore, Esq. |
| Kristin S. Elliott, Esq. | Jason Reed, Esq. |

*Counsel for U.S. Bank National Association,
as Subsidiary Unsecured Notes Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
In re:                                                                   :
                                                                               :
FRONTIER COMMUNICATIONS                       :        Chapter 11
CORPORATION, *et al.*,[1]                                  :
                                                                               :        Case No. 20-22476 (RDD)
                         Debtors.                               :
                                                                               :        (Jointly Administered)
                                                                               :
------------------------------------------------------- X

**PRECAUTIONARY OBJECTION AND RESERVATION OF RIGHTS OF U.S. BANK NATIONAL ASSOCIATION AS SUBSIDIARY UNSECURED NOTES TRUSTEE TO CONFIRMATION OF DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION OF FRONTIER COMMUNICATIONS AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE [DKT. NO. 649]**

U.S. Bank National Association, as indenture trustee[2] (in such capacities collectively, the

"**Subsidiary Unsecured Notes Trustee**") under three Subsidiary Unsecured Notes Indentures,[3]

---

[1] The last four digits of Debtor Frontier Communications Corporation's tax identification number are 9596. Due to the large number of debtor entities in these chapter 11 cases, which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent as http://cases.primerclerk.com/ftr. The location of the Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

[2] Defined terms shall have the meanings set forth in the Debtors' Third Amended Plan of Reorganization, dated June 30, 2020, Dkt. No. 649.

[3] U. S. Bank National Association serves as the indenture trustee under each of the following Subsidiary Unsecured Notes Indentures: (a) that certain Indenture, as amended or supplemented, dated as of December 1, 1993, by and between Frontier California Inc. (formerly known as GTE California Inc.), as issuers, and U.S. Bank National Association (as successor to Bank of America National Trust and Savings Association); (b) that certain Indenture, as amended or supplemented, dated as of November 1, 1993, by and between Frontier Florida LLC

4838-1750-8550v.2

and on behalf of the holders of $700 million in outstanding principal amount of Subsidiary Unsecured Notes issued respectively by the Debtors Frontier California Inc., Frontier Florida LLC, and Frontier North Inc. (the "**Subsidiary Debtors**"),[4] hereby respectfully submits this precautionary objection and reservation of rights (the "**Precautionary Objection**") in connection with the hearing on confirmation of the Debtors' Third Amended Plan of Reorganization, dated June 30, 2020, Dkt. No. 649 (the "**Plan**").

## I.     INTRODUCTION

The Subsidiary Debtors are each important and separate operating subsidiaries of Debtor Frontier Communications Corporation that were acquired as it expanded its telecommunications business into new states. Each Subsidiary Debtor remains obligated to its *own* creditors for hundreds of millions of dollars of indebtedness evidenced by its *own* unsecured notes that trade independently of the indebtedness and notes issued by Debtor Frontier Communications Corporation. The Subsidiary Debtors are solvent entities that generate hundreds of millions of dollars of positive cashflow from their business operations, a significant portion of which is used by other affiliated Debtors including Frontier Communications Corporation. As a result, the Subsidiary Debtors hold substantial assets consisting of Intercompany Claims, which continue to grow as superpriority administrative expense claims during these Bankruptcy Cases.[5]

---

(formerly known as GTE Florida Inc.), as issuer, and U.S. Bank National Association (as successor to NationsBank of Georgia, National Association); (c) that certain Indenture, as amended or supplemented, dated as of January 1, 1994, by and between Frontier North Inc. (formerly known as GTE North Inc.), as issuer, and U.S. Bank National Association (as successor to The First National Bank of Chicago).

[4] U. S. Bank National Association does not serve as indenture trustee for the Subsidiary Unsecured Notes issued by Frontier West Virginia but it does serve as paying agent for those notes.

[5] *See Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Dkt. No. 363] (the "**Cash Management Order**").

4838-1750-8550v.2

Under the Plan, only the Frontier Communication Corporation unsecured notes (at the parent level) will be impaired while the structurally senior Subsidiary Unsecured Notes are to be allowed in full and Reinstated as Unimpaired Class 9 Claims. Because the Reinstated Subsidiary Unsecured Notes will remain outstanding long after the effective date of the Plan, the Subsidiary Unsecured Notes Trustee and certain holders of the Subsidiary Unsecured Notes (who support the Plan generally), have sought and obtained assurances from the Debtors that the Debtors will not use Class 13 of the Plan to eliminate Intercompany Claims belonging to the Subsidiary Debtors or use their rights to engage in Restructuring Transactions in ways that would prejudice or impair the relative economic and legal position of the Subsidiary Unsecured Notes within the Debtors' overall capital structure.

On July 15, 2020, in response to these concerns,[6] the Debtors filed the *Notice Of Treatment Of Certain Intercompany Claims Pursuant To The Plan* [Dkt. No. 729], assuring the Subsidiary Unsecured Notes Trustee that:

> pursuant to the Plan and Disclosure Statement, (a) the prepetition and post-petition Intercompany Claims owed to Frontier Southwest Incorporated, Frontier Florida LLC, Frontier California Inc., Frontier North Inc., and Frontier West Virginia Inc. (collectively, the "Notice Subsidiaries") will be Reinstated and (b) the Restructuring Transactions contemplated by the Plan will not prejudice or impair (i) the separate corporate existence of the Notice Subsidiaries or (ii) the structural seniority of the notes issued by the Notice Subsidiaries relative to the other Debtors.

Consistently, a draft version of the Plan's Restructuring Transactions Memorandum was delivered to the Subsidiary Unsecured Notes Trustee on the same date reiterating that none of the Restructuring Transactions contemplated by the Plan would impair the Intercompany Claims running in favor of any Subsidiary Debtor and that Intercompany Claim liabilities of the

---

[6] *See* Limited Objection of U.S. Bank National Association as Subsidiary Unsecured Notes Trustee to Approval of Debtors' Disclosure Statement [Dkt. No. 596].

3

Subsidiary Debtors would be cancelled. Further, it described the intended Restructuring Transactions as ones that would only involve the formation of additional holding companies, and accordingly not threaten the structural seniority of the Subsidiary Unsecured Notes or the existing status of the Subsidiary Debtors.

The Debtors also have provided the Subsidiary Unsecured Notes Trustee with a list of the intercompany balances owed to the Subsidiary Debtors as of June 30, 2020, confirming that Intercompany Claims continue to accrue in favor of the Subsidiary Debtors as a result of their positive cash flow.

The Debtors have further agreed, in lieu of providing discovery to the Subsidiary Unsecured Notes Trustee, to negotiate confirmation order language addressing these intentions and assurances, but unfortunately the language has not yet been finalized. The Unsecured Subsidiary Notes Trustee has most recently asked the Debtors to include the following specific language (the "**Suggested Language**") and is waiting for affirmation or further comments:

> Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors shall not, and shall not cause any of their affiliates to extinguish, cancel, materially and adversely modify, release or otherwise forgive any prepetition or post-petition Intercompany Claims owed by them to Frontier Southwest Incorporated, Frontier California Inc., Frontier Florida LLC, Frontier North Inc. and/or Frontier West Virginia Inc. (and their respective successor entities) (each of the foregoing, a "Subsidiary Debtor"), including, without limitation, as part of a Restructuring Transaction under the Plan. The amounts of all Intercompany Claims owing to each of the Subsidiary Debtors as of the calendar month end immediately preceding the Confirmation Date and the Effective Date shall be provided by the Debtors or the Reorganized Debtors, as the case may be, to counsel for the Unsecured Subsidiary Notes Trustee within thirty (30) days of such calendar month end. In accordance with the Restructuring Transactions Memorandum, the Debtors shall on the Effective Date cancel those Intercompany Claims constituting obligations of any of the Subsidiary Debtors to other Debtors pursuant to Class 13 of the Plan.
>
> Notwithstanding anything in the Plan or this Confirmation Order respecting Restructuring Transactions, the Debtors or the Reorganized Debtors, as the case may be, shall not (x) adversely alter or impair the separate legal identity of any Subsidiary Debtor as currently constituted, (y) materially and adversely alter or

4

impair the nature of the business operations of any Subsidiary Debtor as currently constituted, including, without limitation, through a merger or sale of all or substantially all of their respective assets, or (z) adversely impair the structural seniority of the Subsidiary Unsecured Notes to any indebtedness issued or reinstated under the Plan to the extent that it may exist by reason of the existing parent/subsidiary relationships of the Subsidiary Debtors to other Debtors and Reorganized Debtors.

In the unexpected event mutually acceptable language cannot be agreed to by the time of the Confirmation Hearing, the Subsidiary Unsecured Notes Trustee reserves the right to object to confirmation of the Plan.[7] The Subsidiary Notes Trustee also reserves the right to object to any modification of the Plan or language in the confirmation order that affects the rights and interests of the holders of the Subsidiary Notes.

**II.    THE SUGGESTED LANGUAGE IS APPROPRIATE TO AVOID IMPAIRMENT OF THE SUBSIDIARY UNSECURED NOTES AND TO PRESERVE THE INTEGRITY OF THE DEBTORS' SEPARATE BANKRUPTCY ESTATES IN THE ABSENCE OF SUBSTANTIVE CONSOLIDATION.**

The Plan treats the Subsidiary Unsecured Notes Claims in Class 9 of the Plan as Unimpaired and Reinstates them within the meaning of 11 U.S.C. § 1124. *See* Definition of "Unimpaired" and "Reinstated," Plan at pp. 14, 19. Consistently, the Plan provides that every Class 9 Claim Holder, including all of the Subsidiary Unsecured Notes holders, are conclusively deemed to accept the Plan under 11 U.S.C. § 1126(f). Plan at p. 31.

Section 1124 of the Bankruptcy Code provides, in relevant part, that a class of claims or interests is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights

---

[7] Such grounds could include, without limitation, that the Debtors' unfettered power to cancel Intercompany Claim assets belonging to the Subsidiary Unsecured Notes issuers under Class 13 or to engage in broadly defined Restructuring Transactions that could prejudice the existence or relative senior position of the Subsidiary Unsecured Notes issuers within the Debtors' corporate structure would, without limitation: (1) be an impairment of the contractual, legal or equitable rights of Class 9 within the meaning of 11 USC §1124, (2) be a denial of the rights of Class 9 creditors to vote for or against the Plan, (3) be an improper substantive consolidation of the bankruptcy estates of the Subsidiary Unsecured Notes issuers with other Debtors' estates to the improper detriment of Class 9 creditors, and (4) in an extreme case impair the Debtors' ability to establish that the Plan is feasible from the perspective of the Subsidiary Debtors.

5

to which such claim or interest entitles the holder of such claim or interest . . . ." 11 U.S.C. § 1124(a)(1). The Bankruptcy Court for the Southern District of New York explained that:

> In general, "[t]he [Bankruptcy] Code treats a claim as impaired unless the plan leaves in place all rights to which the claim entitles its holder, except for certain rights to accelerate payments after default." *In re DBSD*, 634 F.3d 79, 89 n.4 (2d Cir. 2011). *See also In re Taddeo,* 685 F.2d 24, 28 (2d Cir. 1982) ("Congress define[d] impairment in the broadest possible terms."). "If the debtor's Chapter 11 reorganization plan does not leave the creditor's rights entirely 'unaltered,' the creditor's claim will be labeled as impaired under § 1124(1) of the Bankruptcy Code." *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 202 (3d Cir. 2003). Any alteration to the claimant's legal, equitable, or contractual rights under a plan would make that claim impaired.
>
> *In re GSC, Inc.*, 453 B.R. 132, 177 (Bankr. S.D.N.Y. 2011). *See*, *e.g.*, *In re Atl. Terrace Apartment Corp.*, 226 B.R. 535, 538 (Bankr. E.D.N.Y. 1998) (holding that any alteration of

rights constitutes impairment).

Moreover, it is a basic principle of bankruptcy law each separate bankruptcy estate in a multi-debtor case must be treated separately unless grounds for substantive consolidation are demonstrated. *See Federal Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57, 58 (2d Cir.1992). *In re Tower Auto., Inc.*, 356 B.R. 598, 603 (Bankr. S.D.N.Y. 2006). Here, there has been no substantive consolidation. Accordingly, the Debtors are not free to cancel the Intercompany Claims owing to the Subsidiary Debtors to the detriment of the holders of the Subsidiary Unsecured Notes, and the Debtors have very appropriately provided assurances that they will not do so. The Subordinated Unsecured Notes Trustee simply seeks to have these assurances and disclosures included within the confirmation order.

Consistent with the July 15 Notice, the Suggested Language would limit Debtors' Class 13 elections of the Plan, to make it clear that Debtors would not impair the Subsidiary Unsecured Notes by confiscating important economic assets in the form of Intercompany Claims held by Subsidiary Debtors, including super priority administrative expense claims. The Suggested

6

Language would also affirmatively prohibit Restructuring Transactions that could impair the Subsidiary Notes by, for example, undercutting the structurally senior position enjoyed by the indebtedness of the Subsidiary Debtors.

Including the Suggested Language in the confirmation order does not prejudice the Debtors as they have essentially agreed to these limitations by formally disclosing their intentions to preserve the prepetition and post-petition Intercompany Claims assets of each of the Subsidiary Debtors in the *Notice Of Treatment Of Certain Intercompany Claims Pursuant To The Plan* [Dkt. No. 729] and by indicating in a draft of its Restructuring Transactions Memorandum that the intended corporate Restructuring Transactions were unrelated to the current status of the Subsidiary Debtors. To the contrary, it would be beneficial to have the understandings set forth in one document and the confirmation order is the right vehicle for doing so.

4838-1750-8550v.2

**WHEREFORE**, the Subsidiary Unsecured Notes Trustee respectfully requests that the Court condition approval of the Plan upon the inclusion of the Suggested Language set forth herein in the Confirmation Order.

Dated: July 31, 2020

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

By: */s/ James S. Carr*
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212)-808-7897
James S. Carr, Esq.
Kristin S. Elliott, Esq

-and-

**MASLON LLP**
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
(612) 672-8200
Clark T. Whitmore, Esq.
Jason Reed, Esq.

*Counsel for U.S. Bank National Association, as Subsidiary Unsecured Notes Trustee*

4838-1750-8550v.2