Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 20-22476-mg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   FRONTIER COMMUNICATIONS CORPORATION,

8

9         Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY  10004

14

15                  May 11, 2022

16                  2:04 PM

17

18

19

20

21  B E F O R E :

22  HON MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1    HEARING re Status Conference (Doc #2087 to 2089)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

```
                                                        Page 3

 1   A P P E A R A N C E S :

 2

 3   AKERMAN, LLP

 4        Attorneys for Frontier Communications

 5        71 S. Wacker, 47th Floor

 6        Chicago, Illinois 60606

 7

 8   BY:  RUBEN CASTILLO (TELEPHONICALLY)

 9

10   MCELROY, DEUTSCH, MULVANEY, CARPENTER, LLP

11        Attorneys for Westchester Fire Insurance Co, et al.

12        300 Delaware Avenue, Suite 1014

13        Wilmington, Delaware 19801

14

15   BY:  GARY BRESSLER (TELEPHONICALLY)

16

17   CULPEPPER LP, LLC

18        Attorneys for Voltage Holdings, LLC, et al.

19        75-170 Hualalai Road, Suite B204

20        Kailua Kona, Hawaii 96740

21

22   BY:  KERRY STEVEN CULPEPPER (TELEPHONICALLY)

23

24

25
```

Page 4

```
 1   LUSKIN, STERN, EISLER, LLP

 2        Attorneys for the Copyright Claimants

 3        50 Main Street

 4        White Plains, New York 10606

 5

 6   BY:  STEPHAN HORNUNG (TELEPHONICALLY)

 7

 8   OPPENHEIM ZEBRAK, LLP

 9        Attorneys for UMG Recordings, Inc., et al.

10        4530 Wisconsin Avenue NW, 5th Floor

11        Washington, D.C. 20016

12

13   BY:  MATTHEW OPPENHEIM

14

15   ALSO PRESENT TELEPHONICALLY:

16   ALEXANDER KAPLAN

17   MICHAEL LUSKIN

18   CARLY KESSLER ROTHMAN

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              CLERK:  Recording for May 11, 2022 at 2:00 p.m.

3    Calling Frontier Communications Corporation, Case No. 20-

4    22476.  All right.  Is counsel for Frontier or a

5    representative for Frontier on the phone?

6              Mr. Castillo, maybe you can unmute and give your

7    appearance please.

8              MR. CASTILLO:  Sure.  Ruben Castillo from the

9    Akerman Law Firm for Frontier.

10             CLERK:  Okay, thank you.  All right.  Mr.

11   Bressler, if you could unmute and give your appearance.

12             MR. BRESSLER:  Gary Bressler from McElroy,

13   Deutsch, Mulvaney & Carpenter for Westchester Fire

14   Insurance, et al.

15             CLERK:  Okay, thank you.  Is Virginia Shea also

16   joining?

17             MR. BRESSLER:  No, she's not going to be joining.

18   It was only going to be one of us; we just didn't know which

19   one.

20             CLERK:  Okay, understood.  Thank you.  All right.

21   Kerry Culpepper, if you could unmute and give your

22   appearance please.

23             MR. CULPEPPER:  Good afternoon.  Kerry Culpepper

24   appearing on behalf of various movie producers.

25             CLERK:  Okay.  It says Voltage Holdings, LLC and a

Page 6

1    Backmask, LLC; is that correct?

2           MR. CULPEPPER:  Yes.  There are about 40 titles.

3    Do you want me to list all of them?

4           CLERK:  No, no.  No, that's not necessary.  Thank

5    you very much.

6           All right.  Stephan Hornung.

7           MR. HORNUNG:  Yeah, hi, good afternoon.  Stephan

8    Hornung, Luskin, Stern, Eisler.  I'm appearing on behalf of

9    the record companies.

10          CLERK:  Okay.  And is it yourself or Mr. Luskin

11   that's going to take the lead this afternoon?

12          MR. HORNUNG:  Actually, I believe Mr. Luskin is

13   also on.  My colleague, Mr. Oppenheim, I believe will be

14   taking the lead today.

15          CLERK:  Okay.  Mr. Oppenheim, if you could give

16   your appearance please.

17          MR. OPPENHEIM:  Good afternoon.  Matt Oppenheim on

18   behalf of the record company plaintiffs.  Also from my firm

19   on the line is Carly Rothman and Alex Kaplan.

20          CLERK:  Thank you very much.  All right, Mr.

21   Black, Martin.

22          MR. BLACK:  Yes.  I was trying to unmute.  Martin

23   Black from Dechert LLP on behalf of Intellectual Ventures.

24          CLERK:  Okay, thank you.  And are any of your

25   colleagues on the line or joining?

Page 7

1          MR. BLACK:  We should have Jeff Plies on the line,

2     but I'll be doing the talking for Intellectual Ventures.

3          CLERK:  Okay.  When he joins, I will admit him.

4     Thank you.

5          All right.  Is there anyone that has joined that

6     has not given their appearance and has a speaking role this

7     afternoon?

8          MR. OPPENHEIM:  I assume you're going to get the

9     judge on the line shortly.

10         CLERK:  Yes.  The judge will be joining in a few

11     moments.

12         MR. OPPENHEIM:  This is Matt Oppenheim on behalf

13     of the record company plaintiffs.  I know there'll be a

14     general overview to begin, but I have a hearing at 3:00 p.m.

15     in another federal court.  So if it were possible for our

16     matter to go after the general overview so I could make that

17     hearing where I am also lead counsel (sound drops).

18         CLERK:  Well, this is the only matter on for 2:00,

19     so if you want to go out of order, you know, definitely you

20     could bring it up to the judge if that works for the

21     parties.

22         MR. OPPENHEIM:  Very good.  Thank you.

23         CLERK:  You're welcome.

24         MS. HENSLEY:  I was stuck on mute.  Gabriela

25     Hensley is here on behalf of the Reorganized Debtors

Page 8

1      appearing from Kirkland & Ellis.

2              CLERK:  Thank you.

3              MS. HENSLEY:  Of course.

4              CLERK:  All right, more people are joining.  All

5      right.  Mr. Shannon, if you could unmute and give your

6      appearance please.

7              MR. SHANNON:  Good afternoon.  Timothy Shannon on

8      behalf of the Reorganized Debtors, Frontier.

9              CLERK:  Okay, thank you.  And I think Seth Coburn

10     joined as well?

11             MR. COBURN:  Yeah.  Seth Coburn, also on behalf of

12     the Reorganized Debtors.

13             CLERK:  Okay, thank you.  Jeffrey, you can go

14     ahead and give your appearance please.  Sorry, I can't hear

15     you.  You're unmuted, but for some reason, I cannot hear

16     you.

17             MR. BLACK:  I can vouch for him.  It's Jeffrey

18     Plies from Dechert; he's for Intellectual Ventures.

19             CLERK:  I just want to make sure that if he wants

20     to speak further in the hearing, he can do so.  Thank you.

21             All right.  Has anyone else joined that is

22     speaking on the record and has not given their appearance?

23     It looks like we may have the main parties.  Are we waiting

24     for anyone else?  No, okay.

25             If everyone could please state their name each

Page 9

1    time they speak on the court record.  Also, this is a court

2    proceeding; audio and video recording is prohibited.  All

3    right.

4            Okay.  David Herman's appearance from Dechert on

5    behalf of -- if you could just state who you're appearing on

6    behalf of?

7            MR. HERMAN:  Intellectual Ventures.

8            CLERK:  Thank you very much.  All right.  We can

9    pause the recording for now.

10           Hi, Judge.

11           THE COURT:  Hi, Deanna.

12           CLERK:  Would you like me to go through the list

13   of the parties that have checked in?

14           THE COURT:  Yes, please.

15           CLERK:  Okay.  So we have several attorneys on

16   behalf of Frontier Communications Corporation.  If I miss

17   anyone's name, please clarify the record.  I have Timothy

18   Shannon, Seth Coburn, Stephen Hessler, Mark McKane, Gabriela

19   Hensley.  I also have on behalf of Frontier Communications,

20   Ruben Castillo.

21           For Intellectual Ventures, I have Martin Black and

22   Jeffrey, last name is P-L-I-E-S.

23           For Westchester Fire Insurance Company and Federal

24   Insurance, I have Gary Bressler.

25           For Voltage Holdings and Backmask, LLC, I have

Page 10

1    Kerry Culpepper.

2              For the copyright claimants, I have Stephan

3    Hornung, Michael Luskin, and Matthew Oppenheim.

4              Have I missed anyone?  Okay.  So those are the

5    main parties that joined this afternoon.

6              THE COURT:  Thank you very much, Deanna.  All

7    right, and good afternoon everybody.

8              This obviously is the case management and

9    scheduling conference that I set after the case was

10   transferred to me.  I think you all have seen the case

11   status report that the Debtors' counsel filed on the record.

12   I've reviewed that.

13             In connection with the dispute with IV, I've

14   reviewed the pretrial order that had previously been

15   entered.  I looked at but haven't read all of the briefs

16   that have been filed.  We'll talk about that.

17             So let me ask who wants to begin for Frontier?

18             MS. HENSLEY:  Good afternoon, Your Honor.

19   Gabriela Hensley on behalf of the Reorganized Debtors.  I am

20   happy to take the lead on managing the multiple parties we

21   have present here today to address open items.

22             So as you indicated, we filed a report on Monday

23   per your order, which was filed at Docket 2087.  There are

24   no particular items regarding the bankruptcy generally that

25   the Reorganized Debtors need to bring before Your Honor at

Page 11

1   this time, but, you know, we were just happy to introduce

2   ourselves.  I'm joined by Steve Hessler, partner at

3   Kirkland, and if you have any questions, we would be happy

4   to address them.

5          THE COURT:  All right.  Well, let's do this.  Is

6   there anybody who wants to speak before we get into the

7   specifics of the matters that remain open to be decided,

8   anybody else?

9          MR. OPPENHEIM:  Your Honor, this is Matt Oppenheim

10  on behalf of the record company claimants.

11         If it's possible, I have a 3:00 p.m. hearing in

12  another federal court and if there were any way to

13  prioritize the record company matter, it would be much

14  appreciated.  I am lead counsel in that matter as well.

15         THE COURT:  All right.  Let me just see if anybody

16  else wanted to say anything preliminarily.  I'm happy to go

17  ahead with you first, but let me see whether -- is there

18  anyone else who wants to raise anything preliminarily?

19         Okay.  Mr. Oppenheim, why don't you go ahead.  As

20  I understand it, there is a pending motion to withdraw the

21  reference before Judge Torres in that matter.  And in the

22  case report that the Debtors filed, the Reorganized Debtors

23  filed, they reference a fully briefed motion for leave to

24  amend the, with respect to the administrative claims bar

25  date, but why don't you go ahead first.

1              MR. OPPENHEIM:  Certainly, Your Honor.  So yes,

2       there is a pending motion to withdraw the reference before

3       Judge Torres.

4              We had sought in that matter, Your Honor, to begin

5       comprehensive discovery in that matter, and Frontier sought

6       and obtained a stay from Judge Torres and that is in effect

7       of discovery until seven days after she issues her ruling,

8       which we've been waiting for and which previously, the

9       Bankruptcy Court had indicated that it expected that there

10      was a likelihood that Judge Torres would grant that motion.

11             With respect to the other pending motion, Your

12      Honor, the motion to amend was actually granted.  The

13      claimant's motion to amend was granted and the Court left

14      open the question of whether or not --

15             THE COURT:  -- related back.

16             MR. OPPENHEIM:  -- the case related back.

17             THE COURT:  I misspoke.  That, I'm aware of.

18             MR. OPPENHEIM:  It's quite all right.  So those

19      are the two pending issues.

20             So obviously, as the claimants in this matter,

21      we'd like to move it forward.  There is this pending stay,

22      there is this pending motion, and we're just waiting really

23      for Judge Torres to rule.

24             THE COURT:  Mr. Oppenheim, let me ask you this

25      question.  With respect to the motion for relation back, why

Page 13

1    shouldn't that either be decided by Judge Torres or await

2    her ruling on the motion to withdraw the reference?

3              MR. OPPENHEIM:  So, Your Honor, I mean, certainly,

4    that is one option.  I could see where there's an appeal to

5    not rule on it if it's all going to be before Judge Torres

6    anyways.  I don't, however, believe that it's a particularly

7    complicated matter.

8              The claims all arise out of the exact same notices

9    that the -- I should say the amended claims all arise out of

10   the exact same notices that the original claims were in and

11   it's all set forth in the papers.  So I actually think it's,

12   well, complicated because it's copyright law and it involves

13   the issue of DMCA notices; it's actually not that

14   complicated.

15             So I think the Court could grant it fairly easily,

16   but also appreciate that the Court may wish to defer to

17   Judge Torres.

18             THE COURT:  Okay.  Anything else you want to add,

19   Mr. Oppenheim?

20             MR. OPPENHEIM:  No, Your Honor.  Thank you.

21             THE COURT:  Okay.  Have there been any

22   communications with Judge Torres?  Was the motion to

23   withdraw to reference argued or just taken on the papers?

24             MR. OPPENHEIM:  Just taken on the papers, Your

25   Honor.

Page 14

1          THE COURT:  Okay.  Who on behalf of the

2    Reorganized Debtors wants to address the copyright claims?

3          CLERK:  Mr. Castillo, you're muted.

4          THE COURT:  You're muted.

5          MR. CASTILLO:  Okay.  Now?

6          THE COURT:  Go ahead.

7          MR. CASTILLO:  Okay, great.  Good afternoon, Your

8    Honor.  Ruben Castillo from the Akerman Law Firm in Chicago.

9    Thank you for letting me appear in this manner.

10         Of course, our position is different than Mr.

11   Oppenheim suggested.  We do agree that we're all waiting for

12   Judge Torres to rule on the motions to withdraw.  Where we

13   were with regard to this matter is we thought we were

14   proceeding toward an adjudication schedule that would be set

15   by Judge Drain after submissions by both parties when the

16   claimants at the last minute filed their motions to

17   withdraw, which have now been fully briefed for almost 10

18   months.

19         The relation back issue, which we did note in our

20   status report that Judge Drain did grant the motion to

21   amend, which we thought was unusual because he explicitly

22   stated on the record that he was not making a relationship

23   back ruling, which is required.  So then we ultimately

24   briefed that issue.  That has been pending before Judge

25   Drain or was pending before Judge Drain since the beginning

Page 15

1    of the year, and we are awaiting a ruling on that issue.

2            We do agree with Mr. Oppenheim that that matter is

3    complicated, both legally and factually, because, as he

4    indicated, these relate to the same copyright notices that

5    plaintiffs were well aware of when they filed their initial

6    claims before this Court.  So we think there are factual

7    issues as to when the plaintiffs knew of these so-called new

8    claims and why they delayed in seeking the amendment.

9            Your Honor can very well read the briefs if you

10   haven't already.

11           THE COURT:  I have not.

12           MR. CASTILLO:  There might be a need for an

13   evidentiary hearing, which Judge Drain did indicate on the

14   record at one point.

15           We do believe that the claimants have not met

16   their burden for relation back just on the pleadings, so

17   Your Honor is well within his rights to deny the motion as

18   it stands.  But I think granting the motion without an

19   evidentiary hearing, that would be more troublesome.

20           The only other thing --

21           THE COURT:  Do you have a position on whether the

22   Court should wait for Judge Torres to rule on the motion to

23   withdraw the reference before deciding the relation back

24   issue.

25           MR. CASTILLO:  We're ready to proceed before Your

Page 16

1    Honor, Judge, and we are ready to proceed before Judge

2    Drain, so in any event, this ruling is going to be

3    necessary.  And we're concerned that time is passing without

4    any progress in this case, so we're ready to proceed to the

5    ruling and an adjudication schedule.  That would be our

6    position.

7              THE COURT:  Mr. Oppenheim, do I understand you to

8    say that you're in favor of this Court going ahead and

9    deciding the relation back issue?

10             MR. OPPENHEIM:  Certainly, Your Honor, and we're

11   happy to argue that issue today or at another time.

12             THE COURT:  Well, we're not arguing it today

13   because I haven't read all the papers, okay?  I was aware of

14   the -- obviously, I misspoke because I was aware that he

15   granted the amendment, but the issue was the relation back

16   issue he hadn't decided.

17             What is your position as to whether an evidentiary

18   hearing is required?

19             MR. OPPENHEIM:  I don't think it's necessary, Your

20   Honor.  I think the papers set forth the issues, and we can

21   easily tee it up for Your Honor in argument for Your Honor

22   to understand.

23             THE COURT:  Let me put it this way just to kind of

24   cut through this.  I'll go ahead and review the briefs on

25   the relation back issue, and I'll make a decision whether or

Page 17

1    not an evidentiary hearing is needed.

2            Let me ask you, Mr. Castillo.  If you believe an

3    evidentiary hearing is needed, how many witnesses would you

4    expect to call?

5            MR. CASTILLO:  Probably two.

6            THE COURT:  All right.  Mr. Oppenheim, if I were

7    to conclude that an evidentiary hearing is required, are

8    there witnesses that you would wish to call?  Maybe an

9    overlap, maybe the same witnesses, but how many witnesses

10   would you anticipate calling?

11           MR. OPPENHEIM:  Probably one, Your Honor.

12           THE COURT:  Okay.  Well, I'll go ahead and look at

13   those papers.  If I conclude that an evidentiary hearing is

14   going to be required, what I'm going to require that you and

15   Mr. Castillo do is confer on the witnesses.  I don't know

16   whether there's overlap or not -- I don't want to get into

17   that today -- whether you're talking about three witnesses,

18   two witnesses.

19           And typically, whether in a contested matter or in

20   an adversary proceeding, I require for any evidentiary --

21   any matter as to which an evidentiary hearing is required, I

22   require preparation of a pretrial conference order.  If you

23   look at the Court's -- if you look at my chambers rules on

24   the Court website, you'll see I have a template for the

25   pretrial conference order.  I use that essentially the same

Page 18

1    template for either adversary proceeding trials or contested

2    matter evidentiary hearings and, you know, you've got to

3    identify all the exhibits you want to use, indicate in

4    advance whether there are objections to any exhibits, list

5    the obviously witnesses that each would call.

6            You would also need to confer.  My strong

7    preference is to have written direct testimony with live in-

8    court cross-examination.  Obviously, if there are witnesses

9    not under your control that you wish to offer in your direct

10   case, you can't do the declaration, but you'll need to

11   address that.  I don't mean to put the cart before the

12   horse.

13           I haven't read the briefs yet, so I don't know

14   whether I think an evidentiary hearing is going to be

15   required.  But, hopefully, within the next week or so, I can

16   let you know whether or not I think an evidentiary hearing

17   is required; if not, I'll schedule argument and we'll go

18   forward with doing that.

19           In terms of argument or evidentiary hearing, I am

20   taking the step to move back to in-court hearings.  We've

21   mostly been almost exclusively been on Zoom.  I'm still

22   going to do conferences like today's on Zoom, but I haven't

23   had people in my courtroom for a hearing since October, but

24   I'm ready to go back to that now.

25           I'll certainly consider if you believe that it

1   should be done by Zoom, I'll listen to it, but it's

2   certainly my hope to move back to in-court hearings.  This

3   is certainly going to be true of the trial on the patent

4   issue as well.  We're going to do that in court, not on

5   Zoom.

6            Anything else with respect to this relationship

7   back matter.  Mr. Oppenheim, you first, and then Mr.

8   Castillo.

9            MR. OPPENHEIM:  Not from claimant's perspective,

10  Your Honor.

11           THE COURT:  All right.  Mr. Castillo.

12           MR. CASTILLO:  I have nothing to add.  Thank you,

13  Judge.

14           THE COURT:  Okay.  And Mr. Oppenheim, you're

15  excused if you need to depart.  You're welcome to stay until

16  you need to get off, but otherwise, you're certainly free.

17           MR. OPPENHEIM:  Thank you.

18           THE COURT:  All right.  So let's move to the -- if

19  I'm correct, then the only other issue that I need to deal

20  with right now is the issues regarding the Reorganized

21  Debtor IV contested claim.

22           MR. CASTILLO:  Judge, there's one other thing.  It

23  doesn't relate to relationship back.  What about an overall

24  adjudication schedule for the copyright case?

25           THE COURT:  Give me a schedule until Judge --

Page 20

1    discovery is stayed.  I'm not giving you --

2              MR. CASTILLO:  Okay.

3              THE COURT:  Judge Torres, who I respect, granted a

4    stay.  I typically don't.  You know, a motion to withdraw

5    the reference doesn't stay the matter before the Court

6    unless either I or the District Court stays it, and she

7    stayed discovery, so I am not going to interfere with her

8    ruling on it.

9              MR. CASTILLO:  Judge, just so you know, she stayed

10   discovery in the Federal District Court case, not in the

11   bankruptcy matter.

12             THE COURT:  Well, that seems to me inconsistent

13   result.  If she stayed -- you know, is there a written

14   ruling as to what she did?  I don't have it.

15             MR. CASTILLO:  Yes, there is.  There's an order.

16             THE COURT:  Is it filed on the Bankruptcy Court

17   docket as well or only on the District Court docket?

18             MR. CASTILLO:  I think it's on the District Court

19   docket, Judge.

20             THE COURT:  Let me ask you to file a copy of that.

21   File it with a cover page.  File a copy of that stay order

22   from the Bankruptcy Court docket and I'll certainly consider

23   doing it.  It does seem inconsistent with me if she's issued

24   a stay, but I haven't seen that order.  I knew that she had

25   the motion to withdraw the reference and I knew that she had

Page 21

1       issued a stay, but I have not seen the order.

2             MR. CASTILLO:  Okay, thank you.

3             MR. OPPENHEIM:  Your Honor, this is Matt

4       Oppenheim, if I may.

5             THE COURT:  Yes.

6             MR. OPPENHEIM:  This issue came up before Judge

7       Drain in several different ways.  In a hearing that we had

8       in August, what Judge Drain said is that, "It would be most

9       efficient and in the best interest of the Bankruptcy Court

10      and the parties' resources to hold any further pretrial

11      conferences before the Bankruptcy Court on the disputed copy

12      claims after the District Court has ruled on motions to

13      withdraw and the motion to stay."

14            And then Court went on in a subsequent hearing in

15      October to say -- this is Judge Drain again, "It's very hard

16      for me to believe that given the overlapping factual issues

17      here and the risk of different timetables and potentially

18      different rulings, there wouldn't be a consolidation of

19      these claims with the District Court litigation, but, of

20      course, that's up to Judge Torres."

21            It was clear that Judge Drain did not believe that

22      we should have piecemeal discovery with potential different

23      rulings on different discovery issues between the Bankruptcy

24      Court and the District Court.

25            Obviously, Your Honor has now taken on this matter

Page 22

```
 1    and need not abide by Judge Drain's views.

 2              THE COURT:  Mr. Oppenheim, is there an ECF docket

 3    number of that transcript that you're referring to?

 4              MR. OPPENHEIM:  We can -- I don't have it directly

 5    in front of me, Your Honor, but we can submit it to you.

 6    There are two of them, I believe, Your Honor.

 7              THE COURT:  Yeah.  I'd like, for my depth of the

 8    Court, I want to review what Judge Drain --

 9              MR. OPPENHEIM:  Actually, I'll add to that, Your

10    Honor.  The June 15th docket where Judge Drain said, "No

11    Court wants to have two separate litigation processes going

12    on at the same time," and so on and so forth.  We can submit

13    a --

14              THE COURT:  Mr. Oppenheim, I'll decide how -- you

15    know, the case is before me.  It's been a long time.  I tend

16    to move my docket along rapidly.  I'm not going to do

17    anything to interfere with -- if Judge Torres certainly had

18    the authority to stay everything, I don't know what she

19    stayed.  So I'll look at it all and I'll decide.  It may be

20    that I'll set up another conference with you both to talk

21    about this, okay?

22              MR. OPPENHEIM:  Absolutely.  Thank you, Your

23    Honor.

24              THE COURT:  All right.

25              MR. CASTILLO:  Thank you, Judge.
```

Page 23

1          THE COURT:  So anyone wants to be excused after

2     this discussion, they can be excused, or they can certainly

3     stay as well.

4          All right, let's get to the dispute between the

5     Reorganized Debtors and IV.  Who wants to start?

6          MR. BLACK:  Your Honor, Martin Black for

7     Intellectual Ventures.

8          THE COURT:  Okay.

9          MR. BLACK:  So let me just give you a little

10     history.  The statement -- the status report is largely

11     accurate.  I just want to fill in one or two details that I

12     think will be helpful.

13          So this is a patent infringement claim relating to

14     DSL technology that's being brought in the Bankruptcy Court

15     and we had an adjudication schedule.  Obviously, as you

16     know, we were supposed to have the hearing and Judge Drain

17     postponed the hearing and now it's been transferred to you.

18          The idea behind this proceeding, which is a little

19     unusual, is not to try the entire patent case.  We had three

20     prior matters against competitors of Frontier.  We reached

21     settlements through license agreements, and those license

22     agreements formed the basis for the damages claim in this

23     case, making an adjustment to the license -- not paid in the

24     other licenses and that's the basis of our claim.

25          The Debtor came along with an interesting

Page 24

1    proposal, which was to try damages only first to do a kind

2    of reverse bifurcation, and that would allow us to get the

3    number and then, hopefully, reach a resolution in a more

4    efficient fashion.

5            We have gone through the process.  And during the

6    course of the discovery process, which was truncated and

7    focused solely on damages, the Debtors raised a number of

8    license defenses, license as a defense under Rule 8 of the

9    Federal Rules, and liability issues and defenses were

10   severed to the second phase of the case if there ever was

11   one.

12           It's created a bit of a problem in case

13   management.  Some documents were produced after the close of

14   discovery.  Witness statements were being prepared relating

15   to a license defense from a company called Aware that the

16   Debtor was trying to put into this upcoming hearing when

17   we'd had no discovery on it.

18           We don't have any objection to trying the issue,

19   but we need to try the issue after we've had discovery, not

20   before.  And so, we need to either stick to the original

21   plan, which is to try the damages only case without defenses

22   like license, or (b) since we're having a change to the

23   trial date, use the time in the interim to get the license

24   defense teed up so Your Honor can hear everything at the

25   same time.

Page 25

1           That's where we are, and we need to schedule.  We

2    have a lot of experts on both sides and a large number of

3    witnesses and we're not sure what schedule is going to work

4    and what Your Honor has in mind.

5           THE COURT:  Well, I was going to give you all a

6    very quick trial.  You know, I -- but let me hear from the

7    other side.  Who wants to speak for the Reorganized Debtors?

8           MR. SHANNON:  Good afternoon, Your Honor.  Timothy

9    Shannon on behalf of the Reorganized Debtors.

10          We have a division of labor here, as I'm sure the

11   Court has appreciated.  Ms. Hensley and Mr. Hessler are

12   bankruptcy specialists and very much running this rodeo from

13   our perspective.  We are here for purposes of just this

14   particular dispute.

15          I agree with Mr. Black that the status report

16   covers most of the ground we need to address today.

17          With respect to the additional damages effects of

18   the licenses, we do think they should be tried at the same

19   time.

20          THE COURT:  You have frozen on my screen, Mr.

21   Shannon.

22          MR. SHANNON:  That's a small mercy for you, Your

23   Honor.  Am I back yet?

24          THE COURT:  Is everybody frozen?

25          CLERK:  He's not frozen on my screen, Judge.

1          MR. SHANNON:  Your Honor, can you hear me now?

2     Now you're frozen for me.

3          CLERK:  Hold up.

4          MR. SHANNON:  The judge has frozen for me.

5     Everyone else is moving, but the judge is frozen.

6          MR. BLACK:  Same here with us.

7          MR. SHANNON:  Zoom is working perfectly.

8          CLERK:  All right, hi, everyone.  The judge got

9     disconnected, so he's going to attempt to reconnect.  Karen,

10    if you could pause the recording for now.  Thank you, Karen.

11         MR. SHANNON:  Your Honor, Timothy Shannon for the

12    Reorganized Debtors again.

13         CLERK:  All right.  Please pause the recording.

14         MR. SHANNON:  Is it me?

15         CLERK:  All right, start the recording please.

16         THE COURT:  I usually don't have these problems,

17    but, you know...

18         MR. SHANNON:  I'm delighted I'm not the only one

19    suffering through Zoom, Your Honor.  It's nice to have

20    company.

21         THE COURT:  It's one of the reasons -- actually,

22    I'm doing this from my chambers today and, more often than

23    not, I've been doing them from home, but it's one of the

24    reasons I want to resume hearings in the courtroom.

25         But go ahead.  I apologize for the delay, but

Page 27

1    please go ahead.

2         MR. SHANNON:  Well, thank you, Your Honor.  I'm

3    just pleased I don't have my 5-year-old jumping into this

4    screenshot during our call; that's why I came into the

5    office today.

6         Your Honor, we agree with many of the things that

7    -- not all, but many of the things that Mr. Black just said.

8    Some additional damages issues did arise during the course

9    of the case and in discovery.  They arose late in the

10   pretrial window for reasons that I would be happy to

11   discuss, for important reasons that I'd be happy to discuss.

12        But I think where we are now is that with the

13   trial having been stayed, we've got ample time to close up

14   any discovery that --

15        THE COURT:  Not if I'm going to set the trial for

16   the next couple of weeks.  Look, you had a trial scheduled

17   for this week.

18        MR. SHANNON:  Yes, Your Honor.

19        THE COURT:  Did you raise the issue with Judge

20   Drain about adjourning the trial to allow discovery to

21   reopen?

22        MR. SHANNON:  No, we didn't, Your Honor.  In our

23   view, discovery was amply established for these particular

24   licensing issues for these damages issues.

25        The damages issues arose, as I said, late in the

1    case for reasons having to do with some discovery disputes

2    between the parties.  We worked those through; we got the

3    discovery.  We now have enough, we believe, to present those

4    damage issues to the Court.

5              If IV believe it needs more discovery, we don't

6    oppose that.  I'm not sure what else there would be, but we

7    don't oppose that.

8              I think in terms of scheduling, Your Honor, that

9    is where we do have a little bit of a logjam.  There are a

10   number of witnesses on both sides:  We've got two fact

11   witnesses and three experts; they've got one fact witness

12   and two experts.  And, unfortunately, one our fact

13   witnesses, one of the company representatives is retiring

14   and going on a 68-day road trip with his father across the

15   country in an RV.  And despite my best efforts, he has

16   declined to make himself available from the road from his

17   RV.

18             THE COURT:  Has he been deposed?

19             MR. SHANNON:  He has been deposed, Your Honor,

20   Your Honor.

21             THE COURT:  I'm not waiting 68 days, I'll tell you

22   that right now.

23             MR. SHANNON:  Okay.  Well, we're mindful of the

24   Court's preference for live testimony and we think that's

25   entirely appropriate in this case.  It's going to be a bit

```
 1    of a battle of the experts.  I understand Mr. Davis, the

 2    witness I just referenced, is a fact witness, but our

 3    experts are going to be important.

 4             THE COURT:  When is Mr. Davis, when is he leaving

 5    on his trip?

 6             MR. SHANNON:  June 1st, Your Honor.  He's retiring

 7    May --

 8             THE COURT:  Why not take a video deposition?  I'm

 9    not waiting 68 days and the hear that more time after that

10    is needed.  This matter was scheduled for trial this week.

11    I started reviewing pleadings.  And you weren't going to get

12    a trial from me this week, but you weren't going to get one

13    three months from now.

14             MR. SHANNON:  Sure, understood, Your Honor.  If

15    that's the case, I think we would -- no objection to making

16    Mr. Davis available for a trial deposition before he

17    departs, and that would be then available for the Court to

18    consider.  The balance of the case would be live in your

19    courtroom.

20             I would need to confer with the remaining

21    witnesses to find out when they're available.  I've

22    confirmed their availability for beyond 68 days, but given

23    the Court's position, I need to go back and find out times

24    and dates.  My experts in particular have other trial

25    obligations, but I can find out their availability sooner
```

Page 30

1    rather than later.

2              THE COURT:  All right.  Address this issue about

3    the license defense, which Mr. Black indicated is a newly

4    raised issue after discovery had actually closed.

5              MR. SHANNON:  Well, Your Honor, I'm happy to

6    address that.

7              We sought discovery on licenses back in December,

8    right in the middle of discovery, and we asked for them for

9    a variety of reasons: not only are they benchmarks of value

10   potentially, but they also raise issues like patent

11   exhaustion, which the Supreme Court addressed in a case

12   called Quanta, which is directly on point here.

13             I would characterize Frontier's response as

14   uncooperative and unhelpful.  They withheld a number of

15   licenses, and it was only after several back and forths that

16   we finally got hold of one set of licenses, which I'll call

17   the Nokia set.

18             THE COURT:  You said Frontier wasn't very helpful.

19             MR. SHANNON:  I'm sorry, IV.

20             THE COURT:  Yeah, you mean IV in your view.

21             MR. SHANNON:  I mean IV.  Yes, I mean IV.  IV was

22   unhelpful, Your Honor.  Frontier, I think, was diligent in

23   trying to do its best.

24             IV withheld all but three licenses, contending

25   that none others were relevant.  In fact, after some

Page 31

1    digging, Your Honor, we determined that one of the other

2    licenses, which I'll refer to as the Nokia license -- it's a

3    set of licenses, but the 2019 one is the most relevant --

4    completely removes approximately 39 percent of the case from

5    the damages calculation.  It simply erases 39 percent of the

6    damages.  It is solely responsible for knocking out more

7    than a million dollars of damages, couple million dollars of

8    damages by their estimation.

9            We got that after asking for it multiple times.

10   And, in fact, even after they said they had given us all the

11   Nokia licenses, we then contacted Nokia and found out that

12   there was another one missing and, in fact, that's the one

13   that they now concede does, in fact, knock out a substantial

14   portion of the damages case.

15           There's a fact dispute between the parties as to

16   precisely what the percentage is, but IV does not contest

17   that it does, in fact, knock out a portion of the case,

18   including, I would add, Your Honor, some of the de-slams

19   that they specifically named in their complaint.

20           Second licensing damages issue that arose came

21   with another set of licenses that IV's predecessor in

22   interest had licensed out these same patents to a chip

23   manufacturer that is now in another 34 percent of the de-

24   slams at issue in the case.

25           Combined, Your Honor, these contracts, these

1   licenses knock out approximately 73-74 percent of the

2   damages in the case on their own before we get to any other

3   correction or any other errors in their damages case.  We

4   think that's important.

5            We agree with Mr. Black that they can and should

6   be tried.  We have no objection if they clean up evidence or

7   clean up discovery that they think they need; again, I don't

8   think it's much.  But it's certainly relevant to the Court's

9   determination of the claim and it's most efficient, so we

10  think it can and should be tried all at once.

11           It's essentially, I think we characterized the

12  damages case, Your Honor, as starting with their model and

13  then a series of corrections and the contracts are a

14  substantial correction to the damages case, as I say, on the

15  order of three-quarters on the case just on their own.

16  There are other corrections that knock out, you know, north

17  of 90 percent of what remains, but we think that it's best

18  for the Court to hear them all together.

19           I'm happy to provide more detail, Your Honor.  I'm

20  mindful of your newness to the case.

21           THE COURT:  Mr. Black, you want to respond?

22           MR. BLACK:  Certainly, Your Honor.  So as I

23  mentioned before, we got to this somewhat odd bifurcation

24  proceeding at the request of the Debtor, who wanted to try

25  damages first so it would not have to go through the burden

Page 33

1   of trying liability infringement, validity, and any

2   affirmative defenses that they may have.  They never

3   asserted it in their objection based on license.  It needs

4   to be raised in an affirmative defense under the rules,

5   under Rule 8, and all affirmative defenses were severed.

6           So we began what we thought was going to be a

7   damages-only discussion, and we had a very compressed

8   damages discovery period.  They sent us a request for

9   licenses.  We said we had something like 80 licenses that

10  might cover the patents, but the only ones which are really

11  going to be relevant are comparable licenses to competitors,

12  of which there were three.

13          We gave them those and we said, but we will give

14  you a full list of all of our licenses, which we did, and

15  they said they'd like to see the licenses from Nokia.  And

16  the licenses from Nokia were highly relevant to them because

17  they knew, but we didn't know, that 40 percent of their

18  equipment they say is Nokia equipment.  So we gave them the

19  two Nokia licenses.  They said there was a third, they were

20  right, and we gave them the third one within, like, three or

21  six days, something like that.  There was never any

22  discovery practice.  It was all voluntary.

23          So on the Nokia side, there's nothing really more

24  to be discovered.  So we're willing to, even though

25  affirmative defenses are deferred, we're willing to deal

Page 34

1    with the Nokia issue now.  The only question is can they

2    prove that it's 39 percent or is it some lower number and

3    we'll see what their proofs are.

4            After discovery closed, they also continued to

5    pursue discovery against a third party called Aware.  Aware

6    was the original owner of the patents and granted a chip

7    license to another company.  That company was merged with a

8    third company.  The third company sold the chips to one of

9    Frontier's suppliers, and we don't know what they did with

10    the chips.

11            And Frontier now wants to try that issue, but

12    there's a whole bunch of factual issues there: which chips,

13    what's in the chips, which products are they in.  And rather

14    than go back to the Court and say we'd like permission to

15    use discovery obtained after the close of the fact

16    discovery, and rather than explain to the Court why they

17    were in another District Court pursuing enforcement of a

18    subpoena of a third party after the close of fact discovery,

19    they just announced to us in an email that we're going to

20    try the issue and it was basically up to us to stop them,

21    and they started producing additional documents.

22            We got a declaration from them on this issue just

23    a couple of days ago after the trial was adjourned.  And

24    what they're trying to do is force us to try this Aware

25    issue, but we've had no discovery on it.

1          THE COURT:  What discovery do you want to take,

2     Mr. Black?

3          MR. BLACK:  So first of all, I'd like to send --

4     if I'd known we were trying license, I would have sent them

5     interrogatories saying what's the basis for your defense,

6     because what they need to show is not just that this chip

7     was sold.  They need to show what was in the chip, how did

8     it operate, how was it integrated in equipment they might

9     have, which pieces of equipment do they have that used the

10    chip, what does the chip do, what did the supplier do.

11         We don't have any of those answers.  Maybe they

12    have answers to all those questions, but we haven't seen

13    them yet, and the first time we're going to see any of that

14    evidence is when we get witness statements.  Their request

15    in the scheduling conference report to do the witnesses live

16    was really a request to really tell us for the first time at

17    trial.

18         THE COURT:  Well, we're going to do witness

19    statements.  Direct examination is going to be with written

20    witness statements with live in-court cross-examination.  So

21    my statement that we're going to go forward with an in-court

22    trial doesn't alter.  It's been my practice for years to

23    require written direct testimony with live in-court cross-

24    examination, so you're going to see what it is they believe

25    pretty soon.

Page 36

1           I agreed, you know, I think they asked to put off

2   filing -- and the witness statements were in the schedule in

3   the pretrial order; they would have been due already now

4   because there would have been a trial this week.  So I am

5   going to require -- we'll deal with the specific schedule

6   shortly, but I want both sides to go forward.  You put your

7   -- I want to see what the direct cases are from each side.

8   And if there -- let me finish.

9           If you believe after you see the witness

10  statements that you haven't had -- there hadn't been proper

11  disclosure of issues they're raising and you tell me --

12  we'll have another conference very soon -- about what it is

13  that you think you need to do, what discovery if any you

14  need to take now that hasn't been taken before, I'll deal

15  with that.

16          But there was a schedule.  It required written

17  direct testimony.  It should have been in.  I agreed to put

18  it off until after I said we would deal with the schedule at

19  this conference, and we will.

20          So, you know, Mr. Shannon, let me make crystal

21  clear.  If you've got your witness statements, you better

22  get them in.

23          Mr. Black, let me ask you about Davis and his

24  expected trip.  Are you prepared to go forward with video

25  deposition?  I'll certainly, if he's not going to testify

Page 37

```
 1    live at trial -- where does he live, Mr. Shannon?

 2              MR. SHANNON:  He lives in Rochester, New York,

 3    Upstate New York.

 4              THE COURT:  Look, Mr. Davis, he's beyond -- Mr.

 5    Black, he's beyond the subpoena power of this Court to

 6    compel him to be here.  But, you know, my view is I'm not

 7    putting the trial off for 68 days while he goes on his trip.

 8    Let's get his video deposition; it'll be his trial

 9    testimony.  You can cross-examine him.

10              You know, Mr. Shannon, you better put in his

11    written direct and then Mr. Black can go ahead and take his

12    deposition; he knows exactly what he's going to say at

13    trial.

14              MR. SHANNON:  Of course, Your Honor, no problem.

15              MR. BLACK:  And that works for us, Your Honor.

16    The only concern I have, Your Honor, is that they've already

17    made clear that they intend to rely on documents and

18    information that were not produced during discovery.  So if

19    we have leave to file a motion to strike that material or do

20    what we need to do, that's fine.  I just didn't want to let

21    this opportunity go without saying that we really haven't

22    prejudiced on this one.

23              So let me explain to you what I do with respect to

24    trials.  So if you go, as I indicated in the last matter, if

25    you go on my chamber's rules and you'll find the template
```

Page 38

1  for a joint pretrial conference order, you're both going to

2  have to complete it.  Each side has to list all of the

3  exhibits they expect to offer.  You'll have an opportunity

4  to indicate any that you have objections to, so you will

5  know very quickly what exhibits they intend to rely on at

6  trial.  There won't be any surprises about it, okay?

7          The only thing that doesn't get listed, if there

8  are impeachment exhibits for cross-examination, usually, I

9  prefer if they've been listed.  But, you know, when they

10  come up at trial and people convince me that those were

11  impeachment exhibits and that's why they weren't listed,

12  fine.  But if any exhibits that either side is going to use

13  as part of their direct case better be listed in the exhibit

14  list or you don't use it, and any witnesses that aren't

15  listed, you don't get to use them.

16          I adhere -- you know,  you've got to do the

17  pretrial order.  Go ahead.

18          MR. BLACK:  We went through most of that process

19  and some of the documents on the exhibit list are things

20  that were produced after the close of discovery, which

21  they'd now like to rely on and in which we've had no

22  opportunity.  They came from third parties, so we've not had

23  an opportunity to examine.  I don't even know how he's going

24  to authenticate them, but he just put them all on the list.

25  When we said, hey, look, this is not an issue to be tried

1    now and this stuff's produced after the close of discovery,

2    we've not asked for leave of court to either amend the

3    scheduling order that severs defenses or the discovery

4    deadline.  Mr. Shannon just says too bad.

5            So if we're going to proceed in that fashion, we

6    can do it and I can make our objections and, you know, we

7    have a little time, we can have a hearing and figure out

8    what to do.  But I just want to be really clear we do feel

9    we've been severely prejudiced by this.

10           THE COURT:  Well, where -- so I have Judge Drain's

11   pretrial order that he signed, and I assume that the two of

12   you negotiated this document.

13           MR. BLACK:  All objections as to liability were

14   preserved for later.

15           THE COURT:  Right.

16           MR. BLACK:  Licenses and liability defense.  It's

17   a defense that the defendant has to show under the law.

18   It's listed in Rule 8 as an affirmative defense.  We did not

19   know we were trying that issue, and I don't think Mr.

20   Shannon knew he was going to try the issue until after

21   discovery closed.

22           MR. SHANNON:  Your Honor, may I be heard on this

23   for a moment.

24           THE COURT:  Let Mr. Black finish up, then I'll

25   give you a chance to speak again.

Page 40

1          MR. BLACK:  My concern is not that he not be

2     permitted to put on the defense at some point, but we ought

3     to have to have the trial now and sever this Aware issue

4     because it relies on material produced after the close of

5     discovery and is not part of the original scheduling order;

6     in fact, it's not even been pled as an objection formally.

7     Or we can put off the trial and figure out the Aware thing

8     and then come back or some combination of the two.  But I

9     just don't want to be in a position where we have to try an

10    issue where we haven't had an opportunity to have discovery

11    on.

12          THE COURT:  Go ahead, Mr. Shannon.  Let me hear

13    your response to that.

14          MR. SHANNON:  Your Honor, I do object to Mr.

15    Black's characterization of how we've presented this issue

16    and what we've said.  At no point have I ever said too bad

17    or anything like it.  We've invited IV to take whatever

18    discovery they need, and we don't think they have any more

19    that they need.

20          And critically, Your Honor, this is a really

21    important point:  The party that has been most prejudiced in

22    this entire process is Frontier, the Reorganized Debtors.

23    IV knew about these licenses and did not disclose them.

24          THE COURT:  Mr. Shannon, stop.  How did these

25    existence of these licenses go to the damage calculation?

1              MR. SHANNON:  Because they knock out three-

2     quarters of the case, Your Honor.

3              THE COURT:  And why does it knock out three-

4     quarters of the case?  Why do these licenses knock out

5     damage calculations?

6              MR. SHANNON:  This is a concept called patent

7     exhaustion, Your Honor.  That is once a patent embodying

8     device is sold, its subsequent users are immune from suit.

9     There's a case called Quanta that the Supreme Court came out

10    with -- Seth will correct the date on it -- a decade ago

11    involving precisely this issue: chip sets in devices.

12             THE COURT:  Is this addressed in your pretrial

13    briefs?

14             MR. SHANNON:  Yes, Your Honor.

15             THE COURT:  Okay.  Mr. Black, is it addressed in

16    your brief?

17             MR. BLACK:  Yes.  In my brief, I expected that

18    they were going to raise the issue.  They don't have the

19    proofs, and it's not part of this case because it is a

20    defense, exhaustion is a defense.

21             THE COURT:  What additional discovery is it that

22    you want to take, Mr. Black?

23             MR. BLACK:  So I'd like to send interrogatories

24    that they lay out their whole theory of exhaustion because,

25    as I mentioned, it's no simple as there's a chip somewhere

Page 42

1    in a product that they're using.

2           And then it's possible we'll need to have third-

3    party discovery of either Aware, who is the chip maker, or

4    AdTran, who is the equipment supplier to Frontier.

5           Third, they sent us a declaration a couple of days

6    ago, which is double hearsay where someone from, if I

7    understand it correctly, someone from Frontier says that the

8    chips, X percent of the chips in their products that they

9    use to send DSL service are originating from Aware.  We have

10   no idea where that number came from.  We were only going to

11   find out when they produce a witness statement a couple of

12   days before trial.

13          We just need to know what the defense is so we can

14   meet it.  For all we know, we'll end up agreeing with them

15   in part or on some of the numbers or maybe we won't, but

16   right now, they're planning to produce a whole of surprise

17   witnesses.

18          THE COURT:  So you'll look at my, Mr. Black and

19   Mr. Shannon, you'll look at my joint pretrial conference

20   order and Section IV, parties contentions -- plaintiff's

21   contentions.  Set forth a brief statement of the plaintiff's

22   contentions in separately numbered paragraphs as to all

23   ultimate issues of fact and law, and then defendants

24   contention, set forth a brief statement of the defendant's

25   contentions in separately numbered paragraphs as to all

1    ultimate issues of fact and law, so you're going to have to

2    disclose all this.

3            When we go to trial, you're both an open book.

4    There are not going to be surprises at the trial.  All the

5    issues are going to have to be laid out in the pretrial

6    order.  You can't pull something out of your hat at the time

7    of trial that hasn't been disclosed and that the other side

8    hasn't had a chance to respond to; that goes both ways.

9            You know, there will be a -- there's a section

10   here on issues to be tried.  And I understand you had a

11   pretrial order with Judge Drain; that is not going to exempt

12   you from completing my joint pretrial conference order.

13   You'll have to have all the exhibits that each side

14   proposes.  It sounds like you've exchanged your exhibit list

15   and that's given rise to some of these disputes.

16           The two of you need to confer promptly after this

17   hearing within the next day or two and you need to iron out

18   what, if any, discovery either of you think you need and

19   then you're going to have to do it on an expedited basis.  I

20   mean, this is moving --

21           MR. BLACK:  That is --

22           THE COURT:  No, stop.  This is moving forward,

23   okay.  You can also discuss when you're going to do Mr.

24   Davis's deposition; do it by video and let's get it done.  I

25   want this case trial ready --  I understand it's a contested

Page 44

1    matter and I treat it the same way as I would an adversary

2    proceeding -- this has got to be trial ready very soon.   I

3    would think, frankly, that the trial is probably -- you

4    know, I'm listening to you both about issues that you're

5    disputing now.   I expect we're going forward probably in

6    July.   I think it's probably going to take you the rest of

7    this month and part of June certainly to iron out and get

8    this case completely trial ready.

9            So I would expect -- I'm not going to set this

10   trial date now, but my calendar for trial is pretty wide

11   open, and so, I expect that, you know, we're going to have a

12   trial in the courtroom in July.   You better be lining up

13   your dates of availability of expert witnesses and things

14   like that.

15           I want -- have you each deposed each other's

16   experts?

17           MR. BLACK:   Yes, Your Honor.

18           MR. SHANNON:   Yes, Your Honor.

19           THE COURT:   You need to discuss and see if you can

20   agree on how many days for trial.   As I understood it, I

21   think it was going to be three days.   And typically, I

22   conduct my trial days from 9:00 a.m. to 5:00 p.m., unless a

23   witness is not completed at 5:00 and we'll go later to try

24   and complete a witness if possible.

25           As I said, written direct, which I've read and

Page 45

1   reviewed before the trial commences.  You can when -- if

2   you're the proponent of the witness, you offer his direct

3   testimony in writing and tender the witness for cross-

4   examination and then there's, you know, redirect and recross

5   if necessary.

6          Have the two of you tried to agree on

7   admissibility of exhibits?  Mr. Shannon first.

8          MR. SHANNON:  Thank you, Your Honor.  We have not.

9   That process was suspended on the eve of the trial as well.

10          THE COURT:  Okay.  Well, you better resume that.

11   It's not suspended anymore, okay?

12          MR. SHANNON:  Understood completely, Your Honor.

13          THE COURT:  Mr. Black.

14          MR. BLACK:  Yes, Your Honor, I apologize for

15   looking like I was jumping in.  I was going to jump in in

16   violent agreement.  We have no issue with proceeding with a

17   trial in July.  We just want to get these other issues

18   ironed out.  I don't see why we can't do that in the next

19   couple of weeks.

20          THE COURT:  Okay.

21          MR. BLACK:  And on the objections to the exhibits,

22   we were just about to get there when things were suspended.

23          THE COURT:  Okay.  Let me talk about the motions

24   to redact the briefs.  I've seen both the redacted and

25   unredacted briefs of the Reorganized Debtors, but I've only

Page 46

1    seen the redacted brief from IV.  It may be that Judge Drain

2    had it.  It hasn't come here, I don't have it.

3            Let me tell you both -- I mean, I looked quickly

4    at some of the -- look, when discovery goes forward, I

5    regularly agree to confidentiality orders and understand all

6    that, but trial is different.  I conduct public trials, and

7    it's only in the highly unusual case that I permit redacted

8    documents to be used at trial.  They typically are

9    unredacted.

10           I understand that with respect to your damage

11   calculations, you're referring to licenses with third

12   parties.  We're not arguing the redaction motions now.

13           Mr. Black, you and Mr. Shannon need to confer and

14   see if you can agree on substantially narrowing the proposed

15   redactions in the briefs.  What I saw so far -- and as I

16   said, I was only able to review the Reorganized Debtors

17   redacted and unredacted briefs -- was far too much in the

18   way of redactions.

19           It may be, Mr. Black, that your client doesn't

20   want to have to disclose who it has licenses with that it

21   wants to use as part of its damage calculation.  I'm not

22   persuaded from what I've seen so far, okay.

23           It's a public trial.  The public has a right to

24   know what evidence each side is relying on in support of

25   their case and contentions.  But I wanted to give both of

Page 47

```
 1   you the opportunity to see whether you can agree on

 2   redactions far different than what I've seen so far.  I

 3   mean, so far, because I don't have your unredacted copy, Mr.

 4   Black, I just see the large blanks in what I'm reviewing,

 5   and that's not acceptable to me.

 6             MR. BLACK:  Understood, Your Honor.  Our concern

 7   is not -- the settlements are public that they exist.  The

 8   issue is we have third-party confidential information.

 9             THE COURT:  That doesn't bind me.

10             MR. BLACK:  Yes, I know, Your Honor.

11             THE COURT:  And I understand -- I have no qualms

12   about, because I sign protective orders pretty regularly and

13   for discovery purposes, that's fine.  But when it comes to

14   trial, we deal with public trials, so go back and take a

15   look at whether you can agree.

16             Go ahead, Mr. Shannon.

17             MR. SHANNON:  Your Honor, thank you.  I wanted to

18   borrow a phrase, "violently agree" with your sentiments, and

19   we are perfectly prepared to remove essentially all of the

20   redactions.

21             The redactions we made, just to be clear, Your

22   Honor, were in deference to IV.  IV had been not entirely

23   clear to us about what portions they wanted redacted, so we

24   took a very conservative view in deference to them.  In our

25   view, all of this can and should be public.
```

1              Relatedly, Your Honor, in the leadup to the

2     trial...

3              THE COURT:  Mr. Shannon, it doesn't help your

4     cause by making that argument now.  What you need to do, you

5     and Mr. Black need to confer.  You've heard -- I mean, I

6     have a whole slew of decisions on sealing under 107(b),

7     okay.  A lot of them are in different contexts, but I have a

8     very strong view of public access to all court information,

9     and that's particularly true as to trial.

10             So I don't want to hear further argument about it

11    now.  What needs to happen is the two of you need to go back

12    and see whether you can substantially narrow the redactions

13    that each of you have proposed.  And when you have finished

14    that, I think we can arrange another Zoom conference within

15    the next week or so to see where we are on it, okay?

16             So let's leave it at that, rather than each side

17    arguing about the reactions now, okay?

18             MR. SHANNON:  Sure.

19             THE COURT:  Okay.  Mr. Black, I think you were

20    addressing some of these issues.

21             MR. BLACK:  We understand completely, Your Honor.

22    The only concern we have is we don't want to be in breach of

23    an agreement if we disclose it.  If Your Honor rules things

24    have to be disclosed, we understand completely.  Trials must

25    be public.

Page 49

 1              THE COURT:  Correct.  And I'm perfectly, because

 2    this issue has come up before, I want to give you two a

 3    chance to see what you can work out, and I will enter an

 4    order to that effect so that you will be compliant.  I

 5    assume your agreements have the usual carveout, unless

 6    otherwise ordered by a court.

 7              MR. BLACK:  Yes, Your Honor.

 8              THE COURT:  But rather than me just going through

 9    and marking up, nope, nope, nope, nope, nope, I wanted to

10    give the two of you a chance.  Look, there may be some

11    limited redactions that I'm prepared to live with, okay, but

12    I wanted to give the two of you a chance to see whether you

13    can solve this problem, okay?

14              MR. BLACK:  Thank you, Your Honor.

15              THE COURT:  Okay.  All right.  Let me look at my

16    calendar a moment, okay?  What I would like to do is adjourn

17    and resume our discussion after the two of you have had a

18    chance to see whether you can iron out these remaining

19    issues.

20              Are you both available on Thursday, May 18, one

21    week from today, at 2:00?

22              MR. BLACK:  Yes, Your Honor.

23              THE COURT:  Mr. Shannon.

24              MR. SHANNON:  I think so, Your Honor.  Let me just

25    confirm before I speak.

Page 50

1          CLERK:  Sorry, Judge.  Do you mean May 18th or May

2     19th?

3          THE COURT:  May 18th at 2:00.

4          CLERK:  Wednesday, okay.

5          THE COURT:  Right.  I know, Deanna, we have

6     hearings in the morning at 10:00 and 11:00, but nothing that

7     I see at 2:00.  Deanna, is that correct?

8          CLERK:  That is right.

9          THE COURT:  Okay.

10          MR. SHANNON:  Yes, Your Honor, the 18th at 2:00

11    works for Frontier as well.

12          THE COURT:  Okay.  What I would ask for is by 5:00

13    p.m. on the 17th a written status report where you can

14    identify issues that the two of you have agreed upon and any

15    that remain open.  Okay?  It doesn't have to be lengthy.  I

16    just like to know what we're going to deal with on

17    Wednesday.

18          MR. BLACK:  Yes, Your Honor.

19          MR. SHANNON:  Yes, Your Honor.

20          THE COURT:  Okay.  Mr. Shannon, anything else that

21    I should deal with in terms of this contested matter today?

22          MR. SHANNON:  Your Honor, I just wanted to put on

23    the record our position with respect to the Nokia and AdTran

24    licenses that while we've been discussing it here today in

25    the context of trial scheduling, we will be ultimately I

Page 51

1    think seeking some form of relief based on the conduct

2    that's happened so far.

3            I'm not prepared to argue it today, don't have a

4    formal motion to present today, but I didn't want the status

5    conference to go by without having mentioned it for fear

6    that the Court would later then ask, well, why haven't I

7    heard about this before.

8            THE COURT:  All right.  Mr. Black, anything you

9    want to raise additional?

10           MR. BLACK:  No, Your Honor, other than I don't

11   know what Mr. Shannon is talking about.  If he has a motion

12   to file, he should file it and we'll deal with it.

13           THE COURT:  Okay.  What you both need to do before

14   our hearing next week, and I would suggest doing it

15   promptly, is look at my chambers rules, get the template for

16   the pretrial conference order, because I think it will point

17   you as to what I expect when we go to trial.

18           MR. BLACK:  Thank you, understood.

19           THE COURT:  And we'll do the hearing next week by

20   Zoom again.  But again, in terms of your planning, you

21   should anticipate that the actual trial will be in the

22   courtroom.

23           MR. BLACK:  Understood.

24           MR. SHANNON:  Thank you, Your Honor.

25           MR. BLACK:  Thank you, Your Honor.

Page 52

1           THE COURT:  All right.  And let me ask, other than

2    this matter, anything that the Reorganized Debtor wants to

3    raise today, and then I'll ask whether -- because there are

4    other counsel who are appearing as well, see whether anybody

5    else has any other issues they want to raise.

6           MS. HENSLEY:  Your Honor, Gabriela Hensley on

7    behalf of the Reorganized Debtors.  This is not a major

8    issue or a high priority item, but I did want to just for

9    the Court's attention that last night we filed a certificate

10   of no objection on our motion to extend our claims objection

11   deadline.

12          As noted in the status report, our claims

13   reconciliation process is nearly complete, and we do not

14   anticipate requiring Your Honor's involvement.  But just for

15   purposes of maintaining that deadline and allowing us to

16   complete final checks, we would appreciate the order being

17   entered and are happy to address any related questions.

18          THE COURT:  What's the date that you're seeking?

19          MS. HENSLEY:  It is October, I believe, 27th of

20   2022.  I might have the exact date wrong.  I can pull the

21   motion, but the motion is at Docket 2072.

22          THE COURT:  Okay, we'll look at it.  You don't

23   need to go further now.  Okay.  Anything else that anybody

24   needs to raise today?

25          All right.  Any of the other counsel, other than

Page 53

1    the Reorganized Debtors counsel, anything that you want to

2    raise today?

3              MR. CULPEPPER:  Your Honor, this is Kerry

4    Culpepper appearing on behalf of the movie claimants,

5    (indiscernible) claimants, Voltage Holdings and Backmask.

6              THE COURT:  Yes, go ahead.

7              MR. CULPEPPER:  We have a case management order in

8    this case that requires service of hard copies to 50

9    attorney generals of 50 states and 100 other parties.  Even

10   though this bankruptcy is basically, for the most part,

11   wrapped up, would Your Honor entertain amending this case

12   management order to at least let some of these people -- the

13   people who still want to be served hard copies, require them

14   to opt in because this is a burden on post offices, at least

15   in my area, to sort all of these mailings to the different

16   state attorney generals in different states and these

17   various parties who, to be frank, have no interest any

18   longer in this case.

19             THE COURT:  You're going to have to -- I am new to

20   the case, so you need to give me some more background about

21   this.  Who do you represent and what is this (crosstalk)?

22             MR. CULPEPPER:  I represent movie studios who have

23   filed copyright claims similar to the record claimants based

24   on secondary liability of the copyright infringement for

25   subscriber's actions.

1           What I'm referring to this case as a case

2    management order that requires -- has a service list of

3    people who have to have hard copies of the documents served

4    by mail, and that list includes 50 state attorney generals

5    and numerous other parties, although this bankruptcy has,

6    for the most part, wrapped up.  And to be frank, the post

7    office in my area has complained about this, about the mail

8    sorting these mailers coming to my office for this issue.

9           THE COURT:  Mr. Culpepper, let me ask.  Have you

10   raised this issue with counsel for the Reorganized Debtors

11   to see whether -- I mean, complete consent isn't required

12   because there's lot of parties, but have you raised this

13   issue with the Reorganized Debtors' counsel to see whether

14   you can get agreement from them on modifying.

15          I'm not familiar with the case management order

16   that you're referring to and the service requirements.  If

17   circumstances have changed, this is the Reorganized Debtor

18   now, I don't know how long that case management has been in

19   effect.

20          What I would suggest is if you talk with the

21   Reorganized Debtors' counsel, if you can agree on what the

22   modification would be and talk with them about filing a

23   motion to modify it that would be on presentment with a

24   relatively short deadline for responses.  And you may have

25   to mail -- if the order requires that that be mailed, that

Page 55

1    you give everybody the notice of it and the result could be

2    that that case management order is modified.

3              I'm not going to simply agree to a change.  Talk

4    with -- have you talked with the Reorganized Debtors'

5    counsel about your suggestion?

6              MR. CULPEPPER:  Yes, Your Honor.  I brought this

7    up to them when we -- last year at the time of filing the

8    notice of withdrawal of the reference.

9              THE COURT:  Well, that was last year, and this is

10   this year.  When's the last time you talked to them?

11             MR. CULPEPPER:  I haven't talked to them since

12   last year.

13             THE COURT:  Okay.  Well, it's time to talk to them

14   again and see if you can get an agreement.  If you can't,

15   you can file a motion, but I'm not going to do it either

16   without -- if there's a motion that has the consent of the

17   Reorganized Debtors and it's filed on presentment so that

18   other parties have an opportunity to respond, that's fine.

19   But I'm not going to do it -- I'm not going to willy nilly

20   just simply say, no, you don't have to serve anybody else.

21   If there's an existing case management order, there may be

22   an expectation that that's the applicable procedure.

23             So raise this first with the Reorganized Debtor

24   and see if you can agree and how to move forward with it and

25   try to get the case management -- if it's in the case

Page 56

1     management order, it's going to have to be amended, okay,

2     and it isn't going to be amended without giving people

3     notice.  Okay?  That's my response for today.

4              Anybody else have anything they want to raise for

5     today?

6              All right.  Until next Wednesday at 2:00 p.m.,

7     we're adjourned.  And in terms of the hearing next week, any

8     parties in interest who want to attend can.  I don't expect

9     everybody to be there.

10             Okay, we're adjourned.

11             MS. HENSLEY:  Thank you, Your Honor.

12             (Whereupon these proceedings were concluded at

13    3:13 PM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

1            C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 18, 2022

Page 1

**&**

**&**   5:13 8:1

**1**

**10**   14:17
**100**   53:9
**10004**   1:13
**1014**   3:12
**10606**   4:4
**107**   48:6
**10:00**   50:6
**11**   1:15 5:2
**11501**   57:23
**11:00**   50:6
**12151**   57:7
**15th**   22:10
**17th**   50:13
**18**   49:20 57:25
**18th**   50:1,3,10
**19801**   3:13
**19th**   50:2
**1st**   29:6

**2**

**20**   5:3
**20-22476**   1:3
**20016**   4:11
**2019**   31:3
**2022**   1:15 5:2
   52:20 57:25
**2072**   52:21
**2087**   2:1 10:23
**2089**   2:1
**22476**   5:4
**27th**   52:19

**3**

**300**   3:12 57:22
**330**   57:21
**34**   31:23
**39**   31:4,5 34:2
**3:00**   7:14 11:11
**3:13**   56:13

**4**

**40**   6:2 33:17
**4530**   4:10
**47th**   3:5

**5**

**5**   27:3
**50**   4:3 53:8,9 54:4
**5th**   4:10

**6**

**60606**   3:6
**68**   28:14,21 29:9
   29:22 37:7

**7**

**71**   3:5
**73-74**   32:1
**75-170**   3:19

**8**

**8**   24:8 33:5 39:18
**80**   33:9

**9**

**90**   32:17
**96740**   3:20
**9:00**   44:22

**a**

**a.m.**   44:22
**abide**   22:1
**able**   46:16
**absolutely**   22:22
**acceptable**   47:5
**access**   48:8
**accurate**   23:11
   57:4
**actions**   53:25
**actual**   51:21
**add**   13:18 19:12
   22:9 31:18
**additional**   25:17
   27:8 34:21 41:21
   51:9

**address**   10:21
   11:4 14:2 18:11
   25:16 30:2,6
   52:17
**addressed**   30:11
   41:12,15
**addressing**   48:20
**adhere**   38:16
**adjourn**   49:16
**adjourned**   34:23
   56:7,10
**adjourning**   27:20
**adjudication**
   14:14 16:5 19:24
   23:15
**adjustment**   23:23
**administrative**
   11:24
**admissibility**   45:7
**admit**   7:3
**adtran**   42:4 50:23
**advance**   18:4
**adversary**   17:20
   18:1 44:1
**affirmative**   33:2,4
   33:5,25 39:18
**afternoon**   5:23
   6:7,11,17 7:7 8:7
   10:5,7,18 14:7
   25:8
**ago**   34:23 41:10
   42:6
**agree**   14:11 15:2
   25:15 27:6 32:5
   44:20 45:6 46:5
   46:14 47:1,15,18
   54:21 55:3,24
**agreed**   36:1,17
   50:14
**agreeing**   42:14
**agreement**   45:16
   48:23 54:14 55:14

**agreements**   23:21
   23:22 49:5
**ahead**   8:14 11:17
   11:19,25 14:6
   16:8,24 17:12
   26:25 27:1 37:11
   38:17 40:12 47:16
   53:6
**akerman**   3:3 5:9
   14:8
**al**   3:11,18 4:9 5:14
**alex**   6:19
**alexander**   4:16
**allow**   24:2 27:20
**allowing**   52:15
**alter**   35:22
**amend**   11:24
   12:12,13 14:21
   39:2
**amended**   13:9
   56:1,2
**amending**   53:11
**amendment**   15:8
   16:15
**ample**   27:13
**amply**   27:23
**announced**   34:19
**answers**   35:11,12
**anticipate**   17:10
   51:21 52:14
**anybody**   11:6,8
   11:15 52:4,23
   55:20 56:4
**anymore**   45:11
**anyone's**   9:17
**anyways**   13:6
**apologize**   26:25
   45:14
**appeal**   13:4
**appear**   14:9
**appearance**   5:7
   5:11,22 6:16 7:6
   8:6,14,22 9:4

appearing 5:24
6:8 8:1 9:5 52:4
53:4
applicable 55:22
appreciate 13:16
52:16
appreciated 11:14
25:11
appropriate
28:25
approximately
31:4 32:1
area 53:15 54:7
argue 16:11 51:3
argued 13:23
arguing 16:12
46:12 48:17
argument 16:21
18:17,19 48:4,10
arose 27:9,25
31:20
arrange 48:14
asked 30:8 36:1
39:2
asking 31:9
asserted 33:3
assume 7:8 39:11
49:5
attempt 26:9
attend 56:8
attention 52:9
attorney 53:9,16
54:4
attorneys 3:4,11
3:18 4:2,9 9:15
audio 9:2
august 21:8
authenticate
38:24
authority 22:18
availability 29:22
29:25 44:13

available 28:16
29:16,17,21 49:20
avenue 3:12 4:10
await 13:1
awaiting 15:1
aware 12:17 15:5
16:13,14 24:15
34:5,5,24 40:3,7
42:3,9

**b**

b 1:21 24:22 48:6
b204 3:19
back 12:15,16,25
14:19,23 15:16,23
16:9,15,25 18:20
18:24 19:2,7,23
25:23 29:23 30:7
30:15 34:14 40:8
47:14 48:11
background
53:20
backmask 6:1
9:25 53:5
bad 39:4 40:16
balance 29:18
bankruptcy 1:1
1:11,23 10:24
12:9 20:11,16,22
21:9,11,23 23:14
25:12 53:10 54:5
bar 11:24
based 33:3 51:1
53:23
basically 34:20
53:10
basis 23:22,24
35:5 43:19
battle 29:1
began 33:6
beginning 14:25
behalf 5:24 6:8,18
6:23 7:12,25 8:8
8:11 9:5,6,16,19

10:19 11:10 14:1
25:9 52:7 53:4
believe 6:12,13
13:6 15:15 17:2
18:25 21:16,21
22:6 28:3,5 35:24
36:9 52:19
benchmarks 30:9
best 21:9 28:15
30:23 32:17
better 36:21 37:10
38:13 44:12 45:10
beyond 29:22
37:4,5
bifurcation 24:2
32:23
bind 47:9
bit 24:12 28:9,25
black 6:21,22,23
7:1 8:17 9:21 23:6
23:6,9 25:15 26:6
27:7 30:3 32:5,21
32:22 35:2,3
36:23 37:5,11,15
38:18 39:13,16,24
40:1 41:15,17,22
41:23 42:18 43:21
44:17 45:13,14,21
46:13,19 47:4,6
47:10 48:5,19,21
49:7,14,22 50:18
51:8,10,18,23,25
black's 40:15
blanks 47:4
book 43:3
borrow 47:18
bowling 1:12
breach 48:22
bressler 3:15 5:11
5:12,12,17 9:24
brief 41:16,17
42:21,24 46:1

briefed 11:23
14:17,24
briefs 10:15 15:9
16:24 18:13 41:13
45:24,25 46:15,17
bring 7:20 10:25
brought 23:14
55:6
bunch 34:12
burden 15:16
32:25 53:14

**c**

c 3:1 5:1 57:1,1
calculation 31:5
40:25 46:21
calculations 41:5
46:11
calendar 44:10
49:16
call 17:4,8 18:5
27:4 30:16
called 15:7 24:15
30:12 34:5 41:6,9
calling 5:3 17:10
carly 4:18 6:19
carpenter 3:10
5:13
cart 18:11
carveout 49:5
case 1:3 5:3 10:8,9
10:10 11:22 12:16
16:4 18:10 19:24
20:10 22:15 23:19
23:23 24:10,12,21
27:9 28:1,25
29:15,18 30:11
31:4,14,17,24
32:2,3,12,14,15
32:20 38:13 41:2
41:4,9,19 43:25
44:8 46:7,25 53:7
53:8,11,18,20
54:1,1,15,18 55:2

[case - correct]                                                                    Page 3

55:21,25,25
cases  36:7
castillo  3:8 5:6,8,8
  9:20 14:3,5,7,8
  15:12,25 17:2,5
  17:15 19:8,11,12
  19:22 20:2,9,15
  20:18 21:2 22:25
cause  48:4
certainly  12:1
  13:3 16:10 18:25
  19:2,3,16 20:22
  22:17 23:2 32:8
  32:22 36:25 44:7
certificate  52:9
certified  57:3
chamber's  37:25
chambers  17:23
  26:22 51:15
chance  39:25 43:8
  49:3,10,12,18
change  24:22 55:3
changed  54:17
characterization
  40:15
characterize
  30:13
characterized
  32:11
checked  9:13
checks  52:16
chicago  3:6 14:8
chip  31:22 34:6
  35:6,7,10,10
  41:11,25 42:3
chips  34:8,10,12
  34:13 42:8,8
circumstances
  54:17
claim  19:21 23:13
  23:22,24 32:9
claimant's  12:13
  19:9

claimants  4:2
  10:2 11:10 12:20
  14:16 15:15 53:4
  53:5,23
claims  11:24 13:8
  13:9,10 14:2 15:6
  15:8 21:12,19
  52:10,12 53:23
clarify  9:17
clean  32:6,7
clear  21:21 36:21
  37:17 39:8 47:21
  47:23
clerk  5:2,10,15,20
  5:25 6:4,10,15,20
  6:24 7:3,10,18,23
  8:2,4,9,13,19 9:8
  9:12,15 14:3
  25:25 26:3,8,13
  26:15 50:1,4,8
client  46:19
close  24:13 27:13
  34:15,18 38:20
  39:1 40:4
closed  30:4 34:4
  39:21
coburn  8:9,11,11
  9:18
colleague  6:13
colleagues  6:25
combination  40:8
combined  31:25
come  38:10 40:8
  46:2 49:2
comes  47:13
coming  54:8
commences  45:1
communications
  1:7 3:4 5:3 9:16
  9:19 13:22
companies  6:9
company  6:18
  7:13 9:23 11:10

11:13 24:15 26:20
  28:13 34:7,7,8,8
comparable  33:11
compel  37:6
competitors  23:20
  33:11
complained  54:7
complaint  31:19
complete  38:2
  44:24 52:13,16
  54:11
completed  44:23
completely  31:4
  44:8 45:12 48:21
  48:24
completing  43:12
compliant  49:4
complicated  13:7
  13:12,14 15:3
comprehensive
  12:5
compressed  33:7
concede  31:13
concept  41:6
concern  37:16
  40:1 47:6 48:22
concerned  16:3
conclude  17:7,13
concluded  56:12
conduct  44:22
  46:6 51:1
confer  17:15 18:6
  29:20 43:16 46:13
  48:5
conference  2:1
  10:9 17:22,25
  22:20 35:15 36:12
  36:19 38:1 42:19
  43:12 48:14 51:5
  51:16
conferences  18:22
  21:11

confidential  47:8
confidentiality
  46:5
confirm  49:25
confirmed  29:22
connection  10:13
consent  54:11
  55:16
conservative
  47:24
consider  18:25
  20:22 29:18
consolidation
  21:18
contacted  31:11
contending  30:24
contention  42:24
contentions  42:20
  42:21,22,25 46:25
contest  31:16
contested  17:19
  18:1 19:21 43:25
  50:21
context  50:25
contexts  48:7
continued  34:4
contracts  31:25
  32:13
control  18:9
convince  38:10
copies  53:8,13
  54:3
copy  20:20,21
  21:11 47:3
copyright  4:2
  10:2 13:12 14:2
  15:4 19:24 53:23
  53:24
corporation  1:7
  5:3 9:16
correct  6:1 19:19
  41:10 49:1 50:7

correction 32:3
32:14
corrections 32:13
32:16
correctly 42:7
counsel 5:4 7:17
10:11 11:14 52:4
52:25 53:1 54:10
54:13,21 55:5
country 28:15
57:21
couple 27:16 31:7
34:23 42:5,11
45:19
course 8:3 14:10
21:20 24:6 27:8
37:14
court 1:1,11 7:15
9:1,1,11,14 10:6
11:5,12,15 12:9
12:13,15,17,24
13:15,16,18,21
14:1,4,6 15:6,11
15:21,22 16:7,8
16:12,23 17:6,12
17:24 18:8,20
19:2,4,11,14,18
19:25 20:3,5,6,10
20:12,16,16,17,18
20:20,22 21:5,9
21:11,12,14,19,24
21:24 22:2,7,8,11
22:14,24 23:1,8
23:14 25:5,11,20
25:24 26:16,21
27:15,19 28:4,18
28:21 29:4,8,17
30:2,11,18,20
32:18,21 34:14,16
34:17 35:1,18,20
35:21,23 37:4,5
39:2,10,15,24
40:12,24 41:3,9

41:12,15,21 42:18
43:22 44:19 45:10
45:13,20,23 47:9
47:11 48:3,8,19
49:1,6,8,15,23
50:3,5,9,12,20
51:6,8,13,19 52:1
52:18,22 53:6,19
54:9 55:9,13
court's 17:23
28:24 29:23 32:8
52:9
courtroom 18:23
26:24 29:19 44:12
51:22
cover 20:21 33:10
covers 25:16
created 24:12
critically 40:20
cross 18:8 35:20
35:23 37:9 38:8
45:3
crosstalk 53:21
crystal 36:20
culpepper 3:17,22
5:21,23,23 6:2
10:1 53:3,4,7,22
54:9 55:6,11
cut 16:24

**d**

d 5:1
d.c. 4:11
damage 28:4
40:25 41:5 46:10
46:21
damages 23:22
24:1,7,21 25:17
27:8,24,25 31:5,6
31:7,8,14,20 32:2
32:3,12,14,25
33:7,8
date 11:25 24:23
41:10 44:10 52:18

52:20 57:25
dates 29:24 44:13
david 9:4
davis 29:1,4,16
36:23 37:4
davis's 43:24
day 28:14 43:17
days 12:7 28:21
29:9,22 33:21
34:23 37:7 42:5
42:12 44:20,21,22
de 31:18,23
deadline 39:4
52:11,15 54:24
deal 19:19 33:25
36:5,14,18 47:14
50:16,21 51:12
deanna 9:11 10:6
50:5,7
debtor 1:9 19:21
23:25 24:16 32:24
52:2 54:17 55:23
debtors 7:25 8:8
8:12 10:11,19,25
11:22,22 14:2
23:5 24:7 25:7,9
26:12 40:22 45:25
46:16 52:7 53:1
54:10,13,21 55:4
55:17
decade 41:10
december 30:7
dechert 6:23 8:18
9:4
decide 22:14,19
decided 11:7 13:1
16:16
deciding 15:23
16:9
decision 16:25
decisions 48:6
declaration 18:10
34:22 42:5

declined 28:16
defendant 39:17
defendant's 42:24
defendants 42:23
defense 24:8,15
24:24 30:3 33:4
35:5 39:16,17,18
40:2 41:20,20
42:13
defenses 24:8,9,21
33:2,5,25 39:3
defer 13:16
deference 47:22
47:24
deferred 33:25
definitely 7:19
delaware 3:12,13
delay 26:25
delayed 15:8
delighted 26:18
deny 15:17
depart 19:15
departs 29:17
deposed 28:18,19
44:15
deposition 29:8
29:16 36:25 37:8
37:12 43:24
depth 22:7
despite 28:15
detail 32:19
details 23:11
determination
32:9
determined 31:1
deutsch 3:10 5:13
device 41:8
devices 41:11
different 14:10
21:7,17,18,22,23
46:6 47:2 48:7
53:15,16

digging   31:1
diligent   30:22
direct   18:7,9
   35:19,23 36:7,17
   37:11 38:13 44:25
   45:2
directly   22:4
   30:12
disclose   40:23
   43:2 46:20 48:23
disclosed   43:7
   48:24
disclosure   36:11
disconnected   26:9
discovered   33:24
discovery   12:5,7
   20:1,7,10 21:22
   21:23 24:6,14,17
   24:19 27:9,14,20
   27:23 28:1,3,5
   30:4,7,8 32:7 33:8
   33:22 34:4,5,15
   34:16,18,25 35:1
   36:13 37:18 38:20
   39:1,3,21 40:5,10
   40:18 41:21 42:3
   43:18 46:4 47:13
discuss   27:11,11
   43:23 44:19
discussing   50:24
discussion   23:2
   33:7 49:17
dispute   10:13
   23:4 25:14 31:15
disputed   21:11
disputes   28:1
   43:15
disputing   44:5
district   1:2 20:6
   20:10,17,18 21:12
   21:19,24 34:17
division   25:10

dmca   13:13
doc   2:1
docket   10:23
   20:17,17,19,22
   22:2,10,16 52:21
document   39:12
documents   24:13
   34:21 37:17 38:19
   46:8 54:3
doing   7:2 18:18
   20:23 26:22,23
   51:14
dollars   31:7,7
double   42:6
drain   14:15,20,25
   14:25 15:13 16:2
   21:7,8,15,21 22:8
   22:10 23:16 27:20
   43:11 46:1
drain's   22:1 39:10
drops   7:17
dsl   23:14 42:9
due   36:3

e

e   1:21,21 3:1,1 5:1
   5:1 9:22 57:1
easily   13:15 16:21
ecf   22:2
ecro   1:25
effect   12:6 49:4
   54:19
effects   25:17
efficient   21:9 24:4
   32:9
efforts   28:15
eisler   4:1 6:8
either   13:1 18:1
   20:6 24:20 38:12
   39:2 42:3 43:18
   55:15
ellis   8:1
email   34:19

embodying   41:7
enforcement
   34:17
enter   49:3
entered   10:15
   52:17
entertain   53:11
entire   23:19 40:22
entirely   28:25
   47:22
equipment   33:18
   33:18 35:8,9 42:4
erases   31:5
errors   32:3
essentially   17:25
   32:11 47:19
established   27:23
estimation   31:8
et   3:11,18 4:9 5:14
eve   45:9
event   16:2
everybody   10:7
   25:24 55:1 56:9
evidence   32:6
   35:14 46:24
evidentiary   15:13
   15:19 16:17 17:1
   17:3,7,13,20,21
   18:2,14,16,19
exact   13:8,10
   52:20
exactly   37:12
examination   18:8
   35:19,20,24 38:8
   45:4
examine   37:9
   38:23
exchanged   43:14
exclusively   18:21
excused   19:15
   23:1,2
exempt   43:11

exhaustion   30:11
   41:7,20,24
exhibit   38:13,19
   43:14
exhibits   18:3,4
   38:3,5,8,11,12
   43:13 45:7,21
exist   47:7
existence   40:25
existing   55:21
expect   17:4 38:3
   44:5,9,11 51:17
   56:8
expectation   55:22
expected   12:9
   36:24 41:17
expedited   43:19
expert   44:13
experts   25:2
   28:11,12 29:1,3
   29:24 44:16
explain   34:16
   37:23
explicitly   14:21
extend   52:10

f

f   1:21 57:1
fact   28:10,11,12
   29:2 30:25 31:10
   31:12,13,15,17
   34:15,18 40:6
   42:23 43:1
factual   15:6 21:16
   34:12
factually   15:3
fairly   13:15
familiar   54:15
far   46:15,17,22
   47:2,2,3 51:2
fashion   24:4 39:5
father   28:14
favor   16:8

**fear** 51:5
**federal** 7:15 9:23
  11:12 20:10 24:9
**feel** 39:8
**figure** 39:7 40:7
**file** 20:20,21,21
  37:19 51:12,12
  55:15
**filed** 10:11,16,22
  10:23 11:22,23
  14:16 15:5 20:16
  52:9 53:23 55:17
**filing** 36:2 54:22
  55:7
**fill** 23:11
**final** 52:16
**finally** 30:16
**find** 29:21,23,25
  37:25 42:11
**fine** 37:20 38:12
  47:13 55:18
**finish** 36:8 39:24
**finished** 48:13
**fire** 3:11 5:13 9:23
**firm** 5:9 6:18 14:8
**first** 11:17,25 19:7
  24:1 32:25 35:3
  35:13,16 45:7
  55:23
**floor** 3:5 4:10
**focused** 24:7
**force** 34:24
**foregoing** 57:3
**form** 51:1
**formal** 51:4
**formally** 40:6
**formed** 23:22
**forth** 13:11 16:20
  22:12 42:21,24
**forths** 30:15
**forward** 12:21
  18:18 35:21 36:6
  36:24 43:22 44:5

46:4 55:24
**found** 31:11
**frank** 53:17 54:6
**frankly** 44:3
**free** 19:16
**front** 22:5
**frontier** 1:7 3:4
  5:3,4,5,9 8:8 9:16
  9:19 10:17 12:5
  23:20 30:18,22
  34:11 40:22 42:4
  42:7 50:11
**frontier's** 30:13
  34:9
**frozen** 25:20,24
  25:25 26:2,4,5
**full** 33:14
**fully** 11:23 14:17
**further** 8:20
  21:10 48:10 52:23

**g**

**g** 5:1
**gabriela** 7:24 9:18
  10:19 52:6
**gary** 3:15 5:12
  9:24
**general** 7:14,16
**generally** 10:24
**generals** 53:9,16
  54:4
**give** 5:6,11,21
  6:15 8:5,14 19:25
  23:9 25:5 33:13
  39:25 46:25 49:2
  49:10,12 53:20
  55:1
**given** 7:6 8:22
  21:16 29:22 31:10
  43:15
**giving** 20:1 56:2
**glenn** 1:22
**go** 7:16,19 8:13
  9:12 11:16,19,25

14:6 16:24 17:12
  18:17,24 26:25
  27:1 29:23 32:25
  34:14 35:21 36:6
  36:24 37:11,21,24
  37:25 38:17 40:12
  40:25 43:3 44:23
  47:14,16 48:1
  51:5,17 52:23
  53:6
**goes** 37:7 43:8
  46:4
**going** 5:17,18
  6:11 7:8 13:5 16:2
  16:8 17:14,14
  18:14,22 19:3,4
  20:7 22:11,16
  25:3,5 26:9 27:15
  28:14,25 29:3,11
  29:12 33:6,11
  34:19 35:13,18,19
  35:21,24 36:5,25
  37:12 38:1,12,23
  39:5,20 41:18
  42:10 43:1,4,5,11
  43:19,23 44:5,6,9
  44:11,21 45:15
  49:8 50:16 53:19
  55:3,15,19,19
  56:1,2
**good** 5:23 6:7,17
  7:22 8:7 10:7,18
  14:7 25:8
**grant** 12:10 13:15
  14:20
**granted** 12:12,13
  16:15 20:3 34:6
**granting** 15:18
**great** 14:7
**green** 1:12
**ground** 25:16

**h**

**happen** 48:11
**happened** 51:2
**happy** 10:20 11:1
  11:3,16 16:11
  27:10,11 30:5
  32:19 52:17
**hard** 21:15 53:8
  53:13 54:3
**hat** 43:6
**hawaii** 3:20
**hear** 8:14,15
  24:24 25:6 26:1
  29:9 32:18 40:12
  48:10
**heard** 39:22 48:5
  51:7
**hearing** 2:1 7:14
  7:17 8:20 11:11
  15:13,19 16:18
  17:1,3,7,13,21
  18:14,16,19,23
  21:7,14 23:16,17
  24:16 39:7 43:17
  51:14,19 56:7
**hearings** 18:2,20
  19:2 26:24 50:6
**hearsay** 42:6
**help** 48:3
**helpful** 23:12
  30:18
**hensley** 7:24,25
  8:3 9:19 10:18,19
  25:11 52:6,6,19
  56:11
**herman** 9:7
**herman's** 9:4
**hessler** 9:18 11:2
  25:11
**hey** 38:25
**hi** 6:7 9:10,11
  26:8

**high** 52:8
**highly** 33:16 46:7
**history** 23:10
**hold** 21:10 26:3
  30:16
**holdings** 3:18
  5:25 9:25 53:5
**home** 26:23
**hon** 1:22
**honor** 10:18,25
  11:9 12:1,4,12
  13:3,20,25 14:8
  15:9,17 16:1,10
  16:20,21,21 17:11
  19:10 21:3,25
  22:5,6,10,23 23:6
  24:24 25:4,8,23
  26:1,11,19 27:2,6
  27:18,22 28:8,19
  28:20 29:6,14
  30:5,22 31:1,18
  31:25 32:12,19,22
  37:14,15,16 39:22
  40:14,20 41:2,7
  41:14 44:17,18
  45:8,12,14 47:6
  47:10,17,22 48:1
  48:21,23 49:7,14
  49:22,24 50:10,18
  50:19,22 51:10,24
  51:25 52:6 53:3
  53:11 55:6 56:11
**honor's** 52:14
**hope** 19:2
**hopefully** 18:15
  24:3
**hornung** 4:6 6:6,7
  6:8,12 10:3
**horse** 18:12
**hualalai** 3:19
**hyde** 2:25 57:3,8

**i**

**idea** 23:18 42:10
**identify** 18:3
  50:14
**illinois** 3:6
**immune** 41:8
**impeachment**
  38:8,11
**important** 27:11
  29:3 32:4 40:21
**includes** 54:4
**including** 31:18
**inconsistent** 20:12
  20:23
**indicate** 15:13
  18:3 38:4
**indicated** 10:22
  12:9 15:4 30:3
  37:24
**indiscernible** 53:5
**information** 37:18
  47:8 48:8
**infringement**
  23:13 33:1 53:24
**initial** 15:5
**insurance** 3:11
  5:14 9:23,24
**integrated** 35:8
**intellectual** 6:23
  7:2 8:18 9:7,21
  23:7
**intend** 37:17 38:5
**interest** 21:9
  31:22 53:17 56:8
**interesting** 23:25
**interfere** 20:7
  22:17
**interim** 24:23
**interrogatories**
  35:5 41:23
**introduce** 11:1
**invited** 40:17

**involvement**
  52:14
**involves** 13:12
**involving** 41:11
**iron** 43:17 44:7
  49:18
**ironed** 45:18
**issue** 13:13 14:19
  14:24 15:1,24
  16:9,11,15,16,25
  19:4,19 21:6
  24:18,19 27:19
  30:2,4 31:20,24
  34:1,11,20,22,25
  38:25 39:19,20
  40:3,10,15 41:11
  41:18 45:16 47:8
  49:2 52:8 54:8,10
  54:13
**issued** 20:23 21:1
**issues** 12:7,19
  15:7 16:20 19:20
  21:16,23 24:9
  27:8,24,24,25
  28:4 30:10 34:12
  36:11 42:23 43:1
  43:5,10 44:4
  45:17 48:20 49:19
  50:14 52:5
**it'll** 37:8
**item** 52:8
**items** 10:21,24
**iv** 10:13 19:21
  23:5 28:5 30:19
  30:20,21,21,21,24
  31:16 40:17,23
  42:20 46:1 47:22
  47:22
**iv's** 31:21

**j**

**jeff** 7:1
**jeffrey** 8:13,17
  9:22

**joined** 7:5 8:10,21
  10:5 11:2
**joining** 5:16,17
  6:25 7:10 8:4
**joins** 7:3
**joint** 38:1 42:19
  43:12
**judge** 1:23 7:9,10
  7:20 9:10 11:21
  12:3,6,10,23 13:1
  13:5,17,22 14:12
  14:15,20,24,25
  15:13,22 16:1,1
  19:13,22,25 20:3
  20:9,19 21:6,8,15
  21:20,21 22:1,8
  22:10,17,25 23:16
  25:25 26:4,5,8
  27:19 39:10 43:11
  46:1 50:1
**july** 44:6,12 45:17
**jump** 45:15
**jumping** 27:3
  45:15
**june** 22:10 29:6
  44:7

**k**

**kailua** 3:20
**kaplan** 4:16 6:19
**karen** 26:9,10
**kerry** 3:22 5:21
  5:23 10:1 53:3
**kessler** 4:18
**kind** 16:23 24:1
**kirkland** 8:1 11:3
**knew** 15:7 20:24
  20:25 33:17 39:20
  40:23
**knock** 31:13,17
  32:1,16 41:1,3,4
**knocking** 31:6
**know** 5:18 7:13
  7:19 11:1 17:15

18:2,13,16 20:4,9
20:13 22:15,18
23:16 25:6 26:17
32:16 33:17 34:9
36:1,20 37:6,10
38:5,9,16,23 39:6
39:19 42:13,14
43:9 44:4,11 45:4
46:24 47:10 50:5
50:16 51:11 54:18
**known** 35:4
**knows** 37:12
**kona** 3:20

**l**

**l** 9:22
**labor** 25:10
**laid** 43:5
**large** 25:2 47:4
**largely** 23:10
**late** 27:9,25
**law** 5:9 13:12 14:8
39:17 42:23 43:1
**lay** 41:24
**lead** 6:11,14 7:17
10:20 11:14
**leadup** 48:1
**leave** 11:23 37:19
39:2 48:16
**leaving** 29:4
**ledanski** 2:25 57:3
57:8
**left** 12:13
**legal** 57:20
**legally** 15:3
**lengthy** 50:15
**letting** 14:9
**liability** 24:9 33:1
39:13,16 53:24
**license** 23:21,21
23:23 24:8,8,15
24:22,23 30:3
31:2 33:3 34:7
35:4

**licensed** 31:22
**licenses** 23:24
25:18 30:7,15,16
30:24 31:2,3,11
31:21 32:1 33:9,9
33:11,14,15,16,19
39:16 40:23,25
41:4 46:11,20
50:24
**licensing** 27:24
31:20
**likelihood** 12:10
**limited** 49:11
**line** 6:19,25 7:1,9
**lining** 44:12
**list** 6:3 9:12 18:4
33:14 38:2,14,19
38:24 43:14 54:2
54:4
**listed** 38:7,9,11,13
38:15 39:18
**listen** 19:1
**listening** 44:4
**litigation** 21:19
22:11
**little** 23:9,18 28:9
39:7
**live** 18:7 28:24
29:18 35:15,20,23
37:1,1 49:11
**lives** 37:2
**llc** 3:17,18 5:25
6:1 9:25
**llp** 3:3,10 4:1,8
6:23
**logjam** 28:9
**long** 22:15 54:18
**longer** 53:18
**look** 17:12,23,23
22:19 27:16 37:4
38:25 42:18,19
46:4 47:15 49:10
49:15 51:15 52:22

**looked** 10:15 46:3
**looking** 45:15
**looks** 8:23
**lot** 25:2 48:7
54:12
**lower** 34:2
**lp** 3:17
**luskin** 4:1,17 6:8
6:10,12 10:3

**m**

**mail** 54:4,7,25
**mailed** 54:25
**mailers** 54:8
**mailings** 53:15
**main** 4:3 8:23
10:5
**maintaining**
52:15
**major** 52:7
**maker** 42:3
**making** 14:22
23:23 29:15 48:4
**management** 10:8
24:13 53:7,12
54:2,15,18 55:2
55:21,25 56:1
**managing** 10:20
**manner** 14:9
**manufacturer**
31:23
**mark** 9:18
**marking** 49:9
**martin** 1:22 6:21
6:22 9:21 23:6
**material** 37:19
40:4
**matt** 6:17 7:12
11:9 21:3
**matter** 1:5 7:16
7:18 11:13,14,21
12:4,5,20 13:7
14:13 15:2 17:19
17:21 18:2 19:7

20:5,11 21:25
29:10 37:24 44:1
50:21 52:2
**matters** 11:7
23:20
**matthew** 4:13
10:3
**mcelroy** 3:10 5:12
**mckane** 9:18
**mean** 13:3 18:11
30:20,21,21 43:20
46:3 47:3 48:5
50:1 54:11
**meet** 42:14
**mentioned** 32:23
41:25 51:5
**mercy** 25:22
**merged** 34:7
**met** 15:15
**mg** 1:3
**michael** 4:17 10:3
**middle** 30:8
**million** 31:7,7
**mind** 25:4
**mindful** 28:23
32:20
**mineola** 57:23
**minute** 14:16
**missed** 10:4
**missing** 31:12
**misspoke** 12:17
16:14
**model** 32:12
**modification**
54:22
**modified** 55:2
**modify** 54:23
**modifying** 54:14
**moment** 39:23
49:16
**moments** 7:11
**monday** 10:22

**month**  44:7
**months**  14:18
  29:13
**morning**  50:6
**motion**  11:20,23
  12:2,10,11,12,13
  12:22,25 13:2,22
  14:20 15:17,18,22
  20:4,25 21:13
  37:19 51:4,11
  52:10,21,21 54:23
  55:15,16
**motions**  14:12,16
  21:12 45:23 46:12
**move**  12:21 18:20
  19:2,18 22:16
  55:24
**movie**  5:24 53:4
  53:22
**moving**  26:5
  43:20,22
**multiple**  10:20
  31:9
**mulvaney**  3:10
  5:13
**mute**  7:24
**muted**  14:3,4

**n**

**n**  3:1 5:1 57:1
**name**  8:25 9:17,22
**named**  31:19
**narrow**  48:12
**narrowing**  46:14
**nearly**  52:13
**necessary**  6:4
  16:3,19 45:5
**need**  10:25 15:12
  18:6,10 19:15,16
  19:19 22:1 24:19
  24:20 25:1,16
  29:20,23 32:7
  35:6,7 36:13,14
  37:20 40:18,19

42:2,13 43:16,17
43:18 44:19 46:13
48:4,5,11 51:13
52:23 53:20
**needed**  17:1,3
  29:10
**needs**  28:5 33:3
  48:11 52:24
**negotiated**  39:12
**never**  33:2,21
**new**  1:2,13 4:4
  15:7 37:2,3 53:19
**newly**  30:3
**newness**  32:20
**nice**  26:19
**night**  52:9
**nilly**  55:19
**nokia**  30:17 31:2
  31:11,11 33:15,16
  33:18,19,23 34:1
  50:23
**nope**  49:9,9,9,9,9
**north**  32:16
**note**  14:19
**noted**  52:12
**notice**  55:1,8 56:3
**notices**  13:8,10,13
  15:4
**number**  22:3 24:3
  24:7 25:2 28:10
  30:14 34:2 42:10
**numbered**  42:22
  42:25
**numbers**  42:15
**numerous**  54:5
**nw**  4:10
**ny**  1:13 57:23

**o**

**o**  1:21 5:1 57:1
**object**  40:14
**objection**  24:18
  29:15 32:6 33:3
  40:6 52:10,10

**objections**  18:4
  38:4 39:6,13
  45:21
**obligations**  29:25
**obtained**  12:6
  34:15
**obviously**  10:8
  12:20 16:14 18:5
  18:8 21:25 23:15
**october**  18:23
  21:15 52:19
**odd**  32:23
**offer**  18:9 38:3
  45:2
**office**  27:5 54:7,8
**offices**  53:14
**okay**  5:10,15,20
  5:25 6:10,15,24
  7:3 8:9,13,24 9:4
  9:15 10:4 11:19
  13:18,21 14:1,5,7
  16:13 17:12 19:14
  20:2 21:2 22:21
  23:8 28:23 38:6
  41:15 43:23 45:10
  45:11,20,23 46:22
  48:7,15,17,19
  49:11,13,15,16
  50:4,9,12,15,20
  51:13 52:22,23
  55:13 56:1,3,10
**old**  27:3 57:21
**once**  32:10 41:7
**ones**  33:10
**open**  10:21 11:7
  12:14 43:3 44:11
  50:15
**operate**  35:8
**oppenheim**  4:8,13
  6:13,15,17,17 7:8
  7:12,12,22 10:3
  11:9,9,19 12:1,16
  12:18,24 13:3,19

13:20,24 14:11
15:2 16:7,10,19
17:6,11 19:7,9,14
19:17 21:3,4,6
22:2,4,9,14,22
**opportunity**
  37:21 38:3,22,23
  40:10 47:1 55:18
**oppose**  28:6,7
**opt**  53:14
**option**  13:4
**order**  7:19 10:14
  10:23 17:22,25
  20:15,21,24 21:1
  32:15 36:3 38:1
  38:17 39:3,11
  40:5 42:20 43:6
  43:11,12 49:4
  51:16 52:16 53:7
  53:12 54:2,15,25
  55:2,21 56:1
**ordered**  49:6
**orders**  46:5 47:12
**original**  13:10
  24:20 34:6 40:5
**originating**  42:9
**ought**  40:2
**overall**  19:23
**overlap**  17:9,16
**overlapping**
  21:16
**overview**  7:14,16
**owner**  34:6

**p**

**p**  3:1,1 5:1 9:22
**p.m.**  5:2 7:14
  11:11 44:22 50:13
  56:6
**page**  20:21
**paid**  23:23
**papers**  13:11,23
  13:24 16:13,20
  17:13

**paragraphs** 42:22
42:25
**part** 38:13 40:5
41:19 42:15 44:7
46:21 53:10 54:6
**particular** 10:24
25:14 27:23 29:24
**particularly** 13:6
48:9
**parties** 7:21 8:23
9:13 10:5,20
14:15 21:10 28:2
31:15 38:22 42:20
46:12 53:9,17
54:5,12 55:18
56:8
**partner** 11:2
**party** 34:5,18
40:21 42:3 47:8
**passing** 16:3
**patent** 19:3 23:13
23:19 30:10 41:6
41:7
**patents** 31:22
33:10 34:6
**pause** 9:9 26:10
26:13
**pending** 11:20
12:2,11,19,21,22
14:24,25
**people** 8:4 18:23
38:10 53:12,13
54:3 56:2
**percent** 31:4,5,23
32:1,17 33:17
34:2 42:8
**percentage** 31:16
**perfectly** 26:7
47:19 49:1
**period** 33:8
**permission** 34:14
**permit** 46:7

**permitted** 40:2
**perspective** 19:9
25:13
**persuaded** 46:22
**phase** 24:10
**phone** 5:5
**phrase** 47:18
**piecemeal** 21:22
**pieces** 35:9
**plains** 4:4
**plaintiff's** 42:20
42:21
**plaintiffs** 6:18
7:13 15:5,7
**plan** 24:21
**planning** 42:16
51:20
**pleadings** 15:16
29:11
**please** 5:7,22 6:16
8:6,14,25 9:14,17
26:13,15 27:1
**pleased** 27:3
**pled** 40:6
**plies** 7:1 8:18
**pm** 1:16 56:13
**point** 15:14 30:12
40:2,16,21 51:16
**portion** 31:14,17
**portions** 47:23
**position** 14:10
15:21 16:6,17
29:23 40:9 50:23
**possible** 7:15
11:11 42:2 44:24
**post** 53:14 54:6
**postponed** 23:17
**potential** 21:22
**potentially** 21:17
30:10
**power** 37:5
**practice** 33:22
35:22

**precisely** 31:16
41:11
**predecessor** 31:21
**prefer** 38:9
**preference** 18:7
28:24
**prejudiced** 37:22
39:9 40:21
**preliminarily**
11:16,18
**preparation**
17:22
**prepared** 24:14
36:24 47:19 49:11
51:3
**present** 4:15
10:21 28:3 51:4
**presented** 40:15
**presentment**
54:23 55:17
**preserved** 39:14
**pretrial** 10:14
17:22,25 21:10
27:10 36:3 38:1
38:17 39:11 41:12
42:19 43:5,11,12
51:16
**pretty** 35:25
44:10 47:12
**previously** 10:14
12:8
**prior** 23:20
**prioritize** 11:13
**priority** 52:8
**probably** 17:5,11
44:3,5,6
**problem** 24:12
37:14 49:13
**problems** 26:16
**procedure** 55:22
**proceed** 15:25
16:1,4 39:5

**proceeding** 9:2
14:14 17:20 18:1
23:18 32:24 44:2
45:16
**proceedings**
56:12 57:4
**process** 24:5,6
38:18 40:22 45:9
52:13
**processes** 22:11
**produce** 42:11,16
**produced** 24:13
37:18 38:20 39:1
40:4
**producers** 5:24
**producing** 34:21
**product** 42:1
**products** 34:13
42:8
**progress** 16:4
**prohibited** 9:2
**promptly** 43:16
51:15
**proofs** 34:3 41:19
**proper** 36:10
**proponent** 45:2
**proposal** 24:1
**proposed** 46:14
48:13
**proposes** 43:14
**protective** 47:12
**prove** 34:2
**provide** 32:19
**public** 46:6,23,23
47:7,14,25 48:8
48:25
**pull** 43:6 52:20
**purposes** 25:13
47:13 52:15
**pursue** 34:5
**pursuing** 34:17
**put** 16:23 18:11
24:16 36:1,6,17

37:10 38:24 40:2
40:7 50:22
**putting** 37:7

**q**

**qualms** 47:11
**quanta** 30:12 41:9
**quarters** 32:15
41:2,4
**question** 12:14,25
34:1
**questions** 11:3
35:12 52:17
**quick** 25:6
**quickly** 38:5 46:3
**quite** 12:18

**r**

**r** 1:21 3:1 5:1 57:1
**raise** 11:18 27:19
30:10 41:18 51:9
52:3,5,24 53:2
55:23 56:4
**raised** 24:7 30:4
33:4 54:10,12
**raising** 36:11
**rapidly** 22:16
**reach** 24:3
**reached** 23:20
**reactions** 48:17
**read** 10:15 15:9
16:13 18:13 44:25
**ready** 15:25 16:1
16:4 18:24 43:25
44:2,8
**really** 12:22 33:10
33:23 35:16,16
37:21 39:8 40:20
**reason** 8:15
**reasons** 26:21,24
27:10,11 28:1
30:9
**reconciliation**
52:13

**reconnect** 26:9
**record** 6:9,18
7:13 8:22 9:1,17
10:11 11:10,13
14:22 15:14 50:23
53:23 57:4
**recording** 5:2 9:2
9:9 26:10,13,15
**recordings** 4:9
**recross** 45:4
**redact** 45:24
**redacted** 45:24
46:1,7,17 47:23
**redaction** 46:12
**redactions** 46:15
46:18 47:2,20,21
48:12 49:11
**redirect** 45:4
**refer** 31:2
**reference** 11:21
11:23 12:2 13:2
13:23 15:23 20:5
20:25 55:8
**referenced** 29:2
**referring** 22:3
46:11 54:1,16
**regard** 14:13
**regarding** 10:24
19:20
**regularly** 46:5
47:12
**relate** 15:4 19:23
**related** 12:15,16
52:17
**relatedly** 48:1
**relating** 23:13
24:14
**relation** 12:25
14:19 15:16,23
16:9,15,25
**relationship**
14:22 19:6,23

**relatively** 54:24
**relevant** 30:25
31:3 32:8 33:11
33:16
**relief** 51:1
**relies** 40:4
**rely** 37:17 38:5,21
**relying** 46:24
**remain** 11:7 50:15
**remaining** 29:20
49:18
**remains** 32:17
**remove** 47:19
**removes** 31:4
**reopen** 27:21
**reorganized** 7:25
8:8,12 10:19,25
11:22 14:2 19:20
23:5 25:7,9 26:12
40:22 45:25 46:16
52:2,7 53:1 54:10
54:13,17,21 55:4
55:17,23
**report** 10:11,22
11:22 14:20 23:10
25:15 35:15 50:13
52:12
**represent** 53:21
53:22
**representative**
5:5
**representatives**
28:13
**request** 32:24
33:8 35:14,16
**require** 17:14,20
17:22 35:23 36:5
53:13
**required** 14:23
16:18 17:7,14,21
18:15,17 36:16
54:11

**requirements**
54:16
**requires** 53:8 54:2
54:25
**requiring** 52:14
**resolution** 24:3
**resources** 21:10
**respect** 11:24
12:11,25 19:6
20:3 25:17 37:23
46:10 50:23
**respond** 32:21
43:8 55:18
**response** 30:13
40:13 56:3
**responses** 54:24
**responsible** 31:6
**rest** 44:6
**result** 20:13 55:1
**resume** 26:24
45:10 49:17
**retiring** 28:13
29:6
**reverse** 24:2
**review** 16:24 22:8
46:16
**reviewed** 10:12,14
45:1
**reviewing** 29:11
47:4
**right** 5:4,10,20
6:6,20 7:5 8:4,5
8:21 9:3,8 10:7
11:5,15 12:18
17:6 19:11,18,20
22:24 23:4 26:8
26:13,15 28:22
30:2,8 33:20
39:15 42:16 46:23
49:15 50:5,8 51:8
52:1,25 56:6
**rights** 15:17

[rise - stay]                                                                                    Page 12

**rise** 43:15
**risk** 21:17
**road** 3:19 28:14
  28:16 57:21
**rochester** 37:2
**rodeo** 25:12
**role** 7:6
**rothman** 4:18
  6:19
**ruben** 3:8 5:8
  9:20 14:8
**rule** 12:23 13:5
  14:12 15:22 24:8
  33:5 39:18
**ruled** 21:12
**rules** 17:23 24:9
  33:4 37:25 48:23
  51:15
**ruling** 12:7 13:2
  14:23 15:1 16:2,5
  20:8,14
**rulings** 21:18,23
**running** 25:12
**rv** 28:15,17

**s**

**s** 3:1,5 5:1 9:22
**saw** 46:15
**saying** 35:5 37:21
**says** 5:25 39:4
  42:7
**schedule** 14:14
  16:5 18:17 19:24
  19:25 23:15 25:1
  25:3 36:2,5,16,18
**scheduled** 27:16
  29:10
**scheduling** 10:9
  28:8 35:15 39:3
  40:5 50:25
**screen** 25:20,25
**screenshot** 27:4
**sealing** 48:6

**second** 24:10
  31:20
**secondary** 53:24
**section** 42:20 43:9
**see** 11:15,17 13:4
  17:24 33:15 34:3
  35:13,24 36:7,9
  44:19 45:18 46:14
  47:1,4 48:12,15
  49:3,12,18 50:7
  52:4 54:11,13
  55:14,24
**seeking** 15:8 51:1
  52:18
**seen** 10:10 20:24
  21:1 35:12 45:24
  46:1,22 47:2
**send** 35:3 41:23
  42:9
**sent** 33:8 35:4
  42:5
**sentiments** 47:18
**separate** 22:11
**separately** 42:22
  42:25
**series** 32:13
**serve** 55:20
**served** 53:13 54:3
**service** 42:9 53:8
  54:2,16
**set** 10:9 13:11
  14:14 16:20 22:20
  27:15 30:16,17
  31:3,21 42:21,24
  44:9
**seth** 8:9,11 9:18
  41:10
**sets** 41:11
**settlements** 23:21
  47:7
**seven** 12:7
**sever** 40:3

**severed** 24:10
  33:5
**severely** 39:9
**severs** 39:3
**shannon** 8:5,7,7
  9:18 25:8,9,21,22
  26:1,4,7,11,11,14
  26:18 27:2,18,22
  28:19,23 29:6,14
  30:5,19,21 36:20
  37:1,2,10,14 39:4
  39:20,22 40:12,14
  40:24 41:1,6,14
  42:19 44:18 45:7
  45:8,12 46:13
  47:16,17 48:3,18
  49:23,24 50:10,19
  50:20,22 51:11,24
**shea** 5:15
**short** 54:24
**shortly** 7:9 36:6
**show** 35:6,7 39:17
**side** 25:7 33:23
  36:7 38:2,12 43:7
  43:13 46:24 48:16
**sides** 25:2 28:10
  36:6
**sign** 47:12
**signature** 57:7
**signed** 39:11
**similar** 53:23
**simple** 41:25
**simply** 31:5 55:3
  55:20
**six** 33:21
**slams** 31:18,24
**slew** 48:6
**small** 25:22
**sold** 34:8 35:7
  41:8
**solely** 24:7 31:6
**solutions** 57:20

**solve** 49:13
**somewhat** 32:23
**sonya** 2:25 57:3,8
**soon** 35:25 36:12
  44:2
**sooner** 29:25
**sorry** 8:14 30:19
  50:1
**sort** 53:15
**sorting** 54:8
**sought** 12:4,5
  30:7
**sound** 7:17
**sounds** 43:14
**southern** 1:2
**speak** 8:20 9:1
  11:6 25:7 39:25
  49:25
**speaking** 7:6 8:22
**specialists** 25:12
**specific** 36:5
**specifically** 31:19
**specifics** 11:7
**stands** 15:18
**start** 23:5 26:15
**started** 29:11
  34:21
**starting** 32:12
**state** 8:25 9:5
  53:16 54:4
**stated** 14:22
**statement** 23:10
  35:21 42:11,21,24
**statements** 24:14
  35:14,19,20 36:2
  36:10,21
**states** 1:1,11 53:9
  53:16
**status** 2:1 10:11
  14:20 23:10 25:15
  50:13 51:4 52:12
**stay** 12:6,21 19:15
  20:4,5,21,24 21:1

21:13 22:18 23:3
**stayed** 20:1,7,9,13
  22:19 27:13
**stays** 20:6
**step** 18:20
**stephan** 4:6 6:6,7
  10:2
**stephen** 9:18
**stern** 4:1 6:8
**steve** 11:2
**steven** 3:22
**stick** 24:20
**stop** 34:20 40:24
  43:22
**street** 4:3
**strike** 37:19
**strong** 18:6 48:8
**stuck** 7:24
**studios** 53:22
**stuff's** 39:1
**submissions** 14:15
**submit** 22:5,12
**subpoena** 34:18
  37:5
**subscriber's**
  53:25
**subsequent** 21:14
  41:8
**substantial** 31:13
  32:14
**substantially**
  46:14 48:12
**suffering** 26:19
**suggest** 51:14
  54:20
**suggested** 14:11
**suggestion** 55:5
**suit** 41:8
**suite** 3:12,19
  57:22
**supplier** 35:10
  42:4

**suppliers** 34:9
**support** 46:24
**supposed** 23:16
**supreme** 30:11
  41:9
**sure** 5:8 8:19 25:3
  25:10 28:6 29:14
  48:18
**surprise** 42:16
**surprises** 38:6
  43:4
**suspended** 45:9
  45:11,22

**t**

**t** 57:1,1
**take** 6:11 10:20
  29:8 35:1 36:14
  37:11 40:17 41:22
  44:6 47:14
**taken** 13:23,24
  21:25 36:14
**talk** 10:16 22:20
  45:23 54:20,22
  55:3,13
**talked** 55:4,10,11
**talking** 7:2 17:17
  51:11
**technology** 23:14
**tee** 16:21
**teed** 24:24
**telephonically** 3:8
  3:15,22 4:6,15
**tell** 28:21 35:16
  36:11 46:3
**template** 17:24
  18:1 37:25 51:15
**tend** 22:15
**tender** 45:3
**terms** 18:19 28:8
  50:21 51:20 56:7
**testify** 36:25
**testimony** 18:7
  28:24 35:23 36:17

37:9 45:3
**thank** 5:10,15,20
  6:4,20,24 7:4,22
  8:2,9,13,20 9:8
  10:6 13:20 14:9
  19:12,17 21:2
  22:22,25 26:10
  27:2 45:8 47:17
  49:14 51:18,24,25
  56:11
**theory** 41:24
**thing** 15:20 19:22
  38:7 40:7
**things** 27:6,7
  38:19 44:13 45:22
  48:23
**think** 8:9 10:10
  13:11,15 15:6,18
  16:19,20 18:14,16
  20:18 23:12 25:18
  27:12 28:8,24
  29:15 30:22 32:4
  32:7,8,10,11,17
  36:1,13 39:19
  40:18 43:18 44:3
  44:6,21 48:14,19
  49:24 51:1,16
**third** 33:19,20
  34:5,8,8,18 38:22
  42:2,5 46:11 47:8
**thought** 14:13,21
  33:6
**three** 17:17 23:19
  28:11 29:13 30:24
  32:15 33:12,20
  41:1,3 44:21
**thursday** 49:20
**time** 9:1 11:1 16:3
  16:11 22:12,15
  24:23,25 25:19
  27:13 29:9 35:13
  35:16 39:7 43:6
  55:7,10,13

**times** 29:23 31:9
**timetables** 21:17
**timothy** 8:7 9:17
  25:8 26:11
**titles** 6:2
**today** 6:14 10:21
  16:11,12 17:17
  25:16 26:22 27:5
  49:21 50:21,24
  51:3,4 52:3,24
  53:2 56:3,5
**today's** 18:22
**torres** 11:21 12:3
  12:6,10,23 13:1,5
  13:17,22 14:12
  15:22 20:3 21:20
  22:17
**transcribed** 2:25
**transcript** 22:3
  57:4
**transferred** 10:10
  23:17
**treat** 44:1
**trial** 19:3 24:23
  25:6 27:13,15,16
  27:20 29:10,12,16
  29:24 34:23 35:17
  35:22 36:4 37:1,7
  37:8,13 38:6,10
  40:3,7 42:12 43:3
  43:4,7,25 44:2,3,8
  44:10,10,12,20,22
  45:1,9,17 46:6,8
  46:23 47:14 48:2
  48:9 50:25 51:17
  51:21
**trials** 18:1 37:24
  46:6 47:14 48:24
**tried** 25:18 32:6
  32:10 38:25 43:10
  45:6
**trip** 28:14 29:5
  36:24 37:7

**troublesome** 15:19

**true** 19:3 48:9 57:4

**truncated** 24:6

**try** 23:19 24:1,19 24:21 32:24 34:11 34:20,24 39:20 40:9 44:23 55:25

**trying** 6:22 24:16 24:18 30:23 33:1 34:24 35:4 39:19

**two** 12:19 17:5,18 22:6,11 23:11 28:10,12 33:19 39:11 40:8 43:16 43:17 45:6 48:11 49:2,10,12,17 50:14

**typically** 17:19 20:4 44:21 46:8

**u**

**u.s.** 1:23

**ultimate** 42:23 43:1

**ultimately** 14:23 50:25

**umg** 4:9

**uncooperative** 30:14

**understand** 11:20 16:7,22 29:1 42:7 43:10,25 46:5,10 47:11 48:21,24

**understood** 5:20 29:14 44:20 45:12 47:6 51:18,23

**unfortunately** 28:12

**unhelpful** 30:14 30:22

**united** 1:1,11

**unknown** 1:25

**unmute** 5:6,11,21 6:22 8:5

**unmuted** 8:15

**unredacted** 45:25 46:9,17 47:3

**unusual** 14:21 23:19 46:7

**upcoming** 24:16

**upstate** 37:3

**use** 17:25 18:3 24:23 34:15 38:12 38:14,15 42:9 46:21

**users** 41:8

**usual** 49:5

**usually** 26:16 38:8

**v**

**validity** 33:1

**value** 30:9

**variety** 30:9

**various** 5:24 53:17

**ventures** 6:23 7:2 8:18 9:7,21 23:7

**veritext** 57:20

**video** 9:2 29:8 36:24 37:8 43:24

**view** 27:23 30:20 37:6 47:24,25 48:8

**views** 22:1

**violent** 45:16

**violently** 47:18

**virginia** 5:15

**voltage** 3:18 5:25 9:25 53:5

**voluntary** 33:22

**vouch** 8:17

**w**

**wacker** 3:5

**wait** 15:22

**waiting** 8:23 12:8 12:22 14:11 28:21 29:9

**want** 6:3 7:19 8:19 13:18 17:16 18:3 22:8 23:11 26:24 32:21 35:1 36:6,7 37:20 39:8 40:9 41:22 43:25 44:15 45:17 46:20 48:10,22 49:2 51:4,9 52:5,8 53:1 53:13 56:4,8

**wanted** 11:16 32:24 46:25 47:17 47:23 49:9,12 50:22

**wants** 8:19 10:17 11:6,18 14:2 22:11 23:1,5 25:7 34:11 46:21 52:2

**washington** 4:11

**way** 11:12 16:23 44:1 46:18

**ways** 21:7 43:8

**we've** 12:8 18:20 24:19 27:13 28:10 34:25 38:21,22 39:2,9 40:15,16 40:17 50:24

**website** 17:24

**wednesday** 50:4 50:17 56:6

**week** 18:15 27:17 29:10,12 36:4 48:15 49:21 51:14 51:19 56:7

**weeks** 27:16 45:19

**welcome** 7:23 19:15

**went** 21:14 38:18

**westchester** 3:11 5:13 9:23

**when's** 55:10

**white** 4:4

**wide** 44:10

**willing** 33:24,25

**willy** 55:19

**wilmington** 3:13

**window** 27:10

**wisconsin** 4:10

**wish** 13:16 17:8 18:9

**withdraw** 11:20 12:2 13:2,23 14:12,17 15:23 20:4,25 21:13

**withdrawal** 55:8

**withheld** 30:14,24

**witness** 24:14 28:11 29:2,2 35:14,18,20 36:2 36:9,21 42:11 44:23,24 45:2,3

**witnesses** 17:3,8,9 17:9,15,17,18 18:5,8 25:3 28:10 28:11,13 29:21 35:15 38:14 42:17 44:13

**work** 25:3 49:3

**worked** 28:2

**working** 26:7

**works** 7:20 37:15 50:11

**wrapped** 53:11 54:6

**writing** 45:3

**written** 18:7 20:13 35:19,23 36:16 37:11 44:25 50:13

**wrong** 52:20

[x - zoom]

| x |
| --- |
| **x**   1:4,10 42:8 |

| y |
| --- |
| **yeah**   6:7 8:11 22:7<br>30:20 |
| **year**   15:1 27:3<br>55:7,9,10,12 |
| **years**   35:22 |
| **york**   1:2,13 4:4<br>37:2,3 |

| z |
| --- |
| **zebrak**   4:8 |
| **zoom**   18:21,22<br>19:1,5 26:7,19<br>48:14 51:20 |