# EXHIBIT 1

| | | |
|---|---|---|
| NEW YORK | **Duane Morris®** | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | TIMOTHY SHANNON | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 857 488 4232 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 857 401 3087 | LAS VEGAS |
| LOS ANGELES | *E-MAIL:* TRShannon@duanemorris.com | CHERRY HILL |
| BOSTON | | LAKE TAHOE |
| HOUSTON | www.duanemorris.com | MYANMAR |
| DALLAS | | |
| AUSTIN | | ALLIANCES IN MEXICO |
| HANOI | | AND SRI LANKA |
| HO CHI MINH CITY | | |

April 14, 2022

**By Federal Express Return Receipt Requested**

| | |
|---|---|
| Jeffrey B. Plies | Martin J. Black |
| Dechert LLP | Dechert LLP |
| 515 Congress Avenue | Cira Centre |
| Suite 1400 | 2929 Arch Street |
| Austin, TX, 78701 | Philadelphia, PA, 19104-28086 |

> Re:   Demand for Immediate Dismissal of Claim in *In Re: Frontier Communications Corporation, et al.*, Chapter 11 Case No. 20-22476 (RDD)

Messrrs. Plies and Black:

   In light of the egregious abuse of the litigation process and sanctionable conduct by IV and its counsel, we demand that IV immediately dismiss with prejudice its claim against Frontier.

   Your euphemistic acknowledgement by email on April 6, 2022, that the 2019 Nokia-IV agreement is "applicable" and "significant" is as shocking as it is late.  IV knew well before filing suit against Frontier that it had already licensed the asserted ADSL2/2+/VDSL2 patents and covenanted in that license not to sue Nokia customers, including Frontier.  *See* 2019 Patent License Agreement § 2.1.1.  Obviously IV itself has known about the license since 2019, before this case was filed; after all, IV is a party to the agreement.  Dechert LLP appears to have known about it too, as it was apparently involved in negotiating the agreement after a dispute arose over the scope of the patent-exhausting effects of the prior Nokia licenses.  *See, e.g.*, *IV v. Sprint*, 2:17-CV-0661 (E.D.Tex.) (Dkt. 53) (Intervention by Nokia) (Martin Black, lead counsel of record for IV).

   Both of these facts – IV's knowledge of the 2019 IV/Nokia license and Dechert's first-hand knowledge at the time – make IV and Dechert's subsequent efforts to hide the license,

DuaneMorris

Jeffrey B. Plies
Martin J. Black
April 14, 2022
Page 2

thwart discovery, and willfully distort IV's damages case both galling and sanctionable. The prosecution of IV's case against Frontier has been far outside the boundaries of acceptable and legitimate zealous advocacy, as the following high-level summary of the history on this Nokia license issue illustrates:

- On August 18, 2020, IV accused Frontier's Nokia DSLAMs of infringing the five asserted patents, despite knowing (as you now admit) that the 2019 Nokia license precluded the claim as to Nokia and legacy Alcatel-Lucent devices. *See* Proof of Claim Addendum at 2 ¶ 8 (accusing the Alcatel 7300 by name).

- On December 27, 2021, Frontier sought from IV "[a]ll licenses" concerning the five Asserted Patents. *See* Frontier's First Set of Requests for Production of Documents at Nos. 5 and 6.

- On January 10, 2022, IV produced just three licenses and withheld all others, including the Nokia licenses. *See* IV Responses to First Set of Requests for Production of Documents at Nos. 5 and 6. IV represented that other licenses it was withholding were all "irrelevant." *Id.* at 7. We now know this was patently false.

- Frontier pressed. On February 8, 2022, IV produced a list of licensee names. *See* February 8, 2022, Ltr. from Plies to Shannon at 2-5. IV disingenuously represented that the licenses were not "relevant" because, you said, they were not with service providers. *Id.* at 1. This was patently deceptive given the scope of the license to Nokia and the accompanying covenant not to sue.

- Frontier spotted Nokia on the list. *See id.* at 4. The next day, Frontier demanded *inter alia* the IV/Nokia licenses. February 9, 2022, Ltr. From Shannon to Plies at 3. Frontier reminded IV that "any license to Nokia is relevant to at least the question of damages as well as the extent to which the asserted patents are exhausted as to certain portions of Frontier's network." *Id.*

- On February 10, 2022, IV/Dechert represented to Frontier that it would "produce the *remaining requested licenses* shortly under the Court's protective order." February 10, 2022, Ltr. from Plies to Shannon (emphasis added).

- On February 11, 2022, IV produced various licenses and agreements and represented to Frontier: "[H]ere are the Nokia licensing documents." Feb. 11, 2022 @ 5:13 PM Email from Plies to Shannon. That representation was false too, as the 2019 Nokia agreement – the most important one, and still unknown to Frontier at the time – was not among "the Nokia licensing documents."

DuaneMorris

Jeffrey B. Plies
Martin J. Black
April 14, 2022
Page 3

- Frontier then contacted Nokia and learned of the 2019 Nokia license. Had we not contacted Nokia and learned of the 2019 license from Nokia, your efforts to conceal critical evidence might have succeeded. We would not have learned that when you represented "here are **the** Nokia licenses," you really meant, "here are **some of** the Nokia licenses," or "here are the Nokia licenses **we want to tell you about**."

- On February 12, 2022, Frontier requested the 2019 Nokia license by name. *See* Feb. 12, 2022 @ 8:45 PM Email from Shannon to Plies ("Can you please produce it?"). Caught (again), Dechert wrote back: "we have inquired with our client concerning your questions below. Will revert when I know something more." Feb. 13, 2022 @ 10:53 AM Email from Plies to Shannon. But Dechert and IV already knew of the 2019 license, as Dechert represented IV in the litigation that appears to have precipitated the Nokia license. You had simply chosen not to produce it. That is, you did not need to "inquire [] with [your] client," nor was there "something more" to know **because Dechert already knew it**.

- On Feb. 14, 2022, IV finally turned over the document with no explanation for the delay. *See* Feb. 14, 2022 @ 11:52 Email from Plies to Shannon. (Indeed, you have never provided an explanation for the delay or misrepresentations.)

- When confronted with the significance of the 2019 Nokia license, IV simply went silent. *See* Feb. 17, 2022 @ 3:48 PM Email from Shannon to Plies ("Please confirm that IV is not seeking damages for any DSL customers served by Alcatel-, Lucent-, or Nokia-branded DSLAMs"); Mar. 1, 2022 @11:22 PM Email from Shannon to Plies (same).

- IV then deposed Frontier's technical fact witness, asking about the deployment of all of Frontier's DSLAMs.

- On April 6, 2022, nearly two months after we identified the 2019 Nokia license as a key piece of evidence that should have been produced long ago, IV and Dechert resurfaced and admitted the relevance and responsiveness they had denied all along. Specifically, IV and Dechert have now admitted that the 2019 Nokia license immunizes Nokia/Alcatel-Lucent equipment, and the effect of this license is "significant." *See* April 6, 2022, Email from Plies to Shannon. Of course, nothing changed between August 2020 and April 6, 2022; the Nokia license had always been, in your words, "applicable" and "significant."

IV's and Dechert's conduct has been inexcusable and warrants serious sanctions under, for example, the Court's inherent authority; Bankruptcy Rule 9011(b); Fed. R. Civ. P. 11 and 37; 28 U.S.C. § 1927; and 35 U.S.C. § 285. IV and Dechert accused **by name** products that you both

DuaneMorris

Jeffrey B. Plies
Martin J. Black
April 14, 2022
Page 4

knew were licensed before filing IV's claim. IV and Dechert never had a reasonable basis to initiate or maintain claims against Frontier's Nokia equipment. *See* Bankruptcy Rule 9011(b); F.R.C.P. 11(b). Further, IV's and Dechert's practice here has been so sharp, so dishonest, as to "stand out from others with respect to the substantive strength of [its] litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) (§ 285). Further, IV knew of the 2019 Nokia license when it received Frontier's set of document requests. Yet at least three times – on January 10th, February 8th, and February 11th – IV and/or Dechert intentionally concealed a document that was and is case-dispositive for approximately 40% of the Accused Equipment. The result is that these proceedings have been unreasonably and vexatiously multiplied from the beginning. *See* 28 U.S.C. § 1927.

There appears to be much more, and equally indefensible. IV and Dechert failed to investigate another license from IV's predecessor (Aware) to Infineon, the predecessor of Lantiq (the supplier of choice for the Adtran equipment you've accused). Indeed, we have good reason to believe that Aware/IV has licensed a substantial amount of the remaining accused Frontier product under the same patents asserted in this case – yet you have produced only a redacted copy of the relevant Aware/Infineon license (the "Lantiq license"). Who redacted it? When? Why? Did Dechert every bother to obtain and review an unredacted version before filings IV's claims against Frontier? Has it ever? We intend to get to the bottom of this, too.

Frontier intends to hold accountable IV, Dechert, and all the individuals responsible for this mess. The best IV, Dechert, and the persons responsible can do at this point is to try to mitigate your/their exposure by coming completely clean. On that score, we are giving Dechert, IV, and you the opportunity to provide, voluntarily, the following information by the close of business on Monday, April 18, 2022:

1. Explain in detail each and every step of Dechert's/IV's pre-suit investigation. *See* Bankruptcy Rule 9011(b), Fed. R. Civ. P. Rule 11(b).

2. Identify by name each and every individual at Dechert who was involved in discussions or other negotiations with Nokia concerning any of the Nokia-IV licenses on or before August 18, 2020. *See, e.g., IV v. Sprint*, 2:17-CV-0661 (E.D.Tex.) (Dkt. 53) (Intervention by Nokia).

3. Identify by name each and every person at Dechert who is aware of the 2019 Nokia license and the date each person first learned of it.

4. Identify by name each and every person at Dechert who is aware of the Lantiq license and the date each person first learned of it.

5. Identify by name each and every person at IV (current or former) who is aware of the 2019 Nokia license and the date each person first learned of it.



Jeffrey B. Plies
Martin J. Black
April 14, 2022
Page 5

6. Identify by name each and every person at IV (current or former) who is aware of the Lantiq license and the date each person first learned of it.

7. State whether your expert, Mr. Bratic, is aware of the 2019 Nokia license and when he first became aware of it. If he is not aware of it, explain why not.

8. Produce all communications between anyone at either Dechert and/or IV and Mr. Bratic about the 2019 Nokia license specifically or Nokia licenses generally.

9. State whether your expert, Mr. Bratic, is aware of the Lantiq license and when he first became aware of it.

10. Produce all communications between anyone at either Dechert and/or IV and Mr. Bratic about the Lantiq license.

11. State the complete factual and legal bases for IV's allegation that Nokia equipment is not licensed. *See* Proof of Claim Addendum at 2 ¶ 8 (accusing the Alcatel 7300 by name).

12. State the complete factual and legal bases for IV's allegation that Adtran equipment employing Lantiq/Infineon controllers is not licensed. *See id*. (accusing the Adtran TA3000 by name).

This is a non-exhaustive list. If we do not have responses to it in hand by close of business on Monday, April 18, we will understand that IV and Dechert refuse to produce it without the Court's assistance, and we will proceed accordingly. Frontier expressly reserves all rights and remedies.

Very truly yours,

*/s/ Timothy Shannon*

Timothy Shannon

TRS/mar

DM2\15637203.1