Andrew A. Wittenstein
Jonathan D. Daugherty
FRIEDMAN & WITTENSTEIN
A Professional Corporation

1345 Avenue of the Americas
Second Floor
New York, NY 10105
Tel: (212)750-8700
Email: awittenstein@friedmanwittenstein.com

*Co-Counsel to the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRONTIER COMMUNICATIONS CORPORATION *et al.,* | ) ) ) | Case No. 20-22476 (MG) |
| | ) | Hon. Martin Glenn, Chief Judge |
| | ) | |
| Reorganized Debtors. | ) ) | (Jointly Administered) |

**REORGANIZED DEBTORS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

Table Of Authorities ........................................................................................................... ii

IV and Dechert Knew About the Licenses and Their Applicability Before Suing .................... 1

IV and Dechert Concealed the Licenses for Nearly Two Years .................................................. 2

IV and Dechert Continue to Mislead and Multiply the Proceedings .......................................... 3

IV's Claim Against Licensed Product Was Not Colorable ......................................................... 5

This Case is Exceptional Under Section 285 ............................................................................. 9

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Arista Records LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009) ............................................................................... 8

*Arthur the Dog v. U.S. Merchandise Inc.*,
   2007 WL 2493427 (E.D.N.Y. Aug. 29, 2007) .................................................................. 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 S. Ct. 1749  (2014) ..................................................................................... 10

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 71 (2d Cir. 2000) ................................................................................................ 8

*S.E.C. v. Collector's Coffee, Inc.*,
   2021 WL 266284 (S.D.N.Y. Jan. 27, 2021) ..................................................................... 7

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
   194 F.3d 323 (2d Cir. 1999) .............................................................................................. 5

*Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   354 F. Supp. 3d 508 (S.D.N.Y. 2019) .............................................................................. 6

*Thermolife Int'l LLC v. GNC Corp.*,
   922 F.3d 1347 (Fed. Cir. 2019) ........................................................................................ 6

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) .............................................................................................. 8

*WPEM, LLC v. Soti, Inc.*,
   2020-1483 (Fed. Cir. Dec. 9, 2020) ................................................................................ 10

**Statutes**

28 U.S.C. § 1927 ........................................................................................................................... 5

### *IV and Dechert Knew About the Licenses and Their Applicability Before Suing*

In its motion to dismiss, Frontier lodged very serious allegations against both IV, the claimant, and Dechert, its counsel, seeking the harshest sanctions available under the law. Most fundamentally, Frontier charges that IV and Dechert brought a claim of patent infringement, and a multimillion dollar damages demand, based on components both IV and Dechert knew full well – before filing IV's proof of claim – were immune from inclusion in a royalty base because they are licensed. If Frontier's central charge were untrue, one would expect IV and Dechert to deny it unequivocally and under oath. But neither does.

IV submits no declaration at all. That is, not a single executive at IV was willing or able to say under oath, "We did not do it." Frontier's allegations as to IV have therefore gone unrebutted.

Dechert does submit a declaration, but not from its lead counsel, Martin J. Black, who was also lead counsel for IV in prior cases concerning the very Nokia and Lantiq licenses that render immune almost three-quarters of the accused Frontier components. In response to Frontier's allegations against Mr. Black by name, Mr. Black chooses to remain silent and is obviously trying to distance himself as much as possible from the current controversy.

Dechert instead puts forward Mr. Black's partner, Jeffrey B. Plies, who avers that he *personally* did not know of certain facts that Dechert – and Mr. Black in particular – indisputably did know. (*See* Doc. No. 2157 ¶ 9). Mr. Plies noticeably does not deny in his declaration that *Dechert* or *Mr. Black* knew about the Nokia and Lantiq licenses, and their applicability to the Frontier products at issue here, before filing IV's proof of claim in 2020. Mr. Plies does not deny it because he cannot. Dechert's only "denials" come in the form of attorney argument in IV's opposition brief, not sworn testimony from those with personal knowledge. Frontier's central accusation has thus gone unrebutted by Dechert as well.

We should therefore accept as true that both IV and Dechert knew they had no good faith basis from the outset to accuse the licensed Nokia and Lantiq components. The bottom line is, IV and Dechert should have never brought IV's claim against licensed product in the first instance. Everything after the filing of IV's proof of claim, certainly as it concerns about three-quarters of the case, is vexatious and in bad faith. This is reason alone to grant Frontier's motion in full.

*<u>**IV and Dechert Concealed the Licenses for Nearly Two Years**</u>*

IV's and Dechert's misconduct after initiating this litigation and up until the filing of Frontier's motion to dismiss – which Frontier detailed in its opening brief and will not repeat here – provides an independent factual footing for the Court to grant Frontier's motion. IV's claim of patent infringement is analogous to a real property owner who sues his neighbor for trespassing on his land, even though the landowner knows full well that the path the neighbor takes is subject to an easement about which the neighbor is unaware because it is unrecorded. During the lawsuit, the landowner then takes active steps to prevent the "trespasser" from learning of the existence of the easement. That is, in effect, exactly what IV and Dechert, jointly and severally, did here.

IV's and Dechert's criticism of Frontier for not learning of the Nokia and Lantiq licenses sooner, or for not divining that IV and Dechert secretly withheld them as relevant only to "liability," is as striking as it is misplaced. Frontier is the victim of IV's and Dechert's misconduct and cannot be fairly criticized for a supposed "lack of diligence." (IV Opp. Br. at 14). Whether an easement/license is a "defense" to a claim of trespass/infringement of course begs the question of whether the lawsuit should have been brought in the first place; the onus ought not be on the accused to discover the existence of an agreement that forecloses the plaintiff's claim as a matter of law. (IV Opp. Br. at 3). Even if this were a typical discovery

-2-

dispute – which this hardly is – that emphatically is not "how the discovery process is supposed to work," as IV contends.  *Id*. at 14.

### *IV and Dechert Continue to Mislead and Multiply the Proceedings*

In IV's opposition papers, IV and Dechert unrepentantly continue their deceptive measures, which provides yet another independent basis for the Court to grant Frontier's motion.  Mr. Plies' Declaration, for example, is disturbingly misleading.  Mr. Plies states under oath as follows with respect to the earlier two IV cases that resulted in the Nokia licenses:

> While these matters were handled by my law firm, I was not involved in these matters, I did not appear in these matters, and I did not obtain knowledge of any Nokia licenses from my firm's work on these matters.

(*See* Doc. No. 2157 ¶ 7).  By using the phrase "handled by my law firm," Mr. Plies gives the false impression that some random Dechert lawyers were involved in those cases.  What Mr. Plies does not say is that it was *Mr. Black himself* – the protagonist in this sordid tale – who handled the prior IV cases as lead counsel and who therefore had personal knowledge of both the 2019 Nokia License and the Lantiq license well before this dispute began.[1]  Whether Mr. Black's Dechert partner, Mr. Plies, also had personal knowledge is irrelevant. For Mr. Plies to focus on his own personal knowledge about the prior licenses, which is reiterated throughout IV's opposition, is simple misdirection.

IV's and Dechert's attempt to downplay the significance of the licenses they hoped would never see the light of day is not credible.  (*See* IV Opp. Br. at 17).  First, IV quotes Frontier's brief stating that "Dechert attorneys knew perfectly well that the Infineon/Lantiq issue came up in the Texas case."  IV does not deny that statement or question its accuracy.

---

[1] Exhibit 1 hereto consists of the front page and signature page of the three relevant prior actions concerning the Nokia and Lantiq licenses, all of which list Mr. Black as "LEAD ATTORNEY."

-3-

Instead, IV states that "it was an insignificant issue that was not developed beyond AT&T's discovery response." (*Id.*). The fact is, regardless of how significant the issue was in *that* case, it is extremely significant in *this* one.

We also note that IV and Dechert have seriously backtracked from their prior unequivocal representation to the Court that "AT&T's confidential information was destroyed long ago pursuant to the protective order in that case." (*See* Doc. Nos. 2127, p. 15 and 2128 ¶ 5). Since that blanket representation to the Court, Dechert has changed its story and now says that "the majority" of AT&T's confidential information was destroyed. Their prior representations were obviously untrue. Similarly, as Frontier pointed out in its moving brief, the version of the key document that Dechert and IV recently produced in response to the Court's Order omitted the critical licensing language. (*See* Doc. No. 2150 (Moving Brief) at 12). IV and Dechert now claim that they purposely, albeit it secretly (the document bears no indication that it was redacted to remove the key language), withheld the operative language because Frontier had already obtained it from AT&T. (IV Opp. Br. at 15-16). Needless to say, IV and Dechert had no unilateral authority to withhold any documents the Court ordered them to produce, certainly not without disclosing what was withheld and why or seeking the Court's permission.

IV's and Dechert's conduct with respect to the concealed licenses has also caused a cascade of effects that have vexatiously multiplied these proceedings, including third-party subpoenas, motion practice, additional hearings, and the like. Most recently, on October 19, 2022, IV submitted new damages theories, methodologies, calculations, and opinions through the "direct testimony" of its damages expert, Walter Bratic, stemming directly from the Lantiq license issues. Specifically, anticipating the removal of licensed Lantiq products from the

-4-

royalty base, and to minimize its effect on IV's damages claim, Mr. Bratic among other things shifts the accused components from Frontier's DSLAMs to different products that customers use on their end. Mr. Bratic's heretofore undisclosed opinions violate the Court's Scheduling Order and the Rules as to expert disclosures, causing still more motion practice. (Concurrent with this reply, Frontier is moving to strike IV's new damages opinions concerning components covered by the Lantiq license.)

### *IV's Claim Against Licensed Product Was Not Colorable*

As explained in our moving brief (pp. 14-19), this Court has the inherent power to issue sanctions – including terminating sanctions – for certain violations. IV and Dechert argue that they should not be sanctioned because their disregard of their own prior litigation history before bringing IV's claim in this case was a "colorable" action (IV Opp. Br. at 12-17); because they did not prejudice Frontier (*Id.* at 18-19); because they did not act in bad faith (*Id.* at 19-21); and because their actions do not justify terminating sanctions (*Id.* at 21-23). Dechert argues that it should not be sanctioned pursuant to 28 U.S.C. § 1927 for the same reasons. (*Id.* at 24).

For a claim to be colorable, "the question is whether a reasonable attorney . . . could have concluded that the facts supporting the claim might be established." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). As explained previously, Dechert and IV were involved in the prior two Texas cases that resulted in the 2019 Nokia License barely a year before bringing their claims in this case in 2020 based on the exact same products. (Doc. No. 2150 (Moving Brief) at 3). No reasonable attorney aware of those facts and the law with respect to patent exhaustion would have brought IV's claims in this case, much less doubled down on them by delaying production of the dispositive license, and then – in response to this motion for sanctions – muzzling the attorney with personal knowledge of the matter while submitting a misleading declaration from a different attorney who personally had

-5-

plausible deniability.² (*See* IV Opp. Br. at 13) (contending that when Mr. Plies told Frontier "here are *the* Nokia Licenses" (emphasis added), he "was unaware of any other Nokia agreements, and did not become aware of any additional agreements until February 13, after he had IV double-check its files."). But Mr. Black was aware. Dechert was aware. IV was aware.

Similarly, Dechert and IV tried in vain to prevent AT&T from producing Lantiq-related information which confirms that – well before this case was brought – IV and Dechert knew for a fact that IV's claims were barred. In other words, they knew that at least some of IV's case was dead on arrival. The lack of colorability is self-evident – products covered by the Nokia and Lantiq licenses should never have been included in this case.³

IV's argument that Frontier is not prejudiced because it eventually managed to obtain the licenses is not well taken. The only case cited by IV on this point, *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508 (S.D.N.Y. 2019), is inapposite. (IV Opp. Br. at 18). That case, which addressed whether to preclude evidence that was produced late in discovery but before the close of discovery and before relevant expert discovery, did not involve the pattern of obfuscation that is present here. In any event, Frontier

---

² IV insinuates that its actions were "colorable" because of the bifurcation order in this case. According to IV, the 2019 license issues relate only to liability, and not damages. (IV Opp. Br. at 2-3). IV's argument misses the key point – that IV and Dechert should have never accused the licensed products *in the first place* because IV and Dechert *knew* they were already licensed at the time they filed the claim. All the later discovery delays, tactics, and obfuscations merely demonstrate IV's and Dechert's post-filing bad faith attempts to hide that original sin.

³ Although it submits no declaration, IV claims – via bare attorney argument – ignorance as to which Frontier's DSLAMs contain the licensed Nokia and Lantiq chips. (IV Opp. Br. at 18) ("how was IV supposed to know?"). Ignorance is no defense, however, as the Federal Circuit has long held that a patent plaintiff must perform a reasonable pre-filing investigation, which includes comparing the accused device to the patent claims. *See, e.g., Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1360-61 (Fed. Cir. 2019). Of course, DSLAMs are not secret components or ingredients – all IV and Dechert had to do was buy the models at issue and open them up, before filing IV's proof of claim.

-6-

is not aware of any cases holding that prejudice to the moving party is a prerequisite for inherent power sanctions.[4]

Regardless, IV's and Decher's conduct did in fact prejudice Frontier. As detailed in our moving brief, it took significant effort, including motion practice in other courts and third-party discovery, to obtain the information at issue here. And Frontier has expended significant resources over the last two years on a claim that should never have been brought. That effort and expense is prejudicial to Frontier in and of itself.

Further, as noted above, in the direct testimonies that IV just filed in advance of the upcoming hearing, IV fundamentally shifted theories and accused products in response to the existence of the Lantiq license. Dechert's and IV's latest maneuver not only violates the Court's Orders and the Federal Rules of Civil Procedure, but it severely prejudices Frontier in its ability to discover how and why Mr. Bratic arrived at his new conclusions, not to mention Frontier's ability to respond to them. And all of this stems from the issue of the concealed licenses.

IV's and Dechert's related suggestion (IV Opp. Br. at 22) that they should get off the hook because the truth about the Nokia and Lantiq licenses has finally come out – two years after IV filed its claim and after Frontier has had to spend hundreds of thousands of dollars to defend itself – is misplaced. Moreover, we can have no confidence that we know all there is to know. For instance, how do we know that the remaining accused products are not also licensed, but that IV and Dechert believe Frontier has not asked the precise question to uncover those licenses too, or that IV and Dechert believe those licenses are a "defense" and thus are irrelevant

---

[4] While prejudice to the moving party is sometimes considered in determining the *type* of sanction ordered, *see* e.g., *S.E.C. v. Collector's Coffee, Inc.*, 2021 WL 266284, at *13 (S.D.N.Y. Jan. 27, 2021), that is a different matter from *whether* sanctions are warranted in the first place.

-7-

now and need not be disclosed. And so on. IV and Dechert have forfeited any right to get the benefit of the doubt.

While bad faith is a prerequisite for sanctions under Section 1927, it is not under the Court's inherent power. (Doc. 2150 (Moving Brief) at 22). IV and Dechert improperly try to inject a bad-faith requirement into both. IV's own cases support our position. In laying out the controlling standard, IV quotes from *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). (IV Opp. Br. at 11-12). However, the quoted language does not say "bad faith." Rather, it says actions that "are taken for reasons of harassment or delay or for other improper purposes." *Id. Revson* continues by explaining that inherent power sanctions may be awarded when an attorney acts "in bad faith, vexatiously, wantonly, *or* for oppressive reasons." (Emphasis added). Another case cited by IV, *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) (IV Opp. Br. at 22), is explicit that bad faith is not required to establish an "improper purpose" to support terminating sanctions: "Severe sanctions for discovery violations, including dismissal, may be imposed for intentional conduct, such as bad faith *or gross negligence*." *Id.* at 140 (emphasis added). Indeed, the Second Circuit has explained that dismissal may be appropriate "if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). That certainly is the case here, where IV's actions were designed to obfuscate, delay, and prevent the discovery of critical facts.[5]

---

[5] IV's cases that do not even rise to the level of "gross negligence" are plainly inapposite. *See, e.g., Arthur the Dog v. U.S. Merchandise Inc.*, 2007 WL 2493427 (E.D.N.Y. Aug. 29, 2007) (delays with respect to certain disclosures not sufficient to show bad faith based on totality of circumstances).

-8-

In any event, as shown in our moving brief (pp. 2-13, 16-18), the totality of the circumstances persuasively demonstrates IV's and Dechert's bad faith. Indeed, it would be bad enough if Dechert's and IV's conduct consisted of *either* its efforts to hide the 2019 Nokia License *or* the Lantiq license. But Dechert and IV have now compounded their deception by submitting the misleading and incomplete Declaration of Mr. Plies instead of one from his partner, Mr. Black. Plainly this is an attempt to shield Mr. Black, IV's lead lawyer in the cases concerning the Nokia and Lantiq licenses, from having to admit that he knew about them in 2020 when the Frontier claims were filed.

IV and Dechert indisputably were aware at the time they brought the claims in this case that a meaningful portion was barred and thus were "so completely without merit" that bad faith may be inferred. IV and Dechert then added to this initial transgression by not disclosing the 2019 Nokia License or the Lantiq license; falsely claiming that they were irrelevant; making a partial production of the Nokia licenses while still withholding the critical one; not disclosing any documents at all relating to the Lantiq issue; attempting to block third-party discovery relating to the Lantiq issue that placed no burden whatsoever on IV or Dechert; and, in response to this motion, submitting a materially misleading declaration by an attorney without personal knowledge of the fraud in order to shield the lead attorney who did have personal – and damaging – knowledge. None of these actions is colorable; they all demonstrate bad faith. And for Dechert to refer to "IV's prompt, diligent, and transparent conduct during discovery" is, to put it mildly, contradicted by the record. (IV Opp. Br. at 22).

### ***This Case is Exceptional Under Section 285***

Finally, IV argues that this case is not exceptional as that term is defined under Section 285 of the Patent Act. (IV Opp. Br. at 23-24). A case is "exceptional" when it "stands out from others with respect to the substantive strength of a party's litigating position

-9-

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756 (2014). We submit that if this Court determines that Frontier is a prevailing party by dismissing all or nearly all of IV's claim, it follows *a fortiori* that this is an exceptional case under *Octane Fitness*. *See, e.g.*, *WPEM, LLC v. Soti, Inc.*, 2020-1483 (Fed. Cir. Dec. 9, 2020) (upholding award of attorney's fees under Section 285 based on the substantive strength of plaintiff's litigation position, which "could have easily been foreseen with an adequate pre-suit investigation."). (*See also* fn. 3, *supra*). At bottom, we respectfully submit that if IV's and Dechert's conduct does not stand out from the usual case, no lawyer or litigant will fear being held responsible and accountable, and the behavior IV and Dechert exhibited in this case – from the very start through today – will indeed become the norm.

***

For the foregoing reasons, and those in Frontier's opening brief, Frontier's motion should be granted.

Dated: New York, New York
       October 25, 2022

Respectfully submitted,

| | |
|---|---|
| DUANE MORRIS LLP<br>Timothy R. Shannon, Esq. (BBO# 655325)<br>Seth S. Coburn (BBO# 681932)<br>100 High Street, Suite 2400<br>Boston, MA  02110-1724<br>Tel: (857) 488-4200<br>Fax: (857) 488-4201<br>trshannon@duanemorris.com<br>sscoburn@duanemorris.com | FRIEDMAN & WITTENSTEIN<br>A Professional Corporation<br><br>By: /s/  Andrew A. Wittenstein<br>     Andrew A. Wittenstein<br>     Jonathan D. Daugherty<br>     1345 Avenue of the Americas<br>     Second Floor<br>     New York, NY  10105<br>     Tel: (212) 750-8700<br>     awittenstein@friedmanwittenstein.com<br>     jdaugherty@friedmanwittenstein.com |

# Ex. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT SPECTRUM L.P.,<br>NEXTEL OPERATIONS, INC., ERICSSON<br>INC., TELEFONAKTIEBOLAGET LM<br>ERICSSON, and ALCATEL-LUCENT USA<br>INC.,<br><br>Defendants. | Civil Case No.: 2:17-cv-662<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Intellectual Ventures II LLC for its Complaint against defendants Sprint Spectrum, L.P. (d/b/a Sprint PCS), Nextel Operations, Inc., Ericsson Inc., Telefonaktiebolaget LM Ericsson, and Alcatel-Lucent USA Inc. hereby alleges as follows:

## THE PARTIES

1. Intellectual Ventures II LLC ("IV") is a Delaware limited liability company with its principal place of business at 3150 139th Ave SE, Bellevue, Washington.

2. Sprint Spectrum L.P. d/b/a Sprint PCS ("Sprint PCS") is a Delaware limited partnership with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.

DATED: September 21, 2017

Respectfully submitted,

By: /s/ Martin J. Black by permission Claire Henry
Martin J. Black
**LEAD ATTORNEY**
Pennsylvania Bar No. 54319
Kevin M. Flannery (admission *pro hac vice* pending)
Pennsylvania Bar No. 62593
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
martin.black@dechert.com
kevin.flannery@dechert.com

Justin F. Boyce (admission *pro hac vice* pending)
California Bar No. 181488
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Tel: (650) 813-4800
Fax: (650) 813-4848
justin.boyce@dechert.com

T. John Ward Jr.
Texas Bar No. 00794818
Claire Abernathy Henry
Texas Bar No. 24053063
WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
Email: jw@wsfirm.com
Email: claire@wsfirm.com

*Counsel for Plaintiff Intellectual Ventures II LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC., T-MOBILE US, INC.,<br>ERICSSON INC., and<br>TELEFONAKTIEBOLAGET LM ERICSSON<br><br>            Defendants. | Civil Case No.: 2:17-cv-661<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Intellectual Ventures II LLC for its Complaint against defendants T-Mobile USA, Inc., T-Mobile US, Inc., Ericsson Inc., and Telefonaktiebolaget LM Ericsson hereby alleges as follows:

## THE PARTIES

1.    Intellectual Ventures II LLC ("IV") is a Delaware limited liability company with its principal place of business at 3150 139th Ave SE, Bellevue, Washington 98006.

2.    T-Mobile USA, Inc. ("T-Mobile USA") is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

3.    T-Mobile US, Inc. ("T-Mobile US") is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. T-Mobile US is the parent corporation of T-Mobile USA and was formerly known as MetroPCS Communications,

DATED: September 21, 2017

Respectfully submitted,

By: /s/ Martin J. Black by permission Claire Henry
Martin J. Black
**LEAD ATTORNEY**
Pennsylvania Bar No. 54319
Kevin M. Flannery (admission *pro hac vice* pending)
Pennsylvania Bar No. 62593
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
martin.black@dechert.com
kevin.flannery@dechert.com

Justin F. Boyce (admission *pro hac vice* pending)
California Bar No. 181488
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Tel: (650) 813-4800
Fax: (650) 813-4848
justin.boyce@dechert.com

T. John Ward Jr.
Texas Bar No. 00794818
Claire Abernathy Henry
Texas Bar No. 24053063
WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
Email: jw@wsfirm.com
Email: claire@wsfirm.com

*Counsel for Plaintiff Intellectual Ventures II LLC*

Case 1:13-cv-00116-LY   Document 1   Filed 02/08/13   Page 1 of 54

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>AT&T INC.,<br>AT&T CORP.<br>  (d/b/a AT&T ADVANCED SOLUTIONS,<br>  d/b/a SBC ADVANCED SOLUTIONS),<br>AT&T COMMUNICATIONS OF TEXAS, LLC,<br>AT&T OPERATIONS, INC.,<br>AT&T SERVICES, INC.,<br>AT&T VIDEO SERVICES, INC.,<br>SBC INTERNET SERVICES, INC.<br>  (d/b/a AT&T ENTERTAINMENT SERVICES,<br>  d/b/a AT&T INTERNET SERVICES,<br>  d/b/a PACIFIC BELL INTERNET SERVICES),<br>and<br>SOUTHWESTERN BELL TELEPHONE CO.<br><br>  Defendants. | Civil Action No. 1:13cv116<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Case 1:13-cv-00116-LY   Document 1   Filed 02/08/13   Page 54 of 54

DATED: February 8, 2013

Respectfully submitted,

/s/ *Jeffrey B. Plies*
Signature on file with the U.S. District Clerk

Martin J. Black (State Bar No. 050751991)
-- LEAD ATTORNEY
martin.black@dechert.com
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Jeffrey B. Plies (State Bar No. 24027621)
jeffrey.plies@dechert.com
DECHERT LLP
300 W. 6th Street
Suite 2010
Austin, TX 78701
(512) 394-3000

Stephen J. Akerley (State Bar No. 240793)
Stephen.Akerley@dechert.com
Justin F. Boyce (State Bar No. 181488)
justin.boyce@dechert.com
DECHERT LLP
2440 W. El Camino Real Suite 700
Mountain View, CA 94040-1499
(650) 813-4800

*Counsel for Plaintiffs Intellectual Ventures II LLC*

53