**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRONTIER COMMUNICATIONS | ) | Case No. 20-22476-MG |
| CORPORATION *et al.*,[1] | ) |  |
|  | ) | JOINT PRETRIAL ORDER |
| Reorganized Debtors. | ) |  |
|  | ) |  |

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions, and agreements are adopted as the Pretrial Order herein.

**I.    NATURE OF THE CASE**

Intellectual Ventures II LLC's Statement

This contested matter concerns a claim for patent infringement under 35 U.S.C. § 271. Intellectual Ventures II LLC ("IV") filed claims against Frontier Communications Corporation and its affiliated debtors and debtors-in-possession (collectively, and together with the Reorganized Debtors, "Frontier") on account of alleged pre-petition infringement (*e.g.*, Proof of Claim No. 2526) and a request for payment of administrative expense on account of alleged

---

[1] The last four digits of Debtor Frontier Communications Corporation's tax identification number are 9596. Due to the large number of debtor entities in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/ftr. The location of the Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

- 1 -

post-petition infringement (D.I. 1880). Frontier filed an objection to IV's claim on October 27, 2021. D.I. 2017. The Court subsequently bifurcated this matter and agreed to address damages issues first, via a separate damages trial/hearing. D.I. 2037 at ¶ 1 ("IV's Claims … and the Reorganized Debtors' objection thereto, shall be adjudicated with respect to the issue of damages …. The Reorganized Debtors' objections to liability, as set forth in the Objection, shall be adjudicated (if necessary) on a schedule to be determined.").

<u>Frontier's Statement</u>

IV has correctly recounted the early procedural history of the case and the nature of IV's patent claims. The purpose of the upcoming hearing – today, in light of subsequent discovery as set forth in the record – is to determine the amount, if any, that would be owed IV if liability were later ultimately determined.

Frontier further notes it has two pending motions before the Court: (i) Motion to Dismiss (D.I. 2149); and (ii) Motion to Strike Previously Undisclosed Damages Opinions and Theories in the Testimony of Mr. Walter Bratic (D.I. 2171).

**II.     BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter a final order and judgment in this proceeding.

**III.    STIPULATED FACTS**

The parties agree that the following stipulation is offered only for the purposes of the upcoming damages hearing and both parties reserve all rights otherwise.

1. IV is a Delaware limited liability company with a principal place of business at 3150 139th Avenue SE, Belvue, WA 98005.

2. Frontier Communications Corporation, and its successors-in-interest, have had a principal place of business at 401 Merritt 7, Norwalk, CT 06851, since before the commencement of this case, during the course of this case, and following the effective date of the Debtors' plan of reorganization.

3. IV filed the present unsecured priority claim against Frontier on August 18, 2020, alleging Frontier's past infringement of U.S. patents 6,647,068, 6,798,735, 7,272,171, 7,817,532 and 8,369,275 (the "Asserted Patents").

4. On April 30, 2021, Frontier emerged from Chapter 11 bankruptcy.

5. On November 11, 2003, United States Patent No. 6,647,068 (the "'068 Patent"), titled "Variable State Length Initialization," was issued by the United States Patent and Trademark Office (the "PTO").

6. The '068 Patent expired on June 7, 2022.

7. IV owns all substantial right, title and interest in the '068 Patent.

8. On September 28, 2004, United States Patent No. 6,798,735 (the "'735 Patent"), titled "Adaptive Allocation for Variable Bandwidth Multicarrier Communication," was issued by the PTO.

9. The '735 Patent expired on June 12, 2017.

10. IV owns all substantial right, title and interest in the '735 Patent.

11. On September 18, 2007, United States Patent No. 7,272,171 (the "'171 Patent"), titled "Variable State Length Initialization," was issued by the PTO.

12. The '171 Patent will expire on May 9, 2024.

13. IV owns all substantial right, title and interest in the '171 Patent.

14. On October 19, 2010, United States Patent No. 7,817,532 (the "'532 Patent"), titled "Adaptive Allocation for Variable Bandwidth Multicarrier Communication," was issued by the PTO.

15. The '532 Patent expired on March 8, 2018.

16. IV owns all substantial right, title and interest in the '532 Patent.

17. On February 5, 2013, United States Patent No. 8,369,275 (the "'275 Patent"), titled "Adaptive Allocation for Variable Bandwidth Multicarrier Communication," was issued by the PTO.

18. The '275 Patent expired on January 16, 2018.

19. IV owns all substantial right, title and interest in the '275 Patent.

20. The '735 patent, the '532 patent, and the '275 patent comprise a first patent family based on a common provisional patent application that was filed on June 12, 1996, and sharing substantially the same specification.

21. The '068 patent and '171 patent comprise a second patent family based on a common provisional application that was filed on June 7, 2001, and sharing substantially the same specification.

22. Daphimo Co., B.V., LLC ("Daphimo") acquired the Asserted Patents from Aware, Inc. ("Aware") on December 19, 2008.

23. IV acquired the Asserted Patents from Daphimo upon merging with Daphimo on January 24, 2013.

24. The International Telecommunication Union ("ITU") has promulgated multiple technical standards concerning the operation of DSL equipment, including ADSL, ADSL2, ADSL2+, and VDSL2.

25. The ITU's DSL technical standards enable communication between DSL modems made by different manufacturers.

26. The ADSL standard was first issued as G.992.1 in 1999 and allows download rates as high as 8 Mbits/s as conditions allow.

27. The ADSL2 standard was first issued as G.992.3 in 2002 and allows download rates up to 12 Mbits/s as conditions allow.

28. The ADSL2+ standard was first issued as G.992.5 in 2003 and allows download speeds up to 24 Mbits/s as conditions allow.

29. The VDSL2 standard was first issued as G.993.2 in 2006 and allows data rates as high as 200 Mbits/s as conditions allow.

30. Between August 18, 2014 and April 30, 2021, one or more of the operating companies of Frontier used at least the following models of DSLAM's in the U.S.: Adtran TA1148, Adtran TA1248, Adtran TA3000, Adtran TA5000, AFC/Tellabs DMAX, Calix C7, Calix E3, Calix E5, Calix E7, Catena/Ciena CNX5, Cisco 6130, Cisco 6160, Conklin 9000, Conklin Fast Mux, Fujitsu Speedport, Inovia 1100, Lucent Any Media, Lucent SLC, Next Level BNU, Paradyne 4223, Paradyne 8820, Pedistal UBS, Tellabs UMC1000, and Vz3.

31. Between August 18, 2014 and April 30, 2021, one or more of the operating companies of Frontier used DSLAM's that implemented the VDSL2, ADSL2, and/or ADSL2+ technical standards promulgated by the ITU.

32. In 2013, IV filed suit against three telecommunications providers— *inter alia,* Windstream Corporation ("Windstream"), CenturyLink Inc. ("CenturyLink"), and AT&T, Inc. ("AT&T")—in three parallel actions, asserting infringement of 19 patents directed to DSL services.[2]

33. Of the 19 patents it asserted in the 2013 actions, IV contended that 14 were standard-essential patents ("SEP") as to ADSL2, ADSL2+, or VDSL2. The remaining five non-SEPs also related to DSL.

34. Four of the SEPs were effectively knocked out by the court's patent claim construction; the rest of the asserted SEPs survived.

35. IV settled its litigation with Windstream on December 2, 2015, by executing a patent license agreement that included the Asserted Patents.

36. IV settled its litigation with CenturyLink on May 14, 2016, by executing a patent license agreement that included the Asserted Patents.

37. IV settled its litigation with AT&T on December 4, 2017, by executing a patent license agreement that included the Asserted Patents.

38. Adtran DSLAMs contain DSL transceiver "chipsets." These chipsets provide and correspond to working ports that service individual customers.

---

[2] *Intellectual Ventures II LLC v. Windstream Corp.*, C.A. No. 1:13-cv-0119 (W.D.Tex.); *Intellectual Ventures II LLC v. CentruyTel Inc. (f/k/a CenturyTel, Inc.).*, C.A. No. 1:13-cv-0118 (W.D.Tex.); *Intellectual Ventures II LLC v. AT&T Inc.*, C.A. No. 1:13-cv-0116 (W.D.Tex.)

39.     All five of the Asserted Patents were originally invented and owned by Aware, Inc. ("Aware").

40.     On October 1, 2007, Aware entered into a License Agreement with Lantiq's predecessor-in-interest, Infineon Technologies AG ("Infineon").

41.     IV bought the Asserted Patents subject to the existing Aware license.

42.     In 2009, Infineon assigned the 2007 Agreement to Lantiq.

IV.     **PARTIES' CONTENTIONS**

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties for purposes of this bifurcated damages trial:

A.      **IV's Contentions**

1.      Frontier has infringed five U.S. patents owned by IV: 6,798,735; 7,817,532; 8,369,275; 6,647,068; and 7,272,171 ("the patents-in-suit"). The '735, '532, and '275 comprise a first patent family sharing similar specifications, and the '068 and '171 comprise a second patent family sharing similar specifications.

2.      Frontier infringed these five patents during the pre-petition period of August 19, 2014, through April 13, 2020, by using digital subscriber line access multiplexers (DSLAM's) and/or connected consumer premises DSL modems to practice certain ADSL2, ADSL2+, and/or VDSL2 technical standards promulgated by the International Telecommunications Union (ITU-T).

3.      Frontier continued to infringe the '068 and '171 patents during the post-petition period of April 14, 2020, through the April 30, 2021, effective date of the Frontier's plan of reorganization (the "Plan"). The Reorganized Debtors continue to infringe the '068 and '171 patents following the effective date.

4.      IV seeks damages in the form of a reasonable royalty pursuant to 35 U.S.C. § 284 for Frontier's pre- and post-petition infringement.

5.      The amount of damages is informed by the *Georgia-Pacific* analysis, including IV's comparable license agreements with peer DSL service providers Windstream and CenturyLink.

6.      IV brought suit against Windstream and CenturyLink in 2013 in the Western District of Texas for infringing 14 standards essential DSL patents (SEP) and 5 non-standards essential DSL patents owned by IV.  After the court's claim construction order, only 10 SEP and 2 non-SEP survived.  The Windstream and CenturyLink licenses were consummated because of these 10 standards-essential DSL patents, which included the '735, '532, '068, and '171 patents that are also asserted against Frontier.  The '275 patent presently asserted against Frontier is related to the '735 patent and has similar claims.

7.      The five patents-in-suit possess most of the technical value of the SEP that drove the execution and value of the Windstream and CenturyLink licenses.

8.      The amount of reasonable royalty damages owed by Frontier can be computed by first taking the average per-subscriber royalty for the Windstream and CenturyLink licenses and then apportioning downward using the relative technical value of the two asserted SEP patent families compared to the SEP that drove the Windstream and CenturyLink licenses.  The resulting apportioned royalty rates can then be adjusted to account for different expiration dates of the patents-in-suit, and thus their differing contributions to the value of a license.  Finally, the apportioned and adjusted royalty rates can be multiplied by the number of Frontier subscribers to obtain the reasonable royalty damages owed by Frontier.   The damages can be divided between

the pre-petition period, the administrative claims period, and the plan's post-effective date period.

9. IV has accounted for and deducted any damages resulting from Nokia equipment in the request for relief below.

10. Frontier purchased a portion of its DSLAM equipment from Adtran, and Adtran used at least Broadcom and Lantiq chips in its DSLAMs. For the most recent period on which Adtran produced evidence, 76% of the Adtran DSLAMs used Broadcom chips, which are not licensed, and 24% used Lantiq chips, although the proportion of Lantiq chips was higher in earlier years.

11. Frontier asserts that the Aware-Infineon/Lantiq license exhausts all of IVs claims with respect to infringement deriving from Frontier's use of Adtran/Lantiq DSLAMs, but not its use of Adtran/Broadcom DSLAMs. IV agrees that the claims of the '068, '171 and '532 patents are exhausted with respect to the Adtran/Lantiq DSLAMs that practiced the accused DSL technical standards (ADSL2/2+ and VDSL2) during the infringement period, and IV makes no claim for damages for Frontier's use of such DSLAMs with respect to these patents. Frontier, however, bears the burden of establishing the number of such DSLAMs and has not provided sufficient evidence to do so. Frontier has also not met its burden of proof to show that the sale of a Lantiq DSL chip used in an Adtran DSLAM exhausts the '735 and '532 patents, which require the combination of a DSLAM with other equipment. In either case, the exact amount of licensed equipment in the network during the infringement period is uncertain and subject to proof.

12. IV's Pre-Trial Brief is incorporated by reference herein.

13. At the conclusion of the liability proceeding, IV will seek a declaration that this case is exceptional under 35 U.S.C. § 285, and that IV is entitled to fees and costs. Frontier's

infringement, at least since the date of the filing of the proof of claim, has been willful and entitles IV to treble damages under 35 U.S.C. § 284. These matters depend upon liability proofs to be developed at the liability trial and are reserved.

  **B.**  **Frontier's Contentions**

  1.  IV's claims for pre-petition damages and administrative expenses are limited to a reasonable royalty pursuant to 35 U.S.C. § 284.

  2.  IV's claims are predicated on the assertion that the five Patents-in-Suit are "standard essential" and infringed by any system that operates in conformity with certain ITU-T technical standards concerning DSL2, ADSL2+, and VDSL2. A standard does not confer value on a patent. Any royalty award must be based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology.

  3.  The Patents-in-Suit—set in their technical context—are directed to a miniscule portion of ADSL2/2+/VDSL's features and functions.

  4.  The overall technical value of the Patents-in-Suit is a small fraction (at most, less than 7%) of the technical value of the 4,300 DSL-related patents that IV previously licensed to CenturyLink and Windstream (the licenses upon which IV bases its damages analysis).

  5.  Frontier would not have placed much, if any, value on the features purportedly offered by the Patents-in-Suit.

  6.  All five of the Patents-in-Suit are subject to so-called Fair Reasonable and Non-discriminatory ("FRAND") licensing obligations.

  7.  Frontier DSLAMs manufactured by Adtran, Inc. that include chipsets manufactured by Lantiq Deutschland GmbH (or its predecessor, Infineon) are licensed by virtue of a 2007 license and may not be included in any damages calculation.

8.  Frontier DSLAMs manufactured by Nokia, Inc. are licensed by virtue of a 2019 license and may not be included in any damages calculation.

9.  IV's damages analysis contains five major errors (one of which IV has now conceded) that, when corrected, reduce IV's royalty claim for the five Patents-in-Suit from $3.8 million to $60,000.

   a.  IV improperly includes in its average-license-fee-per-subscriber (from the Windstream and CenturyLink licenses) payments to entities other than the IV entities in this case, *i.e.* parties not here, for patent portfolios not at issue in the current suit. This error warrants a <u>9%</u> reduction to the calculated royalties due.

   b.  IV fails to account for the different spans of time the respective licenses would cover. In this case, Frontier was facing older patents, nearer to expiration, on older technology, and needed only to buy a license for a shorter period of time than either Windstream or CenturyLink. This error warrants a <u>43.6%</u> reduction to the calculated royalties due.

   c.  IV – in its original analysis, since amended – fails to account for the fact that approximately 39.3% of Frontier's accused DSLAMs were already licensed by Nokia, giving rise to patent exhaustion. This error warrants a <u>39.3%</u> reduction to the calculated royalties due.

   d.  IV fails to appropriately account for the value contributed by all of the DSL patents included in the Windstream and CenturyLink license agreements. IV's analysis ignores thousands of patents licensed under those agreements, including patents that IV once asserted were "game-changing" and responsible for driving the value of the prior licenses. Moreover, the analysis distorts the value of the DSL patents that it does consider. The overall technical value of the Patents-in-Suit is a small fraction (at most, less than 7%) of the technical value of the DSL-related patents that IV previously licensed to CenturyLink and Windstream. This error warrants a <u>89.6%</u> reduction to the calculated royalties due.

   e.  IV fails to account for the license agreement relating to the Patents-In-Suit by Aware Inc. ("Aware") and Lantiq, whose chipsets were used in Adtran DSLAMs, giving rise to patent exhaustion. This error warrants a <u>31.3%</u> reduction to the calculated royalties due.

10. Frontier's Pre-Trial Brief is incorporated by reference herein.

11. Frontier has not conceded infringement or validity of the Patents-in-Suit.

12. IV's conduct, and that of IV's counsel, in the present matter with regard to its acknowledgement and disclosure of the relevant licenses has been vexatious, unreasonable, wanton and in bad faith. In addition, this matter is an exceptional case pursuant to 35 U.S.C. § 285.

## V.   ISSUES TO BE TRIED

1. The amount of damages in the form of a reasonable royalty that would be owed if liability is ultimately proven.

2. The amount of prejudgment interest due to IV if liability is ultimately proven and based on the damages (if any) that are determined.

## VI.   EXHIBITS

The parties submit herewith a unified exhibit list as Exhibit A. All but a few of the exhibits are designated as joint exhibits ("JX") and may be freely used by either party. The only exclusively plaintiff exhibits are PX-177-186, which are reserved for plaintiff's trial demonstratives. Similarly, the only exclusively defendant exhibits are DX-162-172, which are reserved for defendant's trial demonstratives. The parties stipulate to the authenticity of the joint exhibits and to the admissibility of the joint exhibits. The parties reserve the right to object to the admissibility of any demonstrative exhibits used at trial.

## VII. IV'S WITNESS LIST

IV identifies the following witnesses it expects to present during its case in chief:

| Witness | Expected Presentation of Testimony |
|---|---|
| Richard Harris | Direct: written witness statement (D.I. 2161 Ex. B) <br><br> Cross: live |
| Douglas Chrissan, Ph.D | Direct: written witness statement (D.I. 2159) <br> Cross: live |
| Walter Bratic | Direct: written witness statement (D.I. 2168 Ex. B) <br><br> Cross: live |

## VIII. FRONTIER'S WITNESS LIST

| Witness | Expected Presentation of Testimony |
|---|---|
| Todd Wells | Direct: written witness statement (D.I. 2163) <br><br> Cross: live |
| Mark Davis | Direct: written witness statement (D.I. 2164) <br><br> Cross: live |
| Thomas Starr | Direct: written witness statement (D.I. 2165) <br><br> Cross: live |
| Dr. Krista Jacobson | Direct: written witness statement (D.I. 2166) <br><br> Cross: live |

| Phil Green | Direct: written witness statement (D.I. 2167, Ex. B) |
| --- | --- |
| | Cross: live |

IX.  **RELIEF SOUGHT**

**IV's Position**

IV seeks the allowance and payment of an unsecured claim in the amount of at most $1,961,647 on account of Frontier's prepetition infringement and the payment of administrative expenses in the amount of at most $103,229 on account of Frontier's post-petition infringement through the effective date of the Plan. IV agrees that Frontier may be entitled to a credit against the infringement royalties for the amount associated with its use of Adtran/Lantiq-Infineon DSLAMs in relation to the '068, '171 and '532 patents. The exact number of the credit will be determined at trial to the extent that Frontier can quantify the number of affected DSLAMs, but IV currently approximates the amounts due after the credit to be at least $1,310,960 for the prepetition period and at least $45,447 for the post-petition period.

Frontier's infringement is continuing, and accordingly IV reserves the right to seek damages of up to $278,964 for infringement that has taken place and continues to take place following the effective date. Further, IV seeks pre-judgment interest. IV also reserves the right to seek trebling of damages for post-petition infringement as well as fees due to Frontier's willful infringement.

**Frontier's Position**

As an initial matter, Frontier seeks an order dismissing IV's claims, awarding IV nothing, and awarding Frontier its attorneys' fees and any other relief the Court deems proper for the reasons set forth in Frontier's Memorandum of Law in Support of it Motion to Dismiss. *See* Dkt. 2150.

To the extent Frontier's requested relief is not fully granted, Frontier further seeks a determination (*e.g.* findings of fact and conclusions of law) of the appropriate measure of damages in the event that liability is ultimately proven, specifically that IV would be entitled to no more than $60,000 for the entire damages period (pre-petition, post-petition, and through the remaining life of the last Patent-in-Suit).

Dated:  October 26, 2022

                            */s/ David A. Herman*
Martin J. Black (admitted *pro hac vice*)
Jeffrey B. Plies (admitted *pro hac vice*)
David A. Herman
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
Email: martin.black@dechert.com
       jeffrey.plies@dechert.com
       david.herman@dechert.com


*/s/ Timothy R. Shannon*
Timothy R. Shannon (admitted *pro hac vice*)
Seth S. Coburn (admitted *pro hac vice*)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: (857) 488-4200
Facsimile: (857) 488-4201
Email: trshannon@duanemorris.com


**IT IS SO ORDERED:**

Dated:  November 2, 2022
       New York, New York

                              **/s/ Martin Glenn**
                              MARTIN GLENN
              Chief United States Bankruptcy Judge