1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 20-22476-mg
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
5  In the Matter of:
6
7  FRONTIER COMMUNICATIONS CORPORATION,
8
9           Debtor.
10 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
11
12               United States Bankruptcy Court
13               One Bowling Green
14               New York, NY  10004
15
16               May 15, 2023
17               11:00 AM
18
19
20
21  B E F O R E :
22  HON MARTIN GLENN
23  U.S. BANKRUPTCY JUDGE
24
25  ECRO:  JONATHAN

Page 2

1  **HEARING re Status Conference Using Zoom for Government.**
2  **(Doc## 2197, 2198, 2199, 2200)**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by: Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   LAW FIRM OF RUSSELL R. JOHNSON III, PLC

 4        Attorneys for Niagara Mohawk Power Corporation

 5        2258 Wheatlands Drive

 6        Manakin Sabot, VA 23103

 7

 8   BY:  RUSSELL R. JOHNSON III

 9

10   KIRKLAND & ELLIS LLP

11        Attorneys for the Debtor

12        1301 Pennsylvania Ave.

13        Washington, DC 20015

14

15   BY:  MCCLAIN THOMPSON

16

17   UNITED STATES DEPARTMENT OF JUSTICE

18        Attorneys for the U.S. Trustee

19        201 Varick Street, Suite 1006

20        New York, NY 10014

21

22   BY:  GREG ZIPES

23

24   ALSO PRESENT TELEPHONICALLY:

25   UDAY GORREPATI
```

1                 P R O C E E D I N G S

2            CLERK:  All right.  Starting the hearing calendar

3    for May 15, 2023, at 11 a.m. calling Frontier Communications

4    Corporation, Case No. 20-22476.  Mr. Thompson, if you could

5    give your appearance, please?

6            MR. THOMPSON:  Good morning.  McClain Thompson,

7    Kirkland & Ellis, on behalf of Frontier.

8            CLERK:  All right.  Thank you, and Mr. Johnson?

9            MR. JOHNSON:  Good morning.  Russell Johnson on

10   behalf of Niagara Mohawk Power Corporation, doing business

11   as National Grid.

12           CLERK:  All right.  Thank you.  Judge, would you

13   like to wait for Mr. Zipes?

14           THE COURT:  Yeah, let's wait for Mr. Zipes.  We'll

15   wait a few more minutes.  Thank you.

16           CLERK:  All right.  Thank you.  You could pause

17   the recording for now, Jonathan.  Mr. Zipes, if you could

18   give your appearance, please?

19           MR. ZIPES:  Yes.  Greg Zipes with the U.S.

20   Trustee's Office.  I apologize for the delay in entering the

21   screen.  I don't expect to speak today.

22           CLERK:  All right.  Judge, would you like to

23   start?

24           THE COURT:  Yes, I would.  Thank you, very much

25   and good morning, everybody.  So, the Court received the

1    letter from Mr. Johnson at ECF 2197.  I entered the Order

2    2199, which required the Reorganized Debtor to respond to

3    Mr. Johnson's letter and set the hearing for today and

4    Kirkland filed Frontier's response, which is ECF Docket No.

5    2200.  So, I have all those before me.  Frontier's response

6    indicates there's been ongoing -- there is ongoing dialog

7    with Mr. Johnson's client.  Mr. Johnson, I'll give you a

8    chance to speak first.  But where are we?

9             MR. JOHNSON:  Your Honor, (indiscernible).  Russ

10   Johnson on behalf of Niagara Mohawk Power Corporation.  Your

11   Honor, I have had, since we filed those letters, subsequent

12   communications with Mr. Thompson and first of all, the

13   clients are having discussions, but not the high-level

14   communications mischaracterized in Frontier's letter.  I'll

15   be real brief because we've, essentially, agreed on a

16   framework that we'd like to propose to Your Honor to deal

17   with this.  But this is so basic, the folks at Frontier, I

18   guess, because of a lot of turn over, don't even know how to

19   deal with these joint pole proposals.  I call them JPPs.

20   So, these meetings are, like, baby steps.  These are

21   business level people meeting, explaining to them how this

22   process works so that they understand what they're supposed

23   to do when they get these things, which are pole sets.

24   They're either putting a new pole in or replacing a pole or

25   whatever, and how it gets invoiced and how they're supposed

1   to respond, the time limit that they're supposed to respond.
2   So, that's all it is.  Those meetings are -- we requested
3   them, they've been set up and that's one set of meetings
4   that is occurring.
5           There is another set of meetings which happen
6   every two weeks and that is high level folks.  That is on
7   the safety issues, okay.  And that has been productive, and
8   I think both of us have explained in the letter where that
9   was.  There was an agreement.  Frontier proposed a
10  completion date of June 30th for all of its safety
11  violations and then recently, that got possibly sidetracked,
12  which raised a lot of concern because we've been dealing
13  with these issues for some time.
14          So, what Mr. Thompson and I talked about this
15  morning, and sending some communications last week on, is
16  the (indiscernible) format for Your Honor to consider.  The
17  Debtors have not -- I'm sorry, Judge, Reorganized Debtors,
18  Frontier, had not filed a response to our cure objection and
19  we kept granting theme extensions as it looked like the
20  parties were working together.  So, what we've agreed upon,
21  if it's okay with Your Honor, is that the Frontier
22  Reorganized Debtor would file their reply to the cure
23  objection by June 16th, a couple of weeks away or a month
24  away at this point.  And then, the Debtor, Frontier says
25  that they're really trying to get these safety violations

1   done by June 30th.  So, what we've agreed upon is that, if

2   we could come back to Your Honor sometime during the week of

3   July 10th, whatever your schedule permits, for a continued

4   status conference because by then, the proof will be in the

5   pudding, so to speak.  They will have either remedied all

6   the safety violations by the June 30th agreed date or they

7   will have not, and we'll know better that time.  And in the

8   interim, we had some productive discussions and exchange of

9   documents this morning.  We'll continue to work on those

10  paths.  So, that -- it, sort of, came to a head, wasn't

11  moving anywhere, made a request and we --

12              THE COURT:  Well, you got their attention.

13              MR. JOHNSON:  And we appreciate you setting this

14  on such short notice.  But as I said, that would be our

15  proposed framework, June 16th or their reply to the cure and

16  sometime -- whatever your schedule permits during the week

17  of July 10th, a continued status conference.

18              THE COURT:  I'm looking at my schedule now.  Hang

19  on.  Bear with me, I've got to look at two different

20  calendars.  All right, let's set a hearing for 10 a.m. July

21  12th.  That's a Wednesday.

22              MR. JOHNSON:  That works.  Thank you, Your Honor.

23              THE COURT:  Mr. Thompson, does that work for you?

24              MR. THOMPSON:  Yes, Judge, and if I have a -- may

25  I have a moment when we're --

1         THE COURT:  Yeah.  Just let me see.  I'm -- let me
2    make clear, I'm hoping you're all going -- that your clients
3    are going to resolve this.  Mr. Johnson, how many poles are
4    we talking about?
5         MR. JOHNSON:  There are 5,600 joint pole proposals
6    that cover 55,000 poles.
7         THE COURT:  I think this is great.  We could have
8    a hearing on pole by pole.
9         MR. JOHNSON:  I think both clients are aware that
10   they do not want to litigate this, Your Honor.  But progress
11   does need to be made, but yes.
12        THE COURT:  Yeah, I agree with that.  Let me make
13   clear, I'm setting this for July 12th at 10 a.m.  It is not
14   going to be an evidentiary hearing.  I'm hopeful that you'll
15   get this all resolved by then.  I'm certainly -- if you come
16   up with a proposed resolution and you put it in the form of
17   a stipulation and timely file it, I'll certainly hear it at
18   that time, okay.  If I -- God only knows what a contested
19   hearing in this would look like.  I'm sure you'd both have a
20   lot of fun doing that and your clients would be paying a
21   fortune to do it.  What I would suggest is, if you have some
22   progress to report on, put it in a letter, a status letter.
23   And I'm certainly prepared -- if the clients are making
24   progress, but haven't yet got it fully resolved, but are
25   moving toward that, I would be pleased, certainly, to put

1  off the July 12th conference. We'll keep it on the calendar
2  unless both of you agree to adjourn it again. And frankly,
3  I think, the only real reason for adjourning it would be if
4  you're both satisfied and your clients are satisfied that
5  progress is being made in resolving the issues.
6          I have to leave in the afternoon. I'm setting it
7  for the morning, for 10 a.m. We're going to do it as a Zoom
8  hearing. I am out of the office at an ABI conference
9  speaking at an ABI conference, on July 13th and 14th and I
10 need to travel on the afternoon of the 12th, so I do -- I
11 don't have anything else set for the morning of the 12th,
12 but I'm fine with the hearing to talk about where you are.
13 Hopefully, you've got a resolution. If not, we'll figure
14 out where it's going to go. I mean, it's obvious that this
15 is a long-standing dispute. To the extent that no-one
16 remaining at Frontier has the necessary knowledge to resolve
17 it, it complicates it. I understand that. But hopefully,
18 your respective clients will try to reach an appropriate,
19 practical resolution to this. Okay. Mr. Thompson, do you
20 want to address some of these issues? Go ahead.
21         MR. THOMPSON: Yes, just briefly. And I
22 appreciate Mr. Johnson working with us and I think the
23 schedule is sensible and allows us to make progress with the
24 goal that we're filing very little or nothing at all.
25 Briefly, on the comments about Frontier's capabilities in-

1  house, I will say -- I'll say this, we had more than 100

2  pole attachment counterparties on our executory contract

3  list.  We have resolved virtually all of that, so I think

4  the company is able to resolve these issues.  And I'll just

5  leave it there and with thanks for Mr. Johnson for working

6  with us this morning to -- we're making progress and we'll

7  get this done.

8              THE COURT:  Okay.  So, as I say, if you're making

9  progress, but are not there yet, and you both agree to put

10 off the July 12th, I'll give you another hearing date.  I

11 mean, if you decide to move it, you'll get a fairly prompt

12 hearing date.  There's no problem about that.  Okay?

13             MR. JOHNSON:  Thank you, Your Honor.

14             MR. THOMPSON:  Thanks, Judge.

15             THE COURT:  All right.  Thanks very much.  Okay.

16 We're adjourned.

17             (Whereupon these proceedings were concluded at

18 11:12 AM)

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6  *[signature: Sonya M. Ledanski Hyde]*

7

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date: May 16, 2023