**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FRONTIER COMMUNICATIONS<br>CORPORATION, *et al.*,<br><br>Reorganized Debtors. | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 20-22476 (MG) |

**OPINION GRANTING MOVIE COMPANY CLAIMANTS' REQUEST TO SERVE CABLE
COMMUNICATIONS ACT SUBPOENAS ON FRONTIER AND AUTHORIZING FRONTIER
TO DISCLOSE SUBSCRIBER INFORMATION**

*A P P E A R A N C E S:*

MORGAN, LEWIS & BOCKIUS LLP
*Counsel for the Record Company Claimants*
101 Park Avenue
New York, NY 10178
By:    Michael Luskin, Esq.
        Stephen E. Hornung, Esq.

       and

OPPENHEIM + ZEBRAK, LLP
*Counsel for the Record Company Claimants*
4350 Wisconsin Avenue, NW, Fifth Floor
Washington, DC 20016
By:    Matthew J. Oppenheim, Esq.

461 Fifth Avenue, 19th Floor
New York, New York 10017
By:    Alexander Kaplan, Esq.
        Carly Kessler Rothman, Esq.

AKERMAN LLP
*Counsel for Frontier*
71 South Wacker Drive 47th Floor
Chicago, Il. 60606
By:    Rubén Castillo, Esq.
        Ildefonso Mas, Esq.

CULPEPPER IP
*Counsel for the Movie Company Claimants*
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI 96740
By:     Kerry S. Culpepper, Esq.


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       This opinion addresses whether the Court should authorize issuance of subpoenas by Movie Company Claimants (defined below) that filed claims in the Chapter 11 case of Frontier Communications Corporation ("Frontier") alleging contributory copyright infringement by Frontier, a telecommunications and internet services provider ("ISP"). The subpoenas would require Frontier to disclose personally identifiable information of Frontier's internet subscribers ("Subscribers," and such information, "Subscriber PII") who allegedly directly infringed Movie Company Claimants' copyrights by transferring copyrighted movies over Frontier's internet network. Movie Company Claimants have identified the IP addresses of the alleged infringers but cannot identify those infringers' names and other identifying information without obtaining that information pursuant to the subpoenas from Frontier. The Cable Communications Privacy Act, 47 U.S.C. § 551, *et seq.* ("CCPA"), regulates but does not prohibit the disclosure of such subscriber information. Frontier objects to the issuance of the subpoenas.

       For the reasons explained below, the Court overrules Frontier's objection and authorizes the issuance of the subpoenas (the "CCPA Subpoenas"), limited to the time period beginning October 13, 2016, and subject to the requirement in CCPA section 551(c)(2)(B) that Frontier notify the subscriber that the proposed disclosure is "made pursuant to a court order authorizing such disclosure . . . ." 47 U.S.C. § 551(c)(2)(B).

## I.    BACKGROUND

### A.    Frontier's Chapter 11 Case

On April 14, 2020, Frontier filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. (*See* ECF Doc. # 1.) On August 27, 2020, the Court confirmed Frontier's Chapter 11 plan of reorganization (ECF Doc. # 1005-1). The plan became effective and Frontier emerged from the Chapter 11 case on April 30, 2021. The Record Company Claimants[1] and Movie Company Claimants[2] (together, "Claimants") filed proofs of claim for pre-petition and post-petition (pre-effective date administrative expenses) copyright infringement against Frontier.[3] Frontier objected to Claimants' claims and administrative expenses (*see* ECF Doc. ## 1818, 1951), to which Claimants responded (*see* ECF Doc. ## 1902, 1984) (these claims and administrative expenses, the "Contested Matters").

### B.    Discovery of Personally Identifying Information of Frontier's Subscribers Who Directly Infringed Movie Company Claimants' Copyrights

On November 6, 2023, counsel for Frontier and Claimants submitted a *Joint Status Report and Proposed Case Management and Scheduling Orders re the Copyright Claimants'*

---

[1] The Record Company Claimants are: UMG Recordings, Inc. and Capitol Records, LLC; ABKCO Music & Records, Inc.; Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, L.L.C., and Zomba Recording LLC; Atlantic Recording Corporation, Atlantic Records Group LLC, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Fueled by Ramen LLC, Maverick Recording Company, Nonesuch Records Inc., Rhino Entertainment Company, Rhino Entertainment LLC, Roadrunner Records, Inc., Warner Music Inc., Warner Music International Services Limited, Warner Music Nashville LLC, and Warner Records Inc.

[2] The Movie Company Claimants are: Voltage Holdings, LLC; Backmask, LLC; Union Patriot Capital Management, LLC; Venice PI, LLC; Bedeviled, LLC; MON, LLC; Colossal Movie Productions, LLC; TBV Productions, LLC; Definition Delaware LLC; I Am Wrath Productions, Inc.; Hannibal Classics Inc.; Justice Everywhere Productions LLC; Badhouse Studios, LLC; After Productions, LLC; Rise Up, LLC; Status Update LLC; Morgan Creek Productions, Inc.; Shock and Awe, LLC; Fun Mom Dinner, LLC; Dead Trigger Movie, LLC; YAR Productions, Inc.; Gunfighter Productions, LLC; Ace in the Hole Productions, LP; SF Film, LLC; The Rest of Us, Inc.; Killing Link Distribution, LLC; Cell Film Holdings, LLC; Dallas Buyers Club, LLC; Screen Media Ventures, LLC; Rambo V Productions, Inc.; Millennium Funding, Inc.; Millennium IP, Inc.; LHF Productions, Inc.; UN4 Productions, Inc.; Millennium Media, Inc.; Bodyguard Productions, Inc.; Hunter Killer Productions, Inc.; Fallen Productions, Inc.; HB Productions, Inc.; Laundry Productions, Inc.; Black Butterfly Film, LLC; AMBI Distribution Corp.; Dubious Productions, Inc.; Rupture CAL, Inc.; Future World One, LLC; Groove Tails

*Infringement Claims Against the Reorganized Debtors* (the "Status Report," ECF Doc. # 2227). The Status Report addressed whether the Court should authorize the issuance of subpoenas that require Frontier to disclose Subscriber PII about Subscribers who allegedly directly infringed Movie Company Claimants' copyrights, and the time period over which discovery should be permitted.

On November 21, 2023, the Court held a case management conference concerning the contested issues raised in the Status Report. Following the conference, the Court entered *Case Management Order #1 After Conference in Contested Matters of Copyright Claims Objections* ("Management Order #1," ECF Doc. # 2229). The Court did not address all contested issues in Management Order #1. The Court writes here separately to address the issue of CCPA Subpoenas.

C. **The Bankruptcy Court Copyright Claims and the District Court Actions**

In addition to the Claims filed in the Bankruptcy Court, Claimants as plaintiffs filed actions in the U.S. District Court for the Southern District of New York[4] (the "District Court Actions") alleging post-effective date copyright infringement against Frontier, again based on alleged contributory copyright infringement by Frontier of its subscribers' direct copyright

---

Productions, LLC; Family of the Year Productions, LLC; Eve Nevada, LLC; After II Movie, LLC; and Wonder One, LLC.

[3]   The Record Company Claimants filed the following claims: Claim. Nos. 3560, 3821, 3822, and 3832, amended at Claim Nos. 3944, 3946–48.

   The Movie Company Claimants filed the following claims: Claim Nos. 2169, 2137, 2177, 2128, 2132, 2131, 2150, 2167, 2119, 2192, 2269, 1378, 1372, 1394, 1434, 2168, 2121, 2129, 2163, 2125, 2264, 2228, 2236, 2237, 2233, 2193, 2235, 2159, 2283, 2511, 2659, 2742, 2741, 2747, 2748, 2750, 2755, 2752, 2754, 2757, 2756, 2759, 2777, 2853, 2858, 2865, 2901, 2856, 2862 3131, 3806, 3807, 3803, 3808, 3804, and 3812.

[4]   *See UMG Recordings, Inc. v. Frontier Communications Corporation*, Case No. 1:21-cv-05050-AT; *UMG Recordings, Inc. v. Frontier Communications Corporation*, Case No. 1:21-cv-05253-AT; *Voltage Holdings LLC et al. v. Frontier Communications Corporation*, Case No. 1:21-cv-05708-AT.

4

infringement.  The District Court Actions are pending before the Hon. Analisa Torres.  The Contested Matters and the District Court Actions raise many common factual and legal issues.

Claimants filed motions to withdraw the reference of the Contested Matters from the Bankruptcy Court, which Judge Torres denied in two written orders.  (*See* 21-cv-5050, ECF Doc. # 15; 21-cv-5708, ECF Doc. # 20.)  In prior proceedings in the District Court, Judge Torres determined that discovery in the Contested Matters and District Court Actions should proceed together in the Bankruptcy Court.

        **D.**        **The Discovery Schedule Dispute**

The Status Report reflects several disagreements regarding discovery.  First, Frontier and Claimants dispute how long the Court should permit for fact and expert discovery, and the numbers of fact and expert witness depositions the parties should be permitted to take.  Those issues will be resolved in a comprehensive discovery scheduling order that will be entered after the parties complete some initial Court imposed requirements.  (*See* Management Order #1).  Another disagreement, which is the subject of this opinion, is whether the Court should authorize the issuance of CCPA Subpoenas, authorizing the disclosure of Subscriber PII to Movie Company Claimants, and the time period such CCPA Subpoenas should cover.

        1.    <u>Frontier's Position</u>

Frontier opposes the CCPA Subpoenas.  It cites two cases for the proposition that "[CCPA Subpoenas] are disfavored for DMCA claims involving a conduit internet service provider such as Frontier." (Status Report at 19–20, *citing Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417 (S.D.N.Y. July 6, 2015) (herein after "*Malibu Media*") and *Matter of Cox Comm'ns, LLC*, No. MC 23-00263 JMSWRP, 2023 WL 6907124 (D. Haw. Aug. 31, 2023) (herein after "*Matter of Cox*").

5

2. <u>Movie Company Claimants' Position</u>

Movie Company Claimants request entry of a scheduling order authorizing them to "immediately serve a request for production of documents requesting identification information (name, physical address, e-mail address, and lease log identifying time frame IP address was assigned…)" pursuant to 47 U.S.C. § 551(c)(2)(B). (Status Report at 28.) Movie Company Claimants further request entry of an order (the "Proposed Cable Act Order," Status Report at 34) providing that "[p]ursuant to the [CCPA], the Court authorizes [Frontier] to disclose [Subscriber PII] of the individuals or entities to whom Debtor assigned certain IP addresses identified by [Movie Company] Claimants." (Proposed Cable Act Order ¶ 1.)

Movie Company Claimants address the issue of third-party subpoenas in their response ("Movie Response," ECF Doc. # 1894) to Frontier's claim objection ("Movie Objection," ECF Doc. # 1818). Movie Company Claimants argue that the information sought in the CCPA Subpoenas is necessary to establish Subscribers' direct infringement, which is a prerequisite to establishing Frontier's secondary liability for such infringement. (Movie Response at 19.)

## II.   **LEGAL STANDARD**

Section 551 of the Cable Communications Privacy Act, the 47 U.S.C. § 551, provides, in relevant part:

> (c) DISCLOSURE OF PERSONALLY IDENTIFIABLE INFORMATION
> (1) Except as provided in paragraph (2), a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator.
> (2) A cable operator may disclose such information if the disclosure is—
> [. . .]
> (B) subject to subsection (h), made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed;

47 U.S.C. § 551.

### III.    ANALYSIS

For the reasons explained below, the Court finds that Movie Company Claimants have established good cause to require Frontier to disclose the alleged infringing Subscribers' PII that Movie Company Claimants are seeking. To establish their claims for contributory infringement, Movie Company Claimants must show direct infringement by the Subscribers for whom they have IP addresses. Frontier's caselaw and arguments seeking to bar this discovery are unpersuasive.

#### A.    Frontier's Caselaw is Inapposite

Neither case cited by Frontier is instructive here. *Malibu Media,* 2015 WL 4092417, concerned a copyright holder directly suing internet subscribers. *Matter of Cox Comm'ns, LLC*, 2023 WL 6907124, concerned a different type of subpoena, authorized by section 512(h) of the Digital Media Communications Act ("DMCA"), not 551(c) of the CCPA.

In *Malibu Media,* plaintiff Malibu Media LLC ("Malibu") held copyrights to a vast library of adult content, and was notorious for using such subpoenas to (1) identify individual users via their IP address and (2) seek "quick, out-of-court settlements" using tactics "clearly calculated to embarrass defendants" and which "raise[d] serious questions about misuse of court procedure." *Malibu Media,* 2015 WL 4092417, at *3. It was not the "discovery tools" that made abuse likely, as Frontier suggested; rather, the abuse was Malibu using the CCPA Subpoenas to target *individual* internet users and extract "quick, out-of-court settlements." *Id.* Here, neither side has suggested that Movie Company Claimants will use the CCPA Subpoenas to "target" anyone besides Frontier. Rather, as discussed *supra*, Movie Company Claimants require the CCPA Subpoenas to establish direct copyright infringement.

7

In *Matter of Cox*, the district court analyzed subpoenas authorized under section 512(h) of the DMCA ("DMCA Subpoenas"), *not* those authorized under section 551(c) of the CCPA. The Court concluded that DMCA Subpoenas were only proper when the internet provider was "storing" or "hosting" the infringing information, but not when it was merely the conduit. *Matter of Cox,* 2023 WL 6907124, at *3. However, Movie Company Claimants are not requesting DMCA Subpoenas; they are instead requesting CCPA Subpoenas, which *Matter of Cox* does not address.

Accordingly, the Court is unpersuaded by Frontier's arguments.

**B.    Movie Company Claimants Have Established Good Cause to Issue the CCPA Subpoenas**

Federal Rule of Civil Procedure 26(d)(1) provides that parties "may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ." FED. R. CIV. P. 26(d)(1). However, such discovery is permitted when "authorized . . . by court order." *Id.* The standard for granting that order is "generally viewed as requiring a showing of good cause." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 87 (E.D.N.Y. 2012).

Factors to consider in determining whether there is "good cause" for the disclosure of an alleged infringer's information through an ISP include: "(1) a concrete showing of a *prima facie* claim; (2) a specific discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) a minimal expectation of privacy by the defendant in the requested information." *Rotten Records, Inc. v. Doe*, 107 F. Supp. 3d 257, 258–59 (W.D.N.Y. 2015) (quoting *Catlin v. Global*, No. 14-CV-6324L, 2014 WL 3955220, at *2 (W.D.N.Y. Aug. 13, 2014)).

These factors were announced by the Second Circuit in *Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010), originally as a test for determining when to quash a subpoena seeking

personally identifiable information from ISP subscribers. However, courts have also applied the *Arista* factors to the "good cause" inquiry to *issue* such a subpoena, as outlined above. *Rotten Records, Inc. v. Doe*, 107 F. Supp. 3d 257.

1. <u>Movie Company Claimants have made a *prima facie* claim of infringement</u>

To establish direct copyright infringement, a plaintiff must "establish (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." *Byrne v. British Broad. Corp.*, 132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001) (citing *Twin Peaks Prods. v. Publ'ns Int'l. Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993)). Movie Company Claimants have made a *prima facie* claim of direct infringement by the Subscribers.

Movie Company Claimants have alleged ownership of the copyrights to the movies listed in Exhibit 1 of the Movie Response (ECF Doc. # 1894-1), which relate to their pre-petition[5] and post-petition[6] claims. Movie Company Claimants have engaged a third-party agent who, through the use of proprietary software, monitored the networks for "acts of distribution" and identified "detailed confirmed infringements of specific movie titles, at specific [IP] addresses." (Movie Response at 3, 7.) Movie Company Claimants' allegations are sufficient to establish a *prima facie* case of infringement. This factor thus weighs in favor of granting the CCPA Subpoenas.

---

[5] *See* Claim Nos. 2169, 2137, 2177, 2128, 2132, 2131, 2150, 2167, 2119, 2192, 2269, 1378, 1372, 1394, 1434, 2168, 2121, 2129, 2163, 2125, 2264, 2228, 2236, 2237, 2233, 2193, 2235, 2159, 2283, 2511, 2659, 2742, 2741, 2747, 2748, 2750, 2755, 2752, 2754, 2757, 2756, 2759, 2777, 2853, 2858, 2865, 2901, 2856, 2862 and 3131.

[6] *See* Claim Nos. 3806, 3807, 3803, 3808, 3804, and 3812.

9

2. Specific Discovery Request

The Proposed Cable Act Order authorizes the disclosure of the "names, physical addresses, and e-mail addresses" of "individuals or entities to whom Debtor assigned certain IP addresses identified by [Movie Company] Claimants." (Proposed Cable Act Order ¶ 1.) The CCPA Subpoenas, identifying Subscribers by their IP address, would be specific, targeted requests related to specific, identified instances of infringement. This factor thus weighs in favor of granting the CCPA Subpoenas.

3. Absence of Alternative Means and Need for Subpoenaed Information

A CCPA Subpoena is the only way Movie Company Claimants can obtain the information they seek, and the information they seek is necessary to establish and advance their claim against Frontier. Without a subpoena, ISPs who qualify as "cable operators" under 47 U.S.C. § 522(5), such as Frontier, are "effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of [Subscribers] to [Movie Company Claimants]." *Digital Sin, Inc. v. Does 1-179*, No. 11 Civ. 8172(PAE), 2012 WL 8282825, at *3 (S.D.N.Y. Feb. 1, 2012). This factor thus weighs in favor of granting the CCPA Subpoenas.

4. Expectation of Privacy

Even in cases where copyright holders sought to hold the subscribers *themselves* liable for copyright infringement, the plaintiff's interest in defending their copyrights outweighed the defendants' expectation of privacy. *See Arista Records LLC v. Doe*, 604 F.3d at 124 ("Defendants have a minimal expectation of privacy, especially when they allegedly engaged in P2P network sharing… the notion of [P2P sharing] renders void any pretext of privacy"). *See also Strike 3 Holdings, LLC v. Doe*, No. 1:23-CV-00764 EAW, 2023 WL 6973168 (W.D.N.Y. Oct. 23, 2023); *Rotten Records, Inc. v. Doe*, 107 F. Supp. 3d 257 (W.D.N.Y. 2015).

10

Here, Movie Company Claimants are not seeking to advance claims against the Subscribers; but even if they were, this heightened burden would be met. Movie Company Claimants' interest in obtaining Subscriber PII relevant to their infringement claims outweighs the Subscribers' privacy interest. Accordingly, this factor weighs in favor of approving the CCPA Subpoenas.

### C.    Frontier May Not Withhold Proof of Primary Infringement

It is Frontier's position that "Claimants cannot establish any direct and actual copyright infringement by Frontier subscribers, which is a prerequisite to impose any secondary liability on Frontier." (Movie Objection ¶ 15(a).) Parties do not dispute that primary liability is necessary to establish secondary liability. In order to establish such primary liability, Movie Company Claimants must identify the infringers, for which it must rely on the CCPA Subpoenas. Frontier may not circumvent secondary liability by refusing to provide the information necessary to establish primary liability.

### D.    Subpoenas Will Be Limited to the Period Beginning October 13, 2016

A remaining issue is the beginning date for which discovery may be sought by the CCPA Subpoenas. The statute of limitations for copyright infringement, direct and contributory, is governed by 17 U.S.C. § 507(b), which provides in relevant part: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Since Frontier filed its Chapter 11 petition on April 14, 2020, section 108(c) of the Bankruptcy Code has the effect of extending back the statute of limitations for claims against Frontier filed by the bar date, for three years from the day "before filing of the petition:" April 13, 2017. 11 U.S.C § 108(c).

There is authority that permits discovery for an earlier time period for which any recovery is already barred by the statute of limitations. Evidence relating to activity outside the three-year statute of limitations may be "relevant, probative and admissible," "[a]lthough a Plaintiff may not recover damages for conduct that occurred outside the limitations period . . . ." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 418 (S.D.N.Y. 2011). "[S]uch conduct may be admissible to shed light on the motives with which acts within the limitations period were performed." *Id.* (quoting *Cooper v. Parsky*, 140 F. 3d 433, 440–41 (2d Cir. 1998)). While infringement claims against Subscribers who are the alleged direct infringers for acts preceding the Petition Date are already barred by the statute of limitations, the contributory infringement claims against Frontier rest on proof of the direct infringing conduct. Balancing the privacy interests of Subscribers against the clear interests of Movie Company Claimants in proving and recovering for contributory infringement against Frontier, the Court will permit the issuance of subpoenas for Subscriber PII that reach back six months before the limitations periods expired: October 14, 2016.

## IV.     CONCLUSION

Accordingly, the Court finds that Movie Company Claimants are entitled to the information sought by the CCPA Subpoenas. The Court will authorize Frontier, through an order substantially in the form of the Proposed Cable Act Order, to release such information.

A separate Order granting the requested relief will be entered.

Dated:    December 1, 2023
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge