**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| FRONTIER COMMUNICATIONS CORPORATION, et al., | ) Case No. 20-22476 (MG) <br> ) <br> ) |
| Reorganized Debtors. | ) (Jointly Administered) <br> ) |

## REORGANIZED DEBTORS' MOTION FOR TIME EXTENSION

At last week's status conference, this Court ordered Frontier Communications Corporation ("Frontier") to produce certain documents "within seven days from today." Tr. at 37. The Court made very clear that it was "frustrated with the snail's pace at which discovery is going forward," and it sought to "light a fire under" Frontier to increase the pace of discovery in these proceedings. *Id*.

Frontier heard that message—loud and clear.

The very next day after last week's status conference, Frontier requested a meeting with counsel for the Record Company Claimants to resolve remaining discovery disputes, per the Court's recommendation at the status conference. This meeting occurred on Monday, March 4, 2024. During that conference, Frontier agreed to produce: Frontier's source code for its infringement notice processing system; Frontier's MariaDB database relating to copyright notices, in native form; and documents responsive to the requests on the last page of the Record Company Claimants' letter to this Court (ECF No. 2276), as well as revenue data, that can be produced within 30 days without having to run the parties' negotiated search terms for those categories of documents. Emails were exchanged memorializing the parties' agreement.

Frontier has been working diligently to review, organize, and produce all documents subject to the Court's order. Frontier also retained an additional law firm, in addition to counsel at the Akerman firm, to ensure that any and all resources needed to fulfill its discovery obligations can be brought to bear in support of this litigation. Frontier has collected, reviewed, and produced earlier today 1,379 pages of documents in compliance with the Court's order. This is in addition to huge volume of data and information already produced – hundreds of thousands of emails and notices. Frontier has also produced an additional CSV spreadsheet providing account number information for Frontier customers who have received a notice, which corresponds to prior CSV spreadsheets containing gigabytes of information concerning all of the notice data stored in Frontier's MariaDB database. The raw data for Frontier's MariaDB database, which was not part of the Court's order requiring production within 7 days, is also in the process of being produced, and the data is so large that Frontier's e-discovery team has informed Frontier it will take several days for the computers to run their course for production.

Notwithstanding those efforts, Frontier has more work to do, and it is in need of a short extension to complete the production of one remaining category of documents that the Record Company Claimants only today clarified that they believe should be included in the production due today. Frontier therefore respectfully requests that the Court grant this extension, to and including Friday, March 15, to produce documents responsive to request number 13 of the Record Company Claimants' request for production of documents (hereinafter, "RFP No. 13").

Counsel for claimants have stated that they object to this requested extension.

## DISCUSSION

During last week's status conference, this Court ordered Frontier to produce a particular "category" of documents within seven days of the Court's order. Tr. at 37 ("I don't know what

2

I've got to do to light a fire under all of you, but I am ordering that the documents in this category be produced within seven days from today."). Immediately after the Court stated this order, a discussion ensued about the precise scope of the category of documents to which the Court was referring. Attorney Oppenheim initially stated that he understood the category to include documents concerning "Frontier's organizational structure" and other examples from "a list of 23 categories," but the Court stated that this was "[n]ot specific enough for me." *Id*. at 39-40. Mr. Oppenheim then said that what he had previously described was "on the record," and counsel for Frontier confirmed that it would "abide by the transcript." *Id.* The Court instructed Frontier to "go back and read the transcript" and to be guided by it in complying with the Court's direction. *Id.* at 41.

Immediately after this hearing, counsel for Frontier ordered a copy of the transcript. And, working off of counsel's memory and notes, Frontier and its attorneys began collecting, organizing, and preparing documents for production. In particular, Frontier immediately set about to prepare for production, documents responsive to the following requests propounded by the Record Company Claimants:

1. Records, including scripts, created for use on calls, or documents discussing calls between a Frontier employee and any Subscriber identified in Infringement Notices, or in connection with copyright infringement. (RFP No. 8);

2. Frontier's efforts to educate Subscribers regarding copyright or copyright infringement, including Bit-Torrent, and related policies. (RFP No. 10); and

3. Documents concerning limitations, restrictions, caps, or quotas imposed on the number of Infringement Notices Frontier received, accepted, processed, forwarded to Subscribers took a customer-facing action, or otherwise acted upon. (RFP No. 20).

3

In the moments that followed the February 29 status conference, Frontier's counsel immediately conferred with its client about producing these three categories of documents within 7 days. Over those seven days, Frontier's counsel has held numerous conference calls with its client to collect and produce in good faith the documents within these categories. Over 15 Frontier employees have been reached out to in an effort to assist with and expedite Frontier's production. Frontier was not able to obtain or review a copy of the transcript of last week's hearing until 4 days after the hearing was held, on March 4. Frontier had already began its process of collecting and preparing for production the categories of documents described above. Upon doing so, Frontier was able to review the portion of the transcript immediately preceding the Court's oral order, in which Mr. Oppenheim described several categories of documents that may potentially be subject to the seven-day production requirement directed by this Court. This section of the transcript reads as follows:

> MR. OPPENHEIM: ….
>
> So let me give you an example. So we're interested in obtaining their summaries or analyses of repeat infringement.
>
> So we know that they both had an individual who oversaw their infringement notice program and a team that was responsible for dealing with infringement notices. They no doubt did studies and analyses on repeat infringement. Because if they didn't, then our case will actually much easier. It'll show complete (indiscernible).So I'm sure they did something.
>
> And to -- and they're going to come forward and say, oh, we acted responsibly in response to repeat notices So those studies and those analyses you ask them for them, and they'll say, oh, yes, this is where we keep these analyses. This is where I have them, and you produce them.It's not the kind of thing that you need to have search terms to go find.
>
> Or many ISPs that we've dealt with, they have specific scripts that they give to customer relations people on what to say when somebody calls in about an infringement notice. We've asked for copies of those scripts. They -- again, it's the kind of thing -- it's not a search term issue. You go and ask the client do you have these scripts. Please produce them , right?

4

> I could go through over and over. We've asked for educational materials regarding copyright infringement and BitTorrent and the related policies. We've gotten no educational materials, no information related to BitTorrent.
>
> Again, you simply -- it's the same group of people. You ask them where do you have these educational materials if you have any, and you produce them. If you have documents concerning limitations, restrictions, caps, or quotas, again, you simply ask for these documents.
>
> So this is the kind of thing where it's not a search term issue. It's a -- you go and ask a client to search their files. You talk to a variety of people, and you obtain them. And when we get to the -- in a moment issues that Frontier raised in their letter, what you're hear going to hear from us is we've been engaged in an exercise of doing exactly that to try to gather documents in response to one of their queries.
>
> Because it's not search-term compatible. But anyway, their response is, oh, we're only going to look for them with search terms. I don't think that's an appropriate response, Your Honor.

Tr. at 34-36.

On February 29, on the evening following the status conference, the Record Company Claimants' counsel sent an email to Frontier's counsel which did not specify the categories of documents they believed would be due on March 7. They asked for Frontier to list those categories no later than close of business on March 6. On March 4, the parties held a meet and confer but did not discuss those specific categories of documents due on March 7 because the transcript was not yet available. After the meet and confer, the Record Company Claimants' counsel sent another email which did not specify which documents it believed should be due on March 7 and again asked Frontier to specify those categories of documents. On March 6, before the close of business, Frontier's counsel sent an email to opposing counsel indicating the three categories of documents, outlined above, that it would be producing on March 7. On March 7, in the middle of the day, Record Company's counsel explicitly requested, for the first time, a fourth category of documents covering summaries and analyses concerning alleged or repeat copyright infringement.

5

Upon re-reviewing the transcript, Frontier realized that the documents subject (or at least potentially subject) to the Court's order—that is to say, "the documents in this category [to] be produced within seven todays from today," Tr. at 37—could potentially include additional documents described by Mr. Oppenheim in this section of the transcript, including documents relating to Frontier's "repeat [infringement] notice program." *See id*. at 34-36.  Frontier and its counsel then immediately began work to collect and produce these additional documents as well. Specifically, Frontier had lengthy discussions with employees regarding what kind of documents could be responsive to this fourth category, and those documents are in the process of being promptly produced.

Ultimately, Frontier has expended—and continues to expend—extensive resources to both comply with this Court's order and to ensure that the pace and volume of discovery meet this Court's expectations going forward. To that end, Frontier has recently retained the law firm of Day Pitney LLP to act as additional counsel for the company in this matter. Day Pitney, a Connecticut firm with offices and attorneys in close proximity to Frontier's corporate offices, gives the company additional resources, in addition to the undersigned counsel, to ensure that Frontier can meet and exceed this Court's expectations regarding the pace of discovery.

That said, because of the misunderstanding with respect to RFP No. 13, Frontier is unable to complete production of all of the documents responsive to this single category today and needs a brief extension of time to comply. For these reasons, Frontier respectfully requests that the Court grant this motion and extend the time within which Frontier must produce the documents responsive to RFP No. 13 to and including Friday, March 15.

| | |
|---|---|
| Dated: New York, New York<br>March 7, 2024 | Respectfully submitted,<br><br>**AKERMAN LLP**<br><br>By: *Rubén Castillo*<br>Rubén Castillo (Admitted *Pro Hac Vice*)<br>Ildefonso P. Mas (Admitted *Pro Hac Vice*)<br>**AKERMAN LLP**<br>71 South Wacker Drive<br>47th Floor<br>Chicago, IL 60606<br>Tel. No.: (312) 634 5700<br>Fax No. : (312) 424 1900<br>E-mail: ruben.castillo@akerman.com<br>E-mail: ildefonso.mas@akerman.com<br><br>-and-<br><br>John P. Campo<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020<br>Tel. No.: (212) 880 3800<br>Fax No.:  (212) 880 8965<br>E-mail: john.campo@akerman.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I caused a true and accurate copy of the foregoing document to be served upon counsel the Record Companies by filing the foregoing via the Court's ECF system.

*/s/ Rubén Castillo*
Rubén Castillo