1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-22476-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    FRONTIER COMMUNICATIONS CORPORATION,

8

9            Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY   10004

15

16                    March 27, 2024

17                    10:00 AM

18

19

20

21    B E F O R E :

22    HON MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  KS

1    HEARING re Hybrid Hearing RE: FRONTIER'S MOTION FOR JUDGMENT

2    ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE

3    12(C) WITH NOTICE OF MOTION AND EXHIBITS THERETO filed by

4    John P. Campo on behalf of Frontier Communications

5    Corporation. (Document no. 2235, 2246, 2248, 2249, 2258,

6    2280, 2298, 2304)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1  A P P E A R A N C E S :

2

3  OPPENHEIM ZEBRAK, LLP

4       Attorneys for Record Company Claimants

5       461 5th Avenue, 19th Floor

6       New York, NY 10017

7

8  BY:  CARLY KESSLER ROTHMAN

9

10  OPPENHEIM ZEBRAK, LLP

11       Attorneys for Record Company Claimants

12       4530 Wisconsin Avenue, NW, 5th Floor

13       Washington, DC 20016

14

15  BY:  MATTHEW J. OPPENHEIM

16       ALEXANDER KAPLAN

17

18  DAY PITNEY LLP

19       Attorneys for the Debtors

20       225 Asylum Street

21       Hartford, CT 06117

22

23  BY:  MATTHEW J. LETTEN

24

25

Page 4

```
 1   DAY PITNEY LLP

 2        Attorneys for the Debtors

 3        195 Church Street, 15th Floor

 4        New Haven, CT 06510

 5

 6   BY:  JONATHAN TROPP

 7

 8   DAY PITNEY LLP

 9        Attorneys for the Debtors

10        One Stamford Plaza

11        Stamford, CT 06897

12

13   BY:  STANLEY A. TWARDY, JR.

14

15   AKERMAN LLP

16        Attorneys for Frontier Communications Corp.

17        750 9th Street NW, Suite 750

18        Washington, DC 20001

19

20   BY:  ILDEFONSO MAS

21

22

23

24

25
```

Page 5

1    MORGAN, LEWIS BOCKIUS LLP

2        Attorneys for Record Companies

3        101 Park Avenue

4        New York, NY 10178

5

6    BY:  STEPHAN E. HORNUNG

7        MICHAEL LUSKIN

8

9    AKERMAN LLP

10       Attorneys for Frontier Communications Corp.

11       1251 Avenue of the Americas, 37th Floor

12       New York, NY 10020

13

14   BY:  JOHN P. CAMPO

15

16   AKERMAN, LLP

17       Attorneys for Frontier Communications Corp.

18       71 South Wacker Drive, 47th Floor

19       Chicago, IL 60606

20

21   BY:  RUBEN CASTILLO

22

23

24

25

**Page 6**

1    CULPEPPER IP, LLC

2         Attorneys for Badhouse Studios, LLC

3         75-170 Hualalai Road, Suite B204

4         Kailua Kona, HI 96740

5

6    BY:  KERRY STEVEN CULPEPPER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              AUTOMATED VOICE:  Recording in progress.

4              THE COURT:  Please be seated.  All right, good

5    morning, everyone.  Good morning.  We're here for the

6    argument on Frontier's 12(c) motion.  Who's going to argue

7    for Frontier?

8              MR. CASTILLO:  I will, Judge.  Good morning, Chief

9    Judge Glenn.  Frontier's motion --

10             THE COURT:  You just -- everybody needs to

11   remember, each time you speak, you need to identify yourself

12   because --

13             MR. CASTILLO:  Ruben Castillo.

14             THE COURT:  Okay, Mr. Castillo.

15             MR. CASTILLO:  -- for the reorganized Debtor --

16             THE COURT:  Thank you.

17             MR. CASTILLO:  Frontier Communications.

18             THE COURT:  Go ahead.

19             MR. CASTILLO:  Frontier's motion presents a purely

20   legal question, Your Honor.  For the purposes of this

21   motion, we are not challenging the pled facts.  The narrow

22   legal question will resolve all the claims pending before

23   the Court.  The issue is whether the failure to terminate

24   ongoing internet services constitutes an actionable material

25   contribution to infringement by internet subscribers.

Page 8

1          We submit that existing Second Circuit law,

2     Supreme Court law, especially the Twitter case, hold that

3     the failure to terminate internet services is not an

4     actionable material contribution to infringement.  This is

5     so because the failure to terminate is an act of omission

6     and not a concrete active commission that materially

7     contributes to infringement.

8          The claimants focus on the same allegation over

9     and over again in their claims pending before this Court.

10    Frontier failed to terminate customers.  This is a classic

11    case of passive inaction that was rejected by the Twitter

12    court.  This Court will be one of the first Courts to apply

13    Twitter to an internet service provider, but there's nothing

14    unusual --

15          THE COURT:  May I ask you this question?

16          MR. CASTILLO:  Yes.

17          THE COURT:  Do you think that the Fourth Circuit's

18    decision in Sony v. Cox is just simply wrong?

19          MR. CASTILLO:  Absolutely.

20          THE COURT:  Okay.

21          MR. CASTILLO:  Absolutely wrong.  Absolutely

22    ignores Twitter.  They were put on notice about the Twitter

23    decision, which unfortunately came after that case was

24    argued via letter writing procedures provided by the

25    appellate rules and they just totally ignored the Twitter

Page 9

```
 1   decision.
 2            THE COURT:  May I ask you this?  Do you think that
 3   any circuit in your view got it right?
 4            MR. CASTILLO:  Haven't had that opportunity. The
 5   circuits haven't had that opportunity to do that, so --
 6            THE COURT:  You would acknowledge that every
 7   circuit that's ruled on the issue of contributory
 8   infringement has found that properly pleaded, that the claim
 9   can properly be stated, right?  I mean, you're essentially -
10   - yeah --
11            MR. CASTILLO:  Properly pleaded -- yeah.
12            THE COURT:  You're arguing --
13            MR. CASTILLO:  Contributory infringement --
14            THE COURT:  Well, you are.
15            MR. CASTILLO:  -- pleaded, can proceed, Your
16   Honor.  Because that would be --
17            THE COURT:  In your view, no Court, District
18   Court or Circuit Court has gotten it right.
19            MR. CASTILLO:  Haven't had the opportunity to
20   apply to it or, let's put it that way -- the only --
21            THE COURT:  Well, stop.  I really -- I'm going to
22   let you argue.
23            MR. CASTILLO:  Okay.
24            THE COURT:  But I do want --
25            MR. CASTILLO:  Sure.
```

Page 10

1           THE COURT:  -- answers to my questions.

2           MR. CASTILLO:  I will --

3           THE COURT:  In your view, no District Court or

4    Circuit Court that has reviewed issues of contributory

5    infringement, copyright infringement have gotten it right?

6           MR. CASTILLO:  That's not our view, Judge.

7           THE COURT:  What case got it right?

8           MR. CASTILLO:  The Second Circuit.

9           THE COURT:  Which case?

10          MR. CASTILLO:  Gershwin is one.  Matthew Bender is

11   another.  Those are two classic Second Circuit cases.

12   Gershwin focused on causing or materially contributing to

13   the infringing conduct of another.  There, you had a concert

14   promoter who was taking action, putting together concerts

15   with copyrighted works and with selecting those copyrighted

16   works.  Matthew Bender --

17          THE COURT:  Let me ask the question.

18          MR. CASTILLO:  Okay.

19          THE COURT:  In your view, does any case district

20   or circuit, that deals with contributory infringement claims

21   against an ISP, did any of them get it right?

22          MR. CASTILLO:  An ISP?

23          THE COURT:  Yes.

24          MR. CASTILLO:  No.  That's our view.  Matthew

25   Bender, the case, I was just talking about, dealt with CD-

Page 11

1   ROM versions of West opinions and the Matthew Bender Second

2   Circuit case, that was 1998, talks about two types of

3   contributory liability.  The first is personal conduct that

4   encourages or assists the infringement.  So, Matthew Bender,

5   in our view, predicted where Twitter was going to go.

6           The second type of contributory liability is for

7   provision of machinery or goods that facilitate the

8   infringement.  But then Matthew Bender applied the 1984 Sony

9   VCR Supreme Court case that evaluates if the goods or

10  equipment are capable of substantial non-infringing uses.

11  Matthew Bender was not held liable because it did not

12  influence or encourage any unlawful copying and its product

13  was capable of substantial non-infringing uses.

14          Let me just pause for a moment since I mentioned

15  the Supreme Court Sony case, the VCR case from 1984 and

16  compare that to Frontier.  The VCR and the internet are both

17  capable of substantial non-infringing uses.  So there's a

18  total comparison there.  The Supreme Court also evaluated

19  whether or not Sony's advertisements created some

20  encouragement to infringe, because Sony advertised its VCR

21  in a way to encourage owners to build their "own VCR

22  libraries and collection."

23          And that was held not to be encouraging and that's

24  very similar to the only, the only Frontier advertisement

25  cited in the claims where Frontier says you can download ten

Page 12

1    songs in 3.5 seconds.  Both Sony's advertisement of building

2    your own VCR collection as well as Frontier's, you can

3    download ten songs in 3.5 seconds, these are not

4    advertisements that are necessarily speaking about

5    infringing conduct.

6            Both of those things, building a VCR library or

7    downloading music can be perfectly legal.  So we urge this

8    Court to follow the Supreme Court's Sony case and it's that

9    this advertisement alone is not affirmative culpable

10   conduct.

11           So, what is affirmative culpable conduct?

12   Knowledge of misuse is not enough.  That gets me to MGM

13   Studios v. Grokster, 2005 Supreme Court case, which involves

14   a peer-to-peer network that allows persons to download and

15   distribute music.  This is very much like the BitTorrent

16   technology present in our own case.  The Grokster case was

17   all about an infringement business.

18           That was their business model and Grokster, the

19   Supreme Court holds that one who distributes a device with

20   the object of promoting its use to infringe as shown by the

21   clear expression or other affirmative steps taken to foster

22   infringement, is liable for the resulting acts of

23   infringement by third parties.

24           So a defendant cannot avail itself of the Sony

25   substantial non-infringement use defense if its actions or

Page 13

1   statements promote infringement.  The sufficient affirmative

2   culpable conduct in Grokster was, one, customer advice on

3   how to access copyrighted works on its network; two,

4   distribution of articles promoting the software's ability to

5   access copyrighted materials.  In fact, Grokster conceded

6   most of the music downloads on its systems involved

7   infringement.

8           So even while holding Grokster liable, the Supreme

9   Court stated in that case previewing last year's Twitter

10  opinion, "Mere knowledge of infringing potential or actual

11  infringing would not be enough to subject a distributor to

12  liability."  One searches in vain for purposeful culpable

13  conduct by Frontier in the claims before the court.

14          THE COURT:  Even where you -- even where it really

15  is undisputed that Frontier received numerous repeated --

16          MR. CASTILLO:  Notices.

17          THE COURT:  -- notices of --

18          MR. CASTILLO:  It's not disputed and we're not

19  contesting that for purposes of this motion.  But even

20  knowledge of actual infringement is not enough to subject

21  someone to liability.

22          THE COURT:  It wouldn't matter in your view if the

23  record companies sent 1,000 notices of infringement by the

24  same subscriber?  That wouldn't be a basis for liability on

25  the part of Frontier?

1           MR. CASTILLO:  Not a basis for liability with the

2    mere provision of internet services.  Not a basis for

3    liability.  So, in the claims before the Court, there's

4    nothing about advertisements other than you can download ten

5    songs in 3.5 seconds, which is not necessarily infringement.

6    There's no publicity about, you need to use our internet

7    service for infringement.  There's no direct actions to

8    encourage infringements or how to illegally access

9    copyrighted music.

10          Instead, the claims before the Court are based on

11   a failure to terminate internet services.  That's --

12   internet services are substantially non-infringing services,

13   which brings us directly to the Supreme Court's Twitter case

14   from May 18th of last year.  Twitter, in our view is just a

15   natural progression to communication services in general.

16   This is a nine to nothing case which the claimants would

17   love this Court to ignore because it's the final torpedo

18   that sinks their ship, which was already flawed under

19   Grokster.

20          THE COURT:  Can you tell me this, Mr. Castillo?

21   In how many of the ISP infringement, contributor7

22   infringement cases has Twitter been raised?

23          MR. CASTILLO:  It was attempted to be raised in

24   the Fourth Circuit Cox case.

25          THE COURT:  Anywhere else?  You're pretty --

Page 15

1    you're certain about that?

2            MR. CASTILLO:   To my knowledge, has not.

3            THE COURT:  All right.  Go ahead.

4            MR. CASTILLO:  Okay.  The Twitter case involved

5    Facebook, Google, and Twitter.  They are hosting platforms

6    that unlike the internet could be monitored.  The hosts,

7    Facebook, Google, and Twitter made profits by selling

8    advertisements to go with the posts.  The Twitter Court

9    again, following the Second Circuit, says that to have

10   aiding and -- the aiding and abetting liability, you need to

11   focus on conscious, culpable conduct, an affirmative act.

12           The Court was leery about imposing aiding and

13   abetting liability for mere passive nonfeasance.  So, let's

14   look at the specific allegations in Twitter because I think

15   they say a lot.  In Twitter, the allegations were ISIS used

16   platforms for years as tools for recruiting, fundraising,

17   and spreading propaganda.

18           THE COURT:  But the terrorist attacks that were

19   involved in Twitter did not occur on internet platform,

20   correct?

21           MR. CASTILLO:  The terrorist attack did not occur

22   using the platform.  Correct.

23           THE COURT:  And there were no allegations that the

24   platforms were used to plan or coordinate the attacks.

25           MR. CASTILLO:  That's true.  That's true.

Page 16

```
 1              THE COURT:  And there were no allegations that the

 2    platforms had specific notice of the wrongdoing, correct?

 3              MR. CASTILLO:  They had notice of the wrongdoing.

 4              THE COURT:  Did they have notice of the specific

 5    terrorist attacks that were planned?

 6              MR. CASTILLO:  They did not have specific

 7    knowledge of the Turkey attack.

 8              THE COURT:  So, don't those concessions materially

 9    distinguish this case from Twitter because here the

10    wrongdoing allegedly occurred on Frontier's platform?

11              MR. CASTILLO:  Again, the wrongdoing, we do not

12    think they distinguished it because the wrongdoing that

13    occurred in Twitter was terrorism in general and the -- in

14    Twitter, they're using these platforms to fundraise for

15    these weapons that are then used in attacks, but it wasn't

16    linked to that specific attack.  That part is true.  In our

17    case, there is the infringing that's going on, but all we're

18    doing is providing a service.  We do not have knowledge of

19    what specific things are being done by Frontier customers.

20              In Twitter, the ISIS video and messages celebrated

21    terrorism and recruited new terrorists.  They actually

22    posted videos of executions and killings to fundraise, as I

23    said, for specific weapons of terrorism.  The platforms

24    were, according to the allegations, crucial to ISIS' growth.

25    And this gets to your question, Your Honor.  Defendants knew
```

Page 17

1    ISIS was using its platforms in this manner.

2           Then, there was even a more specific allegation

3    that Google reviewed and approved some Isis videos and

4    shared advertising revenue for these videos with ISIS.  All

5    of these specific allegations were found insufficient.  And

6    the Supreme Court affirmed dismissal of the complaint,

7    because just like the claimants in this case, the Supreme

8    Court says, "At bottom, the claim rests less on affirmative

9    misconduct and more on alleged failure to stop ISIS from

10   using these platforms."

11          And that's exactly what the claimants are claiming

12   here before this Court, that we failed to stop these

13   infringers from using the internet platform that we created.

14   But the Twitter Court says "Mere creation of platforms is

15   not culpable."  Then, the Twitter Court goes on to say,

16   "Plaintiffs identified no duty that would have required

17   defendants or other communication services" -- they say, or

18   other communication services -- "to terminate customers

19   after discovering their customers were using the service for

20   illicit ends."

21          There's no common law duty, no other statutory

22   duty.  It's the same as in our case.  And then they go on to

23   say, "A contrary conclusion would effectively hold any sort

24   of communication provider liable for any sort of wrongdoing

25   merely for knowing that the wrongdoers were using the

Page 18

1    services and failed -- failing to stop them.  That would run

2    roughshod over the typical limits of tort liability and

3    (indiscernible) aiding and abetting from culpability."

4             I mean, there couldn't be a broader holding than

5    that.  Any sort of communication provider from any sort of

6    wrongdoing?  I submit to this Court, the Supreme Court knows

7    how to limit its opinions when it needs to.  There was no

8    limitation on that wording at all by the Supreme Court.

9             Now, the claimants might try and limit this broad

10   holding to just terrorists and social media platforms, so

11   let's see what the Twitter Court specifically says about

12   internet providers like Frontier.  The Court goes on to say,

13   "The mere creation of these platforms is not culpable.  To

14   be sure, it might be that bad actors like ISIS use platforms

15   for illegal and sometimes terrible ends, but the same could

16   be said of cellphones, emails, or the internet generally."

17            We generally do not think -- just another quote --

18   "We generally do not think that the internet or cellphone

19   providers incur culpability merely for providing services to

20   the public writ large, nor do we think such providers would

21   normally be described as aiding and abetting."

22            Then they go on to use a drug deal example.

23   Should a phone company be liable because they know that the

24   phones are being used in a drug deal?  And they reject that

25   type of liability.  It's no different than if someone put

Page 19

1    the phone company on notice that a specific house was being

2    used by drug dealers.  Would that phone company be liable

3    because they didn't cut off the phone services to that

4    specific house or address or apartment?  The answer is no,

5    because providing services like internet services is simply

6    not enough, and the failure to terminate internet services

7    is not the required intentional affirmative conduct.

8            At best, it's passive nonfeasance according to the

9    Supreme Court.  So, we believe that claimants are trying to

10   force the round peg, a failure to act, through the square

11   hole of affirmative conscious culpable behavior.  This

12   creative effort should be rejected by this Court.

13           All the secondary copyright claims including the

14   movie specific 1202 claim should be to dismissed, because

15   they're based on the same flawed contributory allegations.

16   As to the vicarious liability claims, will -- the these also

17   should be rejected for reasons stated in our brief.  We can

18   rest on our brief, but it's sufficient to say Frontier has

19   no control and no direct financial tie to any infringement.

20           I'll reserve any remaining time for either

21   questions by this Court or rebuttal, Your Honor.

22           THE COURT:  Let me ask you this.  You're relying

23   the Second Circuit's Matthew Bender decision.

24           MR. CASTILLO:  Yes.

25           THE COURT:  What specifically in that decision,

Page 20

1    are you relying on?

2              MR. CASTILLO:  They found --

3              THE COURT:  Let me just say --

4              MR. CASTILLO:  Yeah.

5              THE COURT:  You quote, excerpts --

6              MR. CASTILLO:  I do.

7              THE COURT:  -- quotes from the decision in your

8    brief.

9              MR. CASTILLO:  Yeah.

10             THE COURT:  And that doesn't seem  -- tell me

11   again.  I don't understand why you think Matthew Bender

12   controls this case.

13             MR. CASTILLO:  Matthew Bender controls this case

14   because they -- that Court did not --

15             THE COURT:  -- at Page 10 in your brief, you say -

16   - you have a parenthetical.  You say, "In any event, we

17   think the substantial non-infringing use test is

18   inapplicable here, as it was in Sony.  The Supreme Court

19   applied that test to prevent copyright holders from

20   leveraging the copyrights in their original work to control

21   distribution of (and obtain royalties from) products that

22   might be used incidentally for infringement but that had

23   substantial non-infringing uses."  That's the end of the

24   quote.

25             MR. CASTILLO:  Right.

```
 1                THE COURT:  I don't see why that --

 2                MR. CASTILLO:  You have a product --

 3                THE COURT:  -- bears -- let me finish my question.

 4                MR. CASTILLO:  I'm sorry.  I didn't realize you

 5        didn't finish your question, Judge.

 6                THE COURT:  I'm slow with getting my questions.

 7                MR. CASTILLO:  No, that's okay.

 8                THE COURT:  That seems to miss the mark here.  Why

 9        do you think -- is there some other quote in Matthew Bender

10        that you think --

11                MR. CASTILLO:  Matthew --

12                THE COURT:  -- is more pertinent to our case now?

13                MR. CASTILLO:  Well, there's a quote in Matthew

14        Bender that says you can't infer infringing intent just from

15        the fact that a product might be misused.  And I think

16        that's exactly --

17                THE COURT:  And they don't -- record companies and

18        movie companies don't rely on some presumption of infringing

19        intent, and the fact that ISPs can be used for infringement.

20        They're relying specifically on a series of notices that

21        advise you that subscribers were infringing their

22        copyrights.

23                MR. CASTILLO:  No, they're trying to use these

24        notices to then get this Court to speculate that there is

25        some type of infringing purpose --
```

Page 22

1          THE COURT:  Not speculate.  I mean, they'd have to

2    prove that, but these are not -- they haven't argued that a

3    single infringement notice is enough to impose liability on

4    Frontier or any other ISP, but -- and I do have a question

5    about how many notices before there'd be liability, but if

6    there are hypothetically, ten infringing notices that a

7    subscriber within a six-month period had infringed

8    copyrights of protected works, why wouldn't that be

9    sufficient to require Frontier to act?

10         MR. CASTILLO:  Ten infringement notices can be

11   generated in one day, Your Honor, in one day.  So, that's

12   what I will tell you, so we're pulling these numbers out of

13   whole cloth just like the claims in this case and --

14         THE COURT:  Well, I'm picking them out of the air

15   as examples.  What about a thousand?  I don't know.  But

16   you're --

17         MR. CASTILLO:  Again, we're just pulling these

18   numbers, you know, what is sufficient --

19         THE COURT:  What about a hundred a week for ten

20   weeks?  Is that -- that wouldn't be enough to establish to -

21   - as a basis for imposing liability of an ISP?

22         MR. CASTILLO:  It's a basis for showing knowledge.

23   It's a basis for showing knowledge, but then you need an act

24   on the part of Frontier.

25         THE COURT:  The act is, you don't cut them off.

Page 23

1    You continue to permit a subscriber who you've received

2    notice of repeated infringement to continue to use your

3    platform and you know --

4              MR. CASTILLO:  That --

5              THE COURT:  Plaintiffs argue that -- the claimants

6    here, plaintiffs in the District Court -- argue that that

7    establishes, that that knowledge is sufficient to impose

8    liability on an ISP.

9              MR. CASTILLO:  And that's where we run squarely

10   into Twitter, which is --

11             THE COURT:  And that's where every other -- every

12   other case that's dealt with an ISP and imposed liability,

13   you think is just wrong.  Right?  That's your position.

14             MR. CASTILLO:  There aren't that many cases, but

15   the cases from other circuits we think are wrong, the pre-

16   Twitter cases, because Twitter says failure to terminate

17   services is not enough --

18             THE COURT:  Let me just come back.  I want to be -

19   - I want to be clear about this.  Other than this one -- I

20   have your brief open on the screen.

21             MR. CASTILLO:  Yeah.

22             THE COURT:  Okay.  Other than this one

23   parenthetical from Matthew Bender, 158 F.3d 707 I quoted,

24   that's the only place in your brief that you even cite

25   Matthew Bender.

1           MR. CASTILLO:  That's our opening brief, Your

2   Honor?

3           THE COURT:  Yes.

4           MR. CASTILLO:  Yeah, I think that's correct.

5           THE COURT:  Okay.  Should I look at your -- do you

6   have a reply brief that you think places greater emphasis on

7   Matthew Bender?

8           MR. CASTILLO:  I would have to look at that.  I'm

9   not sure, as I stand here.

10          THE COURT:  Is there something in Matthew Bender

11  other than this one sentence that you quoted in your opening

12  brief in a parenthetical that you believe applies to this

13  case here?

14          MR. CASTILLO:  It's the fact that Matthew Bender

15  is looking for some expression of infringement

16  encouragement.  That, I think, is the key to Matthew Bender

17  and there's none, so there's no finding of liability.

18          THE COURT:  All right.

19          MR. CASTILLO:  Thank you, Judge.

20          THE COURT:  Thank you very much, Mr. Castillo.

21  Mr. Oppenheim?

22          MR. OPPENHEIM:  Good morning, Your Honor.

23          THE COURT:  Good morning.

24          MR. OPPENHEIM:  For Your Honor's benefit, we have

25  representatives from Sony Music and ABKCO here today, David

Page 25

1   Jacoby and Will Pittenger, among all the other counsel as

2   well.  I will handle the bulk of the argument in response to

3   the 12(c) motion, but Mr. Culpepper, I believe, will be

4   handling the 1202 portion of the argument.

5              THE COURT:  Okay.

6              MR. OPPENHEIM:  So, we're trying to divide it

7   efficiently, Your Honor.

8              THE COURT:  Thank you.

9              MR. OPPENHEIM:  I'll divide my argument into four

10  pieces, Your Honor.  First, I think we need a little bit of

11  a reset on the factual allegations in the case.  Two, I'll

12  talk about Sony and Grokster.  Three, I'll talk about

13  Twitter, and lastly address the vicarious liability claim.

14             As a starting point, Your Honor, it's important to

15  remember that this is a case about Frontier providing high

16  speed --

17             THE COURT:  You didn't do so well on the vicarious

18  liability in Cox.

19             MR. OPPENHEIM:  And I'm prepared to address that.

20             THE COURT:  Okay.  I'm tweaking -- I saw the order

21  denying the rehearing in the Circuit.

22             MR. OPPENHEIM:  Needless to say, I disagree with

23  it, but --

24             THE COURT:  You did pretty well in the case in the

25  trial court, but --

Page 26

1          MR. OPPENHEIM:  I believe the Second Circuit law

2     is completely inconsistent with the Fourth Circuit's

3     decision in Cox and we'll get that on the vicarious

4     liability issue.  So, this is a case about Frontier

5     providing high speed internet service to known repeat

6     infringers and Frontier's profiting from those repeat

7     infringers' continued use of those -- that service after

8     Frontier should have terminated them.

9          So, Frontier wants to pretend otherwise.  The

10    allegations in this case are not that Frontier is some

11    passive provider of infrastructure.  Fundamentally, Frontier

12    knew it had an obligation to terminate repeat infringers.

13    Its acceptable use policy make clear that it would terminate

14    repeat infringers.  Yet, Frontier's internal policies and

15    procedures made a mockery of that acceptable use policy.

16         Frontier in its reply brief argues that its

17    actions were equivocal inaction and passive nonfeasance, and

18    argues that the record companies have not alleged culpable

19    conduct.  That's simply not true.  The claims that are set

20    forth are not only culpable, they're willful and

21    intentional, though we don't even need to show that.  So,

22    between May 1st, 2019 and July 28th, 2023, Frontier received

23    well over 50,000 individual notices that one of its

24    subscribers was contemporaneously engaged in the illegal

25    distribution of plaintiff's copyrighted sound recordings.

Page 27

1              THE COURT:  fifty thousand notices as to one

2      subscriber?

3              MR. OPPENHEIM:  No, no, fifty -- over that period

4      of time, 50,000 total.  But the point is that those notices

5      were sent generally within 24 hours of identifying the

6      infringement and contrary to what Mr. Castillo was

7      suggesting, generally, the plaintiffs would not send more

8      than one notice per day unless that same subscriber was

9      found distributing two different sets of torrents on two

10     different aspects of BitTorrent.

11              Frontier's procedures for responding to the

12     notices changed over time, but up until at least June 29th,

13     2020, Frontier's internal policy was to completely ignore

14     the first 14 infringement notices, essentially throw them in

15     the trash.  It wasn't until the 15th notice regarding that

16     same subscriber, that Frontier would even email a warning to

17     the subscriber to let the subscriber know that they had been

18     identified as infringing.

19              And when they did email them, they would tell the

20     subscriber that their account was in jeopardy, but

21     otherwise, would allow the subscriber to continue to use the

22     service.  On the 25th notice with respect to a particular

23     subscriber, Frontier sent a slightly more, what they call

24     harsh warning email, but otherwise did nothing.

25              Even after 100 notices with respect to a

Page 28

1    particular subscriber, all Frontier would do is send a

2    subscriber an electronic warning.  Now, this is not an email

3    but an electronic warning on the computer system called a

4    walled garden, where the subscriber would have to

5    acknowledge that they had been notified about the

6    infringement.

7            And what we already know from the data, the

8    limited data we have, which is -- we have not yet gotten

9    through, is that there were well over 2,900 subscribers who

10   were the subject of at least 100 notices each.  Now, that's

11   based on the IP addresses.  We expect that those numbers are

12   going to change dramatically as we start looking at the data

13   that's just been produced.

14           And each Frontier subscriber that was illegally

15   distributing the plaintiffs' sound recordings were doing so

16   on a continuous basis worldwide on a network that was built

17   for viral distribution.  That is, when that subscriber

18   distributed to somebody else that somebody else would then

19   distribute it to numerous other people.

20           So, while the ultimate loss to the plaintiffs in

21   terms of the number of illegal recordings that were

22   distributed is incalculable --

23           THE COURT:  How many notices -- how many

24   infringement notices are sufficient in your view to

25   predicate liability?

Page 29

1          MR. OPPENHEIM:  We -- so Your Honor --

2          THE COURT:  What position have you taken in other

3    cases?

4          MR. OPPENHEIM:  The position we're taking here,

5    which is consistent with the position we've taken in other

6    cases is that when a subscriber is the subject of three or

7    more notices, liability should attach.  And that's

8    consistent with generally the concept of three strikes.

9    YouTube, for example, has a three strikes rule, right?

10   Other systems have a three strike rule and God knows

11   American baseball can't be wrong.

12         THE COURT:  Have any of the District or Circuit

13   Court decisions specifically addressed the issue of how many

14   notices are enough to predicate liability?

15         MR. OPPENHEIM:  Not that I'm aware of, Your Honor.

16   Not that I'm aware of.

17         THE COURT:  Okay.

18         MR. OPPENHEIM:  While Frontier claims it

19   terminated repeat infringers, we're not aware of a specific

20   policy that Frontier had that would lead a subscriber to be

21   terminated.  And much like the Grande case, the absence of a

22   policy that set forth the specifics of how termination would

23   occur, there should be no safe harbor.  So, the facts as

24   I've just laid them out don't support Frontier's argument

25   that they weren't culpable, but rather they set forth

Page 30

1    evidence that Frontier's conduct was frankly willful.

2            So Your Honor put your finger on it.  There have

3    been 12 secondary infringement cases brought against ISPs in

4    addition to this one.  All have alleged a similar

5    contributory infringement theory that continuing to provide

6    service to known repeat infringers makes the ISP liable.

7    Not a single one of those has dismissed a contributory

8    infringement claim on the pleadings.  The defendants moved

9    to dismiss the contributory claim in eight of those cases.

10   Those motions have all been denied seven times.  There's one

11   still pending in the second Altice case.

12           So, let me turn to Sony and Grokster, Your Honor.

13   Contrary to Frontier's argument, Sony and Grokster actually

14   support liability over Frontier here.  Every Court to

15   consider these issues has held that an ISP is liable

16   consistent with Sony and Grokster.  So the common law

17   background which Mr. Castillo referred to is the Gershwin

18   case.  One, who with knowledge of the infringing activity

19   induces, causes, or materially contributes to the infringing

20   conduct of another may be held liable as a contributory

21   infringer.

22           That's the language of the Second Circuit, but

23   it's also the language that the Supreme Court relied on in

24   the Grokster case.  So it is the law of the land.

25   Frontier's reading of Sony is completely wrong.  Sony did

Page 31

1    not immunize all sales of services with substantial non-

2    infringing uses.  Grokster explicitly rejected that concept.

3    So, the history of the Grokster case tells the story.  It

4    was unfortunately a history that I had to live through the

5    first several rounds of.  I litigated this case personally.

6          So, the District Court granted summary judgment to

7    the defendants in that peer-to-peer case based on the Sony

8    decision.  The District Court interpreted Sony, told that

9    any service that had substantially non-infringing uses were

10   immune from liability, much as Mr. Castillo has argued here

11   today.  The Ninth Circuit, unfortunately, affirmed that

12   decision.

13         So, it goes up to the Supreme Court and the

14   Supreme Court reversed nine to zero, and the Supreme Court

15   said that the Ninth Circuit and the District Court's

16   interpretation of Sony was incorrect, and went on to expand

17   secondary liability to explicitly say it's not just material

18   contribution, it includes inducement.  The Court in no way

19   said that knowledge and material contribution did not remain

20   a viable theory.  In fact, the Supreme Court cited

21   traditional Gershwin case for that proposition.  Nor did it

22   hold that there can be no liability for service providers

23   without proof of the inducement found in Grokster.

24         So, while the Supreme Court expressly stated that

25   the District Court's decision in Grokster on Sony was wrong,

Page 32

1    it didn't tell us how we should be interpreting Sony.  We

2    just know that what Mr. Castillo said has been explicitly

3    rejected in the Grokster case.  According to Grokster --=

4    excuse me.  The Grokster decision held -- excuse me.

5           The Grokster decision did not hold that the law

6    absolves equivocal inaction, even if that was what Frontier

7    was doing, which they're not.  According to Grokster, where

8    service has a substantial non-infringing use, Sony only

9    requires a showing of additional evidence of statements or

10   actions -- "statements or actions directed to promoted

11   infringement beyond the mere distribution of the service

12   itself."

13          Plaintiffs didn't sue Frontier on the theory that

14   maybe its subscribers were infringing.  Plaintiffs sued

15   Frontier after sending tens of thousands of notices of

16   infringement as to particular subscribers and particular

17   infringement and that that infringement by those subscribers

18   continued after notice.

19          Frontier is also different from Sony because in

20   Sony, it was a disconnected product.  In Sony, the movie

21   studios and Mr. Castillo said it was the VCR, it was

22   actually the Betamax, which frankly many of our kids don't

23   even remember.  But the beta -- the theory in the Sony case

24   was that the Betamax could theoretically be used to

25   infringe, and what we have here is very different.  It's not

Page 33

1   just that they -- that Frontier had knowledge.

2        They have a service that has an ongoing

3   relationship with the subscriber that the Betamax did not

4   have.  They have the ability to control the service after

5   they've sold it, where the manufacturer of the Betamax did

6   not, and that's a substantial and critical distinction.

7        Let me turn to the Twitter decision, Your Honor.

8   So, there are three reasons that the Twitter decision does

9   not apply here.  On the face of the case, there's nothing to

10  suggest that that the case applies to copyright.  It says

11  nothing about copyright law and it would make no sense that

12  the Supreme Court would silently rewrite large swaths of

13  copyright law in a case that is on an entirely unrelated

14  issue.

15       In Twitter, the Supreme Court was considering the

16  application of the Halberstam framework for aiding and

17  abetting liability in the context of a social network

18  platform accused of aiding and abetting terrorism.  That

19  Halberstam framework was established in 1983 by the D.C.

20  Circuit, largely adopted by other circuits.

21       THE COURT:  Excellent pin.

22       MR. OPPENHEIM:  Yeah, it's been widely adopted.

23  That framework was in place and widely adopted at the time

24  that the Supreme Court decided Grokster in 2005 and yet

25  nothing in the Grokster decision looks to the Halberstam

Page 34

1   framework and says, no Grokster shouldn't be held liable on

2   an aiding and abetting theory.  So, the Fourth Circuit was

3   given the opportunity to dismiss the claims, vacate in full

4   the Cox decision on the basis of Twitter.  It chose not to,

5   and Cox then repetitioned -- petitioned for rehearing en

6   banc based on its failure to address Twitter, and the Fourth

7   Circuit denied that petition.  Twitter doesn't radically

8   change the law.  Second --

9           THE COURT:  Have you been back in the District

10  Court yet?

11          MR. OPPENHEIM:  No, we have not.  And the mandate

12  has -- was just temporarily stayed.  Even if Twitter were to

13  apply under Twitter's standard, Frontier's conduct has the

14  direct nexus to its subscriber infringement that is

15  necessary for Frontier to be held liable.  So, Twitter

16  emphasized the lack of a direct nexus between the

17  contribution and the illegal activity in that case, in the

18  Twitter case.

19          So ISIS was not using the defendant's social

20  networks, right, Facebook and others to carry out the

21  terrorist attacks.  Indeed, there were no allegations that

22  the individuals who committed the terrorist act in Turkey

23  that was at issue in the case ever used the defendant's

24  social media services.  So, contrary to what Mr. Castillo

25  said, Twitter was not about the use of the platforms for

1    terrorism generally.  The Twitter case is very specifically

2    about the particular terrorist attack in Turkey.

3            The analogous conduct here would be if the repeat

4    infringers were using Frontier's internet service to discuss

5    infringement that then took place offline.  But that's not

6    what's happening here.  This is a case where the alleged

7    infringement occurred on Frontier's network.

8            THE COURT:  That was the point I tried to make

9    with Mr. Castillo.

10            MR. OPPENHEIM:  Yeah.

11            THE COURT:  As I see it --

12            MR. OPPENHEIM:  The culpability missing in Twitter

13    is present here.  In Twitter, they lacked the knowledge that

14    ISIS would in fact use its service to commit terrorism

15    because ISIS did not use the service to commit terrorism.

16    Here, by contrast, Frontier affirmatively acted and provided

17    special treatment to known repeat infringers.  Frontier

18    chose deliberately to exempt its repeat infringer policy

19    from the known repeat infringers.  Frontier's -- contrary to

20    what Frontier's argued, the Court doesn't need to adopt the

21    Ninth Circuit simple measures test to hold that claimants'

22    stated claim.

23            In Perfect 10 v. Amazon, the Ninth Circuit held

24    that a computer system operator can be held liable if it has

25    actual knowledge of specific infringing materials available

Page 36

1    using its system.  That's the Perfect 10 v. Amazon decision.

2    Again, I don't think we need to get to the simple measures

3    test which was raised, but if we do, it's just another

4    articulation of material contribution.

5           Third, and this is really -- makes absolutely

6    certain that the Twitter case can't apply.  Defendant's

7    interpretation of Twitter would completely upend the DMCA

8    safe harbors.  So the DMCA safe harbors are a carefully

9    calibrated statutory scheme that Congress passed to allow a

10   balance between internet service providers on the one hand

11   and copyright holders on the on the other.

12          Congress recognized that ISPs could potentially be

13   liable for its users' infringement.  And so, it created

14   these ISPs with very specific conditions, including the one

15   that will be at issue before this Court at a later time, the

16   adoption and implementation of a policy to terminate repeat

17   infringers.  If defendant's interpretation of Twitter is

18   correct and means that a service provider can't be held

19   liable, then the statutory safe harbors become completely

20   irrelevant and the careful calibration and the balancing

21   done by Congress gets thrown out the window because ISPs are

22   always immune from liability.

23          THE COURT:  Have you been able to get discovery of

24   what Frontier's policy was?

25          MR. OPPENHEIM:  We're working on it, Your Honor.

1   There's the policy that was stated to its user, the

2   acceptable use policy, which says that they would terminate.

3   Then it was there were -- they had their internal policies

4   of how they would implement that policy, which as I laid out

5   before, had this system which they didn't even notify their

6   users that they had been caught infringing for the vast

7   majority of notices, and they had no policy, as far as we

8   can tell, for termination.  They did it on a haphazard

9   basis.

10          And then the third piece of it is, well, how did

11  they actually implement it?  What did they actually do when

12  they received those notices?  And that's the data we're just

13  receiving now and trying to review, Your Honor.

14          We don't believe there will be any basis for them

15  to claim the safe harbor here.  But if the -- if Frontier is

16  right, then the DMCA safe harbors basically are worthless

17  and they're entirely irrelevant, and what Congress did means

18  nothing.  And that's not what the Supreme Court was doing in

19  Twitter.  The Supreme Court did not suddenly upend a large,

20  significant copyright statute.

21          Your Honor, I'll turn to the vicarious liability

22  claim.  So, Frontier's opening brief didn't even address the

23  vicarious liability claim.  They raised it in their reply

24  brief.  For this reason alone, the motion on that claim

25  should be denied.  But more than that, Twitter has

Page 38

1    absolutely nothing to do with vicarious liability, right?

2    Various liability, there are two elements; the right and

3    ability to supervise and direct financial interest.  There

4    is no requirement --

5            THE COURT:  Have the music and record companies

6    actually recovered against an ISP on the vicarious liability

7    theory?  I understand you did, but the Fourth Circuit

8    disagreed --

9            MR. OPPENHEIM:  And it's still an issue.

10           THE COURT:  It's still an issue.

11           MR. OPPENHEIM:  Yes.

12           THE COURT:  Has liability established in any of

13    the other ISP cases based on various liability?

14           MR. OPPENHEIM:  The vicarious liability claim went

15    forward and was litigated in the charter case before

16    settlement was reached.

17           THE COURT:  Do you really need it?

18           MR. OPPENHEIM:  Pardon?

19           THE COURT:  Do you really need it?

20           MR. OPPENHEIM:  So in the -- it doesn't change the

21    damages, Your Honor, at all.  You can only be liable for

22    infringement once, and it doesn't matter how you get there.

23    But the claim is a viable claim and the claim should

24    survive.  And Plaintiff should have the right to proceed on

25    it.  And its dismissal in Cox is directly contrary to the

Page 39

1    Second Circuit, Your Honor, in the MP3tunes decision, EMI

2    Christian Music Grp. v. MP3tunes, 844 F.3d 79.  It's a

3    Second Circuit 2016 decision.

4            The Second Circuit said that an increase in

5    subscribers or customers due to copyright infringement

6    qualifies as an obvious and direct financial interest.

7    Well, by analogy, retaining subscribers that you otherwise

8    should terminate under your own policies is essentially

9    increasing your subscribers under the MP3tunes language.

10   And the claim is a viable claim.  And that's a significant

11   departure from what the Fourth Circuit held in the Cox case.

12           In the Cox case, there was specific evidence where

13   the internal people within the ISP had sent emails back and

14   forth, saying let's not terminate these subscribers because

15   we don't want to lose the monthly income.  And the Fourth

16   Circuit said that is not a sufficiently direct financial

17   interest.  And in that respect, the Fourth Circuit and

18   Second Circuit are directly at odds with each other.

19           Your Honor, I will leave it at that, unless Your

20   Honor has any questions.

21           THE COURT:  Just give me a moment, okay?  I take

22   your view is it that putting aside whether the Second

23   Circuit or the Fourth Circuit standard on vicarious

24   liability is the correct one, Twitter doesn't foreclose

25   claims for vicarious liability.

1          MR. OPPENHEIM:  Twitter --

2          THE COURT:  Doesn't --

3          MR. OPPENHEIM:  Twitter's -- at issue in the

4     Twitter case is the contribution --

5          THE COURT:  Right.

6          MR. OPPENHEIM:  -- and knowledge elements.  And

7     those aren't elements of a vicarious liability claim.  It

8     doesn't speak to vicarious liability at all.  So, no.  For

9     that reason, Twitter doesn't apply.

10          THE COURT: Okay.  Thank you very much.  Mr.

11     Culpepper?

12          MR. CULPEPPER:  May it please the Court, Kerry

13     Culpepper, appearing on behalf of movie claimants.  Couple -

14     - Your Honor asked about any cases establishing how many

15     notices does it take to establish liability.  I believe

16     relevant are two cases, and although it was the context of

17     the 512(i) Safe Harbor and BMG v. Cox, the Fourth Circuit

18     stated that repeat means more than once.  So in that case,

19     two.  And also the Second Circuit --

20          THE COURT:  No, it means more than one.

21          MR. CULPEPPER:  Yes.  And also Viacom said the

22     same thing in the -- I'm sorry -- the Second Circuit reached

23     same conclusion in the Viacom decision.  I don't have the

24     complete sites for those, but I can provide those later, if

25     Your Honor wishes.

Page 41

1          Also, regarding the notices, I want to add the

2     movie claimants' agent sent at the time of the pre-petition

3     claims 189,000 notices to Frontier concerning ongoing

4     infringement.  And also, they weren't just notices, Your

5     Honor.  I sent a demand letter to Frontier on March 20th --

6     in March of 2020, and that letter detailed specific

7     egregious IP addresses.  There are four IP addresses for

8     which 300 to 500 notices have been sent.  And that was not

9     over a period of days.  It was over a period of some cases

10    of more than a year.  And of those four IP addresses, this

11    is ongoing dispute, Frontier has stated in a letter that

12    they don't even know who the customers were for three of

13    those four IP addresses.

14          So I think that goes to Your Honor's question of

15    how many notices are enough.  We've gone way past three or

16    10 or 100 in this case.  We're up to the -- in some cases,

17    more than 500 notices.

18          I want to raise three -- well, also another point.

19    Your Honor asked about any cases establishing by liability

20    against an ISP.  I believe there was one case cited in

21    everyone's -- well, in Frontier's brief and in my brief --

22    the Millennium Funding v. 1701 case in Southern District of

23    Florida.  There, a VPN provider was held vicariously liable

24    for copyright infringement and 1201 violations, I believe.

25          There are three points I'd like to raise.  The

Page 42

1      movie claimants filed certain pre-petition claims that

2      included a claim for relief based upon 17 U.S.C. 1202.

3      That's violations of the integrity of the copyright

4      management information.  Not only do --

5                 THE COURT:  They added some names or letters on a

6      name and you're -- correct?  That's what you're referring

7      to?

8                 MR. CULPEPPER:  Yes.  But it wasn't just random

9      letters.  They added the names of websites of notorious

10     piracy sites.  So add insult and injury.  Not only did the

11     movie claimants' work get pirated, the name gets changed to

12     add the name of a notorious piracy website.  That's the

13     basis of the 1202 claims.

14                Also, the movie claimants, all of the movie

15     claimants' post-petition administrative claims also included

16     the same claim for relief based upon 17 U.S.C. 1202.  But

17     Frontier's Objection at Docket Entry 1818 does not include

18     any legal arguments in opposition to these 1202 claims.  In

19     fact, there there's not any legal arguments opposing any of

20     the movie claimants' claims in Frontier's objection.  They

21     just discussed the record claimants claims.

22                Now, there's a difference between 1202 and

23     copyright infringement claims.  And to that point, I

24     submitted a supplemental authority.  It's a decision of the

25     District of Colorado in the WideOpen West case.  There's 512

Page 43

1    safe harbor for 1201 claims.  So I just want to make that

2    difference.

3              THE COURT:  That's really not an issue today.  I

4    mean, this is the -- they're arguing that Twitter is

5    determinative of the outcome.

6              MR. CULPEPPER:  True, but I bring that up to

7    emphasize that there's a difference between a 1202 claim and

8    a 106 or 501 copyright infringement claim.

9              Now, in Docket Entry 1841, Frontier filed an

10   amended proposed order that referred to the movie claimants'

11   claims, but still Frontier never made any legal arguments

12   opposing the movie claimants' claims.

13             Again, at Docket Entry 1951, Frontier filed a

14   second proposed amended order referring to the post-petition

15   claims.  But once again, no legal arguments disputing the

16   movie claimants claims.  This isn't a surprise.  I pointed

17   this out in Paragraphs 8 through 11 of movie claimants'

18   opposition brief.  That's Docket Entry 2248.

19             In Frontier's reply brief at Docket Entry 2258,

20   Frontier does not deny that it failed to address movie

21   claimants' claims specifically, or the 1202 claims at all,

22   in its omnibus objection.  Rather, Frontier just argues that

23   because the base of a secondary liability for the 1202

24   claims is the same as the copyright infringement claims, the

25   1202 claims should be dismissed.

Page 44

1          But we're here on a judgment -- a motion for

2    judgment on the pleadings.  There's no pleading from

3    Frontier that disputes the 1202 claims.  So I would submit

4    it'd be improper to grant Frontier's motion for judgment on

5    the pleadings when they haven't even denied the claim in the

6    pleading, particularly in view of a case that 11 U.S.C. 502

7    and 501, a claim is deemed allowed if it's not disputed.  So

8    in this case, the claims are prima facie evidence of the

9    validity of their claim and Frontier hasn't made any

10   specific arguments against these claims.

11          Second argument I'm going to make, opposing

12   counsel started his argument by saying that he was focusing

13   on just legal issues.  But there is an important factual

14   dispute here over whether Frontier really is just a conduit.

15   And the movie claimants dispute that fact.

16          As movie claimants point out in their reply brief,

17   Frontier assigns the IP addresses that its customers use.

18   Frontier provides the modems and leases the modems those

19   customers use to access the Internet.  You know, this is a

20   disputed point, and because this is a disputed point, movie

21   claimants would submit that it's not appropriate to have

22   judgment on Finally, one small point.  Well, not a small

23   point.  You know, as I mentioned earlier, Frontier made its

24   objections and omnibus objection, but it didn't include any

25   arguments opposing the movie claimants' 1202 claims.  I want

Page 45

1    to note that omnibus objection violates Bankruptcy Rule

2    3007(d) because it doesn't any of the criteria -- the eight

3    criteria for an omnibus objection.

4         Also, in Bankruptcy Rule 3007(e)(3), an omnibus

5    objection must state the grounds of the objection to each

6    claim and provide a cross-reference to the pages in the

7    ominous objection pertaining to stated grounds.

8         The object -- I've looked through the plan,

9    Frontier's plan in this case.  There's no portion in the

10   plan that modifies the procedure for omnibus objections.

11   The plan has Section 7, a process for these optional claim

12   resolution processes, but the rule for omnibus objection is

13   not modified.

14        I note Your Honor presided over a case in the

15   Roman Catholic Diocese of Rockville Centre.  In that case,

16   unlike here, the debtor filed a motion to the Court to

17   modify the process for making omnibus objections, and Your

18   Honor granted that request.  So, in that particular case,

19   the debtor submitted an omnibus objection where the debtor

20   just argued that the claims -- the debtor is not liable.

21   But there was no -- doesn't appear that any such motion was

22   made in this case.  For that reason, omnibus objection

23   violates Rule 3007.  Unless Your Honor has any questions --

24        THE COURT:  Thank you very much, Mr. Culpepper.

25        Mr. Castillo?

Page 46

1            MR. CASTILLO:  Thank you, Judge.  I'm going to

2    address Mr. Culpepper first.  We believe the objection that

3    was filed on behalf of Frontier is broad enough to cover the

4    motion that we filed today for judgment on the pleadings.

5            His argument about 1202 is even further removed.

6    This alteration or the use of changing the movie titles,

7    Frontier has not been alleged to have done anything to

8    encourage that particular action, and we think it is covered

9    by the flawed secondary liability theory that's before the

10    Court.  It just doesn't fly, after Twitter.

11            A lot of what you heard from Mr. Oppenheim about

12    these notices -- and Your Honor asked absolutely great

13    questions about how many notices are sufficient -- never

14    been determined by any court, as far as we know.

15            Mr. Oppenheim is anxious, anxious to litigate the

16    DMCA safe harbor.  But that's not before the Court either.

17    And he has conceded in his briefing that you can't bring an

18    independent action for failure to have a safe harbor.

19    That's just not before the Court.  Does that upend a

20    carefully calibrated DMC piece of legislation?  Well, I hope

21    Your Honor by now -- and I know you've looked at all these

22    cases and DMC more than you'd care to -- DMCA -- that is not

23    a carefully calibrated piece of legislation.

24            You know, if Congress wanted to say 10 notices,

25    you need to terminate ISP, they could have done that.  They

Page 47

1    failed to do that.  They just -- there's no duty to

2    terminate under the DMCA.

3              THE COURT:  Is it left to the Court's sort of

4    interstitial --

5              MR. CASTILLO:  Left to the Court --

6              THE COURT:  Stop.

7              MR. CASTILLO:  Yes.

8              THE COURT:  Please don't interrupt me when I'm

9    asking --

10             MR. CASTILLO:  I'm sorry.

11             THE COURT:  -- a question.

12             MR. CASTILLO:  I thought you were done.  Sorry.

13   Bad habit.

14             THE COURT:  I was in the middle of a... Okay.

15             MR. CASTILLO:  Bad habit.

16             THE COURT:  First time, forgiven.

17             MR. CASTILLO:  Thank you.

18             THE COURT:  Second time, forgiven.  This time not.

19             MR. CASTILLO:  Okay.  If you say the legislation

20   doesn't include a bright line number for how many notices

21   beyond which there's potential liability, is it left to the

22   courts for interstitial supplementation to decide on a case-

23   by-case basis, if necessary, how many notices are required

24   to trigger potential liability?  That's the question.

25             MR. CASTILLO:  I think, yeah -- if that's the

```
 1    question, it's left for the courts to --

 2            THE COURT:  Okay.

 3            MR. CASTILLO:  -- determine.

 4            THE COURT:  And --

 5            MR. CASTILLO:  That's not a carefully calibrated

 6    piece of legislation at all.  It's just left to the courts

 7    to determine what amount of notice is.  But more

 8    importantly, as we point out in the briefing, an Internet

 9    provider is covered by 512(a) is not even subject to these

10    notices.  These notices --

11            THE COURT:  Really?

12            MR. OPPENHEIM:  Yes.

13            THE COURT:  I think we have a fundamental

14    disagreement about that.

15            MR. CASTILLO:  Okay.

16            THE COURT:  Maybe we have a fundamental

17    disagreement.  When they not subject to the notices, I think

18    the issue from my standpoint is what are a sufficient number

19    of notices to trigger common law contributory or vicarious

20    liability?  Do you agree or disagree with that?  Not a

21    question of whether the legislation -- a different issue has

22    resolved this issue.

23            MR. CASTILLO:  I agree with what you're saying,

24    Judge.  I'm just pointing out that the legislation.  Didn't

25    provide for notices to go to Internet service providers.
```

Page 49

1   The legislation did provide for notices, takedown notices,

2   to be sent to hosting services.  But that was a whole

3   different thing.  And in fact, the notices in this case talk

4   about it's either going to be a takedown notice or we're

5   trying to impute knowledge to you.  Those have been notices

6   that are being used by the services used by the claimants in

7   this case.

8          But the fact is, you know, Mr. Oppenheim joked

9   about the baseball rule, three strikes and you're out, being

10  good enough.  You're left to whole cloth to try and decide

11  that issue in terms of how many notices are sufficient.  And

12  that's the same situation

13          THE COURT:  This is not a DMCA safe harbor issue,

14  correct?

15          MR. CASTILLO:  Excuse me, Judge?

16          THE COURT:  The number of notices sufficient to

17  trigger vicarious or contributory copyright infringement

18  liability is not a DMC safe harbor issue, correct?

19          MR. CASTILLO:  Absolutely correct.

20          THE COURT:  Okay.

21          MR. CASTILLO:  Absolutely correct.  We're talking

22  about whether or not contributory liability is present.  And

23  with regard to that, we're not looking to overrule the

24  entire DMCA.  Because as I made clear in my arguments, if

25  Frontier had clearly expressed its advertisements or in its

Page 50

```
 1   actions some effort to get its subscribers to infringe, then

 2   the safe harbor analysis might be necessary on the backend.

 3   But we're not saying there's absolute immunity on the part

 4   of all Internet service providers.  Quite to the contrary.

 5            THE COURT:  May I ask you this?  Among the cases

 6   that have been decided -- not ones that have settled -- how

 7   many notices have courts determined to be sufficient to

 8   trigger potential liability.  Mr. Oppenheim said there have

 9   been 12 cases involving ISPs.

10            MR. CASTILLO:  Mm hmm.

11            THE COURT:  I think he said one case talked about

12   one or more.  Well, I don't know how many more.  What's your

13   view on that?

14            MR. CASTILLO:  My view is that a court hasn't

15   raised the question --

16            THE COURT:  Well, I'm raising the question right

17   now.

18            MR. CASTILLO:  Yeah, I understand.

19            THE COURT:  I'd like your position on it.

20            MR. CASTILLO:  My view on that, just it hasn't

21   been -- it hasn't been -- if you're asking me --

22            THE COURT:  But I'm asking your -- you're standing

23   here, you're arguing this case before me.

24            MR. CASTILLO:  Mm hmm.

25            THE COURT:   And I want to know what your position
```

Page 51

```
 1    is as to how many notices are required for a single

 2    subscriber --

 3            MR. CASTILLO:  Mm hmm.

 4            THE COURT:  -- before potential contributory --

 5    assuming you're wrong on Twitter, how many notices are

 6    required before there's potential liability for contributory

 7    copyright infringement by an ISP?

 8            MR. CASTILLO:  I think that's going to take an

 9    analysis of --

10            THE COURT:  Well, I'm asking you right now.  Do

11    you have an answer --

12            MR. CASTILLO:  I don't have an answer for you,

13    Judge.

14            THE COURT:  Okay.

15            MR. CASTILLO:  I cannot pull a number out of my

16    hat in terms -- I would need to know the circumstances of

17    those --

18            THE COURT:  What else would you need.  Tell me

19    what you'd need to know.

20            MR. CASTILLO:  I'd need to have the circumstances

21    of those notices.

22            THE COURT:  What circumstances?

23            MR. CASTILLO:  How many works are at issue?  How

24    frequent those notices came for a particular claim.  All of

25    that type of analysis I think would need to be done.
```

Page 52

1          THE COURT:  Okay.  Elaborate on your -- you've

2     identified the factors that you think are relevant.  I'd

3     like you to articulate further what you believe the criteria

4     should be for a court, if I overrule your Twitter argument -

5     -

6          MR. CASTILLO:  Mm hmm.

7          THE COURT:  -- in considering vicarious or

8     contributory copyright infringement liability on the part of

9     an ISP.

10          MR. CASTILLO:  All of the facts surrounding the

11     notices that go to a particular claim in the case would have

12     to be closely analyzed.  And you know, in this case, for

13     example, the record companies have before you thousands of

14     copyright works.  You have to evaluate what the notice

15     history is for --

16          THE COURT:  So (indiscernible) --

17          MR. CASTILLO:  -- each one of those claims.

18          THE COURT:  -- we're talking about a single I.P.

19     address to which there are three to five hundred notices.

20          MR. CASTILLO:  Mm hmm.

21          THE COURT:  Would that be sufficient?  If you're

22     wrong on Twitter, is that sufficient to impose contributory

23     or vicarious copyright liability?

24          MR. CASTILLO:  I would have to know how those

25     notices were generated.  Was something being done?  Is it

Page 53

1    the same work that over and over again they're claiming is

2    being downloaded by a person because they have their

3    computer on?  That could happen.  So there's just a lot of

4    factors.  It's basically a mini trial on each one of those

5    claims.

6            One thing to keep in mind, Judge, is the type of

7    technology in each case is totally different.  Like, the MP3

8    case, totally different technology than the general

9    Internet.  The MP3 case is hosting technology that can share

10   music.  So I think, you know, when Mr. Oppenheim talks about

11   that as setting the standard for vicarious liability in the

12   Second Circuit, you have to keep in mind the technology

13   that's being used.

14           The same thing with Perfect Measures out of the

15   Ninth Circuit, where you have a hosting technology, that's

16   totally different.  So that that's another thing that needs

17   to be closely analyzed.

18           THE COURT:  Let me come back to --

19           MR. CASTILLO:  Yeah.

20           THE COURT:  Mr. Oppenheim said that it was

21   Frontier's policy --

22           MR. CASTILLO:  Mm hmm.

23           THE COURT:  -- to ignore the first 14 notices, and

24   only 15 or after was an email warning sent.  Was he accurate

25   on that?

Page 54

1                MR. CASTILLO:  That would not be accurate.  The

2     first 14 notices were not ignored.  Or he even went further,

3     he said, basically thrown in the trash.

4                THE COURT:  Well, I -- what was happening -- what

5     did happen to the first 14 notices?

6                MR. CASTILLO:  Frontier would analyze those

7     notices before taking further action.  Each one of the

8     notices that Frontier ever received would be analyzed.

9                THE COURT:  Tell me what the analysis would

10    consist of.

11               MR. CASTILLO:  How many times a work is part of

12    the analysis.

13               THE COURT:  Is that in a written policy?  Yes or

14    no?

15               MR. CASTILLO:  I don't know the answer to that.  I

16    think --

17               THE COURT:  At this stage, after all these years,

18    you haven't discovered whether Frontier had a written policy

19    with respect to what it should do --

20               MR. CASTILLO:  There is a written policy as to the

21    number --

22               THE COURT:  Well, tell me what the policy was?

23               MR. CASTILLO:  Well, the policy was to take action

24    at one point on the 15th notice, and then it got changed and

25    lowered.

Page 55

1              THE COURT:  Okay.  But what -- you said to me --

2              MR. CASTILLO:  Mm hmm.

3              THE COURT:  -- that it would require --

4              MR. CASTILLO:  Yeah.

5              THE COURT:  -- an analysis.  When would they do --

6       how many notices were required before Frontier would

7       undertake an analysis of what the particular subscriber did?

8              MR. CASTILLO:  As the analysis --

9              THE COURT:  Would the analysis --

10             MR. CASTILLO:  The analysis would be ongoing,

11      Judge.  That's all I can tell you.

12             THE COURT:  So, after one notice of infringement

13      it would -- it would do what?

14             MR. CASTILLO:  After one, it would just be

15      stockpiled until there were more notices.

16             THE COURT:  Okay.  So nothing other than

17      stockpiling it after the first notice?

18             MR. CASTILLO:  Well, it would be -- to be subject

19      to further review later on.

20             THE COURT:  How many notices would have to be

21      received before further inquiry --

22             MR. CASTILLO:  I don't think there was a hard

23      number --

24             THE COURT:  Could you let me finish my questions?

25             MR. CASTILLO:  Oh, I'm sorry.  I'm sorry, Judge.

Page 56

1    I thought you were done.

2              THE COURT:  Stop interrupting me.

3              MR. CASTILLO:  Okay.

4              THE COURT:  There is no way you thought I was

5    finished with my question.  If you would stop and listen.

6              MR. CASTILLO:  Okay.  Okay.

7              THE COURT:  How many notices did Frontier have to

8    receive before it would begin to conduct an investigation of

9    the subscriber's conduct?

10             MR. CASTILLO:  There is no hard line number.

11             THE COURT:  Was any investigation of subscribers

12   undertaken after receiving -- at the point which they

13   received 14 notices?

14             MR. CASTILLO:  Yes.

15             THE COURT:  What was done?

16             MR. CASTILLO:  To analyze --

17             THE COURT:  What did they do -- I want you to tell

18   me what they did.  By this time in this case, you need to

19   know.

20             MR. CASTILLO:  What I can tell you is they would

21   evaluate who the subscriber was, how many prior notices they

22   had received, and look at the circumstances of the timing of

23   those notices, which I think is critical.

24             THE COURT:  Explain to me what you mean by the

25   timing of the notices.

1          MR. CASTILLO:  Are they coming in one after

2    another, in the same day, over two days?  Does it end.  Does

3    the behavior end?

4          THE COURT:  Let me ask -- assume that they

5    received 14 notices over a 60-day period.  What was the

6    policy?  What was done?

7          MR. CASTILLO:  It would depend on the prior

8    history.

9          THE COURT:  What do you mean?

10         MR. CASTILLO:  Prior history of that particular

11   subscriber.  That's what I believe, Judge.

12         THE COURT:  All right.  Let me ask you -- Mr.

13   Oppenheim raised the Gershwin case.

14         MR. CASTILLO:  Uh huh.

15         THE COURT:  Are you relying on Gershwin as well?

16         MR. CASTILLO:  Yes.

17         THE COURT:  And what is it about Gershwin that you

18   believe supports your argument?

19         MR. CASTILLO:  I'm glad you asked that.  It

20   requires some type of conscious behavior on the part of a

21   defendant who's going to be held secondarily liable.

22         THE COURT:  So, Gershwin says that at Page 1162 --

23         MR. CASTILLO:  Uh huh.

24         THE COURT:  -- that -- I'll pick up the quote in a

25   moment -- but basically, secondary liability may be imposed

Page 58

1    on "the common law doctrine that one who knowingly

2    participates or furthers a tortious act is jointly and

3    severally liable with the prime tortfeasor." That's Gershwin

4    at 1162.

5          MR. CASTILLO:  Mm hmm.

6          THE COURT:  Isn't that precisely what -- the

7    circumstances here?

8          MR. CASTILLO:  No.

9          THE COURT:  Why not?

10          MR. CASTILLO:  No conscious, culpable action being

11    taken by Frontier, Judge.

12          THE COURT:  Gershwin also said, "One who with

13    knowledge of the infringing activity induces, causes or

14    materially contributes to the infringing conduct of another,

15    may be held liable as a contributory infringer."  That's at

16    Gershwin --

17          MR. CASTILLO:  Mm hmm.

18          THE COURT:  -- Page 1162.

19          MR. CASTILLO:  Right.

20          THE COURT:  Isn't that exactly what this the

21    allegations in this complaint are?

22          MR. CASTILLO:  There is an allegation that we're

23    materially contributing by continuing to provide services.

24    That's the allegation.

25          THE COURT:  If you know -- if you receive repeat

1    notices that a subscriber has infringed --

2         MR. CASTILLO:  Mm hmm.

3         THE COURT:  -- copyrights, don't you have

4    knowledge of the infringing activity?

5         MR. CASTILLO:  You have knowledge of the

6    infringing activity, yes.

7         THE COURT:  And aren't you materially contributing

8    to the infringing conduct by continuing to allow that

9    subscriber to improperly download music?  Yes or no?

10        MR. CASTILLO:  No.

11        THE COURT:  Why?

12        MR. CASTILLO:  Twitter says, continuing to provide

13   services --

14        THE COURT:  If you're wrong on Twitter --

15        MR. CASTILLO:  What?

16        THE COURT:  If Twitter doesn't stand for what you

17   say, would you agree that when Frontier has knowledge of

18   infringing activity by virtue of repeat notices that it's

19   materially contributing to infringing conduct when it

20   doesn't cut off the subscriber?

21        MR. CASTILLO:  I would disagree.

22        THE COURT:  Okay.  All right?  Anything else you

23   want to add?

24        MR. CASTILLO:  No, unless Your Honor has other

25   questions.

Page 60

1              THE COURT:  No, I don't.

2              MR. CASTILLO:  Thank you.

3              THE COURT:  All right.  You really don't need to.

4              MR. OPPENHEIM:  I just wanted to clarify one

5       issue.

6              THE COURT:  Go ahead.  Mr. Oppenheim, go ahead.

7       You have to identify yourself by name.

8              MR. OPPENHEIM:  Thank you.  Matt Oppenheim, on

9       behalf of the record company Plaintiffs.  Just want to

10      clarify one issue on what the notices apply to.  So, there

11      are two different issues.  One is you've got this safe

12      harbor, which Frontier has the obligation to prove it's an

13      affirmative defense, and they have to show that they had a

14      repeat infringement policy.

15             And so the question of how many notices is repeat

16      under that statute, well, that, the Fourth Circuit in the

17      Cox case did affirm three-plus was enough.  So, there's

18      that.

19             But the issue on establishing liability is really

20      not number of notices.  It's a question of whether the

21      notices were sufficient to create knowledge under the law.

22      And in that, that has generally gone to juries and the

23      juries look at the quantum of the notices.

24             MR. OPPENHEIM:  I understand that, Your Honor.  I

25      just wanted to make sure because of the conversation with

Page 61

1    Mr. Castillo that those two things are actually different

2    and that we clarified it.

3           And if Your Honor would like, I'm happy to respond

4    to Mr. Castillo on the number of notices and what Frontier

5    was doing based on what we understand.  But that may be for

6    later today.  Thank you, Your Honor.

7           THE COURT:  All right.  I'm going to enter an

8    opinion and an order denying Frontier's motion for judgment

9    on the pleadings.  I hope to do that by the end of the day

10   today.  All of my reasons will be explained in the opinion.

11          So that raises the question of where are we now?

12   And we have tomorrow a Zoom hearing.  I don't know whether

13   you're all going to be in town or not, or whether you're

14   flying out today or not.  It's scheduled as a Zoom hearing.

15   We have to deal with a small number of objections to the

16   production of the subscriber information.

17          I gather from the correspondence that I saw

18   yesterday that the PII with respect to any subscribers who

19   did not object has already been produced.  Am I correct in

20   that Mr. Culpepper?

21          MR. CULPEPPER:  For the most part, yes.  We have a

22   small dispute (indiscernible) an issue that we'll discuss

23   tomorrow.

24          THE COURT:  Maybe you should go up to the

25   microphone.  Just so I -- I just want a clear record.

1          MR. CULPEPPER:  Kerry Culpepper.  Yes, for the

2     most part, the PII has been produced.  We have a small

3     dispute regarding some other IP addresses and some other

4     minor issues.

5          THE COURT:  All right, so it's a relatively -- I

6     anticipate a relatively short hearing, which was noticed by

7     Zoom, and I'm happy to go forward on that basis.  If you're

8     going to be here, I'm happy to do it as a hybrid hearing

9     with some of you here.

10          Here's my question.  I want to set a fact

11     discovery cut off and an expert witness discovery cutoff.

12     In reviewing the prior case management orders, it's unclear

13     that I've ever set those dates, but I want to do that

14     tomorrow.  So I want you all to meet and confer.  You're

15     physically here.  You can do it -- you can stay in my

16     courtroom and talk if you want for a while, or you can

17     adjourn to someone else's office to do that.

18          You know, I have some correspondence dealing with

19     discovery, ongoing discovery, whether they're real ongoing

20     or not.  My intention is to push you all hard to complete

21     all fact and expert discovery.  When discovery issues have

22     been raised with me using my procedures of, you know, a Zoom

23     hearing, they've gotten resolved immediately.  Which should

24     give you all the message that, resolve it yourself quickly.

25          And my goal would be if you don't all settle --

1    which would be nice -- would be to have a trial in August.

2    And I'm going to be extremely impatient about any discovery

3    issues that would prevent that from happening.  You've been

4    at the discovery for quite some time now.  I don't know how

5    many depositions have been taken, if any.  I don't know what

6    -- you know, I've seen in correspondence about volume of

7    documents, electronic or paper, that have been produced.

8              But I really -- you know, tomorrow -- I'm going to

9    give you all a chance to talk about it this afternoon and

10   tomorrow.  I want to hear, you know, precisely when I'm

11   going to set a fact discovery cut off and an expert.  I

12   don't know whether you've moved forward in finding your

13   experts or not.  You know, Mr. Oppenheim, you've been

14   dealing with these kinds of cases elsewhere.  But the case

15   is either going to settle or it's going to be -- or we're

16   going to have a trial.

17             And the way I ordinarily conduct trials is to have

18   written direct declarations with live in-court cross-

19   examination.  You know, it always raises an issue if you're

20   going to call witnesses who aren't under your control, you

21   can't put it the written direct, but that has never been an

22   enormous impediment, in my view.

23             Other general guidelines about the way I conduct

24   trials, because there's no jury, I have a strong preference

25   that, you know, if -- witnesses only testify once, so

1   they're not recalled in the other side's case.  You do your

2   full -- objections to -- it's beyond the scope of the direct

3   usually do not apply in my trials.  You do the whole

4   examination.  You know, every once in a while, somebody's

5   had to recall a witness on an issue that wasn't anticipated.

6        But my preference is you discuss with each other,

7   you agree on the order in which witnesses are going to

8   testify, you try and do the entirety of a witness's

9   testimony without issues about whether it's beyond the scope

10  of the direct or not.

11        The other thing that I've often done in trials

12  that are going to go more than a couple of days -- I won't

13  give you the exact bright line -- is I do timed trials, that

14  we agree in advance to an allocation of time each side uses

15  it for opening statements, direct, cross-examination.  With

16  closing argument with cases that have more legal issues,

17  I've usually permitted post-trial briefing and then you do

18  closing arguments after the briefs are all in.  I'm not

19  saying it absolutely has to be that way, but that's how it's

20  worked quite well in the longer and more complicated trials.

21        I have a form of joint pretrial conference order.

22  This is -- I understand this is a contested matter, but I've

23  applied this in both adversary proceedings and contested

24  matters.  There's a form, a template for my joint pretrial

25  conference order, that's on the court's website, public

Page 65

1   website, under my chamber's rules.  You can find it there.

2   And I do insist that, you know, all exhibits, witnesses, et

3   cetera, everything is disclosed, the parties' contentions

4   that supersede what's in the pleadings, et cetera.

5            But I'm telling you all that now, but really what

6   I want to do tomorrow is I intend to set a date -- deadline

7   for fact and expert discovery.  I raised the question quite

8   some time ago whether the parties had attempted mediation.

9   And I'm not -- I heard what you all said.  I'm not clear on

10  what the answer is.  And you know, it usually... What I

11  found over the last seven years, cases usually settle really

12  early, or they settle when we're getting pretty close to

13  trial.  Okay.  And I consider this to fall in the latter.

14  And that's because cases are more likely to settle when

15  everybody's playing on a level playing field.  You know

16  essentially what the evidence is and you've all sort of

17  indicated you thought you knew that already, but...

18           And I typically don't delay deadlines for

19  completing fact or expert discovery because of mediation.  I

20  really want to push this through and get this done one way

21  or the other.  And you'll either settle or you won't settle,

22  or you'll either mediate or you won't.  I'm not going to

23  force you to mediate it, but it would to be -- to make a lot

24  of sense.  And the most useful mediator in this case would

25  probably be somebody who actually has familiarity with these

Page 66

1    kinds of claims and defenses.

2           Does anybody want to say anything now?  Anyway, I

3    am pressing you.  I'll try and get my opinion out so you

4    will all have a chance to read and digest it before

5    tomorrow.  I guess the hearing's at 3:00.  We'll deal very

6    quickly with the handful of objections on PII.

7           Mr. Oppenheim?

8           MR. OPPENHEIM:  So we had raised in a letter to

9    Your Honor several -- we had provided a status update on

10   discovery.  And two of the issues have ripe issues we've

11   raised with opposing counsel and gotten no response.  Did

12   you want to deal with those tomorrow, or do you want to deal

13   with those today?

14          THE COURT:  Well, I'm not going to --

15          MR. OPPENHEIM:  They are --

16          THE COURT:  --rule today.  Tell me what you think

17   the two issues are.  I have the correspondence.  Like, I've

18   got copies of it here.  But I'm mostly focused today on

19   getting ready for this argument (indiscernible).

20          MR. OPPENHEIM:  Of course, as did we, Your Honor.

21   But we wanted to make sure we updated the Court because

22   Plaintiff has -- sorry -- record company claimants have been

23   trying to move the discovery process along.

24          In the some of the discovery received from

25   Defendants they've redacted out all of the employee -- it

Page 67

1  seems like all of the employee names, after this Court could

2  not have been more clear about redactions at the last

3  hearing we had, and we've raised the issue.  We got zero

4  response.

5          THE COURT:  And I read it.  I saw it.  You all

6  ought to take one more crack this afternoon at resolving

7  that issue as well.  I'm going to give you a chance to

8  resolve it yourself before I have to resolve it tomorrow.

9  It isn't going to take me long to resolve it.

10          MR. OPPENHEIM:  The second ripe issue was the

11  source code that described how Frontier handled notices,

12  which in light of what Mr. Castillo got up and argued in

13  terms of what Frontier was doing about investigations and

14  analysis after they received notices, for which we've never

15  seen a single document suggesting any of that --

16          THE COURT:  You'll forgive me, but I think I

17  pressed Mr. Castillo about what was the investigation like;

18  I got absolutely no information.

19          MR. OPPENHEIM:  Well, it...

20          THE COURT:  So they'd better be forthcoming on it.

21  If that's the defense they're relying on, it better be an

22  open book.

23          MR. OPPENHEIM:  So the prior versions of this

24  source code will tell us exactly what their automated system

25  was set to do in response to notices.  So Mr. Castillo said

Page 68

1    I was wrong about an email going out --

2              THE COURT:  No, let's deal with -- we'll deal with

3    this tomorrow.

4              MR. OPPENHEIM:  Very well, Your Honor.

5              THE COURT:  I don't want to -- because I've got

6    something at noon.  I don't want to take more time --

7              MR. OPPENHEIM:  So that was my question.

8              THE COURT:  -- with the argument.

9              MR. OPPENHEIM:  We will stay and meet and confer

10   on the schedule.  And Plaintiffs want to move this case as

11   fast as possible.  Given where we are in discovery, the idea

12   of an August trial, it's hard for me to imagine, given where

13   we are with discovery, but we'll --

14             THE COURT:  Well, they better get real about

15   discovery because I really want this trial in August.  Okay?

16   Everybody understand?  Everybody should understand.  When

17   you meet and confer, you'd better resolve these discovery

18   issues or I'm going to resolve them quickly and we're going

19   to have a trial in August.

20             MR. OPPENHEIM:  I am kindly reminded.  So I have

21   to be back in Washington tomorrow, but I will participate by

22   Zoom, if that's all right, Your Honor.

23             THE COURT:  That's fine.  It's scheduled as a Zoom

24   hearing.  I just raised it because --

25             MR. OPPENHEIM:  Normally I prefer to do them in

Page 69

1    person.  I just can't --

2            THE COURT:  Mr. Oppenheim?  I have no problem

3    whatsoever about it.  Okay?  All right.  Mr. Culpepper?

4            MR. CULPEPPER:  Kerry Culpepper.  Quick question?

5    Your Honor mentioned that there are written direct

6    declarations, live cross-examinations?

7            THE COURT:  Yes.

8            MR. CULPEPPER:  Is Your Honor open to remote

9    appearances, like as we're using Zoom for the trial?

10           THE COURT:  I guess... Preferably not.  So I

11   think it's Rule 43(a) of the Federal Rules of Civil

12   Procedure deals with provisions for remote testimony at

13   trial.  I have invoked it.  You know, Federal Judiciary's

14   policy with respect to remote hearings changed last

15   September when the Judicial Conference determined that the

16   pandemic emergency was over.  And the policy restricts the

17   use of remote hearings.  It's been still recognized.

18   Bankruptcy is a little different, but for trials I don't

19   believe it is.

20           So with -- I think I'm correct, it's 4(a) of the

21   Federal Rules of Civil Procedure.  I've invoked it and

22   permitted remote testimony in a number of limited

23   circumstances in the last few months, and it's typically

24   where the remote testimony was not on a super important

25   issue and both -- all sides agreed consent.

Page 70

1          I have to find compelling circumstances in order

2     to permit remote testimony.  I'm not going to rule it out it

3     in the abstract.  I would suggest that it's something when

4     you -- if there are specific witnesses that you want to have

5     testify remotely, I mean, I -- you know, I've had

6     circumstances where there's illness or people in distant

7     parts of the world and no one objected, I permitted them.

8     But my strong preference is the witness chair.  Okay?

9          MR. CULPEPPER:  Understood, Your Honor.  Just the

10    important point to keep in mind is Frontier has customers

11    all over the United States, meaning in Texas, Florida, other

12    states.

13         THE COURT:  Look, if a witness is outside the

14    subpoena range of the Court and is not an employee of

15    Frontier, you know, they can testify by deposition.  You

16    know, there are provisions for -- in Federal Civil Procedure

17    apply in Bankruptcy Court in terms of trials.  And so if a

18    witness is out of -- outside the control of one of the

19    parties and is outside the subpoena range, you can take

20    their deposition.  Take a video deposition if you want, or

21    not.  You know, I don't know what you're going to have them

22    testify about but.  So I thought the issue you were raising

23    was much more focused on employees of your clients than over

24    third parties, which neither of the -- none of the parties

25    in this case control.  And the Federal Rules deal with that.

Page 71

1          MR. CULPEPPER:  I understand, Your Honor.  And

2     lastly, my understanding was the discovery cutoff was June

3     of this year.  Your Honor issued a case management order, I

4     believe, in December saying that six months from the order

5     would be the cutoff.

6          THE COURT:  Well, I went back and I saw -- I

7     thought that six months should be enough.  But I -- you

8     know, in light of what's happened subsequently, I don't

9     think -- are you telling me discovery is done?

10          MR. CULPEPPER:  No.  Nothing -- another thing to

11     search on.

12          THE COURT:  Okay.  Well, let's go to trial next,

13     okay?  When we're done with the hearing tomorrow, you're

14     going to have a deadline to complete fact discovery and

15     expert discovery.  Let's put it that way.  And it will be a

16     very clear order.  I went back and looked at case management

17     order 1 and some other orders, and it wasn't crystal clear

18     to me.  And there have been a number of discovery disputes.

19     So you will -- the end of the day tomorrow you will know

20     what is the cutoff of fact discovery and what is the cutoff

21     of expert discovery.

22          MR. CULPEPPER:  Thank you very much, Your Honor.

23          THE COURT:  Okay.

24          MR. TWARDY:  May I speak?

25          THE COURT:  Yeah, please go ahead.

1              MR. TWARDY:  Your Honor, I would like to introduce

2      myself.  I'm Stanley Twardy, Jr., from the law firm of Day

3      Pitney.

4              THE COURT:  You're new to the party.

5              MR. TWARDY:  I am new to the party.

6              THE COURT:  I saw your notice of appearance and --

7              MR. TWARDY:  Yes, sir.  I entered an appearance.

8      You're going to see more of me today, Your Honor, which is

9      why I wanted to -- you're going to be seeing me more this

10     week (indiscernible) Your Honor.  Mr. Castillo is retiring.

11     Our firm is going to be taking a larger role, together with

12     Akerman firm going ford, but I just wanted to introduce

13     myself to you and --

14             THE COURT:  Okay.  Mr. Castillo, when do you

15     retire?

16             MR. CASTILLO:  This week, Your Honor.

17             THE COURT:  Oh.  You won't be here for an August

18     trial.  You won't be here for August trial.  Okay.

19             MR. CASTILLO:  Thank you.

20             MR. TWARDY:  Thank you, Your Honor.

21             THE COURT:  Thank you very much.  All right.

22     Anything else that anybody else wants to raise?

23             MR. OPPENHEIM:  Not from Plaintiffs.

24             THE COURT:  All right.  I will try -- I've got to

25     do some tinkering with a draft of a written opinion.  I'll

Page 73

1    try and get it out so you'll all see it before the hearing

2    tomorrow afternoon.  You'll be able to hopefully digest it.

3    And you're all welcome to stay and talk about discovery, but

4    let's leave it at that.  Thank you very much for the --

5    thank you.  The briefing was really excellent on this.  I

6    appreciated it.  It's not the everyday fare of the

7    Bankruptcy Court.  Let's put it that way.

8              (Whereupon these proceedings were concluded at

9    11:37 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 74

1                          **I N D E X**

2

3                          RULINGS

4                                          Page        Line

5

6    FRONTIER'S MOTION FOR JUDGMENT           61          8

7    ON THE PLEADINGS DENIED

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 75

1                 C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *Sonya M. Ledanski Hyde*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 28, 2024

**[06117 - absolves]**                                                                    Page 1

| **0** |
| :---: |

**06117**   3:21
**06510**   4:4
**06897**   4:11

| **1** |
| :---: |

**1**   71:17
**1,000**   13:23
**10**   20:15 35:23
  36:1 41:16
  46:24
**100**   27:25
  28:10 41:16
**10004**   1:14
**10017**   3:6
**10020**   5:12
**101**   5:3
**10178**   5:4
**106**   43:8
**10:00**   1:17
**11**   43:17 44:6
**11501**   75:23
**1162**   57:22
  58:4,18
**11:37**   73:9
**12**   2:3 7:6 25:3
  30:3 50:9
**1201**   41:24
  43:1
**1202**   19:14
  25:4 42:2,13
  42:16,18,22
  43:7,21,23,25
  44:3,25 46:5
**12151**   75:7
**1251**   5:11

| **14** | 27:14 53:23 |

**14**   27:14 53:23
  54:2,5 56:13
  57:5
**15**   53:24
**158**   23:23
**15th**   4:3 27:15
  54:24
**17**   42:2,16
**1701**   41:22
**1818**   42:17
**1841**   43:9
**189,000**   41:3
**18th**   14:14
**195**   4:3
**1951**   43:13
**1983**   33:19
**1984**   11:8,15
**1998**   11:2
**19th**   3:5
**1st**   26:22

| **2** |
| :---: |

**2,900**   28:9
**20-22476**   1:3
**20001**   4:18
**20016**   3:13
**2005**   12:13
  33:24
**2016**   39:3
**2019**   26:22
**2020**   27:13
  41:6
**2023**   26:22
**2024**   1:16
  75:25
**20th**   41:5
**2235**   2:5

**2246**   2:5
**2248**   2:5 43:18
**2249**   2:5
**225**   3:20
**2258**   2:5 43:19
**2280**   2:6
**2298**   2:6
**2304**   2:6
**24**   27:5
**25th**   27:22
**27**   1:16
**28**   75:25
**28th**   26:22
**29th**   27:12

| **3** |
| :---: |

**3**   45:4
**3.5**   12:1,3 14:5
**300**   41:8 75:22
**3007**   45:2,4,23
**330**   75:21
**37th**   5:11
**3:00**   66:5

| **4** |
| :---: |

**4**   69:20
**43**   69:11
**4530**   3:12
**461**   3:5
**47th**   5:18

| **5** |
| :---: |

**50,000**   26:23
  27:4
**500**   41:8,17
**501**   43:8 44:7
**502**   44:6
**512**   40:17
  42:25 48:9

**5th**   3:5,12

| **6** |
| :---: |

**60**   57:5
**60606**   5:19
**61**   74:6

| **7** |
| :---: |

**7**   45:11
**707**   23:23
**71**   5:18
**75-170**   6:3
**750**   4:17,17
**79**   39:2

| **8** |
| :---: |

**8**   43:17 74:6
**844**   39:2

| **9** |
| :---: |

**96740**   6:4
**9th**   4:17

| **a** |
| :---: |

**abetting**   15:10
  15:13 18:3,21
  33:17,18 34:2
**ability**   13:4
  33:4 38:3
**abkco**   24:25
**able**   36:23 73:2
**absence**   29:21
**absolute**   50:3
**absolutely**   8:19
  8:21,21 36:5
  38:1 46:12
  49:19,21 64:19
  67:18
**absolves**   32:6

[abstract - anticipated]                                                      Page 2

| | | | |
|---|---|---|---|
| **abstract** 70:3 | **add** 41:1 42:10 | **advise** 21:21 | **alleged** 17:9 |
| **acceptable** | 42:12 59:23 | **affirm** 60:17 | 26:18 30:4 |
| 26:13,15 37:2 | **added** 42:5,9 | **affirmative** | 35:6 46:7 |
| **access** 13:3,5 | **addition** 30:4 | 12:9,11,21 | **allegedly** 16:10 |
| 14:8 44:19 | **additional** 32:9 | 13:1 15:11 | **allocation** |
| **account** 27:20 | **address** 19:4 | 17:8 19:7,11 | 64:14 |
| **accurate** 53:24 | 25:13,19 34:6 | 60:13 | **allow** 27:21 |
| 54:1 75:4 | 37:22 43:20 | **affirmatively** | 36:9 59:8 |
| **accused** 33:18 | 46:2 52:19 | 35:16 | **allowed** 44:7 |
| **acknowledge** | **addressed** | **affirmed** 17:6 | **allows** 12:14 |
| 9:6 28:5 | 29:13 | 31:11 | **alteration** 46:6 |
| **act** 8:5 15:11 | **addresses** | **afternoon** 63:9 | **altice** 30:11 |
| 19:10 22:9,23 | 28:11 41:7,7 | 67:6 73:2 | **amazon** 35:23 |
| 22:25 34:22 | 41:10,13 44:17 | **agent** 41:2 | 36:1 |
| 58:2 | 62:3 | **ago** 65:8 | **amended** 43:10 |
| **acted** 35:16 | **adjourn** 62:17 | **agree** 48:20,23 | 43:14 |
| **action** 10:14 | **administrative** | 59:17 64:7,14 | **american** |
| 46:8,18 54:7 | 42:15 | **agreed** 69:25 | 29:11 |
| 54:23 58:10 | **adopt** 35:20 | **ahead** 7:18 | **americas** 5:11 |
| **actionable** | **adopted** 33:20 | 15:3 60:6,6 | **amount** 48:7 |
| 7:24 8:4 | 33:22,23 | 71:25 | **analogous** 35:3 |
| **actions** 12:25 | **adoption** 36:16 | **aiding** 15:10 | **analogy** 39:7 |
| 14:7 26:17 | **advance** 64:14 | 15:10,12 18:3 | **analysis** 50:2 |
| 32:10,10 50:1 | **adversary** | 18:21 33:16,18 | 51:9,25 54:9 |
| **active** 8:6 | 64:23 | 34:2 | 54:12 55:5,7,8 |
| **activity** 30:18 | **advertised** | **air** 22:14 | 55:9,10 67:14 |
| 34:17 58:13 | 11:20 | **akerman** 4:15 | **analyze** 54:6 |
| 59:4,6,18 | **advertisement** | 5:9,16 72:12 | 56:16 |
| **actors** 18:14 | 11:24 12:1,9 | **alexander** 3:16 | **analyzed** 52:12 |
| **acts** 12:22 | **advertisements** | **allegation** 8:8 | 53:17 54:8 |
| **actual** 13:10,20 | 11:19 12:4 | 17:2 58:22,24 | **answer** 19:4 |
| 35:25 | 14:4 15:8 | **allegations** | 51:11,12 54:15 |
| **actually** 16:21 | 49:25 | 15:14,15,23 | 65:10 |
| 30:13 32:22 | **advertising** | 16:1,24 17:5 | **answers** 10:1 |
| 37:11,11 38:6 | 17:4 | 19:15 25:11 | **anticipate** 62:6 |
| 61:1 65:25 | **advice** 13:2 | 26:10 34:21 | **anticipated** |
| | | 58:21 | 64:5 |

anxious   46:15
46:15
anybody   66:2
72:22
anyway   66:2
apartment
19:4
appear   45:21
appearance
72:6,7
appearances
69:9
appearing
40:13
appellate   8:25
application
33:16
applied   11:8
20:19 64:23
applies   24:12
33:10
apply   8:12
9:20 33:9
34:13 36:6
40:9 60:10
64:3 70:17
appreciated
73:6
appropriate
44:21
approved   17:3
argue   7:6 9:22
23:5,6
argued   8:24
22:2 31:10
35:20 45:20
67:12

argues   26:16
26:18 43:22
arguing   9:12
43:4 50:23
argument   7:6
25:2,4,9 29:24
30:13 44:11,12
46:5 52:4
57:18 64:16
66:19 68:8
arguments
42:18,19 43:11
43:15 44:10,25
49:24 64:18
articles   13:4
articulate   52:3
articulation
36:4
aside   39:22
asked   40:14
41:19 46:12
57:19
asking   47:9
50:21,22 51:10
aspects   27:10
assigns   44:17
assists   11:4
assume   57:4
assuming   51:5
asylum   3:20
attach   29:7
attack   15:21
16:7,16 35:2
attacks   15:18
15:24 16:5,15
34:21

attempted
14:23 65:8
attorneys   3:4
3:11,19 4:2,9
4:16 5:2,10,17
6:2
august   63:1
68:12,15,19
72:17,18
authority
42:24
automated   7:3
67:24
avail   12:24
available   35:25
avenue   3:5,12
5:3,11
aware   29:15,16
29:19

b

b   1:21
b204   6:3
back   23:18
34:9 39:13
53:18 68:21
71:6,16
backend   50:2
background
30:17
bad   18:14
47:13,15
badhouse   6:2
balance   36:10
balancing
36:20
banc   34:6

bankruptcy
1:1,12,23 45:1
45:4 69:18
70:17 73:7
base   43:23
baseball   29:11
49:9
based   14:10
19:15 28:11
31:7 34:6
38:13 42:2,16
61:5
basically   37:16
53:4 54:3
57:25
basis   13:24
14:1,2 22:21
22:22,23 28:16
34:4 37:9,14
42:13 47:23
62:7
bears   21:3
behalf   2:4
40:13 46:3
60:9
behavior   19:11
57:3,20
believe   19:9
24:12 25:3
26:1 37:14
40:15 41:20,24
46:2 52:3
57:11,18 69:19
71:4
bender   10:10
10:16,25 11:1
11:4,8,11

[bender - castillo]                                                                Page 4

19:23 20:11,13
21:9,14 23:23
23:25 24:7,10
24:14,16
**benefit** 24:24
**best** 19:8
**beta** 32:23
**betamax** 32:22
32:24 33:3,5
**better** 67:20,21
68:14,17
**beyond** 32:11
47:21 64:2,9
**bit** 25:10
**bittorrent**
12:15 27:10
**bmg** 40:17
**bockius** 5:1
**book** 67:22
**bottom** 17:8
**bowling** 1:13
**brief** 19:17,18
20:8,15 23:20
23:24 24:1,6
24:12 26:16
37:22,24 41:21
41:21 43:18,19
44:16
**briefing** 46:17
48:8 64:17
73:5
**briefs** 64:18
**bright** 47:20
64:13
**bring** 43:6
46:17

**brings** 14:13
**broad** 18:9
46:3
**broader** 18:4
**brought** 30:3
**build** 11:21
**building** 12:1,6
**built** 28:16
**bulk** 25:2
**business** 12:17
12:18

**c**

**c** 2:3 3:1 7:1,6
25:3 75:1,1
**calibrated** 36:9
46:20,23 48:5
**calibration**
36:20
**call** 27:23
63:20
**called** 28:3
**campo** 2:4 5:14
**capable** 11:10
11:13,17
**care** 46:22
**careful** 36:20
**carefully** 36:8
46:20,23 48:5
**carly** 3:8
**carry** 34:20
**case** 1:3 8:2,11
8:23 10:7,9,19
10:25 11:2,9
11:15,15 12:8
12:13,16,16
13:9 14:13,16
14:24 15:4

16:9,17 17:7
17:22 20:12,13
21:12 22:13
23:12 24:13
25:11,15,24
26:4,10 29:21
30:11,18,24
31:3,5,7,21
32:3,23 33:9
33:10,13 34:17
34:18,23 35:1
35:6 36:6
38:15 39:11,12
40:4,18 41:16
41:20,22 42:25
44:6,8 45:9,14
45:15,18,22
47:22,23 49:3
49:7 50:11,23
52:11,12 53:7
53:8,9 56:18
57:13 60:17
62:12 63:14
64:1 65:24
68:10 70:25
71:3,16
**cases** 10:11
14:22 23:14,15
23:16 29:3,6
30:3,9 38:13
40:14,16 41:9
41:16,19 46:22
50:5,9 63:14
64:16 65:11,14
**castillo** 5:21
7:8,13,13,14
7:15,17,19

8:16,19,21 9:4
9:11,13,15,19
9:23,25 10:2,6
10:8,10,18,22
10:24 13:16,18
14:1,20,23
15:2,4,21,25
16:3,6,11
19:24 20:2,4,6
20:9,13,25
21:2,4,7,11,13
21:23 22:10,17
22:22 23:4,9
23:14,21 24:1
24:4,8,14,19
24:20 27:6
30:17 31:10
32:2,21 34:24
35:9 45:25
46:1 47:5,7,10
47:12,15,17,19
47:25 48:3,5
48:15,23 49:15
49:19,21 50:10
50:14,18,20,24
51:3,8,12,15
51:20,23 52:6
52:10,17,20,24
53:19,22 54:1
54:6,11,15,20
54:23 55:2,4,8
55:10,14,18,22
55:25 56:3,6
56:10,14,16,20
57:1,7,10,14
57:16,19,23
58:5,8,10,17

58:19,22 59:2
59:5,10,12,15
59:21,24 60:2
61:1,4 67:12
67:17,25 72:10
72:14,16,19
**catholic** 45:15
**caught** 37:6
**causes** 30:19
58:13
**causing** 10:12
**cd** 10:25
**celebrated**
16:20
**cellphone**
18:18
**cellphones**
18:16
**centre** 45:15
**certain** 15:1
36:6 42:1
**certified** 75:3
**cetera** 65:3,4
**chair** 70:8
**challenging**
7:21
**chamber's**
65:1
**chance** 63:9
66:4 67:7
**change** 28:12
34:8 38:20
**changed** 27:12
42:11 54:24
69:14
**changing** 46:6

**charter** 38:15
**chicago** 5:19
**chief** 7:8
**chose** 34:4
35:18
**christian** 39:2
**church** 4:3
**circuit** 8:1 9:3
9:7,18 10:4,8
10:11,20 11:2
14:24 15:9
25:21 26:1
29:12 30:22
31:11,15 33:20
34:2,7 35:21
35:23 38:7
39:1,3,4,11,16
39:17,18,23,23
40:17,19,22
53:12,15 60:16
**circuit's** 8:17
19:23 26:2
**circuits** 9:5
23:15 33:20
**circumstances**
51:16,20,22
56:22 58:7
69:23 70:1,6
**cite** 23:24
**cited** 11:25
31:20 41:20
**civil** 2:2 69:11
69:21 70:16
**claim** 9:8 17:8
19:14 25:13
30:8,9 35:22
37:15,22,23,24

38:14,23,23,23
39:10,10 40:7
42:2,16 43:7,8
44:5,7,9 45:6
45:11 51:24
52:11
**claimants** 3:4
3:11 8:8 14:16
17:7,11 18:9
19:9 23:5
35:21 40:13
41:2 42:1,11
42:14,15,20,21
43:10,12,16,17
43:21 44:15,16
44:21,25 49:6
66:22
**claiming** 17:11
53:1
**claims** 7:22 8:9
10:20 11:25
13:13 14:3,10
19:13,16 22:13
26:19 29:18
34:3 39:25
41:3 42:1,13
42:15,18,20,21
42:23 43:1,11
43:12,15,16,21
43:21,24,24,25
44:3,8,10,25
45:20 52:17
53:5 66:1
**clarified** 61:2
**clarify** 60:4,10
**classic** 8:10
10:11

**clear** 12:21
23:19 26:13
49:24 61:25
65:9 67:2
71:16,17
**clearly** 49:25
**clerk** 7:2
**clients** 70:23
**close** 65:12
**closely** 52:12
53:17
**closing** 64:16
64:18
**cloth** 22:13
49:10
**code** 67:11,24
**collection**
11:22 12:2
**colorado** 42:25
**come** 23:18
53:18
**coming** 57:1
**commission**
8:6
**commit** 35:14
35:15
**committed**
34:22
**common** 17:21
30:16 48:19
58:1
**communicati...**
14:15 17:17,18
17:24 18:5
**communicati...**
1:7 2:4 4:16
5:10,17 7:17

| | | | |
|---|---|---|---|
| **companies**  5:2 | **concluded**  73:8 | **contemporan...** | 11:3,6 19:15 |
| 13:23 21:17,18 | **conclusion** | 26:24 | 30:5,7,9,20 |
| 26:18 38:5 | 17:23 40:23 | **contentions** | 48:19 49:17,22 |
| 52:13 | **concrete**  8:6 | 65:3 | 51:4,6 52:8,22 |
| **company**  3:4 | **conditions** | **contested** | 58:15 |
| 3:11 18:23 | 36:14 | 64:22,23 | **control**  19:19 |
| 19:1,2 60:9 | **conduct**  10:13 | **contesting** | 20:20 33:4 |
| 66:22 | 11:3 12:5,10 | 13:19 | 63:20 70:18,25 |
| **compare**  11:16 | 12:11 13:2,13 | **context**  33:17 | **controls**  20:12 |
| **comparison** | 15:11 19:7 | 40:16 | 20:13 |
| 11:18 | 26:19 30:1,20 | **continue**  23:1 | **conversation** |
| **compelling** | 34:13 35:3 | 23:2 27:21 | 60:25 |
| 70:1 | 56:8,9 58:14 | **continued**  26:7 | **coordinate** |
| **complaint**  17:6 | 59:8,19 63:17 | 32:18 | 15:24 |
| 58:21 | 63:23 | **continuing** | **copies**  66:18 |
| **complete**  40:24 | **conduit**  44:14 | 30:5 58:23 | **copying**  11:12 |
| 62:20 71:14 | **confer**  62:14 | 59:8,12 | **copyright**  10:5 |
| **completely** | 68:9,17 | **continuous** | 19:13 20:19 |
| 26:2 27:13 | **conference** | 28:16 | 33:10,11,13 |
| 30:25 36:7,19 | 64:21,25 69:15 | **contrary**  17:23 | 36:11 37:20 |
| **completing** | **congress**  36:9 | 27:6 30:13 | 39:5 41:24 |
| 65:19 | 36:12,21 37:17 | 34:24 35:19 | 42:3,23 43:8 |
| **complicated** | 46:24 | 38:25 50:4 | 43:24 49:17 |
| 64:20 | **conscious** | **contrast**  35:16 | 51:7 52:8,14 |
| **computer**  28:3 | 15:11 19:11 | **contributes**  8:7 | 52:23 |
| 35:24 53:3 | 57:20 58:10 | 30:19 58:14 | **copyrighted** |
| **conceded**  13:5 | **consent**  69:25 | **contributing** | 10:15,15 13:3 |
| 46:17 | **consider**  30:15 | 10:12 58:23 | 13:5 14:9 |
| **concept**  29:8 | 65:13 | 59:7,19 | 26:25 |
| 31:2 | **considering** | **contribution** | **copyrights** |
| **concerning** | 33:15 52:7 | 7:25 8:4 31:18 | 20:20 21:22 |
| 41:3 | **consist**  54:10 | 31:19 34:17 | 22:8 59:3 |
| **concert**  10:13 | **consistent**  29:5 | 36:4 40:4 | **corp**  4:16 5:10 |
| **concerts**  10:14 | 29:8 30:16 | **contributor7** | 5:17 |
| **concessions** | **constitutes** | 14:21 | **corporation** |
| 16:8 | 7:24 | **contributory** | 1:7 2:5 |
| | | 9:7,13 10:4,20 | |

correct 15:20
15:22 16:2
24:4 36:18
39:24 42:6
49:14,18,19,21
61:19 69:20
corresponde...
61:17 62:18
63:6 66:17
counsel 25:1
44:12 66:11
country 75:21
couple 40:13
64:12
course 66:20
court 1:1,12
7:4,10,14,16
7:18,23 8:2,9
8:12,12,15,17
8:20 9:2,6,12
9:14,17,17,18
9:18,21,24
10:1,3,3,4,7,9
10:17,19,23
11:9,15,18
12:8,13,19
13:9,13,14,17
13:22 14:3,10
14:17,20,25
15:3,8,12,18
15:23 16:1,4,8
17:6,8,12,14
17:15 18:6,6,8
18:11,12 19:9
19:12,21,22,25
20:3,5,7,10,14
20:15,18 21:1

21:3,6,8,12,17
21:24 22:1,14
22:19,25 23:5
23:6,11,18,22
24:3,5,10,18
24:20,23 25:5
25:8,17,20,24
25:25 27:1
28:23 29:2,12
29:13,17 30:14
30:23 31:6,8
31:13,14,14,18
31:20,24 33:12
33:15,21,24
34:9,10 35:8
35:11,20 36:15
36:23 37:18,19
38:5,10,12,17
38:19 39:21
40:2,5,10,12
40:20 42:5
43:3 45:16,24
46:10,14,16,19
47:3,5,6,8,11
47:14,16,18
48:2,4,11,13
48:16 49:13,16
49:20 50:5,11
50:14,16,19,22
50:25 51:4,10
51:14,18,22
52:1,4,7,16,18
52:21 53:18,20
53:23 54:4,9
54:13,17,22
55:1,3,5,9,12
55:16,20,24

56:2,4,7,11,15
56:17,24 57:4
57:9,12,15,17
57:22,24 58:6
58:9,12,18,20
58:25 59:3,7
59:11,14,16,22
60:1,3,6 61:7
61:24 62:5
63:18 66:14,16
66:21 67:1,5
67:16,20 68:2
68:5,8,14,23
69:2,7,10
70:13,14,17
71:6,12,23,25
72:4,6,14,17
72:21,24 73:7
court's 12:8
14:13 31:15,25
47:3 64:25
courtroom
62:16
courts 8:12
47:22 48:1,6
50:7
cover 46:3
covered 46:8
48:9
cox 8:18 14:24
25:18 26:3
34:4,5 38:25
39:11,12 40:17
60:17
crack 67:6
create 60:21

created 11:19
17:13 36:13
creation 17:14
18:13
creative 19:12
criteria 45:2,3
52:3
critical 33:6
56:23
cross 45:6
63:18 64:15
69:6
crucial 16:24
crystal 71:17
ct 3:21 4:4,11
culpability
18:3,19 35:12
culpable 12:9
12:11 13:2,12
15:11 17:15
18:13 19:11
26:18,20 29:25
58:10
culpepper 6:1
6:6 25:3 40:11
40:12,13,21
42:8 43:6
45:24 46:2
61:20,21 62:1
62:1 69:3,4,4,8
70:9 71:1,10
71:22
customer 13:2
customers 8:10
16:19 17:18,19
39:5 41:12
44:17,19 70:10

[cut - dismissal]                                                    Page 8

**cut**  19:3 22:25
  59:20 62:11
  63:11
**cutoff**  62:11
  71:2,5,20,20

**d**

**d**  7:1 45:2 74:1
**d.c.**  33:19
**damages**  38:21
**data**  28:7,8,12
  37:12
**date**  65:6 75:25
**dates**  62:13
**david**  24:25
**day**  3:18 4:1,8
  22:11,11 27:8
  57:2,5 61:9
  71:19 72:2
**days**  41:9 57:2
  64:12
**dc**  3:13 4:18
**deadline**  65:6
  71:14
**deadlines**
  65:18
**deal**  18:22,24
  61:15 66:5,12
  66:12 68:2,2
  70:25
**dealers**  19:2
**dealing**  62:18
  63:14
**deals**  10:20
  69:12
**dealt**  10:25
  23:12

**debtor**  1:9 7:15
  45:16,19,19,20
**debtors**  3:19
  4:2,9
**december**  71:4
**decide**  47:22
  49:10
**decided**  33:24
  50:6
**decision**  8:18
  8:23 9:1 19:23
  19:25 20:7
  26:3 31:8,12
  31:25 32:4,5
  33:7,8,25 34:4
  36:1 39:1,3
  40:23 42:24
**decisions**  29:13
**declarations**
  63:18 69:6
**deemed**  44:7
**defendant**
  12:24 57:21
**defendant's**
  34:19,23 36:6
  36:17
**defendants**
  16:25 17:17
  30:8 31:7
  66:25
**defense**  12:25
  60:13 67:21
**defenses**  66:1
**delay**  65:18
**deliberately**
  35:18

**demand**  41:5
**denied**  30:10
  34:7 37:25
  44:5 74:7
**deny**  43:20
**denying**  25:21
  61:8
**departure**
  39:11
**depend**  57:7
**deposition**
  70:15,20,20
**depositions**
  63:5
**described**
  18:21 67:11
**detailed**  41:6
**determinative**
  43:5
**determine**  48:3
  48:7
**determined**
  46:14 50:7
  69:15
**device**  12:19
**difference**
  42:22 43:2,7
**different**  18:25
  27:9,10 32:19
  32:25 48:21
  49:3 53:7,8,16
  60:11 61:1
  69:18
**digest**  66:4
  73:2
**diocese**  45:15

**direct**  14:7
  19:19 34:14,16
  38:3 39:6,16
  63:18,21 64:2
  64:10,15 69:5
**directed**  32:10
**directly**  14:13
  38:25 39:18
**disagree**  25:22
  48:20 59:21
**disagreed**  38:8
**disagreement**
  48:14,17
**disclosed**  65:3
**disconnected**
  32:20
**discovered**
  54:18
**discovering**
  17:19
**discovery**
  36:23 62:11,11
  62:19,19,21,21
  63:2,4,11 65:7
  65:19 66:10,23
  66:24 68:11,13
  68:15,17 71:2
  71:9,14,15,18
  71:20,21 73:3
**discuss**  35:4
  61:22 64:6
**discussed**
  42:21
**dismiss**  30:9
  34:3
**dismissal**  17:6
  38:25

| dismissed | 34:9 41:22 | **e** | employee |
|---|---|---|---|
| 19:14 30:7 | 42:25 | e  1:21,21 3:1,1 | 66:25 67:1 |
| 43:25 | divide  25:6,9 | 5:6 7:1,1 45:4 | 70:14 |
| dispute  41:11 | dmc  46:20,22 | 74:1 75:1 | employees |
| 44:14,15 61:22 | 49:18 | earlier  44:23 | 70:23 |
| 62:3 | dmca  36:7,8 | early  65:12 | en  34:5 |
| disputed  13:18 | 37:16 46:16,22 | ecro  1:25 | encourage |
| 44:7,20,20 | 47:2 49:13,24 | effectively | 11:12,21 14:8 |
| disputes  44:3 | docket  42:17 | 17:23 | 46:8 |
| 71:18 | 43:9,13,18,19 | efficiently  25:7 | encourageme... |
| disputing | doctrine  58:1 | effort  19:12 | 11:20 24:16 |
| 43:15 | document  2:5 | 50:1 | encourages |
| distant  70:6 | 67:15 | egregious  41:7 | 11:4 |
| distinction | documents | eight  30:9 45:2 | encouraging |
| 33:6 | 63:7 | either  19:20 | 11:23 |
| distinguish | doing  16:18 | 46:16 49:4 | ends  17:20 |
| 16:9 | 28:15 32:7 | 63:15 65:21,22 | 18:15 |
| distinguished | 37:18 61:5 | elaborate  52:1 | engaged  26:24 |
| 16:12 | 67:13 | electronic  28:2 | enormous |
| distribute | download | 28:3 63:7 | 63:22 |
| 12:15 28:19 | 11:25 12:3,14 | elements  38:2 | enter  61:7 |
| distributed | 14:4 59:9 | 40:6,7 | entered  72:7 |
| 28:18,22 | downloaded | else's  62:17 | entire  49:24 |
| distributes | 53:2 | email  27:16,19 | entirely  33:13 |
| 12:19 | downloading | 27:24 28:2 | 37:17 |
| distributing | 12:7 | 53:24 68:1 | entirety  64:8 |
| 27:9 28:15 | downloads | emails  18:16 | entry  42:17 |
| distribution | 13:6 | 39:13 | 43:9,13,18,19 |
| 13:4 20:21 | draft  72:25 | emergency | equipment |
| 26:25 28:17 | dramatically | 69:16 | 11:10 |
| 32:11 | 28:12 | emi  39:1 | equivocal |
| distributor | drive  5:18 | emphasis  24:6 | 26:17 32:6 |
| 13:11 | drug  18:22,24 | emphasize | especially  8:2 |
| district  1:2 | 19:2 | 43:7 | essentially  9:9 |
| 9:17 10:3,19 | due  39:5 | emphasized | 27:14 39:8 |
| 23:6 29:12 | duty  17:16,21 | 34:16 | 65:16 |
| 31:6,8,15,25 | 17:22 47:1 | | |

| | | | |
|---|---|---|---|
| **establish** 22:20 40:15 | **examples** 22:15 | **facebook** 15:5 15:7 34:20 | **fifty** 27:1,3 |
| **established** 33:19 38:12 | **excellent** 33:21 73:5 | **facie** 44:8 | **filed** 2:3 42:1 43:9,13 45:16 46:3,4 |
| **establishes** 23:7 | **excerpts** 20:5 | **facilitate** 11:7 | **final** 14:17 |
| **establishing** 40:14 41:19 60:19 | **excuse** 32:4,4 49:15 | **fact** 13:5 21:15 21:19 24:14 31:20 35:14 42:19 44:15 49:3,8 62:10 62:21 63:11 65:7,19 71:14 71:20 | **finally** 44:22 |
| **et** 65:2,4 | **executions** 16:22 | | **financial** 19:19 38:3 39:6,16 |
| **evaluate** 52:14 56:21 | **exempt** 35:18 | | **find** 65:1 70:1 |
| **evaluated** 11:18 | **exhibits** 2:3 65:2 | | **finding** 24:17 63:12 |
| **evaluates** 11:9 | **existing** 8:1 | **factors** 52:2 53:4 | **fine** 68:23 |
| **event** 20:16 | **expand** 31:16 | **facts** 7:21 29:23 52:10 | **finger** 30:2 |
| **everybody** 7:10 68:16,16 | **expect** 28:11 | **factual** 25:11 44:13 | **finish** 21:3,5 55:24 |
| **everybody's** 65:15 | **expert** 62:11 62:21 63:11 65:7,19 71:15 71:21 | **failed** 8:10 17:12 18:1 43:20 47:1 | **finished** 56:5 |
| **everyday** 73:6 | | | **firm** 72:2,11,12 |
| **everyone's** 41:21 | **experts** 63:13 | **failing** 18:1 | **first** 8:12 11:3 25:10 27:14 31:5 46:2 47:16 53:23 54:2,5 55:17 |
| **evidence** 30:1 32:9 39:12 44:8 65:16 | **explain** 56:24 | **failure** 7:23 8:3 8:5 14:11 17:9 19:6,10 23:16 34:6 46:18 | |
| | **explained** 61:10 | | **five** 52:19 |
| | **explicitly** 31:2 31:17 32:2 | | **flawed** 14:18 19:15 46:9 |
| **exact** 64:13 | **expressed** 49:25 | **fall** 65:13 | **floor** 3:5,12 4:3 5:11,18 |
| **exactly** 17:11 21:16 58:20 67:24 | **expression** 12:21 24:15 | **familiarity** 65:25 | **florida** 41:23 70:11 |
| | **expressly** 31:24 | **far** 37:7 46:14 | **fly** 46:10 |
| **examination** 63:19 64:4,15 | **extremely** 63:2 | **fare** 73:6 | **flying** 61:14 |
| **examinations** 69:6 | **f** | **fast** 68:11 | **focus** 8:8 15:11 |
| **example** 18:22 29:9 52:13 | **f** 1:21 75:1 **f.3d** 23:23 39:2 **face** 33:9 | **federal** 2:2 69:11,13,21 70:16,25 | **focused** 10:12 66:18 70:23 |
| | | **field** 65:15 | **focusing** 44:12 |
| | | | **follow** 12:8 |

**following**  15:9
**force**  19:10
　65:23
**ford**  72:12
**foreclose**  39:24
**foregoing**  75:3
**forgive**  67:16
**forgiven**  47:16
　47:18
**form**  64:21,24
**forth**  26:20
　29:22,25 39:14
**forthcoming**
　67:20
**forward**  38:15
　62:7 63:12
**foster**  12:21
**found**  9:8 17:5
　20:2 27:9
　31:23 65:11
**four**  25:9 41:7
　41:10,13
**fourth**  8:17
　14:24 26:2
　34:2,6 38:7
　39:11,15,17,23
　40:17 60:16
**framework**
　33:16,19,23
　34:1
**frankly**  30:1
　32:22
**frequent**  51:24
**frontier**  1:7 2:4
　4:16 5:10,17
　7:7,17 8:10
　11:16,24,25

13:13,15,25
16:19 18:12
19:18 22:4,9
22:24 25:15
26:4,8,9,10,11
26:16,22 27:16
27:23 28:1,14
29:18,20 30:14
32:6,13,15,19
33:1 34:15
35:16,17 37:15
41:3,5,11 43:9
43:11,13,20,22
44:3,9,14,17
44:18,23 46:3
46:7 49:25
54:6,8,18 55:6
56:7 58:11
59:17 60:12
61:4 67:11,13
70:10,15
**frontier's**  2:1
7:6,9,19 12:2
16:10 26:6,14
27:11,13 29:24
30:1,13,25
34:13 35:4,7
35:19,20 36:24
37:22 41:21
42:17,20 43:19
44:4 45:9
53:21 61:8
74:6
**full**  34:3 64:2
**fundamental**
48:13,16

**fundamentally**
　26:11
**funding**  41:22
**fundraise**
　16:14,22
**fundraising**
　15:16
**further**  46:5
　52:3 54:2,7
　55:19,21
**furthers**  58:2

**g**

**g**  7:1
**garden**  28:4
**gather**  61:17
**general**  14:15
　16:13 53:8
　63:23
**generally**
　18:16,17,18
　27:5,7 29:8
　35:1 60:22
**generated**
　22:11 52:25
**gershwin**
　10:10,12 30:17
　31:21 57:13,15
　57:17,22 58:3
　58:12,16
**getting**  21:6
　65:12 66:19
**give**  39:21
　62:24 63:9
　64:13 67:7
**given**  34:3
　68:11,12

**glad**  57:19
**glenn**  1:22 7:9
**go**  7:18 11:5
　15:3,8 17:22
　18:22 48:25
　52:11 60:6,6
　61:24 62:7
　64:12 71:12,25
**goal**  62:25
**god**  29:10
**goes**  17:15
　18:12 31:13
　41:14
**going**  7:6 9:21
　11:5 16:17
　28:12 44:11
　46:1 49:4 51:8
　57:21 61:7,13
　62:8 63:2,8,11
　63:15,15,16,20
　64:7,12 65:22
　66:14 67:7,9
　68:1,18,18
　70:2,21 71:14
　72:8,9,11,12
**good**  7:4,5,8
　24:22,23 49:10
**goods**  11:7,9
**google**  15:5,7
　17:3
**gotten**  9:18
　10:5 28:8
　62:23 66:11
**grande**  29:21
**grant**  44:4
**granted**  31:6
　45:18

| | | | |
|---|---|---|---|
| **great** 46:12 | **harbor** 29:23 | **hmm** 50:10,24 | **hopefully** 73:2 |
| **greater** 24:6 | 37:15 40:17 | 51:3 52:6,20 | **hornung** 5:6 |
| **green** 1:13 | 43:1 46:16,18 | 53:22 55:2 | **hosting** 15:5 |
| **grokster** 12:13 | 49:13,18 50:2 | 58:5,17 59:2 | 49:2 53:9,15 |
| 12:16,18 13:2 | 60:12 | **hold** 8:2 17:23 | **hosts** 15:6 |
| 13:5,8 14:19 | **harbors** 36:8,8 | 31:22 32:5 | **hours** 27:5 |
| 25:12 30:12,13 | 36:19 37:16 | 35:21 | **house** 19:1,4 |
| 30:16,24 31:2 | **hard** 55:22 | **holders** 20:19 | **hualalai** 6:3 |
| 31:3,23,25 | 56:10 62:20 | 36:11 | **huh** 57:14,23 |
| 32:3,3,4,5,7 | 68:12 | **holding** 13:8 | **hundred** 22:19 |
| 33:24,25 34:1 | **harsh** 27:24 | 18:4,10 | 52:19 |
| **grounds** 45:5,7 | **hartford** 3:21 | **holds** 12:19 | **hybrid** 2:1 |
| **growth** 16:24 | **hat** 51:16 | **hole** 19:11 | 62:8 |
| **grp** 39:2 | **haven** 4:4 | **hon** 1:22 | **hyde** 2:25 75:3 |
| **guess** 66:5 | **hear** 63:10 | **honor** 7:20 | 75:8 |
| 69:10 | **heard** 46:11 | 9:16 16:25 | **hypothetically** |
| **guidelines** | 65:9 | 19:21 22:11 | 22:6 |
| 63:23 | **hearing** 2:1,1 | 24:2,22 25:7 | |

| **h** | 61:12,14 62:6 | 25:10,14 29:1 | **i** |
|---|---|---|---|
| | 62:8,23 67:3 | 29:15 30:2,12 | |
| **habit** 47:13,15 | 68:24 71:13 | 33:7 36:25 | **i.p.** 52:18 |
| **halberstam** | 73:1 | 37:13,21 38:21 | **idea** 68:11 |
| 33:16,19,25 | **hearing's** 66:5 | 39:1,19,20 | **identified** |
| **hand** 36:10 | **hearings** 69:14 | 40:14,25 41:5 | 17:16 27:18 |
| **handful** 66:6 | 69:17 | 41:19 45:14,18 | 52:2 |
| **handle** 25:2 | **held** 11:11,23 | 45:23 46:12,21 | **identify** 7:11 |
| **handled** 67:11 | 30:15,20 32:4 | 59:24 60:24 | 60:7 |
| **handling** 25:4 | 34:1,15 35:23 | 61:3,6 66:9,20 | **identifying** |
| **haphazard** | 35:24 36:18 | 68:4,22 69:5,8 | 27:5 |
| 37:8 | 39:11 41:23 | 70:9 71:1,3,22 | **ignore** 14:17 |
| **happen** 53:3 | 57:21 58:15 | 72:1,8,10,16 | 27:13 53:23 |
| 54:5 | **hi** 6:4 | 72:20 | **ignored** 8:25 |
| **happened** 71:8 | **high** 25:15 | **honor's** 24:24 | 54:2 |
| **happening** | 26:5 | 41:14 | **ignores** 8:22 |
| 35:6 54:4 63:3 | **history** 31:3,4 | **hope** 46:20 | **il** 5:19 |
| **happy** 61:3 | 52:15 57:8,10 | 61:9 | **ildefonso** 4:20 |
| 62:7,8 | | | **illegal** 18:15 |
| | | | 26:24 28:21 |
| | | | 34:17 |

illegally   14:8
  28:14
illicit   17:20
illness   70:6
imagine   68:12
immediately
  62:23
immune   31:10
  36:22
immunity   50:3
immunize   31:1
impatient   63:2
impediment
  63:22
implement
  37:4,11
implementati...
  36:16
important
  25:14 44:13
  69:24 70:10
importantly
  48:8
impose   22:3
  23:7 52:22
imposed   23:12
  57:25
imposing
  15:12 22:21
improper   44:4
improperly
  59:9
impute   49:5
inaction   8:11
  26:17 32:6
inapplicable
  20:18

incalculable
  28:22
incidentally
  20:22
include   42:17
  44:24 47:20
included   42:2
  42:15
includes   31:18
including
  19:13 36:14
income   39:15
inconsistent
  26:2
incorrect   31:16
increase   39:4
increasing
  39:9
incur   18:19
independent
  46:18
indicated
  65:17
indiscernible
  18:3 52:16
  61:22 66:19
  72:10
individual
  26:23
individuals
  34:22
inducement
  31:18,23
induces   30:19
  58:13
infer   21:14

influence
  11:12
information
  42:4 61:16
  67:18
infrastructure
  26:11
infringe   11:20
  12:20 32:25
  50:1
infringed   22:7
  59:1
infringement
  7:25 8:4,7 9:8
  9:13 10:5,5,20
  11:4,8 12:17
  12:22,23,25
  13:1,7,20,23
  14:5,7,21,22
  19:19 20:22
  21:19 22:3,10
  23:2 24:15
  27:6,14 28:6
  28:24 30:3,5,8
  32:11,16,17,17
  34:14 35:5,7
  36:13 38:22
  39:5 41:4,24
  42:23 43:8,24
  49:17 51:7
  52:8 55:12
  60:14
infringements
  14:8
infringer   30:21
  35:18 58:15

infringers
  17:13 26:6,7
  26:12,14 29:19
  30:6 35:4,17
  35:19 36:17
infringing
  10:13 11:10,13
  11:17 12:5
  13:10,11 14:12
  16:17 20:17,23
  21:14,18,21,25
  22:6 27:18
  30:18,19 31:2
  31:9 32:8,14
  35:25 37:6
  58:13,14 59:4
  59:6,8,18,19
injury   42:10
inquiry   55:21
insist   65:2
insufficient
  17:5
insult   42:10
integrity   42:3
intend   65:6
intent   21:14,19
intention   62:20
intentional
  19:7 26:21
interest   38:3
  39:6,17
internal   26:14
  27:13 37:3
  39:13
internet   7:24
  7:25 8:3,13
  11:16 14:2,6

14:11,12 15:6
15:19 17:13
18:12,16,18
19:5,6 26:5
35:4 36:10
44:19 48:8,25
50:4 53:9
**interpretation**
31:16 36:7,17
**interpreted**
31:8
**interpreting**
32:1
**interrupt** 47:8
**interrupting**
56:2
**interstitial**
47:4,22
**introduce** 72:1
72:12
**investigation**
56:8,11 67:17
**investigations**
67:13
**invoked** 69:13
69:21
**involved** 13:6
15:4,19
**involves** 12:13
**involving** 50:9
**ip** 6:1 28:11
41:7,7,10,13
44:17 62:3
**irrelevant**
36:20 37:17
**isis** 15:15 16:20
16:24 17:1,3,4

17:9 18:14
34:19 35:14,15
**isp** 10:21,22
14:21 22:4,21
23:8,12 30:6
30:15 38:6,13
39:13 41:20
46:25 51:7
52:9
**isps** 21:19 30:3
36:12,14,21
50:9
**issue** 7:23 9:7
26:4 29:13
33:14 34:23
36:15 38:9,10
40:3 43:3
48:18,21,22
49:11,13,18
51:23 60:5,10
60:19 61:22
63:19 64:5
67:3,7,10
69:25 70:22
**issued** 71:3
**issues** 10:4
30:15 44:13
60:11 62:4,21
63:3 64:9,16
66:10,10,17
68:18
**it'd** 44:4

**j**

**j** 3:15,23
**jacoby** 25:1
**jeopardy** 27:20

**john** 2:4 5:14
**joint** 64:21,24
**jointly** 58:2
**joked** 49:8
**jonathan** 4:6
**jr** 4:13 72:2
**judge** 1:23 7:8
7:9 10:6 21:5
24:19 46:1
48:24 49:15
51:13 53:6
55:11,25 57:11
58:11
**judgment** 2:1
31:6 44:1,2,4
44:22 46:4
61:8 74:6
**judicial** 69:15
**judiciary's**
69:13
**july** 26:22
**june** 27:12
71:2
**juries** 60:22,23
**jury** 63:24

**k**

**kailua** 6:4
**kaplan** 3:16
**keep** 53:6,12
70:10
**kerry** 6:6
40:12 62:1
69:4
**kessler** 3:8
**key** 24:16
**kids** 32:22

**killings** 16:22
**kindly** 68:20
**kinds** 63:14
66:1
**knew** 16:25
26:12 65:17
**know** 18:23
22:15,18 23:3
27:17 28:7
32:2 41:12
44:19,23 46:14
46:21,24 49:2
50:12,25 51:2
51:19 52:12,24
53:10 54:15
56:19 58:25
61:12 62:18,22
63:4,5,6,8,10
63:12,13,19,25
64:4 65:2,10
65:15 69:13
70:5,15,16,21
70:21 71:8,19
**knowing** 17:25
**knowingly**
58:1
**knowledge**
12:12 13:10,20
15:2 16:7,18
22:22,23 23:7
30:18 31:19
33:1 35:13,25
40:6 49:5
58:13 59:4,5
59:17 60:21
**known** 26:5
30:6 35:17,19

**knows**  18:6
  29:10
**kona**  6:4
**ks**  1:25

**l**

**lack**  34:16
**lacked**  35:13
**laid**  29:24 37:4
**land**  30:24
**language**  30:22
  30:23 39:9
**large**  18:20
  33:12 37:19
**largely**  33:20
**larger**  72:11
**lastly**  25:13
  71:2
**law**  8:1,2 17:21
  26:1 30:16,24
  32:5 33:11,13
  34:8 48:19
  58:1 60:21
  72:2
**lead**  29:20
**leases**  44:18
**leave**  39:19
  73:4
**ledanski**  2:25
  75:3,8
**leery**  15:12
**left**  47:3,5,21
  48:1,6 49:10
**legal**  7:20,22
  12:7 42:18,19
  43:11,15 44:13
  64:16 75:20

**legislation**
  46:20,23 47:19
  48:6,21,24
  49:1
**letten**  3:23
**letter**  8:24 41:5
  41:6,11 66:8
**letters**  42:5,9
**level**  65:15
**leveraging**
  20:20
**lewis**  5:1
**liability**  11:3,6
  13:12,21,24
  14:1,3 15:10
  15:13 18:2,25
  19:16 22:3,5
  22:21 23:8,12
  24:17 25:13,18
  26:4 28:25
  29:7,14 30:14
  31:10,17,22
  33:17 36:22
  37:21,23 38:1
  38:2,6,12,13
  38:14 39:24,25
  40:7,8,15
  41:19 43:23
  46:9 47:21,24
  48:20 49:18,22
  50:8 51:6 52:8
  52:23 53:11
  57:25 60:19
**liable**  11:11
  12:22 13:8
  17:24 18:23
  19:2 30:6,15

  30:20 34:1,15
  35:24 36:13,19
  38:21 41:23
  45:20 57:21
  58:3,15
**libraries**  11:22
**library**  12:6
**light**  67:12
  71:8
**likely**  65:14
**limit**  18:7,9
**limitation**  18:8
**limited**  28:8
  69:22
**limits**  18:2
**line**  47:20
  56:10 64:13
  74:4
**linked**  16:16
**listen**  56:5
**litigate**  46:15
**litigated**  31:5
  38:15
**little**  25:10
  69:18
**live**  31:4 63:18
  69:6
**llc**  6:1,2
**llp**  3:3,10,18
  4:1,8,15 5:1,9
  5:16
**long**  67:9
**longer**  64:20
**look**  15:14 24:5
  24:8 56:22
  60:23 70:13

**looked**  45:8
  46:21 71:16
**looking**  24:15
  28:12 49:23
**looks**  33:25
**lose**  39:15
**loss**  28:20
**lot**  15:15 46:11
  53:3 65:23
**love**  14:17
**lowered**  54:25
**luskin**  5:7

**m**

**machinery**
  11:7
**made**  15:7
  26:15 43:11
  44:9,23 45:22
  49:24
**majority**  37:7
**make**  26:13
  33:11 35:8
  43:1 44:11
  60:25 65:23
  66:21
**makes**  30:6
  36:5
**making**  45:17
**management**
  42:4 62:12
  71:3,16
**mandate**  34:11
**manner**  17:1
**manufacturer**
  33:5
**march**  1:16
  41:5,6 75:25

**mark** 21:8
**martin** 1:22
**mas** 4:20
**material** 7:24
8:4 31:17,19
36:4
**materially** 8:6
10:12 16:8
30:19 58:14,23
59:7,19
**materials** 13:5
35:25
**matt** 60:8
**matter** 1:5
13:22 38:22
64:22
**matters** 64:24
**matthew** 3:15
3:23 10:10,16
10:24 11:1,4,8
11:11 19:23
20:11,13 21:9
21:11,13 23:23
23:25 24:7,10
24:14,16
**mean** 9:9 18:4
22:1 43:4
56:24 57:9
70:5
**meaning** 70:11
**means** 36:18
37:17 40:18,20
**measures**
35:21 36:2
53:14
**media** 18:10
34:24

**mediate** 65:22
65:23
**mediation** 65:8
65:19
**mediator** 65:24
**meet** 62:14
68:9,17
**mentioned**
11:14 44:23
69:5
**mere** 13:10
14:2 15:13
17:14 18:13
32:11
**merely** 17:25
18:19
**message** 62:24
**messages** 16:20
**mg** 1:3
**mgm** 12:12
**michael** 5:7
**microphone**
61:25
**middle** 47:14
**millennium**
41:22
**mind** 53:6,12
70:10
**mineola** 75:23
**mini** 53:4
**minor** 62:4
**misconduct**
17:9
**missing** 35:12
**misuse** 12:12
**misused** 21:15

**mm** 50:10,24
51:3 52:6,20
53:22 55:2
58:5,17 59:2
**mockery** 26:15
**model** 12:18
**modems** 44:18
44:18
**modified** 45:13
**modifies** 45:10
**modify** 45:17
**moment** 11:14
39:21 57:25
**monitored**
15:6
**month** 22:7
**monthly** 39:15
**months** 69:23
71:4,7
**morgan** 5:1
**morning** 7:5,5
7:8 24:22,23
**motion** 2:1,3
7:6,9,19,21
13:19 25:3
37:24 44:1,4
45:16,21 46:4
61:8 74:6
**motions** 30:10
**move** 66:23
68:10
**moved** 30:8
63:12
**movie** 19:14
21:18 32:20
40:13 41:2
42:1,11,14,14

42:20 43:10,12
43:16,17,20
44:15,16,20,25
46:6
**mp3** 53:7,9
**mp3tunes** 39:1
39:2,9
**music** 12:7,15
13:6 14:9
24:25 38:5
39:2 53:10
59:9

**n**

**n** 3:1 7:1 74:1
75:1
**name** 42:6,11
42:12 60:7
**names** 42:5,9
67:1
**narrow** 7:21
**natural** 14:15
**necessarily**
12:4 14:5
**necessary**
34:15 47:23
50:2
**need** 7:11 14:6
15:10 22:23
25:10 26:21
35:20 36:2
38:17,19 46:25
51:16,18,19,20
51:25 56:18
60:3
**needless** 25:22
**needs** 7:10
18:7 53:16

**neither** 70:24
**network** 12:14
  13:3 28:16
  33:17 35:7
**networks**
  34:20
**never** 43:11
  46:13 63:21
  67:14
**new** 1:2,14 3:6
  4:4 5:4,12
  16:21 72:4,5
**nexus** 34:14,16
**nice** 63:1
**nine** 14:16
  31:14
**ninth** 31:11,15
  35:21,23 53:15
**non** 11:10,13
  11:17 12:25
  14:12 20:17,23
  31:1,9 32:8
**nonfeasance**
  15:13 19:8
  26:17
**noon** 68:6
**normally** 18:21
  68:25
**note** 45:1,14
**notice** 2:3 8:22
  16:2,3,4 19:1
  22:3 23:2 27:8
  27:15,22 32:18
  48:7 49:4
  52:14 54:24
  55:12,17 72:6

**noticed** 62:6
**notices** 13:16
  13:17,23 21:20
  21:24 22:5,6
  22:10 26:23
  27:1,4,12,14
  27:25 28:10,23
  28:24 29:7,14
  32:15 37:7,12
  40:15 41:1,3,4
  41:8,15,17
  46:12,13,24
  47:20,23 48:10
  48:10,17,19,25
  49:1,1,3,5,11
  49:16 50:7
  51:1,5,21,24
  52:11,19,25
  53:23 54:2,5,7
  54:8 55:6,15
  55:20 56:7,13
  56:21,23,25
  57:5 59:1,18
  60:10,15,20,21
  60:23 61:4
  67:11,14,25
**notified** 28:5
**notify** 37:5
**notorious** 42:9
  42:12
**number** 28:21
  47:20 48:18
  49:16 51:15
  54:21 55:23
  56:10 60:20
  61:4,15 69:22
  71:18

**numbers** 22:12
  22:18 28:11
**numerous**
  13:15 28:19
**nw** 3:12 4:17
**ny** 1:14 3:6 5:4
  5:12 75:23

**o**

**o** 1:21 7:1 75:1
**object** 12:20
  45:8 61:19
**objected** 70:7
**objection**
  42:17,20 43:22
  44:24 45:1,3,5
  45:5,7,12,19
  45:22 46:2
**objections**
  44:24 45:10,17
  61:15 64:2
  66:6
**obligation**
  26:12 60:12
**obtain** 20:21
**obvious** 39:6
**occur** 15:19,21
  29:23
**occurred** 16:10
  16:13 35:7
**odds** 39:18
**office** 62:17
**offline** 35:5
**oh** 55:25 72:17
**okay** 7:14 8:20
  9:23 10:18
  15:4 21:7
  23:22 24:5

25:5,20 29:17
  39:21 40:10
  47:14,19 48:2
  48:15 49:20
  51:14 52:1
  55:1,16 56:3,6
  56:6 59:22
  65:13 68:15
  69:3 70:8
  71:12,13,23
  72:14,18
**old** 75:21
**ominous** 45:7
**omission** 8:5
**omnibus** 43:22
  44:24 45:1,3,4
  45:10,12,17,19
  45:22
**once** 38:22
  40:18 43:15
  63:25 64:4
**ones** 50:6
**ongoing** 7:24
  33:2 41:3,11
  55:10 62:19,19
**open** 23:20
  67:22 69:8
**opening** 24:1
  24:11 37:22
  64:15
**operator** 35:24
**opinion** 13:10
  61:8,10 66:3
  72:25
**opinions** 11:1
  18:7

oppenheim  3:3
3:10,15 24:21
24:22,24 25:6
25:9,19,22
26:1 27:3 29:1
29:4,15,18
33:22 34:11
35:10,12 36:25
38:9,11,14,18
38:20 40:1,3,6
46:11,15 48:12
49:8 50:8
53:10,20 57:13
60:4,6,8,8,24
63:13 66:7,8
66:15,20 67:10
67:19,23 68:4
68:7,9,20,25
69:2 72:23
opportunity
9:4,5,19 34:3
opposing  42:19
43:12 44:11,25
66:11
opposition
42:18 43:18
optional  45:11
order  25:20
43:10,14 61:8
64:7,21,25
70:1 71:3,4,16
71:17
orders  62:12
71:17
ordinarily
63:17

original  20:20
ought  67:6
outcome  43:5
outside  70:13
70:18,19
overrule  49:23
52:4
own  11:21 12:2
12:16 39:8
owners  11:21

**p**

p  2:4 3:1,1 5:14
7:1
page  20:15
57:22 58:18
74:4
pages  45:6
pandemic
69:16
paper  63:7
paragraphs
43:17
pardon  38:18
parenthetical
20:16 23:23
24:12
park  5:3
part  13:25
16:16 22:24
50:3 52:8
54:11 57:20
61:21 62:2
participate
68:21
participates
58:2

particular
27:22 28:1
32:16,16 35:2
45:18 46:8
51:24 52:11
55:7 57:10
particularly
44:6
parties  12:23
65:3,8 70:19
70:24,24
parts  70:7
party  72:4,5
passed  36:9
passive  8:11
15:13 19:8
26:11,17
past  41:15
pause  11:14
peer  12:14,14
31:7,7
peg  19:10
pending  7:22
8:9 30:11
people  28:19
39:13 70:6
perfect  35:23
36:1 53:14
perfectly  12:7
period  22:7
27:3 41:9,9
57:5
permit  23:1
70:2
permitted
64:17 69:22
70:7

person  53:2
69:1
personal  11:3
personally
31:5
persons  12:14
pertaining
45:7
pertinent
21:12
petition  34:7
41:2 42:1,15
43:14
petitioned  34:5
phone  18:23
19:1,2,3
phones  18:24
physically
62:15
pick  57:24
picking  22:14
piece  37:10
46:20,23 48:6
pieces  25:10
pii  61:18 62:2
66:6
pin  33:21
piracy  42:10
42:12
pirated  42:11
pitney  3:18 4:1
4:8 72:3
pittenger  25:1
place  23:24
33:23 35:5
places  24:6

| | | | |
|---|---|---|---|
| **plaintiff** 38:24 66:22 | **plus** 60:17 | **pre** 23:15 41:2 42:1 | **probably** 65:25 |
| **plaintiff's** 26:25 | **point** 25:14 27:4 35:8 41:18 42:23 44:16,20,20,22 44:23 48:8 54:24 56:12 70:10 | **precisely** 58:6 63:10 | **problem** 69:2 |
| **plaintiffs** 17:16 23:5,6 27:7 28:15,20 32:13 32:14 60:9 68:10 72:23 | | **predicate** 28:25 29:14 | **procedure** 2:2 45:10 69:12,21 70:16 |
| | | **predicted** 11:5 | **procedures** 8:24 26:15 27:11 62:22 |
| | | **prefer** 68:25 | |
| **plan** 15:24 45:8,9,10,11 | **pointed** 43:16 | **preferably** 69:10 | **proceed** 9:15 38:24 |
| **planned** 16:5 | **pointing** 48:24 | **preference** 63:24 64:6 70:8 | **proceedings** 64:23 73:8 75:4 |
| **platform** 15:19 15:22 16:10 17:13 23:3 33:18 | **points** 41:25 | | |
| | **policies** 26:14 37:3 39:8 | **prepared** 25:19 | **process** 45:11 45:17 66:23 |
| | **policy** 26:13,15 27:13 29:20,22 35:18 36:16,24 37:1,2,4,7 53:21 54:13,18 54:20,22,23 57:6 60:14 69:14,16 | **present** 12:16 35:13 49:22 | **processes** 45:12 |
| **platforms** 15:5 15:16,24 16:2 16:14,23 17:1 17:10,14 18:10 18:13,14 34:25 | | **presents** 7:19 | **produced** 28:13 61:19 62:2 63:7 |
| | | **presided** 45:14 | |
| | | **pressed** 67:17 | **product** 11:12 21:2,15 32:20 |
| | | **pressing** 66:3 | |
| **playing** 65:15 65:15 | **portion** 25:4 45:9 | **presumption** 21:18 | **production** 61:16 |
| **plaza** 4:10 | **position** 23:13 29:2,4,5 50:19 50:25 | **pretend** 26:9 | **products** 20:21 |
| **pleaded** 9:8,11 9:15 | | **pretrial** 64:21 64:24 | **profiting** 26:6 |
| | **possible** 68:11 | **pretty** 14:25 25:24 65:12 | **profits** 15:7 |
| **pleading** 44:2 44:6 | **post** 42:15 43:14 64:17 | | **progress** 7:3 |
| | | **prevent** 20:19 63:3 | **progression** 14:15 |
| **pleadings** 2:2 30:8 44:2,5 46:4 61:9 65:4 74:7 | **posted** 16:22 | | |
| | **posts** 15:8 | **previewing** 13:9 | **promote** 13:1 |
| | **potential** 13:10 47:21,24 50:8 51:4,6 | **prima** 44:8 | **promoted** 32:10 |
| **please** 7:4 40:12 47:8 71:25 | | **prime** 58:3 | |
| | | **prior** 56:21 57:7,10 62:12 67:23 | **promoter** 10:14 |
| **pled** 7:21 | **potentially** 36:12 | | |

**promoting**
12:20 13:4
**proof** 31:23
**propaganda**
15:17
**properly** 9:8,9
9:11
**proposed**
43:10,14
**proposition**
31:21
**protected** 22:8
**prove** 22:2
60:12
**provide** 30:5
40:24 45:6
48:25 49:1
58:23 59:12
**provided** 8:24
35:16 66:9
**provider** 8:13
17:24 18:5
26:11 36:18
41:23 48:9
**providers**
18:12,19,20
31:22 36:10
48:25 50:4
**provides** 44:18
**providing**
16:18 18:19
19:5 25:15
26:5
**provision** 11:7
14:2
**provisions**
69:12 70:16

**public** 18:20
64:25
**publicity** 14:6
**pull** 51:15
**pulling** 22:12
22:17
**purely** 7:19
**purpose** 21:25
**purposeful**
13:12
**purposes** 7:20
13:19
**pursuant** 2:2
**push** 62:20
65:20
**put** 8:22 9:20
18:25 30:2
63:21 71:15
73:7
**putting** 10:14
39:22

**q**

**qualifies** 39:6
**quantum**
60:23
**question** 7:20
7:22 8:15
10:17 16:25
21:3,5 22:4
41:14 47:11,24
48:1,21 50:15
50:16 56:5
60:15,20 61:11
62:10 65:7
68:7 69:4
**questions** 10:1
19:21 21:6

39:20 45:23
46:13 55:24
59:25
**quick** 69:4
**quickly** 62:24
66:6 68:18
**quite** 50:4 63:4
64:20 65:7
**quote** 18:17
20:5,24 21:9
21:13 57:24
**quoted** 23:23
24:11
**quotes** 20:7

**r**

**r** 1:21 3:1 7:1
75:1
**radically** 34:7
**raise** 41:18,25
72:22
**raised** 14:22,23
36:3 37:23
50:15 57:13
62:22 65:7
66:8,11 67:3
68:24
**raises** 61:11
63:19
**raising** 50:16
70:22
**random** 42:8
**range** 70:14,19
**rather** 29:25
43:22
**reached** 38:16
40:22

**read** 66:4 67:5
**reading** 30:25
**ready** 66:19
**real** 62:19
68:14
**realize** 21:4
**really** 9:21
13:14 36:5
38:17,19 43:3
44:14 48:11
60:3,19 63:8
65:5,11,20
68:15 73:5
**reason** 37:24
40:9 45:22
**reasons** 19:17
33:8 61:10
**rebuttal** 19:21
**recall** 64:5
**recalled** 64:1
**receive** 56:8
58:25
**received** 13:15
23:1 26:22
37:12 54:8
55:21 56:13,22
57:5 66:24
67:14
**receiving** 37:13
56:12
**recognized**
36:12 69:17
**record** 3:4,11
5:2 13:23
21:17 26:18
38:5 42:21
52:13 60:9

61:25 66:22
75:4
**recording** 7:3
**recordings**
26:25 28:15,21
**recovered** 38:6
**recruited**
16:21
**recruiting**
15:16
**redacted** 66:25
**redactions**
67:2
**reference** 45:6
**referred** 30:17
43:10
**referring** 42:6
43:14
**regard** 49:23
**regarding**
27:15 41:1
62:3
**rehearing**
25:21 34:5
**reject** 18:24
**rejected** 8:11
19:12,17 31:2
32:3
**relationship**
33:3
**relatively** 62:5
62:6
**relevant** 40:16
52:2
**relied** 30:23
**relief** 42:2,16

**rely** 21:18
**relying** 19:22
20:1 21:20
57:15 67:21
**remain** 31:19
**remaining**
19:20
**remember** 7:11
25:15 32:23
**reminded**
68:20
**remote** 69:8,12
69:14,17,22,24
70:2
**remotely** 70:5
**removed** 46:5
**reorganized**
7:15
**repeat** 26:5,6
26:12,14 29:19
30:6 35:3,17
35:18,19 36:16
40:18 58:25
59:18 60:14,15
**repeated** 13:15
23:2
**repetitioned**
34:5
**reply** 24:6
26:16 37:23
43:19 44:16
**representatives**
24:25
**request** 45:18
**require** 22:9
55:3

**required** 17:16
19:7 47:23
51:1,6 55:6
**requirement**
38:4
**requires** 32:9
57:20
**reserve** 19:20
**reset** 25:11
**resolution**
45:12
**resolve** 7:22
62:24 67:8,8,9
68:17,18
**resolved** 48:22
62:23
**resolving** 67:6
**respect** 27:22
27:25 39:17
54:19 61:18
69:14
**respond** 61:3
**responding**
27:11
**response** 25:2
66:11 67:4,25
**rest** 19:18
**restricts** 69:16
**rests** 17:8
**resulting** 12:22
**retaining** 39:7
**retire** 72:15
**retiring** 72:10
**revenue** 17:4
**reversed** 31:14
**review** 37:13
55:19

**reviewed** 10:4
17:3
**reviewing**
62:12
**rewrite** 33:12
**right** 7:4 9:3,9
9:18 10:5,7,21
15:3 20:25
23:13 24:18
29:9 34:20
37:16 38:1,2
38:24 40:5
50:16 51:10
57:12 58:19
59:22 60:3
61:7 62:5
68:22 69:3
72:21,24
**ripe** 66:10
67:10
**rise** 7:2
**road** 6:3 75:21
**rockville** 45:15
**role** 72:11
**rom** 11:1
**roman** 45:15
**rothman** 3:8
**roughshod**
18:2
**round** 19:10
**rounds** 31:5
**royalties** 20:21
**ruben** 5:21
7:13
**rule** 2:2 29:9
29:10 45:1,4
45:12,23 49:9

[rule - slow]                                                                    Page 22

66:16 69:11
70:2
**ruled**  9:7
**rules**  8:25 65:1
69:11,21 70:25
**rulings**  74:3
**run**  18:1 23:9

**s**

**s**  3:1 7:1
**safe**  29:23 36:8
36:8,19 37:15
37:16 40:17
43:1 46:16,18
49:13,18 50:2
60:11
**sales**  31:1
**saw**  25:20
61:17 67:5
71:6 72:6
**saying**  39:14
44:12 48:23
50:3 64:19
71:4
**says**  11:25 15:9
17:8,14 18:11
21:14 23:16
33:10 34:1
37:2 57:22
59:12
**schedule**  68:10
**scheduled**
61:14 68:23
**scheme**  36:9
**scope**  64:2,9
**screen**  23:20
**search**  71:11

**searches**  13:12
**seated**  7:4
**second**  8:1
10:8,11 11:1,6
15:9 19:23
26:1 30:11,22
34:8 39:1,3,4
39:18,22 40:19
40:22 43:14
44:11 47:18
53:12 67:10
**secondarily**
57:21
**secondary**
19:13 30:3
31:17 43:23
46:9 57:25
**seconds**  12:1,3
14:5
**section**  45:11
**see**  18:11 21:1
35:11 72:8
73:1
**seeing**  72:9
**seem**  20:10
**seems**  21:8
67:1
**seen**  63:6 67:15
**selecting**  10:15
**selling**  15:7
**send**  27:7 28:1
**sending**  32:15
**sense**  33:11
65:24
**sent**  13:23 27:5
27:23 39:13
41:2,5,8 49:2

53:24
**sentence**  24:11
**september**
69:15
**series**  21:20
**service**  8:13
14:7 16:18
17:19 26:5,7
27:22 30:6
31:9,22 32:8
32:11 33:2,4
35:4,14,15
36:10,18 48:25
50:4
**services**  7:24
8:3 14:2,11,12
14:12,15 17:17
17:18 18:1,19
19:3,5,5,6
23:17 31:1
34:24 49:2,6
58:23 59:13
**set**  26:19 29:22
29:25 62:10,13
63:11 65:6
67:25
**sets**  27:9
**setting**  53:11
**settle**  62:25
63:15 65:11,12
65:14,21,21
**settled**  50:6
**settlement**
38:16
**seven**  30:10
65:11

**several**  31:5
66:9
**severally**  58:3
**share**  53:9
**shared**  17:4
**ship**  14:18
**short**  62:6
**show**  26:21
60:13
**showing**  22:22
22:23 32:9
**shown**  12:20
**side**  64:14
**side's**  64:1
**sides**  69:25
**signature**  75:7
**significant**
37:20 39:10
**silently**  33:12
**similar**  11:24
30:4
**simple**  35:21
36:2
**simply**  8:18
19:5 26:19
**single**  22:3
30:7 51:1
52:18 67:15
**sinks**  14:18
**sir**  72:7
**sites**  40:24
42:10
**situation**  49:12
**six**  22:7 71:4,7
**slightly**  27:23
**slow**  21:6

small  44:22,22
  61:15,22 62:2
social  18:10
  33:17 34:19,24
software's  13:4
sold  33:5
solutions  75:20
somebody
  28:18,18 65:25
somebody's
  64:4
songs  12:1,3
  14:5
sony  8:18 11:8
  11:15,20 12:8
  12:24 20:18
  24:25 25:12
  30:12,13,16,25
  30:25 31:7,8
  31:16,25 32:1
  32:8,19,20,20
  32:23
sony's  11:19
  12:1
sonya  2:25
  75:3,8
sorry  21:4
  40:22 47:10,12
  55:25,25 66:22
sort  17:23,24
  18:5,5 47:3
  65:16
sound  26:25
  28:15
source  67:11
  67:24

south  5:18
southern  1:2
  41:22
speak  7:11
  40:8 71:24
speaking  12:4
special  35:17
specific  15:14
  16:2,4,6,16,19
  16:23 17:2,5
  19:1,4,14
  29:19 35:25
  36:14 39:12
  41:6 44:10
  70:4
specifically
  18:11 19:25
  21:20 29:13
  35:1 43:21
specifics  29:22
speculate
  21:24 22:1
speed  25:16
  26:5
spreading
  15:17
square  19:10
squarely  23:9
stage  54:17
stamford  4:10
  4:11
stand  24:9
  59:16
standard  34:13
  39:23 53:11
standing  50:22

standpoint
  48:18
stanley  4:13
  72:2
start  28:12
started  44:12
starting  25:14
state  45:5
stated  9:9 13:9
  19:17 31:24
  35:22 37:1
  40:18 41:11
  45:7
statements
  13:1 32:9,10
  64:15
states  1:1,12
  70:11,12
status  66:9
statute  37:20
  60:16
statutory
  17:21 36:9,19
stay  62:15 68:9
  73:3
stayed  34:12
stephan  5:6
steps  12:21
steven  6:6
stockpiled
  55:15
stockpiling
  55:17
stop  9:21 17:9
  17:12 18:1
  47:6 56:2,5

story  31:3
street  3:20 4:3
  4:17
strike  29:10
strikes  29:8,9
  49:9
strong  63:24
  70:8
studios  6:2
  12:13 32:21
subject  13:11
  13:20 28:10
  29:6 48:9,17
  55:18
submit  8:1
  18:6 44:3,21
submitted
  42:24 45:19
subpoena
  70:14,19
subscriber
  13:24 22:7
  23:1 27:2,8,16
  27:17,17,20,21
  27:23 28:1,2,4
  28:14,17 29:6
  29:20 33:3
  34:14 51:2
  55:7 56:21
  57:11 59:1,9
  59:20 61:16
subscriber's
  56:9
subscribers
  7:25 21:21
  26:24 28:9
  32:14,16,17

[subscribers - theory]                                                    Page 24

39:5,7,9,14
50:1 56:11
61:18
**subsequently**
71:8
**substantial**
11:10,13,17
12:25 20:17,23
31:1 32:8 33:6
**substantially**
14:12 31:9
**suddenly**  37:19
**sue**  32:13
**sued**  32:14
**sufficient**  13:1
19:18 22:9,18
23:7 28:24
46:13 48:18
49:11,16 50:7
52:21,22 60:21
**sufficiently**
39:16
**suggest**  33:10
70:3
**suggesting**
27:7 67:15
**suite**  4:17 6:3
75:22
**summary**  31:6
**super**  69:24
**supersede**  65:4
**supervise**  38:3
**supplemental**
42:24
**supplementa...**
47:22

**support**  29:24
30:14
**supports**  57:18
**supreme**  8:2
11:9,15,18
12:8,13,19
13:8 14:13
17:6,7 18:6,8
19:9 20:18
30:23 31:13,14
31:14,20,24
33:12,15,24
37:18,19
**sure**  9:25 18:14
24:9 60:25
66:21
**surprise**  43:16
**surrounding**
52:10
**survive**  38:24
**swaths**  33:12
**system**  28:3
35:24 36:1
37:5 67:24
**systems**  13:6
29:10

**t**

**t**  75:1,1
**take**  39:21
40:15 51:8
54:23 67:6,9
68:6 70:19,20
**takedown**  49:1
49:4
**taken**  12:21
29:2,5 58:11
63:5

**talk**  25:12,12
49:3 62:16
63:9 73:3
**talked**  50:11
**talking**  10:25
49:21 52:18
**talks**  11:2
53:10
**technology**
12:16 53:7,8,9
53:12,15
**tell**  14:20 20:10
22:12 27:19
32:1 37:8
51:18 54:9,22
55:11 56:17,20
66:16 67:24
**telling**  65:5
71:9
**tells**  31:3
**template**  64:24
**temporarily**
34:12
**ten**  11:25 12:3
14:4 22:6,10
22:19
**tens**  32:15
**terminate**  7:23
8:3,5,10 14:11
17:18 19:6
23:16 26:12,13
36:16 37:2
39:8,14 46:25
47:2
**terminated**
26:8 29:19,21

**termination**
29:22 37:8
**terms**  28:21
49:11 51:16
67:13 70:17
**terrible**  18:15
**terrorism**
16:13,21,23
33:18 35:1,14
35:15
**terrorist**  15:18
15:21 16:5
34:21,22 35:2
**terrorists**
16:21 18:10
**test**  20:17,19
35:21 36:3
**testify**  63:25
64:8 70:5,15
70:22
**testimony**  64:9
69:12,22,24
70:2
**texas**  70:11
**thank**  7:16
24:19,20 25:8
40:10 45:24
46:1 47:17
60:2,8 61:6
71:22 72:19,20
72:21 73:4,5
**theoretically**
32:24
**theory**  30:5
31:20 32:13,23
34:2 38:7 46:9

| | | | |
|---|---|---|---|
| **thereto** 2:3 | **throw** 27:14 | **torrents** 27:9 | **trying** 19:9 |
| **thing** 40:22 | **thrown** 36:21 | **tort** 18:2 | 21:23 25:6 |
| 49:3 53:6,14 | 54:3 | **tortfeasor** 58:3 | 37:13 49:5 |
| 53:16 64:11 | **tie** 19:19 | **tortious** 58:2 | 66:23 |
| 71:10 | **time** 7:11 | **total** 11:18 | **turkey** 16:7 |
| **things** 12:6 | 19:20 27:4,12 | 27:4 | 34:22 35:2 |
| 16:19 61:1 | 33:23 36:15 | **totally** 8:25 | **turn** 30:12 |
| **think** 8:17 9:2 | 41:2 47:16,18 | 53:7,8,16 | 33:7 37:21 |
| 15:14 16:12 | 47:18 56:18 | **town** 61:13 | **twardy** 4:13 |
| 18:17,18,20 | 63:4 64:14 | **traditional** | 71:24 72:1,2,5 |
| 20:11,17 21:9 | 65:8 68:6 | 31:21 | 72:7,20 |
| 21:10,15 23:13 | **timed** 64:13 | **transcribed** | **tweaking** |
| 23:15 24:4,6 | **times** 30:10 | 2:25 | 25:20 |
| 24:16 25:10 | 54:11 | **transcript** 75:4 | **twitter** 8:2,11 |
| 36:2 41:14 | **timing** 56:22 | **trash** 27:15 | 8:13,22,22,25 |
| 46:8 47:25 | 56:25 | 54:3 | 11:5 13:9 |
| 48:13,17 50:11 | **tinkering** | **treatment** | 14:13,14,22 |
| 51:8,25 52:2 | 72:25 | 35:17 | 15:4,5,7,8,14 |
| 53:10 54:16 | **titles** 46:6 | **trial** 25:25 53:4 | 15:15,19 16:9 |
| 55:22 56:23 | **today** 24:25 | 63:1,16 64:17 | 16:13,14,20 |
| 66:16 67:16 | 31:11 43:3 | 65:13 68:12,15 | 17:14,15 18:11 |
| 69:11,20 71:9 | 46:4 61:6,10 | 68:19 69:9,13 | 23:10,16,16 |
| **third** 12:23 | 61:14 66:13,16 | 71:12 72:18,18 | 25:13 33:7,8 |
| 36:5 37:10 | 66:18 72:8 | **trials** 63:17,24 | 33:15 34:4,6,7 |
| 70:24 | **together** 10:14 | 64:3,11,13,20 | 34:12,15,18,25 |
| **thought** 47:12 | 72:11 | 69:18 70:17 | 35:1,12,13 |
| 56:1,4 65:17 | **told** 31:8 | **tried** 35:8 | 36:6,7,17 |
| 70:22 71:7 | **tomorrow** | **trigger** 47:24 | 37:19,25 39:24 |
| **thousand** | 61:12,23 62:14 | 48:19 49:17 | 40:1,4,9 43:4 |
| 22:15 27:1 | 63:8,10 65:6 | 50:8 | 46:10 51:5 |
| **thousands** | 66:5,12 67:8 | **tropp** 4:6 | 52:4,22 59:12 |
| 32:15 52:13 | 68:3,21 71:13 | **true** 15:25,25 | 59:14,16 |
| **three** 25:12 | 71:19 73:2 | 16:16 26:19 | **twitter's** 34:13 |
| 29:6,8,9,10 | **took** 35:5 | 43:6 75:4 | 40:3 |
| 33:8 41:12,15 | **tools** 15:16 | **try** 18:9 49:10 | **two** 10:11 11:2 |
| 41:18,25 49:9 | **torpedo** 14:17 | 64:8 66:3 | 13:3 25:11 |
| 52:19 60:17 | | 72:24 73:1 | 27:9,9 38:2 |

40:16,19 57:2
60:11 61:1
66:10,17
**type** 11:6 18:25
21:25 51:25
53:6 57:20
**types** 11:2
**typical** 18:2
**typically** 65:18
69:23

**u**

**u.s.** 1:23
**u.s.c.** 42:2,16
44:6
**uh** 57:14,23
**ultimate** 28:20
**unclear** 62:12
**under** 14:18
34:13 39:8,9
47:2 60:16,21
63:20 65:1
**understand**
20:11 38:7
50:18 60:24
61:5 64:22
68:16,16 71:1
**understanding**
71:2
**understood**
70:9
**undertake** 55:7
**undertaken**
56:12
**undisputed**
13:15
**unfortunately**
8:23 31:4,11

**united** 1:1,12
70:11
**unlawful** 11:12
**unrelated**
33:13
**unusual** 8:14
**update** 66:9
**updated** 66:21
**upend** 36:7
37:19 46:19
**urge** 12:7
**use** 12:20,25
14:6 18:14,22
20:17 21:23
23:2 26:7,13
26:15 27:21
32:8 34:25
35:14,15 37:2
44:17,19 46:6
69:17
**used** 15:15,24
16:15 18:24
19:2 20:22
21:19 32:24
34:23 49:6,6
53:13
**useful** 65:24
**user** 37:1
**users** 36:13
37:6
**uses** 11:10,13
11:17 20:23
31:2,9 64:14
**using** 15:22
16:14 17:1,10
17:13,19,25
34:19 35:4

36:1 62:22
69:9
**usually** 64:3,17
65:10,11

**v**

**v** 8:18 12:13
35:23 36:1
39:2 40:17
41:22
**vacate** 34:3
**vain** 13:12
**validity** 44:9
**various** 38:2
38:13
**vast** 37:6
**vcr** 11:9,15,16
11:20,21 12:2
12:6 32:21
**veritext** 75:20
**versions** 11:1
67:23
**viable** 31:20
38:23 39:10
**viacom** 40:21
40:23
**vicarious**
19:16 25:13,17
26:3 37:21,23
38:1,6,14
39:23,25 40:7
40:8 48:19
49:17 52:7,23
53:11
**vicariously**
41:23
**video** 16:20
70:20

**videos** 16:22
17:3,4
**view** 9:3,17
10:3,6,19,24
11:5 13:22
14:14 28:24
39:22 44:6
50:13,14,20
63:22
**violates** 45:1
45:23
**violations**
41:24 42:3
**viral** 28:17
**virtue** 59:18
**voice** 7:3
**volume** 63:6
**vpn** 41:23

**w**

**wacker** 5:18
**walled** 28:4
**want** 9:24
23:18,19 39:15
41:1,18 43:1
44:25 50:25
56:17 59:23
60:9 61:25
62:10,13,14,16
63:10 65:6,20
66:2,12,12
68:5,6,10,15
70:4,20
**wanted** 46:24
60:4,25 66:21
72:9,12
**wants** 26:9
72:22

**warning**   27:16
27:24 28:2,3
53:24
**washington**
3:13 4:18
68:21
**way**   9:20 11:21
31:18 41:15
56:4 63:17,23
64:19 65:20
71:15 73:7
**we've**   29:5
41:15 66:10
67:3,14
**weapons**   16:15
16:23
**website**   42:12
64:25 65:1
**websites**   42:9
**week**   22:19
72:10,16
**weeks**   22:20
**welcome**   73:3
**went**   31:16
38:14 54:2
71:6,16
**west**   11:1
42:25
**whatsoever**
69:3
**widely**   33:22
33:23
**wideopen**
42:25
**willful**   26:20
30:1

**window**   36:21
**wisconsin**   3:12
**wishes**   40:25
**witness**   62:11
64:5 70:8,13
70:18
**witness's**   64:8
**witnesses**
63:20,25 64:7
65:2 70:4
**wording**   18:8
**work**   20:20
42:11 53:1
54:11
**worked**   64:20
**working**   36:25
**works**   10:15,16
13:3 22:8
51:23 52:14
**world**   70:7
**worldwide**
28:16
**worthless**
37:16
**writ**   18:20
**writing**   8:24
**written**   54:13
54:18,20 63:18
63:21 69:5
72:25
**wrong**   8:18,21
23:13,15 29:11
30:25 31:25
51:5 52:22
59:14 68:1
**wrongdoers**
17:25

**wrongdoing**
16:2,3,10,11
16:12 17:24
18:6

| **x** |
| --- |

**x**   1:4,10 74:1

| **y** |
| --- |

**yeah**   9:10,11
20:4,9 23:21
24:4 33:22
35:10 47:25
50:18 53:19
55:4 71:25
**year**   14:14
41:10 71:3
**year's**   13:9
**years**   15:16
54:17 65:11
**yesterday**
61:18
**york**   1:2,14 3:6
5:4,12
**youtube**   29:9

| **z** |
| --- |

**zebrak**   3:3,10
**zero**   31:14 67:3
**zoom**   61:12,14
62:7,22 68:22
68:23 69:9