Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 20-22476-mg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   FRONTIER COMMUNICATIONS CORPORATION,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11               United States Bankruptcy Court

12               One Bowling Green

13               New York, NY 10004

14

15               March 28, 2024

16               3:02 PM

17

18

19

20

21  B E F O R E :

22  HON MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  KS

1    HEARING re Case Management Conference Using Zoom for

2    Government After Conference in Contested Matters of

3    Copyright Claims Objections. (2259, 2260, 2270, 2271, 2264,

4    2286, 2289, 2301)

5

6    HEARING re Discovery Conference Using Zoom for Government

7    RE:  Letter Filed by Counsel to the Movie Claimants (Doc #

8    2302, 2303, 2306).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    OPPENHEIM ZEBRAK LLP

4         Attorneys for Record Company Claimants

5         4530 Wisconsin Avenue NW, 5th Floor

6         Washington, D.C. 20016

7

8    BY:  ALEXANDER KAPLAN

9         MATT OPPENHEIM

10        CARLY ROTHMAN

11

12   CULPEPPER LP LLC

13        Attorneys for Badhouse Studios, LLC

14        75-170 Hualalai Road, Suite B204

15        Kailua Kona, HI 96740

16

17   BY:  KERRY STEVEN CULPEPPER

18

19   AKERMAN LLP

20        Attorneys for Frontier Communications

21        750 9th Street NW, Suite 750

22        Washington, D.C. 20001

23

24   BY:  ILDEFONSO MAS

25

Page 4

1   DAY PITNEY LLP

2        Attorneys for Frontier Communications Corporation

3        225 Asylum Street

4        Hartford, CT 06103

5

6   BY:  JONATHAN TROPP

7        ELIZABETH ALQUIST

8        STANLEY TWARDY

9

10  MORGAN LEWIS BOCKIUS LLP

11       Attorneys for Record Company Claimants

12       101 Park Avenue

13       New York, NY 10178

14

15  BY:  MICHAEL LUSKIN

16

17  ALSO PRESENT:

18  MATTHEW J. LETTEN

19  ANNIE WELLS

20  GREG M. ZIPES

21  CLARA ELLEN GEOGHEGAN

22  TAYLOR HARRISON

23  VINCE SULLIVAN

24  JOHN P. CAMPO

25  RUBEN CASTILLO

1                P R O C E E D I N G S

2              CLERK:  All right.  So we are starting the 3:00

3       hearing for Frontier Communications Corporation, Case Number

4       20-22476.  If you could start again.  Thank you.

5              MR. TROPP:  Certainly.  Good afternoon.  My name

6       is Jonathan Tropp of Day Pitney.  I am one of the attorneys

7       representing Frontier.  I will be joined in this conference

8       room by my colleague, Stan Twardy.  And I expect that we

9       will be joined by our colleague, Beth Alquist, Elizabeth

10      Alquist, from our Hartford office when she comes on.  We

11      also expect to be joined by our co-counsel at Akerman from

12      other locations as well.

13             CLERK:  Okay.  Thank you.  You can pause again for

14      now.

15             All right.  Mr. Luskin, if you could give your

16      appearance please.

17             MR. LUSKIN:  Sure.  Michael Luskin, Morgan Lewis,

18      for the record company claimants.  I'm waiting for the rest

19      of the team.  I don't see them logged in yet.

20             CLERK:  Understood.  All right.  Elizabeth, are

21      you speaking on the record this afternoon?  Can you give

22      your appearance, please?

23             MS. ALQUIST:  Beth Alquist with Day Pitney for

24      Frontier Communications.

25             CLERK:  Thank you.

Page 6

1              And you also have here -- I don't know if you can

2     see us.  You have here Jonathan Tropp and Stanley Twardy,

3     also for Frontier.

4              CLERK:  Yes, thank you.

5              Kerry, please unmute and give your appearance.

6              MR. CULPEPPER:  Good afternoon.  Kerry Culpepper

7     appearing on behalf of movie claimants.

8              CLERK:  Thank you.

9              Matthew, please unmute and give your appearance.

10    Matthew, I am asking you to unmute.

11             MR. LETTEN:  Yeah.  Sorry about that.

12             CLERK:  You're fine.  If you could just give your

13    appearance.

14             MR. LETTEN:  Oh.  I don't think I have an

15    appearance in the case, but Matthew Letten from Day Pitney

16    for the Debtor.

17             THE COURT:  All right.  Thank you.

18             MR. TWARDY:  He is not likely to be speaking today

19    I would say.  Not in any derogation of him, but we all have

20    our roles for today.  Thank you.

21             CLERK:  Understood.  Thank you.  All right.  You

22    can pause again for now.

23             All right.  Matthew, if you could please give your

24    appearance.

25             MR. OPPENHEIM:  Good afternoon.  Matt Oppenheim

Page 7

1   from Oppenheim & Zebrak on behalf of the record company

2   plaintiffs.  I believe here with me as well is Carly Rothman

3   and I believe other colleagues will be joining shortly.

4           CLERK:  Thank you.  Carly, would you like to try

5   unmuting just to make sure that you can speak if you're

6   speaking this afternoon?

7           MS. ROTHMAN:  Sure.  Can you hear me?

8           CLERK:  Yes, I can.  Thank you.

9           Ildefonso?

10          MS. MAS:  Yes.  My name is Ildefonso Mas and I am

11  appearing on behalf of Frontier, reorganized debtors.

12          CLERK:  Thank you.  Alex, if you could unmute and

13  give your appearance, please.

14          MR. KAPLAN:  Hi.  This is Alex Kaplan for the

15  record company claimants.  Thank you.

16          CLERK:  Thank you.  All right.  It looks like we

17  are just waiting for the United States Trustee's Office.

18  You can pause again for now.

19          Thank you, Kevin.  I called the case and took

20  appearances.

21          THE COURT:  All right.  Good afternoon, everyone.

22  This is Judge Glenn.  What I would like to deal with first

23  is the objections to the disclosure of the PII, personally

24  identifiable information.  There were a number of objections

25  that were filed, either sent directly -- filed on the record

Page 8

1    or sent to Frontier, which in turn filed them.  Does anybody

2    -- any of the objectors wish to be heard?

3            On Zoom there is a hand raise function at the

4    bottom of the screen.  And if you want to be heard, just

5    please raise -- raise your hand and I'll recognize you to

6    speak.  I don't see anyone.

7            Deanna, have any of the objectors signed up for

8    the hearing?

9            CLERK:  Which firm are they with, Judge?

10           THE COURT:  No, these would be pro se.

11           CLERK:  No.  I don't have any pro ses signed up,

12   Judge.

13           THE COURT:  All right.  Does anybody on behalf of

14   Frontier want to be heard with respect to the disclosure of

15   the PII?

16           MR. TROPP:  No, Your Honor.  This is Jonathan

17   Tropp speaking.  Frontier is prepared to abide by the

18   Court's ruling on the objections.

19           THE COURT:  All right.  And I note that most of

20   the people -- most of the subscribers for whom there is PII

21   did not object and I was advised yesterday that information

22   has already been provided.

23           Let me just cover one thing.  I want to be sure

24   when you provided the information, did you do it subject to

25   the confidentiality agreement that's in place?

1          MR. TROPP:  I'm sorry, Your Honor, your question

2    faded out.  But in any event, Mr. Mas might be better-

3    prepared to answer it.

4          MR. MAS:  Yes, Your Honor.  This is Ildefonso Mas

5    appearing on behalf of Frontier.  My understanding is yes,

6    it was provided subject to the confidentiality order.

7          THE COURT:  All right.  And I want the same.  I'm

8    going to enter an order overruling the objections and that

9    order will have a provision in it that information will be

10   produced subject to the protective order.  All right.

11         The other matter I want to raise today, I raised

12   yesterday, is setting a schedule for this case going

13   forward.

14         So let me hear first from the Claimant's counsel.

15         MR. OPPENHEIM:  Good afternoon, Your Honor.  This

16   is Matt Oppenheim on behalf of the record company claimants.

17         Your Honor, the parties, all of us -- or counsel I

18   should say -- met this morning at some length to discuss the

19   issues you raised in terms of schedule and other outstanding

20   issues in an effort to try to figure out how to move this

21   case along as quickly as possible.

22         The record company claimants would like to have

23   their claims adjudicated as quickly as reasonably possible,

24   Your Honor.  And a trial at the end of August is achievable

25   but will require a substantial effort to complete fact

Page 10

1    discovery.  And if I may, Your Honor, I know we have raised

2    with you previously several discovery issues.  But I think

3    it's important for the Court to have some kind of larger

4    understanding of how much discovery remains outstanding.

5    And so if I could give you a flavor of that, I think it may

6    be helpful.

7           So I think we indicated yesterday that no

8    depositions have yet been taken, nor have they been

9    scheduled.  Written discovery from Frontier is still -- I

10   don't want to say the early stages, but certainly not

11   hearing conclusion.  The type of written discovery that is

12   outstanding is the type of written discovery that is proven

13   to be critically important in other analogous cases.  For

14   example, internal and external communications that

15   demonstrate whether an ISP is following its stated policies

16   and procedures in responding to infringement notices, data

17   that demonstrates the extent of Frontier's knowledge of

18   repeat infringers and their failure to act regarding them.

19          Yesterday Mr. Castillo indicated in response to

20   some questions from Your Honor that Frontier, in response to

21   each infringement notice, undertakes an investigation and

22   analysis.  That was the first time we've ever heard that and

23   ever certainly seen any documentation of that effect.

24          THE COURT:  I didn't understand them that clearly

25   as you've described.  When I probed about the investigation,

Page 11

1    I couldn't find out if they did anything.

2           MR. OPPENHEIM:  That's what I heard as well, Your

3    Honor.  but I did hear they did one.  So I am curious what

4    documentation exists on that front.

5           THE COURT:  Well, they'd better produce the

6    documents and produce some witnesses very quickly.

7           Mr. Oppenheim, look, I inherited this case from

8    Judge Drain.  The claim objections were filed quite some

9    time ago.  When I took over the matter, as best I can tell

10   virtually nothing had happened with respect to prosecuting

11   the claim objections.  And I thought I had communicated that

12   that all had to change.  It hasn't.  I'm very disappointed

13   with the pace of discovery.

14          Let me put in the clearest possible terms; I don't

15   have any cases on my calendar as old as this where it's

16   waiting for something to happen in the bankruptcy court.  I

17   just don't.  And I move my docket along and cases either

18   settle or they get tried if it's an adversary proceeding or

19   a contested matter.  And so all this has to change.  And if

20   -- I am prepared today to deal with those specific discovery

21   issues that were raised in the correspondence that the court

22   has received over the last few days, and I'm going to make

23   short work of all of that.

24          But I think you all -- I'll let you finish.  But I

25   just think -- I honestly don't care whether you have to

Page 12

1    double track depositions, triple track depositions.  The

2    case is going to get -- you know, it's a contested matter.

3    It's going to get handled.  There also supposed to be

4    discovery going on here with respect to the district court.

5    God only knows where that's actually happened.  But it's

6    going to change.

7              But go ahead.  I cut you off.  And you can tell me

8    and I'll hear from the record company, from Frontier what

9    their view about it is.  But I don't like hearing that you

10   don't think this is going to be tried in August.  And I

11   wasn't thinking about the end of August, I was thinking

12   about the middle of August.  Okay.

13             MR. OPPENHEIM:  So, Your Honor, I will skip the

14   remaining categories of discovery that are outstanding and

15   give you what I believe the proposed schedule from the

16   record company claimants that could work.  And with

17   recognition that in the meet and confer there are some

18   issues.  Everybody has their own issues.  But from the

19   record company claimants' perspective, Your Honor, we would

20   be prepared to proceed on August 19th, hopefully completing

21   this by absolutely no later than the 29th, though hopefully

22   earlier than that given the process that Your Honor laid out

23   yesterday.  In order to achieve that trial schedule, we

24   believe that interim deadlines as follows would be

25   necessary, that --

Page 13

1           THE COURT:  Let me just -- let me stop you for a

2     second.

3           MR. OPPENHEIM:  Sorry.

4           THE COURT:  And this is not fixed in cement.  But

5     I will tell you what -- you were using August 19th as the

6     trial date.  Well, I had August 12th as a trial date, a week

7     before that.  And I'll tell you my thinking.  I'm not

8     ordering this yet.  The trial of the contested matter was

9     going to commence at 9:00 a.m. Monday, August 12th and

10    conclude on or before 5:00 p.m. Friday, August 23rd.  Two

11    weeks.  Trial days ordinarily commence at 9:00 a.m. and

12    conclude at 5:30 unless a witness is on the stand and we'll

13    go late.  Okay?  And I do expect it will be a timed trial

14    and I would not make time allocations, but would do it at a

15    hearing closer to the hearing.  You know, closer to a trial.

16          But I'll tell you the other dates I had penciled

17    in.  You know, final pretrial conference on August 7th.

18    Completion of all fact discovery by June 7th.  Completion of

19    expert discovery by July 19th.  Submit the proposed joint

20    pretrial conference order by August 2nd.  Trial briefs,

21    exhibits, declarations, all August 2nd.  Final pretrial

22    conference, August 7th.  And as I said, the trial starting

23    August 12th.  That's what I had written out.

24          I looked carefully at my calendar.  And I actually

25    went back and added a few days here and there pushing it

Page 14

1    out.  But I just -- but go ahead.  So you had a very soft

2    trial date of August 19th.  But go ahead.  What other dates

3    did you have?

4              MR. OPPENHEIM:  So I think we are close, Your

5    Honor.  We actually divvied up on the fact discovery.  We

6    had ultimate fact discovery also closing on June 7th as you

7    did, but believe that in order to accomplish that, we would

8    need to have the document production and privilege logs done

9    on or around April 19th in order to give us time for what

10   could be a not insignificant number of depositions,

11   including understanding we are going to double, triple-track

12   as we need to.

13             On the expert discovery, we broke it up, Your

14   Honor, because we know that there will be both affirmative

15   and rebuttal reports.  And so we had included June 18th,

16   which is only 11 days off of the close of fact discovery for

17   affirmative reports and then rebuttal reports July 12th with

18   expert depositions or expert discovery closing on July 26th.

19   So that's a week later than Your Honor had, but allows for

20   the fact that we will -- I know the Plaintiffs have three

21   experts lined up, affirmative experts lined up.  Have no

22   idea what the Defendants' experts look like or the movie

23   studios' experts look like.

24             And we thought with this schedule we could

25   accomplish it.  And it also -- we believed -- we haven't

Page 15

1    been able to come to ground with all of our witnesses yet,

2    but at least some number of them that the August 19th start

3    date would work.  So, Your Honor, that was what we proposed.

4             I do have two other -- and kind of detailed

5    things, but don't want to lose track of them.  And so we

6    noted in Footnote 13 of your decision from yesterday, you

7    indicated that we would not be trying the Safe Harbor issue

8    and that that would then subsequently go to the district

9    court.  I thought -- we thought, Your Honor, that under

10   Judge Torres' decision that the Safe Harbor with respect to

11   the administrative claim actually remains with the

12   bankruptcy court.  And we recognize that that is probably

13   the height of inefficiency, but there is -- and the overlap

14   between the evidence presented for purposes of liability and

15   damages and the Safe Harbor is almost an exact overlap.

16   From our perspective if the Safe Harbor on the

17   administrative claims had to be handled by the bankruptcy

18   court, it should be handled during this trial

19   simultaneously.  And probably serve as an R&R of sorts for

20   the district court on the prepetition claims.

21            THE COURT:  Let me ask -- let me raise some

22   questions.  So I thought when I asked Frontier's counsel

23   yesterday about Safe Harbor -- I haven't gotten a transcript

24   yet, but it sounded to me as they weren't going to raise

25   Safe Harbor.  You made -- the Claimants made the motion to

Page 16

1   withdraw the reference.  I have to tell you, I really did

2   spend a lot of time working on the legal issues.  And,

3   frankly, it is not clear to me why the Safe Harbors are even

4   going to arise.

5              You're the ones who raised the issue.  Do you want

6   to go to the district court on the Safe Harbor issue?  I

7   mean, it seems to me the ball is in your court.  So you

8   could decide just to withdraw that.  But I'm not telling you

9   you have to.  It was really unclear to me.  Okay?

10             MR. OPPENHEIM:  So, Your Honor, I appreciate you

11  raising it in this manner.  So when we initially filed the

12  claims in the -- the claims in the case, it seemed to us

13  that from a pure efficiency perspective, all of it should be

14  handled in one place, and that the only place you could

15  handle everything would be the district court.  So that's

16  why we sought to remove the reference.  And that's what our

17  papers set forth to Judge Torres.

18             Now, we lost that motion and I'm not seeking to

19  relitigate that now.  But now two years later, by no fault

20  of anybody here, we waited a long time for that decision.

21  We are where we are.  And from an efficiency perspective,

22  the record company claimants are fully prepared to have Your

23  Honor rule on the Safe Harbor in both the prepetition and

24  the administrative claims and no need to have Judge Torres

25  address that in a way that would be very inefficient.

Page 17

1          And I think Your Honor had previously asked us

2    kind of the parties what their views were of how

3    procedurally this should go.  And in Docket 2240 we

4    submitted something on (indiscernible) and I think we

5    suggested something along these lines.  But, Your Honor, we

6    are prepared to have -- to the extent that Frontier is going

7    to assert the Safe Harbor, which if they're not, they're

8    not.

9          And I will note in many of these cases, the ISP

10   will initially assert the Safe Harbor and then when push

11   comes to shove, they withdraw it at the end and don't

12   proceed on it.

13          THE COURT:  I thought I asked that question

14   yesterday.  And again, I would have to look at the

15   transcript to get exactly, but I'm a little surprised.  I

16   thought the answer was no, they don't believe the Safe

17   Harbor arises here.  You all can order the transcript.

18          MR. OPPENHEIM:  The short answer is, Your Honor,

19   we are prepared to have the bankruptcy court address the

20   Safe Harbor on the claims.

21          THE COURT:  Mr. Culpepper, what about the movie

22   companies?

23          MR. CULPEPPER:  Yes, Your Honor.  Similar here.

24   Docket entry 2241.  In our statement of issues, we had

25   suggested that Your Honor could decide the Safe harbor issue

Page 18

1    and issue a report and recommendation that could be taken

2    out by the district judge.  I'm fine with -- I second what

3    Mr. Oppenheim proposed.

4              THE COURT:  Well, let me just -- I'm not deciding

5    this issue one way or the other.

6              These are your claims against the Debtor.  Claims

7    against the Debtor are within the core bankruptcy

8    jurisdiction.  They're not related-to claims.  And my view

9    is for core claims, the bankruptcy court has the authority

10   to enter final orders or judgement.  I will do it in an

11   opinion.  There will be an opinion at the end of the case.

12   And you can certainly take an appeal from it.  But I'm

13   certainly not persuaded today that the bankruptcy court must

14   prepare proposed findings of fact and conclusions of law.

15   Let me just -- because you used that term, proposed findings

16   of fact and conclusions of law.  That has very specific

17   meaning to me, Mr. Oppenheim.

18             MR. OPPENHEIM:  No, no, I'm sorry.  I didn't --

19   okay.  I didn't mean to suggest that that's what you should

20   be doing, Your Honor.

21             THE COURT:  Okay.

22             MR. OPPENHEIM:  Let me be short and clear.  We are

23   prepared to have Your Honor rule in full on the Safe Harbor

24   on all the bankruptcy claims.

25             THE COURT:  All right.  And that's true for you

Page 19

1    too, Mr. Culpepper?

2              MR. CULPEPPER:  Yes, Your Honor.

3              THE COURT:  And what about for Frontier?  Who is

4    going to speak for Frontier?

5              MR. TWARDY:  Your Honor, at this point -- this is

6    Stanley Twardy.  I'll speak for Frontier.

7              I did not hear Mr. Castillo yesterday say that

8    Frontier would not assert the Safe Harbor.  I may have

9    missed it.  I certainly didn't hear it.  And it's certainly

10   our intent at this time to assert the Safe Harbor.

11             THE COURT:  All right.  And --

12             MR. TWARDY:  In the district court, Your Honor.

13   In the district court.

14             THE COURT:  Okay.  So you're not prepared -- your

15   view is you're not prepared -- we'll have to review the

16   transcript.  Because I thought I heard Mr. Castillo say that

17   he agreed that the Safe Harbor was not an issue in this

18   case.  But we can all -- I don't have verbatim.  I didn't go

19   back and listen.  But let me be clear.  You're taking over

20   for Mr. Castillo, is that correct?

21             MR. CULPEPPER:  Yes, sir.  Yes, Your Honor.

22             THE COURT:  And your position is that you're not

23   prepared to allow the bankruptcy court to decide the Safe

24   Harbor issues.  Is that what you're saying?

25             MR. CULPEPPER:  Your Honor, not at this time.  It

Page 20

1   was first raised this morning by Mr. Oppenheim at, you know,

2   9:30 this morning.  I'm not in a position now at 3:00 or

3   3:30 to agree or disagree.  You know, I guess I have to

4   disagree at this point just to reserve our rights.

5            THE COURT:  Well, you can reserve your rights.

6   But we'll all go back and look at the transcript from

7   yesterday's hearing.

8            MR. CULPEPPER:  Understood, Your Honor.

9            MR. OPPENHEIM:  Your Honor, may I...

10           THE COURT:  Go ahead, Mr. Oppenheim.

11           MR. OPPENHEIM:  I think with respect to the

12  administrative claims that the Safe Harbor is still with

13  you.  That has not been withdrawn.

14           THE COURT:  I've got to tell you, it makes no

15  sense to me.  But anyway, go ahead.

16           MR. OPPENHEIM:  Well, I'm not going to endeavor

17  to...

18           THE COURT:  We'll leave that alone.

19           MR. OPPENHEIM:  But I believe the only thing that

20  Judge Torres has withdrawn the reference on at the moment is

21  the Safe Harbor on the prepetition claims.  So you're going

22  to hear -- you should I think hear the Safe Harbor on at

23  least half anyways, which is the same.

24           THE COURT:  Well, let me say this to be clear.

25  We're coming out today with a schedule.  If either the

Page 21

1    claimants or Frontier believe that they need to go to the

2    district court with respect to withdrawal of the reference

3    that would alter the schedule, they'd better do it soon.

4    Because this case is moving forward.  Okay?  And I'm not

5    going to get a month away from a trial date to have one side

6    or another side make a motion in the district court that

7    would require an adjournment or alteration of the trial

8    date.  So I guess what I heard from the Claimants, both the

9    record companies and the music companies, they are prepared

10   to have the bankruptcy court try the issues of the Safe

11   Harbor.  And what I have heard from Frontier is they are not

12   prepared to say that.  And that's fine for today.  But all

13   I'm going to say is if Frontier plans to alter the schedule

14   by insisting on the district court addressing safe harbors,

15   they'd better promptly make a motion.  Okay.  Because

16   whether these dates from what I gave you move slightly or

17   not, my intention is to move forward very quickly in all of

18   this.  And let me leave it at that for now.

19           But, Mr. Oppenheim, had you finished with your --

20   let me just -- with respect to how I usually handle the

21   scheduling on experts, this is fairly standard for what I

22   do.  And I told you that in what I wrote down, I had all

23   expert discovery completed by July 19th.  But what I wrote

24   is on or before June 3rd.  June 3rd is a few days before the

25   end of fact discovery.  The parties shall meet and confer on

Page 22

```
1    a schedule for expert disclosures, including reports,

2    production of underlying documents and depositions, provided

3    that Claimants' expert reports shall be due before

4    Frontier's experts.  So I leave it to you to try and work

5    those out.

6              I set the deadline.  I tell you when you have to

7    meet to talk about it.  And then what I've usually found

8    most efficient is to let good lawyers work out the details

9    about what's the date that plaintiffs will produce report,

10   defendants will produce the report, when the expert

11   depositions will happen.  So I left that -- I didn't dictate

12   that.  I put a deadline and then said meet early and work

13   out all the other stuff.  And if you can't, then I will set

14   the dates.  But I usually try and -- I've always been

15   successful in this -- leaving it to counsel to work out

16   those dates.  Okay.

17             MR. OPPENHEIM:  And -- sorry.

18             THE COURT:  Go ahead, Mr. Oppenheim.

19             MR. OPPENHEIM:  That's fine.  And we're happy to

20   work with the Day Pitney and Akerman teams on that.  Though

21   I will say that if they are proceeding on the Safe Harbor, I

22   believe they will likely have an affirmative expert report.

23             So you indicated that the initial claimant's

24   expert reports would be due.  I think we would have cross-

25   expert reports just for clarification.
```

1          THE COURT:  I would agree with that.  But I think

2     that somebody ordered the transcript from yesterday.

3          MR. OPPENHEIM:  Yes, we have.

4          THE COURT:  And wishful thinking or otherwise, I

5     thought I -- because I have sort of pressed Mr. Castillo

6     about this issue, about the Safe Harbor defense.  And I

7     think I asked a number of follow-up questions about it to

8     make sure I -- I thought I certainly understood him to what

9     he was saying.

10         It's ironic to me because it's the claimants who

11    made the motion to withdraw the reference and now it appears

12    to be Frontier that said oh no, no, no.  All right.  Okay.

13    Let's leave that aside.  Okay.

14         MR. OPPENHEIM:  So, Your Honor, there was one

15    other issue, if I may, on the trial schedule.

16         THE COURT:  Go ahead.

17         MR. OPPENHEIM:  And again, this is in the larger

18    context of the schedule a minor issue.  But as we were

19    thinking about it, an important one.

20         We will -- the record company claimants will have

21    three experts.  And having procedure on these types of cases

22    before, we believe -- the process you've laid out for

23    affirmative testimony generally works in favor of, and we

24    will of course work with, in the context of experts, it

25    would be I think useful for the Court to get maybe 45

Page 24

1    minutes of affirmative explanation of the experts'

2    conclusions before the cross.  Because sometimes in these

3    cases it's either technical or very statistical.  And the

4    use of walking through a PowerPoint presentation on that can

5    very much help to set the stage in our experience.  And

6    again, not suggesting doing all the background and

7    everything else that takes often far too long.

8            THE COURT:  I only want to stop you because I -- I

9    have permitted and have done what you've said, whether it's

10   45 minutes or whatever.  But two issues.  You need to

11   discuss among counsel whether the expert reports are

12   admissible, will be admissible in evidence as the direct

13   testimony of the experts.

14           In jury trials, expert reports often don't come

15   into evidence per se.  Sometimes counsel will stipulate to

16   it, but you need to discuss it.  This works both ways for

17   both sides.

18           And yes, I have permitted experts to -- as long as

19   what they are doing is talking through information that's in

20   their report -- so this is not a surprise to any -- I don't

21   want surprises.  Okay?  Yes, I've done -- whether it's 45

22   minutes or not, I'm not going to say now.  So yes, I have

23   done that with experts.  It's usually helpful to the court

24   understanding what the expert is saying in the report and

25   their conclusions.  And this obviously goes for both sides.

Page 25

1           MR. OPPENHEIM:  Very well, Your Honor.

2           THE COURT:  I say both sides, but this is sort of

3    a -- Mr. Culpepper, I'll turn to you.

4           Mr. Oppenheim said how many experts he anticipates

5    having.  I don't know what you anticipate having.

6           MR. CULPEPPER:  One or two at this point, Your

7    Honor.  One point I wanted to bring to the Court's

8    attention, Your Honor is saying the trial is going to be two

9    weeks.  In these type of cases -- this is a copyright

10   infringement case.  So in these type of cases sometimes the

11   Defendant has demanded a side-by-side comparison of the work

12   and the copy.  For our perspective, the works are movies.

13   Each movie is 90 minutes, two hours.  There are multiple

14   pirated versions of these movies.  We don't -- usually in

15   this type of case at this stage, plaintiff has a very good

16   idea of what defendant's defense is going to be.  But

17   because this is a unique situation, we don't know what

18   defendant's defense is.  We don't know if defendant is

19   asserting, contesting direct infringement, we don't know if

20   defendant is going to argue that these copies aren't true

21   copies.

22           At this stage, just assume that Defendant is going

23   to contest every element of copyright infringement, that

24   could require showing the movie to Your Honor side-by-side

25   with the pirated version of the movie.  Which that right

Page 26

1   there, 40 movies, two hours, that's 80 hours right there.

2          THE COURT:  Let me say it isn't going to happen.

3   That's number one.  And we're all not going to sit in the

4   courtroom and watch two versions of a movie side-by-side.

5   And I'm not prepared to say how precisely I should deal with

6   it.  I'm open to suggestions.  But if Frontier thinks we're

7   going to listen to 90 hours of movies in the courtroom,

8   guess again.  I'm glad you raised it.

9          MR. CULPEPPER:  Right.  And along that line, some

10  other issues would be ownership.

11         THE COURT:  Well, let me ask you this, Mr.

12  Culpepper.  Have any courts placed the burden on the alleged

13  infringer to provide transcripts of the movies to show what

14  portions of this they allege somehow are different?  I'm

15  thinking out loud.  I don't know.  I suspect you had to live

16  with this issue in other cases.  The one thing I'm saying

17  definitively, I guarantee you we're not sitting in the

18  courtroom watching two versions of each movie side-by-side.

19  It isn't happening.

20         MR. CULPEPPER:  I understand, Your Honor.

21         THE COURT:  And I don't mind putting the burden on

22  you and on Frontier to agree on what are the similarities,

23  what are the differences and present it that way.  I'm not

24  watching 90 hours of movies.  That just isn't happening.

25         MR. OPPENHEIM:  May I, Your Honor?

Page 27

1           THE COURT:  Go ahead, Mr. Oppenheim.

2           MR. OPPENHEIM:  This really should easily be

3    addressed through stipulation of the parties.  Similarly,

4    there are thousands and thousands of sound recordings.  We

5    don't intend to play them.  We intend to put them forward

6    and have -- I can't imagine that the defendants are going to

7    say that they're not infringing copies.  And if they do,

8    we'll have somebody testify that they are.  But this should

9    be --

10           THE COURT:  May I ask you this?  Have any courts

11    ordered counsel to -- you know, you'll either stipulate or

12    you won't.  But I can force counsel to -- if they disagree

13    on things, I want to see exactly what it is.  I'm not

14    listening to all these sound recordings and watching all

15    these movies.  It just isn't going to happen.

16           MR. OPPENHEIM:  There's a similar issue.  And

17    again, this is -- and we did discuss this this morning with

18    the Day Pitney lawyers and they said they're getting up to

19    speed and they are -- they would consider it.  So I

20    appreciate that.  But similarly, the ownership issue.

21           THE COURT:  Yes.

22           MR. OPPENHEIM:  We're obviously not going to

23    present ownership documents on thousands of different

24    recordings.  We're going to say we own them.  And they're

25    not going to likely dispute it.  So we should just stipulate

Page 28

1    to it.  But I think the parties should work on achieving

2    that.

3           This is a case that neither the ownership of the

4    copyrights, either record companies or movies, nor the

5    underlying direct infringement really should be at issue.

6    And the focus really should be on the other elements.

7           THE COURT:  Let me say this.  Federal Rule of

8    Evidence 1006 is what immediately comes to mind.  You know,

9    because this is exactly the kind of situation -- well, maybe

10   they didn't contemplate movies and sound recordings for it.

11   But that's how I would expect you to be offering a lot of

12   evidence.  Voluminous evidence that would be in summary

13   charts.  And as long as you give them copies of the

14   original, if they don't like it, let them say why.  This

15   goes both ways.  I mean, just...

16           MR. CULPEPPER:  I'm raising...

17           THE COURT:  I don't want to oversimplify this by

18   calling this logistical issues.  It's important.  Okay?  But

19   you -- all of you.  When I say you, I mean all of you,

20   Counsel.  You know, put your checklist together.  And I

21   expect to have pretrial hearings regularly, whether it's

22   every two weeks or whatever.  I don't expect to wait until

23   just before the start of trial to hear that there's all

24   these problems.  You know, put together your -- each of you

25   put together your lists, exchange them.  See whether you

Page 29

1    come up with -- what suggestions you all -- you are all

2    experienced counsel in doing this.  Okay?  And I'll resolve

3    -- if there are issues that you can't resolve between you, I

4    am going to try to resolve it in a practical way that's

5    consistent with due process that gives each side an

6    opportunity to put on its proof.  Lots of things ought to be

7    resolved by stipulation.

8           Go ahead.  I cut you off, Mr. Oppenheimer.

9           MR. OPPENHEIM:  No, Your Honor, these are not

10   issues that should slow us down.

11          THE COURT:  Okay.  So if they shouldn't slow you

12   down, try and get these resolved over the next two weeks.  I

13   know you've got a lot on your plate and there's a lot of

14   discovery you have to do.  But you all have big teams.  And

15   try and work these issues out and put them in the form of

16   stipulations.  Okay.

17          What else did you have on your list, Mr.

18   Oppenheim?

19          MR. OPPENHEIM:  Those were really the key issues,

20   Your Honor.  We obviously have a lot of work to do on fact

21   discovery in order to meet the proposed schedule.  I believe

22   that one extra week, Your Honor, would make a big

23   difference.  If nothing else, purely on a personal basis

24   because I will be out of the country in the end of July,

25   beginning of August on something I cannot move.

Page 30

1            THE COURT:  Let me hear from Frontier's counsel.

2   I have heard from you and Mr. Culpepper.  I haven't heard

3   from Frontier's counsel.  Let me hear from them about

4   schedule.

5            MR. TWARDY:  Thank you, Your Honor.  This is

6   Stanley Twardy from Day Pitney.

7            Your Honor, over the years I have learned that

8   it's generally in the best interest of a client to

9   accommodate the court.  However, unfortunately in this case,

10  Your Honor, to accommodate an August trial would severely

11  prejudice Frontier in this.

12           THE COURT:  Why is that?

13           MR. TWARDY:  Your Honor, yes, I will.  We were

14  retained.  And as Your Honor knows or the record discloses,

15  the first appearance of anybody from Day Pitney was on March

16  18th.  We were retained shortly before that with the

17  specific knowledge and commitment to meeting what was the

18  court's order on December 13th.

19           THE COURT:  I never set a trial date.  I never set

20  a trial date.

21           MR. TWARDY:  Yes, Your Honor.  Understand that.

22  But as far as getting to the trial date, Your Honor had fact

23  discovery done by June 13th, disclosure of initial expert

24  witnesses and expert reports on July 13th, disclosure of a

25  rebuttal expert witnesses and rebuttal expert reports August

Page 31

```
 1   27th, and deposition of expert witness done by September

 2   26th.  These are all end dates.  We made a commitment to the

 3   client and we made a commitment to the Court, we would not

 4   seek an adjournment of any of these dates even though we

 5   have just entered in this.  We too would like to have this

 6   case tried as quickly as reasonably possible.  And I use the

 7   words Mr. Oppenheim did, that we believe that a trial in

 8   October, which is what was contemplated by the order that

 9   you entered on December 13th would be reasonable.  And we

10   were -- we are ready to meet that date.

11            The other issue we have, quite honestly, Your

12   Honor, with an August trial date is that Attorney Alquist

13   and I were chosen to be -- we were chosen as a firm to be

14   able to make this commitment and put together a team to meet

15   this date.  And Attorney Alquist, I will let her speak for

16   herself.  But she may well be on trial in a case that's been

17   scheduled for quite a while in August.

18            And, Beth, do you want to inform the Court as to

19   what is going on with you?

20            MS. ALQUIST:  Certainly, Your Honor.  We have --

21   we actually have two trial dates in the same case.  We're

22   stacked for two weeks in June in the District of

23   Massachusetts.  But for that case to go forward, two other

24   cases scheduled for trial would have to settle.  We've been

25   monitoring the dockets and there's no indication that that's
```

Page 32

1    going to happen.  So the Court gave us the alternative trial

2    date of August 26th for two weeks through Labor Day week as

3    well.  So in that case we are obviously heading toward each

4    of those dates.  The Court gave us an 80 percent chance that

5    the trial date would be August.

6            MR. TWARDY:  And so, Your Honor, that's why we

7    believe it would be prejudicial to us in this.  And again,

8    we've been working --

9            THE COURT:  When I sent out prior orders, most of

10   which seem to be ignored, you weren't involved in this case.

11           MR. TWARDY:  That's correct, Your Honor.

12           THE COURT:  Akerman has got a lot of lawyers and

13   Akerman can go to trial.  You parachuted in and I don't have

14   to accommodate your schedule because you've parachuted in.

15           MR. TWARDY:  Your Honor, that is understood.  But

16   everyone here was working off of the schedule you set on

17   December 13th.  And --

18           THE COURT:  Why don't you hold on a minute.  I

19   just have to get something.

20           MR. TWARDY:  Yes, Your Honor.

21           THE COURT:  So your argument is that fact

22   discovery should not be concluded until June 13th instead of

23   June 7th?

24           MR. TWARDY:  Your Honor, yes.  Based upon the

25   order you entered on December 13th.  And the other dates,

Page 33

1    Your Honor, that I cited roll off of that, that the expert

2    witnesses are supposed to be on or before 30 days after the

3    conclusion of fact discovery.  Rebuttal expert witnesses on

4    or before 45 days after disclosure of initial expert

5    witnesses.  And the deposition of expert witnesses taken

6    within 30 days of disclosure of the rebuttal expert reports.

7              THE COURT:  Have privilege logs been produced,

8    been provided within 45 days after the service of the

9    request?

10             MR. TROPP:  Your Honor, this is Jonathan Tropp.

11   The record company claimants asked us the other day for a

12   privilege log with respect to a very small number of

13   documents that have been withheld.  They've asked us to

14   provide it, and we've agreed to provide it by tomorrow.

15             THE COURT:  I guess what you're saying is they

16   weren't timely provided.

17             MR. TROPP:  Your Honor, what I'm saying --

18             THE COURT:  Your colleagues are standing on the

19   order I entered on December 13th, but you are acknowledging

20   that Frontier did not comply with the order.  Is that

21   correct?

22             MR. TROPP:  Your Honor, what I'm suggesting is

23   that we are --

24             THE COURT:  Just answer my question.

25             MR. TROPP:  Your Honor, the order as written

Page 34

1   contemplated that privilege logs would be served sooner than

2   record company claimants are requiring it.  That's correct.

3            THE COURT:  And what you're telling me is you did

4   not -- you're just new to the case, but Frontier did not

5   comply with the terms of the order, whether the record

6   companies were prepared to abide by the extension or not.

7   Are there other dates -- I could go through this order, and

8   how many deadlines am I going to find?  Because Frontier has

9   been the one that's been dragging its heels in discovery

10  throughout this case.  And what am I going to find when I go

11  through every -- I have a December 13th order, ECF 2242, in

12  front of me.  And am I going to find that -- I understand it

13  wasn't on your watch, it was on -- Akerman is still counsel

14  of record in this case.  Am I going to find that there are

15  other deadlines that Frontier did not abide by?

16           MR. TROPP:  Your Honor, I am not aware of any such

17  deadlines.  I cannot assure the Court that I know that there

18  are none.  I am aware that there is a relatively small

19  number of documents, something like 15, for which we will be

20  providing a privilege log tomorrow within the timeframe that

21  RCC have asked for it.  And I know that it would have been

22  impossible for us to provide a privilege log within the date

23  contemplated by the order because at least some of the

24  documents that will be on the privilege log had not yet been

25  identified at the time of that deadline.  I can't imagine,

Page 35

1    Your Honor, that the Court's order requiring a privilege log

2    to be provided within 45 days of the requests did not permit

3    documents to be produced later in compliance with Rule

4    26(b).

5              THE COURT:  Mr. Oppenheim, I'm going to turn back

6    to you.

7              In your meet and confer with Frontier, were the

8    parties able to agree on a proposed schedule for conclusion

9    of fact discovery, expert discovery?  Are there differences

10   that remain in what the parties have proposed?

11             MR. OPPENHEIM:  Your Honor, our focus was

12   generally on working backwards from a proposed trial date.

13             THE COURT:  Okay.

14             MR. OPPENHEIM:  I did inquire of Frontier's

15   counsel whether they would be able to produce all the

16   remaining documents by our proposed April 19th date.  And

17   they were not able to tell yet.  They didn't say no, but

18   they also just -- until they have run the searches and come

19   up with numbers of documents, they indicated that they

20   weren't yet in a position to commit.

21             And I will say I understand their position.  We

22   also have just been given search terms and we are getting

23   ready to run them and put a team on and produce them as

24   quickly as possible.  We will move heaven and earth to

25   produce by that date.

Page 36

1              THE COURT:  Okay.

2              MR. OPPENHEIM:  But it will be an undertaking to

3    say the least.

4              THE COURT:  All right.  Here's what I would like

5    from both sides.  You ought to have another discussion by

6    tomorrow and see whether you can jointly agree on proposed

7    dates for conclusion of fact discovery, conclusion of expert

8    discovery.  If you've agreed on order of experts, include

9    that.

10             Let me see by close of business on Tuesday all of

11   the things on which you -- all parties have agreed and those

12   things that remain subject to dispute.  I will take all of

13   that into account in setting a schedule.

14             MR. TWARDY:  Your Honor, this is Stanley Twardy if

15   I might address the Court.

16             THE COURT:  Yeah, go ahead.

17             MR. TWARDY:  Yes, Your Honor.  I think -- and I

18   leave this up to Mr. Oppenheim and Mr. Culpepper.  But I

19   think the parties agree on the timeframe that you entered on

20   December 13th that we would all be able to abide by that.

21   And as I said, given Attorney Alquist's schedule in August

22   and, Your Honor, as Your Honor knows, Mr. Castillo has

23   retired.  You know, Frontier has gotten us on board to take

24   over and do this.

25             THE COURT:  Are you taking over or going to be co-

Page 37

1    counsel?

2           MR. TWARDY:  Your Honor, we are taking the lead on

3    this.  Day Pitney is taking the lead on this.  And we

4    believe Frontier should have the right to its choice of

5    counsel here.

6           I also, Your Honor -- and Mr. Oppenheim and I had

7    a very good conversation today, a very cordial I would say.

8    And, Your Honor, at the end of yesterday's hearing stressed

9    that he thought, Your Honor thought that the parties should

10   try to settle this case.

11          THE COURT:  I do.

12          MR. TWARDY:  Your Honor, and I have more to talk

13   about with Mr. Oppenheim.  And I don't want to give the

14   Court the impression that we're anywhere close to a

15   settlement, but it is something that we talked about for the

16   first time earlier today.

17          And, Your Honor, I am afraid that if you go with

18   an August trial date, that there will be no chance of

19   settlement because the parties would be so busy --

20          THE COURT:  Don't make this stress.  That's

21   absolute nonsense.

22          MR. TWARDY:  Understood, Your Honor.  We're

23   concerned.

24          THE COURT:  Mr. Twardy, look.  Spare me.  Okay?

25   That's absolute nonsense.  Okay.

1        For all of you, I want to see if you agree on a

2   date for concluding all fact discovery, for concluding all

3   expert discovery.  To the extent you've agreed on the order

4   of production of reports and depositions of experts, include

5   that in the letter.  You should agree on a date for

6   submitting a joint pretrial conference order.  With the

7   pretrial conference order should come -- should be delivered

8   to the Court two copies of all pre-marked proposed trial

9   exhibits, declarations of proposed direct testimony of trial

10  witnesses, and deposition transcripts if any portions will

11  be offered in evidence.  All of that should be delivered.

12  The date for delivering all of that to chambers with the

13  joint pretrial order.

14        I also -- you can give me the date.  I proposed to

15  myself at least that the parties file trial briefs on or

16  before that same deadline about the joint pretrial order.

17  And absent prior permission, those trial briefs are limited

18  to 40 pages, double-spaced, 12-point font, one-inch margins,

19  et cetera.  Table of contents, table of authorities.

20  Propose the week in which you would like to have the final

21  pretrial conference.

22        I raised yesterday for the first time with you

23  that in complex cases, which I consider this to be, I

24  typically do timed trials.  I don't think you'd heard that

25  from me before.  I selected ten trial days.  I am -- again,

Page 39

1   because -- let me just say with written direct testimony, I

2   typically have read all of that before the trial starts.

3   And so we tend to go a little faster, Mr. Tropp, but I've

4   raised the issue about what the experts, about their doing a

5   short direct in effect a summary of what they're doing and

6   explanation.  And that typically is okay with me.

7           But I need some guidance from all of you whether

8   it's realistic to do this in two weeks.  I mean, this is not

9   a jury trial.

10          I also -- and you can work this into your

11  schedule.  I had written down counsel for the parties shall

12  arrange for daily trial transcripts with costs shared

13  equally by Frontier and Claimants.  Post-trial proposed

14  findings of fact and conclusions of law shall be filed on or

15  before -- you tell me what the date is that you propose.

16  And then I usually have closing arguments.  And what I wrote

17  down here essentially was one day of closing arguments, time

18  divided equally.  And the issue is how long after I get the

19  proposed findings of fact and conclusions of law.  I want

20  all that in the proposal.

21          We will reconvene -- let me look at my calendar.

22          I don't have any hearings next Thursday, August

23  4th.  I have to check two calendars.  Just bear with me.

24          MR. TWARDY:  April, Your Honor.

25          THE COURT:  I'm sorry?

Page 40

1          MR. TWARDY:  April, not August.  You said August.

2          THE COURT:  Yeah, no.  I meant April.  I've got my

3     calendar open to April and I'm -- I've got lawyers in the

4     next hearing ready to speak as well.  Hang on.

5          I would say pick a time.  I don't have a calendar

6     on April 4th.  Pick a time that works for all of you.  We'll

7     do it on Zoom again.  And I want -- so in advance of that,

8     by next Tuesday -- we're talking about a hearing on

9     Thursday.  But Tuesday, I want a letter that reflects

10    agreements, disagreements.  If there are disagreements, what

11    are the counterproposals.

12         MR. TWARDY:  Your Honor, this is Stanley Twardy

13    speaking again.

14         THE COURT:  Yes, Mr. Twardy.

15         MR. TWARDY:  I have a conflict tomorrow.  My

16    daughter is being married.

17         THE COURT:  That is an important conflict.

18         MR. TWARDY:  Thank you.  Might it be possible -- I

19    know that Attorney Alquist, who is going to try this case

20    with myself and the team, could -- will meet with the

21    claimant's counsel here.  But if we need a little bit more

22    time, might we come back to the Court?  If I need to get

23    involved back with the Claimant's counsel to make sure we

24    get this done?

25         THE COURT:  If we have a hearing on Thursday the

Page 41

```
 1    4th, you've got time next week to do this.

 2            MR. TWARDY:  Yes, sir.  We'll make it happen.

 3    Your Honor, I also have one question.  When you're talking

 4    about us coming up --

 5            THE COURT:  Where is the wedding?

 6            MR. TWARDY:  It's in New York, Your Honor.

 7            THE COURT:  Okay.  Congratulations.

 8            MR. TWARDY:  Thank you, Your Honor.  When we're

 9    coming up with the schedule, are we assuming that an August

10    12th date, which the Court had discussed?

11            THE COURT:  No.  I'm asking you to propose the

12    schedule.  And we'll sort this out next week.  I want to see

13    what -- look, I'll make no secret of it.  In cases with good

14    counsel, which I consider this to be, I bend over backwards

15    to accommodate reasonable schedules that the parties have

16    worked out.  What I don't abide is when I think -- and I

17    don't know -- I've got a bunch of letters about ongoing

18    discovery disputes.  And I don't know if between yesterday

19    and today you worked those out or not.  Because I thought,

20    frankly, some of the positions that Frontier took don't pass

21    muster, let me just put it that way.  You know, redacting

22    the names of people that work for Frontier that are going to

23    be witnesses, I hope you work that out.

24            MR. TROPP:  Your Honor, this is Jonathan Tropp.

25    We had a production that included some inadvertent
```

Page 42

1   redactions that we are fixing.  And we have told RCC that

2   they will have the fixed documents tomorrow.

3              THE COURT:  Okay.  I take that as an agreement

4   that you are providing the names of all of the Frontier

5   employees who had anything to do with this whose names

6   appear in documents and you're not redacting it.

7              MR. TROPP:  That's correct, Your Honor.  They were

8   not redacted on purpose.

9              THE COURT:  Okay.  Well, they were redacted.  You

10  know?  What's one to think when you get redacted documents,

11  you know?

12             MR. TROPP:  Your Honor, without belaboring the

13  issue, in order to try to meet the very heavy burdens to

14  complete these things on a very expedited basis, we've had

15  to rely on people who sometimes make mistakes.  And that's

16  what happened.

17             THE COURT:  Okay.  So when that happens, I expect

18  you -- each side -- because, look, I practiced law for 34

19  years.  I mean, I had my share of mistakes over the years.

20  Okay?  And the best thing to do is pick up the phone and

21  call the other side and sort it out instead of a letter-

22  writing war, which is what this is turning into.

23             MR. TROPP:  Your Honor, if I may.  It wasn't a

24  letter-writing war.  We received an email and we were in the

25  process of trying to respond to it.  And Your Honor got a

Page 43

1    letter.

2         THE COURT:  Okay.  I got the letters.  Okay.  All

3    right.  Are we done for today?

4         MR. LUSKIN:  Do we want to set a time for next

5    Thursday or is that --

6         THE COURT:  Tell me what time works -- Mr. Luskin,

7    what time works best for you?

8         MR. LUSKIN:  Any time for me, Your Honor.  But I

9    am the least important here.  Mr. Oppenheim and Day Pitney

10   and Culpepper.

11        MR. OPPENHEIM:  Your Honor, any time in the

12   morning prior to 1:00 works for me.

13        THE COURT:  Okay.

14        MR. CULPEPPER:  This is Kerry Culpepper.

15        THE COURT:  You've got a big time change I know.

16        MR. CULPEPPER:  Yeah, the six-hour difference.

17   I'll be back in Hawaii at that time.  So that would be --

18   1:00 p.m. would be 7:00 a.m. my time.  I can make that work,

19   1:00 p.m. next week if that's what --

20        THE COURT:  Can you make that work, Mr. Oppenheim?

21        MR. OPPENHEIM:  Absolutely, Your Honor.

22        MR. CULPEPPER:  Also, Your Honor --

23        THE COURT:  The Day Pitney group, can you make

24   1:00 p.m. on Thursday, April 4th work?

25        MR. TWARDY:  Your Honor, I don't have my calendar

Page 44

1    in front of me, but I will move heaven and earth to make it

2    work.

3              THE COURT:  Okay.  All right.  Mr. Culpepper, go

4    ahead.

5              MR. CULPEPPER:  Yeah.  We still have the other

6    discovery dispute and the letters between Frontier and I.

7              THE COURT:  Did you try and meet and confer and

8    get them worked out?

9              MR. CULPEPPER:  We had a meeting.  We had a Zoom

10   meeting on those issues.  And after that wasn't resolved,

11   that's when the letter was sent.  So I am prepared to suss

12   that issue.

13             THE COURT:  Who from Day Pitney is picking up

14   those issues?

15             MR. TROPP:  Your Honor, this is Jonathan Tropp

16   again.  The issues fall into two different buckets.  There

17   are those issues that Frontier can fix and we have fixed

18   them already, and there are those issues that Frontier

19   cannot fix that are not appropriate to be decided at this

20   time if at all.

21             THE COURT:  Okay.  Mr. Culpepper, if you want to

22   take a 30(b)(6) deposition -- this has come up once before

23   Day Pitney was involved.  They're not required to create

24   documents that don't exist.  And if you don't accept their

25   statements that -- and you ought to get it in writing.  If

Page 45

1    their position is we don't have such documents, I'm not

2    going to draw adverse inferences from -- at this stage of

3    the case because of the nonexistence of documents.  If you

4    establish that they had the documents, that they were

5    destroyed, when that happened, et cetera.

6            So the best way to work it out are in phone calls.

7    But if you can't, notice of 30(b)(6) deposition gets your

8    answers and let's move on.

9            MR. CULPEPPER:  One thing I would add to that,

10   Your Honor.  In the communication between Mr. Campo and I,

11   Mr. Campo stated that they had multiple IP addresses for the

12   subscribers, but that wasn't turned over.  And that request

13   was made in November of last year.  And here it is March,

14   and they still haven't turned over the multiple IP address

15   assignments.  This has been -- this has hindered moving

16   Claimant's ability to build on important evidence.  I want

17   to emphasize the --

18           THE COURT:  Take a 30(b)(6) deposition.  And if

19   there is a discrepancy between what Mr. Campo was telling

20   you and what Frontier witnesses tell you, I'll deal with it.

21   You'll make a motion.  If you make a motion for preclusion

22   or for inferences, adverse inferences, I'll rule on it.

23   Okay?

24           Day Pitney is telling me now the documents don't

25   exist.  You know, if it turns out that the documents do

Page 46

1    exist and didn't produce them, bad things happen.  Really

2    bad things happen.  Okay?  That's not a position that any

3    counsel wants to find themselves in.  So, you know, take

4    notice of depositions if you have to.

5              MR. CULPEPPER:  Your Honor, this is Kerry

6    Culpepper again.  Just to be clear, there were three points.

7    One point was regarding the IDs, which Frontier says they

8    never existed from the beginning.  But two other issues were

9    the multiple IP address assignments, which Frontier hasn't

10   said they don't have it, they just haven't turned them over.

11             THE COURT:  Okay.  Does Frontier have multiple IP

12   addresses for alleged infringement?

13             MR. TROPP:  Your Honor, as I indicated a few

14   moments ago, to the extent that they exist, they were

15   produced today.  Mr. Culpepper has not yet looked at what

16   was produced today.  We have turned them over to the extent

17   we have them.

18             THE COURT:  Okay.  Mr. Culpepper, look at what

19   you've got.  If you still have doubts about it, if you want

20   to take a deposition, take the deposition.  If you take a

21   deposition and you get inconsistent responses, apply for

22   sanctions for costs.  Okay?

23             I'm not -- look.  It's unfortunate if you're

24   getting conflicting answers from Frontier's counsel.

25             Anything else for today?

Page 47

1           MR. CULPEPPER:  My only -- I'm sorry, you froze on

2     me when you started talking.  I'm not sure if that's just

3     me.

4           THE COURT:  I asked if there's anything else you

5     want to raise.

6           MR. CULPEPPER:  No.  That ends it for movie

7     claimants, Your Honor.

8           THE COURT:  Okay.  Mr. Oppenheim, anything you

9     want to raise?

10          MR. OPPENHEIM:  Nothing further, Your Honor.

11          THE COURT:  Anything that Frontier's lawyers want

12    to raise?

13          MR. TWARDY:  No, Your Honor.  Thank you for your

14    time today.

15          THE COURT:  All right.  I'm going to -- Deanna,

16    call the next matter.

17          (Whereupon these proceedings were concluded)

18

19

20

21

22

23

24

25

Page 48

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *Sonya M. Ledanski Hyde*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 2, 2024

[& - addressed]                                                                Page 1

| **&** | **20016**  3:6 | **4** | **abide**  8:17 34:6 |
|---|---|---|---|
| **&**  7:1 | **2024**  1:15 | **40**  26:1 38:18 | 34:15 36:20 |
| **0** | 48:25 | **45**  23:25 24:10 | 41:16 |
| **06103**  4:4 | **2240**  17:3 | 24:21 33:4,8 | **ability**  45:16 |
| | **2241**  17:24 | 35:2 | **able**  15:1 31:14 |
| **1** | **2242**  34:11 | **4530**  3:5 | 35:8,15,17 |
| **10004**  1:13 | **225**  4:3 | **4th**  39:23 40:6 | 36:20 |
| **1006**  28:8 | **2259**  2:3 | 41:1 43:24 | **absent**  38:17 |
| **101**  4:12 | **2260**  2:3 | **5** | **absolute**  37:21 |
| **10178**  4:13 | **2264**  2:3 | **5:00**  13:10 | 37:25 |
| **11**  14:16 | **2270**  2:3 | **5:30**  13:12 | **absolutely** |
| **11501**  48:23 | **2271**  2:3 | **5th**  3:5 | 12:21 43:21 |
| **12**  38:18 | **2286**  2:4 | **6** | **accept**  44:24 |
| **12151**  48:7 | **2289**  2:4 | **6**  44:22 45:7,18 | **accommodate** |
| **12th**  13:6,9,23 | **2301**  2:4 | **7** | 30:9,10 32:14 |
| 14:17 41:10 | **2302**  2:8 | **75-170**  3:14 | 41:15 |
| **13**  15:6 | **2303**  2:8 | **750**  3:21,21 | **accomplish** |
| **13th**  30:18,23 | **2306**  2:8 | **7:00**  43:18 | 14:7,25 |
| 30:24 31:9 | **23rd**  13:10 | **7th**  13:17,18 | **account**  36:13 |
| 32:17,22,25 | **26**  35:4 | 13:22 14:6 | **accurate**  48:4 |
| 33:19 34:11 | **26th**  14:18 | 32:23 | **achievable** |
| 36:20 | 31:2 32:2 | **8** | 9:24 |
| **15**  34:19 | **27th**  31:1 | **80**  26:1 32:4 | **achieve**  12:23 |
| **18th**  14:15 | **28**  1:15 | **9** | **achieving**  28:1 |
| 30:16 | **29th**  12:21 | **90**  25:13 26:7 | **acknowledgi...** |
| **19th**  12:20 | **2nd**  13:20,21 | 26:24 | 33:19 |
| 13:5,19 14:2,9 | **3** | **96740**  3:15 | **act**  10:18 |
| 15:2 21:23 | **30**  33:2,6 44:22 | **9:00**  13:9,11 | **actually**  12:5 |
| 35:16 | 45:7,18 | **9:30**  20:2 | 13:24 14:5 |
| **1:00**  43:12,18 | **300**  48:22 | **9th**  3:21 | 15:11 31:21 |
| 43:19,24 | **330**  48:21 | **a** | **add**  45:9 |
| **2** | **34**  42:18 | **a.m.**  13:9,11 | **added**  13:25 |
| **2**  48:25 | **3:02**  1:16 | 43:18 | **address**  16:25 |
| **20-22476**  1:3 | **3:30**  20:3 | | 17:19 36:15 |
| 5:4 | **3rd**  21:24,24 | | 45:14 46:9 |
| **20001**  3:22 | | | **addressed**  27:3 |

addresses
45:11 46:12
addressing
21:14
adjournment
21:7 31:4
adjudicated
9:23
administrative
15:11,17 16:24
20:12
admissible
24:12,12
advance 40:7
adversary
11:18
adverse 45:2
45:22
advised 8:21
affirmative
14:14,17,21
22:22 23:23
24:1
afraid 37:17
afternoon 5:5
5:21 6:6,25 7:6
7:21 9:15
ago 11:9 46:14
agree 20:3 23:1
26:22 35:8
36:6,19 38:1,5
agreed 19:17
33:14 36:8,11
38:3
agreement
8:25 42:3

agreements
40:10
ahead 12:7
14:1,2 20:10
20:15 22:18
23:16 27:1
29:8 36:16
44:4
akerman 3:19
5:11 22:20
32:12,13 34:13
alex 7:12,14
alexander 3:8
allege 26:14
alleged 26:12
46:12
allocations
13:14
allow 19:23
allows 14:19
alquist 4:7 5:9
5:10,23,23
31:12,15,20
40:19
alquist's 36:21
alter 21:3,13
alteration 21:7
alternative
32:1
analogous
10:13
analysis 10:22
annie 4:19
answer 9:3
17:16,18 33:24
answers 45:8
46:24

anticipate 25:5
anticipates
25:4
anybody 8:1
8:13 16:20
30:15
anyway 20:15
anyways 20:23
appeal 18:12
appear 42:6
appearance
5:16,22 6:5,9
6:13,15,24
7:13 30:15
appearances
7:20
appearing 6:7
7:11 9:5
appears 23:11
apply 46:21
appreciate
16:10 27:20
appropriate
44:19
april 14:9
35:16 39:24
40:1,2,3,6
43:24 48:25
argue 25:20
argument
32:21
arguments
39:16,17
arises 17:17
arrange 39:12
aside 23:13

asked 15:22
17:1,13 23:7
33:11,13 34:21
47:4
asking 6:10
41:11
assert 17:7,10
19:8,10
asserting 25:19
assignments
45:15 46:9
assume 25:22
assuming 41:9
assure 34:17
asylum 4:3
attention 25:8
attorney 31:12
31:15 36:21
40:19
attorneys 3:4
3:13,20 4:2,11
5:6
august 9:24
12:10,11,12,20
13:5,6,9,10,17
13:20,21,22,23
14:2 15:2
29:25 30:10,25
31:12,17 32:2
32:5 36:21
37:18 39:22
40:1,1 41:9
authorities
38:19
authority 18:9
avenue 3:5
4:12

**aware** 34:16,18

**b**

**b** 1:21 35:4
  44:22 45:7,18
**b204** 3:14
**back** 13:25
  19:19 20:6
  35:5 40:22,23
  43:17
**background**
  24:6
**backwards**
  35:12 41:14
**bad** 46:1,2
**badhouse** 3:13
**ball** 16:7
**bankruptcy**
  1:1,11,23
  11:16 15:12,17
  17:19 18:7,9
  18:13,24 19:23
  21:10
**based** 32:24
**basis** 29:23
  42:14
**bear** 39:23
**beginning**
  29:25 46:8
**behalf** 6:7 7:1
  7:11 8:13 9:5
  9:16
**belaboring**
  42:12
**believe** 7:2,3
  12:15,24 14:7
  17:16 20:19
  21:1 22:22

23:22 29:21
  31:7 32:7 37:4
**believed** 14:25
**bend** 41:14
**best** 11:9 30:8
  42:20 43:7
  45:6
**beth** 5:9,23
  31:18
**better** 9:2 11:5
  21:3,15
**big** 29:14,22
  43:15
**bit** 40:21
**board** 36:23
**bockius** 4:10
**bottom** 8:4
**bowling** 1:12
**briefs** 13:20
  38:15,17
**bring** 25:7
**broke** 14:13
**buckets** 44:16
**build** 45:16
**bunch** 41:17
**burden** 26:12
  26:21
**burdens** 42:13
**business** 36:10
**busy** 37:19

**c**

**c** 3:1 5:1 48:1,1
**calendar** 11:15
  13:24 39:21
  40:3,5 43:25
**calendars**
  39:23

**call** 42:21
  47:16
**called** 7:19
**calling** 28:18
**calls** 45:6
**campo** 4:24
  45:10,11,19
**care** 11:25
**carefully** 13:24
**carly** 3:10 7:2
  7:4
**case** 1:3 2:1 5:3
  6:15 7:19 9:12
  9:21 11:7 12:2
  16:12 18:11
  19:18 21:4
  25:10,15 28:3
  30:9 31:6,16
  31:21,23 32:3
  32:10 34:4,10
  34:14 37:10
  40:19 45:3
**cases** 10:13
  11:15,17 17:9
  23:21 24:3
  25:9,10 26:16
  31:24 38:23
  41:13
**castillo** 4:25
  10:19 19:7,16
  19:20 23:5
  36:22
**categories**
  12:14
**cement** 13:4
**certainly** 5:5
  10:10,23 18:12

18:13 19:9,9
  23:8 31:20
**certified** 48:3
**cetera** 38:19
  45:5
**chambers**
  38:12
**chance** 32:4
  37:18
**change** 11:12
  11:19 12:6
  43:15
**charts** 28:13
**check** 39:23
**checklist** 28:20
**choice** 37:4
**chosen** 31:13
  31:13
**cited** 33:1
**claim** 11:8,11
  15:11
**claimant's** 9:14
  22:23 40:21,23
  45:16
**claimants** 2:7
  3:4 4:11 5:18
  6:7 7:15 9:16
  9:22 12:16,19
  15:25 16:22
  21:1,8 22:3
  23:10,20 33:11
  34:2 39:13
  47:7
**claims** 2:3 9:23
  15:17,20 16:12
  16:12,24 17:20
  18:6,6,8,9,24

20:12,21
clara  4:21
clarification
  22:25
clear  16:3
  18:22 19:19
  20:24 46:6
clearest  11:14
clearly  10:24
clerk  5:2,13,20
  5:25 6:4,8,12
  6:21 7:4,8,12
  7:16 8:9,11
client  30:8 31:3
close  14:4,16
  36:10 37:14
closer  13:15,15
closing  14:6,18
  39:16,17
colleague  5:8,9
colleagues  7:3
  33:18
come  15:1
  24:14 29:1
  35:18 38:7
  40:22 44:22
comes  5:10
  17:11 28:8
coming  20:25
  41:4,9
commence
  13:9,11
commit  35:20
commitment
  30:17 31:2,3
  31:14

communicated
  11:11
communicati...
  45:10
communicati...
  1:7 3:20 4:2
  5:3,24 10:14
companies
  17:22 21:9,9
  28:4 34:6
company  3:4
  4:11 5:18 7:1
  7:15 9:16,22
  12:8,16,19
  16:22 23:20
  33:11 34:2
comparison
  25:11
complete  9:25
  42:14
completed
  21:23
completing
  12:20
completion
  13:18,18
complex  38:23
compliance
  35:3
comply  33:20
  34:5
concerned
  37:23
conclude  13:10
  13:12
concluded
  32:22 47:17

concluding
  38:2,2
conclusion
  10:11 33:3
  35:8 36:7,7
conclusions
  18:14,16 24:2
  24:25 39:14,19
confer  12:17
  21:25 35:7
  44:7
conference  2:1
  2:2,6 5:7 13:17
  13:20,22 38:6
  38:7,21
confidentiality
  8:25 9:6
conflict  40:15
  40:17
conflicting
  46:24
congratulatio...
  41:7
consider  27:19
  38:23 41:14
consistent  29:5
contemplate
  28:10
contemplated
  31:8 34:1,23
contents  38:19
contest  25:23
contested  2:2
  11:19 12:2
  13:8
contesting
  25:19

context  23:18
  23:24
conversation
  37:7
copies  25:20,21
  27:7 28:13
  38:8
copy  25:12
copyright  2:3
  25:9,23
copyrights
  28:4
cordial  37:7
core  18:7,9
corporation
  1:7 4:2 5:3
correct  19:20
  32:11 33:21
  34:2 42:7
corresponde...
  11:21
costs  39:12
  46:22
counsel  2:7
  5:11 9:14,17
  15:22 22:15
  24:11,15 27:11
  27:12 28:20
  29:2 30:1,3
  34:13 35:15
  37:1,5 39:11
  40:21,23 41:14
  46:3,24
counterprop...
  40:11
country  29:24
  48:21

[course - demonstrate]                                                        Page 5

| | | | |
|---|---|---|---|
| **course** 23:24 | 45:18 46:11,18 | 21:8 22:9 | **deanna** 8:7 |
| **court** 1:1,11 | 47:4,8,11,15 | 30:19,20,22 | 47:15 |
| 6:17 7:21 8:10 | **court's** 8:18 | 31:10,12,15 | **debtor** 1:9 6:16 |
| 8:13,19 9:7 | 25:7 30:18 | 32:2,5 34:22 | 18:6,7 |
| 10:3,24 11:5 | 35:1 | 35:12,16,25 | **debtors** 7:11 |
| 11:16,21 12:4 | **courtroom** | 37:18 38:2,5 | **december** |
| 13:1,4 15:9,12 | 26:4,7,18 | 38:12,14 39:15 | 30:18 31:9 |
| 15:18,20,21 | **courts** 26:12 | 41:10 48:25 | 32:17,25 33:19 |
| 16:6,7,15 | 27:10 | **dates** 13:16 | 34:11 36:20 |
| 17:13,19,21 | **cover** 8:23 | 14:2 21:16 | **decide** 16:8 |
| 18:4,9,13,21 | **create** 44:23 | 22:14,16 31:2 | 17:25 19:23 |
| 18:25 19:3,11 | **critically** 10:13 | 31:4,21 32:4 | **decided** 44:19 |
| 19:12,13,14,22 | **cross** 22:24 | 32:25 34:7 | **deciding** 18:4 |
| 19:23 20:5,10 | 24:2 | 36:7 | **decision** 15:6 |
| 20:14,18,24 | **ct** 4:4 | **daughter** | 15:10 16:20 |
| 21:2,6,10,14 | **culpepper** 3:12 | 40:16 | **declarations** |
| 22:18 23:1,4 | 3:17 6:6,6 | **day** 4:1 5:6,23 | 13:21 38:9 |
| 23:16,25 24:8 | 17:21,23 19:1 | 6:15 22:20 | **defendant** |
| 24:23 25:2 | 19:2,21,25 | 27:18 30:6,15 | 25:11,18,20,22 |
| 26:2,11,21 | 20:8 25:3,6 | 32:2 33:11 | **defendant's** |
| 27:1,10,21 | 26:9,12,20 | 37:3 39:17 | 25:16,18 |
| 28:7,17 29:11 | 28:16 30:2 | 43:9,23 44:13 | **defendants** |
| 30:1,9,12,19 | 36:18 43:10,14 | 44:23 45:24 | 14:22 22:10 |
| 31:3,18 32:1,4 | 43:14,16,22 | **days** 11:22 | 27:6 |
| 32:9,12,18,21 | 44:3,5,9,21 | 13:11,25 14:16 | **defense** 23:6 |
| 33:7,15,18,24 | 45:9 46:5,6,15 | 21:24 33:2,4,6 | 25:16,18 |
| 34:3,17 35:5 | 46:18 47:1,6 | 33:8 35:2 | **definitively** |
| 35:13 36:1,4 | **curious** 11:3 | 38:25 | 26:17 |
| 36:15,16,25 | **cut** 12:7 29:8 | **deadline** 22:6 | **delivered** 38:7 |
| 37:11,14,20,24 | **d** | 22:12 34:25 | 38:11 |
| 38:8 39:25 | | 38:16 | **delivering** |
| 40:2,14,17,22 | **d** 5:1 | **deadlines** | 38:12 |
| 40:25 41:5,7 | **d.c.** 3:6,22 | 12:24 34:8,15 | **demanded** |
| 41:10,11 42:3 | **daily** 39:12 | 34:17 | 25:11 |
| 42:9,17 43:2,6 | **damages** 15:15 | **deal** 7:22 11:20 | **demonstrate** |
| 43:13,15,20,23 | **data** 10:16 | 26:5 45:20 | 10:15 |
| 44:3,7,13,21 | **date** 13:6,6 | | |
| | 14:2 15:3 21:5 | | |

**demonstrates**
10:17
**deposition**
31:1 33:5
38:10 44:22
45:7,18 46:20
46:20,21
**depositions**
10:8 12:1,1
14:10,18 22:2
22:11 38:4
46:4
**derogation**
6:19
**described**
10:25
**destroyed** 45:5
**detailed** 15:4
**details** 22:8
**dictate** 22:11
**difference**
29:23 43:16
**differences**
26:23 35:9
**different** 26:14
27:23 44:16
**direct** 24:12
25:19 28:5
38:9 39:1,5
**directly** 7:25
**disagree** 20:3,4
27:12
**disagreements**
40:10,10
**disappointed**
11:12

**discloses** 30:14
**disclosure** 7:23
8:14 30:23,24
33:4,6
**disclosures**
22:1
**discovery** 2:6
10:1,2,4,9,11
10:12 11:13,20
12:4,14 13:18
13:19 14:5,6
14:13,16,18
21:23,25 29:14
29:21 30:23
32:22 33:3
34:9 35:9,9
36:7,8 38:2,3
41:18 44:6
**discrepancy**
45:19
**discuss** 9:18
24:11,16 27:17
**discussed**
41:10
**discussion** 36:5
**dispute** 27:25
36:12 44:6
**disputes** 41:18
**district** 1:2
12:4 15:8,20
16:6,15 18:2
19:12,13 21:2
21:6,14 31:22
**divided** 39:18
**divvied** 14:5
**doc** 2:7

**docket** 11:17
17:3,24
**dockets** 31:25
**document** 14:8
**documentation**
10:23 11:4
**documents**
11:6 22:2
27:23 33:13
34:19,24 35:3
35:16,19 42:2
42:6,10 44:24
45:1,3,4,24,25
**doing** 18:20
24:6,19 29:2
39:4,5
**double** 12:1
14:11 38:18
**doubts** 46:19
**dragging** 34:9
**drain** 11:8
**draw** 45:2
**due** 22:3,24
29:5

---

**e**

**e** 1:21,21 3:1,1
5:1,1 48:1
**earlier** 12:22
37:16
**early** 10:10
22:12
**earth** 35:24
44:1
**easily** 27:2
**ecf** 34:11
**ecro** 1:25

**effect** 10:23
39:5
**efficiency**
16:13,21
**efficient** 22:8
**effort** 9:20,25
**either** 7:25
11:17 20:25
24:3 27:11
28:4
**element** 25:23
**elements** 28:6
**elizabeth** 4:7
5:9,20
**ellen** 4:21
**email** 42:24
**emphasize**
45:17
**employees** 42:5
**endeavor**
20:16
**ends** 47:6
**enter** 9:8 18:10
**entered** 31:5,9
32:25 33:19
36:19
**entry** 17:24
**equally** 39:13
39:18
**essentially**
39:17
**establish** 45:4
**et** 38:19 45:5
**event** 9:2
**everybody**
12:18

evidence 15:14
24:12,15 28:8
28:12,12 38:11
45:16
exact 15:15
exactly 17:15
27:13 28:9
example 10:14
exchange
28:25
exhibits 13:21
38:9
exist 44:24
45:25 46:1,14
existed 46:8
exists 11:4
expect 5:8,11
13:13 28:11,21
28:22 42:17
expedited
42:14
experience
24:5
experienced
29:2
expert 13:19
14:13,18,18
21:23 22:1,3
22:10,22,24,25
24:11,14,24
30:23,24,25,25
31:1 33:1,3,4,5
33:6 35:9 36:7
38:3
experts 14:21
14:21,22,23
21:21 22:4

23:21,24 24:1
24:13,18,23
25:4 36:8 38:4
39:4
explanation
24:1 39:6
extension 34:6
extent 10:17
17:6 38:3
46:14,16
external 10:14
extra 29:22

**f**

f 1:21 48:1
fact 9:25 13:18
14:5,6,16,20
18:14,16 21:25
29:20 30:22
32:21 33:3
35:9 36:7 38:2
39:14,19
faded 9:2
failure 10:18
fairly 21:21
fall 44:16
far 24:7 30:22
faster 39:3
fault 16:19
favor 23:23
federal 28:7
figure 9:20
file 38:15
filed 2:7 7:25
7:25 8:1 11:8
16:11 39:14
final 13:17,21
18:10 38:20

find 11:1 34:8
34:10,12,14
46:3
findings 18:14
18:15 39:14,19
fine 6:12 18:2
21:12 22:19
finish 11:24
finished 21:19
firm 8:9 31:13
first 7:22 9:14
10:22 20:1
30:15 37:16
38:22
fix 44:17,19
fixed 13:4 42:2
44:17
fixing 42:1
flavor 10:5
floor 3:5
focus 28:6
35:11
follow 23:7
following
10:15
follows 12:24
font 38:18
footnote 15:6
force 27:12
foregoing 48:3
form 29:15
forth 16:17
forward 9:13
21:4,17 27:5
31:23
found 22:7

frankly 16:3
41:20
friday 13:10
front 11:4
34:12 44:1
frontier 1:7
3:20 4:2 5:3,7
5:24 6:3 7:11
8:1,14,17 9:5
10:9,20 12:8
17:6 19:3,4,6,8
21:1,11,13
23:12 26:6,22
30:11 33:20
34:4,8,15 35:7
36:23 37:4
39:13 41:20,22
42:4 44:6,17
44:18 45:20
46:7,9,11
frontier's
10:17 15:22
22:4 30:1,3
35:14 46:24
47:11
froze 47:1
full 18:23
fully 16:22
function 8:3
further 47:10

**g**

g 5:1
generally
23:23 30:8
35:12
geoghegan
4:21

getting   27:18
  30:22 35:22
  46:24
give   5:15,21
  6:5,9,12,23
  7:13 10:5
  12:15 14:9
  28:13 37:13
  38:14
given   12:22
  35:22 36:21
gives   29:5
glad   26:8
glenn   1:22 7:22
go   12:7 13:13
  14:1,2 15:8
  16:6 17:3
  19:18 20:6,10
  20:15 21:1
  22:18 23:16
  27:1 29:8
  31:23 32:13
  34:7,10 36:16
  37:17 39:3
  44:3
god   12:5
goes   24:25
  28:15
going   9:8,12
  11:22 12:2,3,4
  12:6,10 13:9
  14:11 15:24
  16:4 17:6 19:4
  20:16,21 21:5
  21:13 24:22
  25:8,16,20,22
  26:2,3,7 27:6

27:15,22,24,25
  29:4 31:19
  32:1 34:8,10
  34:12,14 35:5
  36:25 40:19
  41:22 45:2
  47:15
good   5:5 6:6,25
  7:21 9:15 22:8
  25:15 37:7
  41:13
gotten   15:23
  36:23
government
  2:2,6
green   1:12
greg   4:20
ground   15:1
group   43:23
guarantee
  26:17
guess   20:3 21:8
  26:8 33:15
guidance   39:7

**h**

half   20:23
hand   8:3,5
handle   16:15
  21:20
handled   12:3
  15:17,18 16:14
hang   40:4
happen   11:16
  22:11 26:2
  27:15 32:1
  41:2 46:1,2

happened
  11:10 12:5
  42:16 45:5
happening
  26:19,24
happens   42:17
happy   22:19
harbor   15:7,10
  15:15,16,23,25
  16:6,23 17:7
  17:10,17,20,25
  18:23 19:8,10
  19:17,24 20:12
  20:21,22 21:11
  22:21 23:6
harbors   16:3
  21:14
harrison   4:22
hartford   4:4
  5:10
hawaii   43:17
heading   32:3
hear   7:7 9:14
  11:3 12:8 19:7
  19:9 20:22,22
  28:23 30:1,3
heard   8:2,4,14
  10:22 11:2
  19:16 21:8,11
  30:2,2 38:24
hearing   2:1,6
  5:3 8:8 10:11
  12:9 13:15,15
  20:7 37:8 40:4
  40:8,25
hearings   28:21
  39:22

heaven   35:24
  44:1
heavy   42:13
heels   34:9
height   15:13
help   24:5
helpful   10:6
  24:23
hi   3:15 7:14
hindered   45:15
hold   32:18
hon   1:22
honestly   11:25
  31:11
honor   8:16 9:1
  9:4,15,17,24
  10:1,20 11:3
  12:13,19,22
  14:5,14,19
  15:3,9 16:10
  16:23 17:1,5
  17:18,23,25
  18:20,23 19:2
  19:5,12,21,25
  20:8,9 23:14
  25:1,7,8,24
  26:20,25 29:9
  29:20,22 30:5
  30:7,10,13,14
  30:21,22 31:12
  31:20 32:6,11
  32:15,20,24
  33:1,10,17,22
  33:25 34:16
  35:1,11 36:14
  36:17,22,22
  37:2,6,8,9,12

37:17,22 39:24
40:12 41:3,6,8
41:24 42:7,12
42:23,25 43:8
43:11,21,22,25
44:15 45:10
46:5,13 47:7
47:10,13
**hope** 41:23
**hopefully**
12:20,21
**hour** 43:16
**hours** 25:13
26:1,1,7,24
**hualalai** 3:14
**hyde** 2:25 48:3
48:8

**i**

**idea** 14:22
25:16
**identifiable**
7:24
**identified**
34:25
**ids** 46:7
**ignored** 32:10
**ildefonso** 3:24
7:9,10 9:4
**imagine** 27:6
34:25
**immediately**
28:8
**important** 10:3
10:13 23:19
28:18 40:17
43:9 45:16

**impossible**
34:22
**impression**
37:14
**inadvertent**
41:25
**inch** 38:18
**include** 36:8
38:4
**included** 14:15
41:25
**including**
14:11 22:1
**inconsistent**
46:21
**indicated** 10:7
10:19 15:7
22:23 35:19
46:13
**indication**
31:25
**indiscernible**
17:4
**inefficiency**
15:13
**inefficient**
16:25
**inferences** 45:2
45:22,22
**inform** 31:18
**information**
7:24 8:21,24
9:9 24:19
**infringement**
10:16,21 25:10
25:19,23 28:5
46:12

**infringer** 26:13
**infringers**
10:18
**infringing** 27:7
**inherited** 11:7
**initial** 22:23
30:23 33:4
**initially** 16:11
17:10
**inquire** 35:14
**insignificant**
14:10
**insisting** 21:14
**intend** 27:5,5
**intent** 19:10
**intention** 21:17
**interest** 30:8
**interim** 12:24
**internal** 10:14
**investigation**
10:21,25
**involved** 32:10
40:23 44:23
**ip** 45:11,14
46:9,11
**ironic** 23:10
**isp** 10:15 17:9
**issue** 15:7 16:5
16:6 17:25
18:1,5 19:17
23:6,15,18
26:16 27:16,20
28:5 31:11
39:4,18 42:13
44:12
**issues** 9:19,20
10:2 11:21

12:18,18 16:2
17:24 19:24
21:10 24:10
26:10 28:18
29:3,10,15,19
44:10,14,16,17
44:18 46:8

**j**

**j** 4:18
**john** 4:24
**joined** 5:7,9,11
**joining** 7:3
**joint** 13:19
38:6,13,16
**jointly** 36:6
**jonathan** 4:6
5:6 6:2 8:16
33:10 41:24
44:15
**judge** 1:23
7:22 8:9,12
11:8 15:10
16:17,24 18:2
20:20
**judgement**
18:10
**july** 13:19
14:17,18 21:23
29:24 30:24
**june** 13:18
14:6,15 21:24
21:24 30:23
31:22 32:22,23
**jurisdiction**
18:8
**jury** 24:14 39:9

| k | law 18:14,16 | lists 28:25 | m |
|---|---|---|---|
| **kailua** 3:15 | 39:14,19 42:18 | **little** 17:15 | **m** 4:20 |
| **kaplan** 3:8 | **lawyers** 22:8 | 39:3 40:21 | **made** 15:25,25 |
| 7:14,14 | 27:18 32:12 | **live** 26:15 | 23:11 31:2,3 |
| **kerry** 3:17 6:5 | 40:3 47:11 | **llc** 3:12,13 | 45:13 |
| 6:6 43:14 46:5 | **lead** 37:2,3 | **llp** 3:3,19 4:1 | **make** 7:5 11:22 |

**kailua** 3:15
**kaplan** 3:8
  7:14,14
**kerry** 3:17 6:5
  6:6 43:14 46:5
**kevin** 7:19
**key** 29:19
**kind** 10:3 15:4
  17:2 28:9
**know** 6:1 10:1
  12:2 13:15,17
  14:14,20 20:1
  20:3 25:5,17
  25:18,19 26:15
  27:11 28:8,20
  28:24 29:13
  34:17,21 36:23
  40:19 41:17,18
  41:21 42:10,11
  43:15 45:25
  46:3
**knowledge**
  10:17 30:17
**knows** 12:5
  30:14 36:22
**kona** 3:15
**ks** 1:25

**l**

**labor** 32:2
**laid** 12:22
  23:22
**larger** 10:3
  23:17
**late** 13:13

**law** 18:14,16
  39:14,19 42:18
**lawyers** 22:8
  27:18 32:12
  40:3 47:11
**lead** 37:2,3
**learned** 30:7
**leave** 20:18
  21:18 22:4
  23:13 36:18
**leaving** 22:15
**ledanski** 2:25
  48:3,8
**left** 22:11
**legal** 16:2
  48:20
**length** 9:18
**letten** 4:18
  6:11,14,15
**letter** 2:7 38:5
  40:9 42:21,24
  43:1 44:11
**letters** 41:17
  43:2 44:6
**lewis** 4:10 5:17
**liability** 15:14
**likely** 6:18
  22:22 27:25
**limited** 38:17
**line** 26:9
**lined** 14:21,21
**lines** 17:5
**list** 29:17
**listen** 19:19
  26:7
**listening** 27:14

**lists** 28:25
**little** 17:15
  39:3 40:21
**live** 26:15
**llc** 3:12,13
**llp** 3:3,19 4:1
  4:10
**locations** 5:12
**log** 33:12 34:20
  34:22,24 35:1
**logged** 5:19
**logistical** 28:18
**logs** 14:8 33:7
  34:1
**long** 16:20 24:7
  24:18 28:13
  39:18
**look** 11:7 14:22
  14:23 17:14
  20:6 37:24
  39:21 41:13
  42:18 46:18,23
**looked** 13:24
  46:15
**looks** 7:16
**lose** 15:5
**lost** 16:18
**lot** 16:2 28:11
  29:13,13,20
  32:12
**lots** 29:6
**loud** 26:15
**lp** 3:12
**luskin** 4:15
  5:15,17,17
  43:4,6,8

**m**

**m** 4:20
**made** 15:25,25
  23:11 31:2,3
  45:13
**make** 7:5 11:22
  13:14 21:6,15
  23:8 29:22
  31:14 37:20
  40:23 41:2,13
  42:15 43:18,20
  43:23 44:1
  45:21,21
**makes** 20:14
**management**
  2:1
**manner** 16:11
**march** 1:15
  30:15 45:13
**margins** 38:18
**marked** 38:8
**married** 40:16
**martin** 1:22
**mas** 3:24 7:10
  7:10 9:2,4,4
**massachusetts**
  31:23
**matt** 3:9 6:25
  9:16
**matter** 1:5
  9:11 11:9,19
  12:2 13:8
  47:16
**matters** 2:2
**matthew** 4:18
  6:9,10,15,23

**mean** 16:7
18:19 28:15,19
39:8 42:19
**meaning** 18:17
**meant** 40:2
**meet** 12:17
21:25 22:7,12
29:21 31:10,14
35:7 40:20
42:13 44:7
**meeting** 30:17
44:9,10
**met** 9:18
**mg** 1:3
**michael** 4:15
5:17
**middle** 12:12
**mind** 26:21
28:8
**mineola** 48:23
**minor** 23:18
**minute** 32:18
**minutes** 24:1
24:10,22 25:13
**missed** 19:9
**mistakes** 42:15
42:19
**moment** 20:20
**moments** 46:14
**monday** 13:9
**monitoring**
31:25
**month** 21:5
**morgan** 4:10
5:17
**morning** 9:18
20:1,2 27:17

43:12
**motion** 15:25
16:18 21:6,15
23:11 45:21,21
**move** 9:20
11:17 21:16,17
29:25 35:24
44:1 45:8
**movie** 2:7 6:7
14:22 17:21
25:13,24,25
26:4,18 47:6
**movies** 25:12
25:14 26:1,7
26:13,24 27:15
28:4,10
**moving** 21:4
45:15
**multiple** 25:13
45:11,14 46:9
46:11
**music** 21:9
**muster** 41:21

**n**

**n** 3:1 5:1 48:1
**name** 5:5 7:10
**names** 41:22
42:4,5
**necessary**
12:25
**need** 14:8,12
16:24 21:1
24:10,16 39:7
40:21,22
**neither** 28:3
**never** 30:19,19
46:8

**new** 1:2,13
4:13 34:4 41:6
**nonexistence**
45:3
**nonsense** 37:21
37:25
**note** 8:19 17:9
**noted** 15:6
**notice** 10:21
45:7 46:4
**notices** 10:16
**november**
45:13
**number** 5:3
7:24 14:10
15:2 23:7 26:3
33:12 34:19
**numbers** 35:19
**nw** 3:5,21
**ny** 1:13 4:13
48:23

**o**

**o** 1:21 5:1 48:1
**object** 8:21
**objections** 2:3
7:23,24 8:18
9:8 11:8,11
**objectors** 8:2,7
**obviously**
24:25 27:22
29:20 32:3
**october** 31:8
**offered** 38:11
**offering** 28:11
**office** 5:10 7:17
**oh** 6:14 23:12

**okay** 5:13
12:12 13:13
16:9 18:19,21
19:14 21:4,15
22:16 23:12,13
24:21 28:18
29:2,11,16
35:13 36:1
37:24,25 39:6
41:7 42:3,9,17
42:20 43:2,2
43:13 44:3,21
45:23 46:2,11
46:18,22 47:8
**old** 11:15 48:21
**once** 44:22
**ones** 16:5
**ongoing** 41:17
**open** 26:6 40:3
**opinion** 18:11
18:11
**oppenheim** 3:2
3:9 6:25,25 7:1
9:15,16 11:2,7
12:13 13:3
14:4 16:10
17:18 18:3,17
18:18,22 20:1
20:9,10,11,16
20:19 21:19
22:17,18,19
23:3,14,17
25:1,4 26:25
27:1,2,16,22
29:9,18,19
31:7 35:5,11
35:14 36:2,18

37:6,13 43:9
43:11,20,21
47:8,10
**oppenheimer**
29:8
**opportunity**
29:6
**order** 9:6,8,9
9:10 12:23
13:20 14:7,9
17:17 29:21
30:18 31:8
32:25 33:19,20
33:25 34:5,7
34:11,23 35:1
36:8 38:3,6,7
38:13,16 42:13
**ordered** 23:2
27:11
**ordering** 13:8
**orders** 18:10
32:9
**ordinarily**
13:11
**original** 28:14
**ought** 29:6
36:5 44:25
**outstanding**
9:19 10:4,12
12:14
**overlap** 15:13
15:15
**overruling** 9:8
**oversimplify**
28:17
**own** 12:18
27:24

**ownership**
26:10 27:20,23
28:3

**p**

**p** 3:1,1 4:24 5:1
**p.m.** 13:10
43:18,19,24
**pace** 11:13
**pages** 38:18
**papers** 16:17
**parachuted**
32:13,14
**park** 4:12
**parties** 9:17
17:2 21:25
27:3 28:1 35:8
35:10 36:11,19
37:9,19 38:15
39:11 41:15
**pass** 41:20
**pause** 5:13
6:22 7:18
**penciled** 13:16
**people** 8:20
41:22 42:15
**percent** 32:4
**permission**
38:17
**permit** 35:2
**permitted** 24:9
24:18
**personal** 29:23
**personally**
7:23
**perspective**
12:19 15:16
16:13,21 25:12

**persuaded**
18:13
**phone** 42:20
45:6
**pick** 40:5,6
42:20
**picking** 44:13
**pii** 7:23 8:15
8:20
**pirated** 25:14
25:25
**pitney** 4:1 5:6
5:23 6:15
22:20 27:18
30:6,15 37:3
43:9,23 44:13
44:23 45:24
**place** 8:25
16:14,14
**placed** 26:12
**plaintiff** 25:15
**plaintiffs** 7:2
14:20 22:9
**plans** 21:13
**plate** 29:13
**play** 27:5
**please** 5:16,22
6:5,9,23 7:13
8:5
**pm** 1:16
**point** 19:5 20:4
25:6,7 38:18
46:7
**points** 46:6
**policies** 10:15
**portions** 26:14
38:10

**position** 19:22
20:2 35:20,21
45:1 46:2
**positions** 41:20
**possible** 9:21
9:23 11:14
31:6 35:24
40:18
**post** 39:13
**powerpoint**
24:4
**practical** 29:4
**practiced**
42:18
**pre** 38:8
**precisely** 26:5
**preclusion**
45:21
**prejudice**
30:11
**prejudicial**
32:7
**prepare** 18:14
**prepared** 8:17
9:3 11:20
12:20 16:22
17:6,19 18:23
19:14,15,23
21:9,12 26:5
34:6 44:11
**prepetition**
15:20 16:23
20:21
**present** 4:17
26:23 27:23
**presentation**
24:4

**presented**
15:14
**pressed** 23:5
**pretrial** 13:17
13:20,21 28:21
38:6,7,13,16
38:21
**previously**
10:2 17:1
**prior** 32:9
38:17 43:12
**privilege** 14:8
33:7,12 34:1
34:20,22,24
35:1
**pro** 8:10,11
**probably**
15:12,19
**probed** 10:25
**problems**
28:24
**procedurally**
17:3
**procedure**
23:21
**procedures**
10:16
**proceed** 12:20
17:12
**proceeding**
11:18 22:21
**proceedings**
47:17 48:4
**process** 12:22
23:22 29:5
42:25

**produce** 11:5,6
22:9,10 35:15
35:23,25 46:1
**produced** 9:10
33:7 35:3
46:15,16
**production**
14:8 22:2 38:4
41:25
**promptly**
21:15
**proof** 29:6
**proposal** 39:20
**propose** 38:20
39:15 41:11
**proposed**
12:15 13:19
15:3 18:3,14
18:15 29:21
35:8,10,12,16
36:6 38:8,9,14
39:13,19
**prosecuting**
11:10
**protective** 9:10
**proven** 10:12
**provide** 26:13
33:14,14 34:22
**provided** 8:22
8:24 9:6 22:2
33:8,16 35:2
**providing**
34:20 42:4
**provision** 9:9
**pure** 16:13
**purely** 29:23

**purpose** 42:8
**purposes** 15:14
**push** 17:10
**pushing** 13:25
**put** 11:14
22:12 27:5
28:20,24,25
29:6,15 31:14
35:23 41:21
**putting** 26:21

### q

**question** 9:1
17:13 33:24
41:3
**questions**
10:20 15:22
23:7
**quickly** 9:21
9:23 11:6
21:17 31:6
35:24
**quite** 11:8
31:11,17

### r

**r** 1:21 3:1 5:1
48:1
**r&r** 15:19
**raise** 8:3,5,5
9:11 15:21,24
47:5,9,12
**raised** 9:11,19
10:1 11:21
16:5 20:1 26:8
38:22 39:4
**raising** 16:11
28:16

**rcc** 34:21 42:1
**read** 39:2
**ready** 31:10
35:23 40:4
**realistic** 39:8
**really** 16:1,9
27:2 28:5,6
29:19 46:1
**reasonable**
31:9 41:15
**reasonably**
9:23 31:6
**rebuttal** 14:15
14:17 30:25,25
33:3,6
**received** 11:22
42:24
**recognition**
12:17
**recognize** 8:5
15:12
**recommenda...**
18:1
**reconvene**
39:21
**record** 3:4 4:11
5:18,21 7:1,15
7:25 9:16,22
12:8,16,19
16:22 21:9
23:20 28:4
30:14 33:11
34:2,5,14 48:4
**recordings**
27:4,14,24
28:10

Page 14

**redacted** 42:8
42:9,10
**redacting**
41:21 42:6
**redactions**
42:1
**reference** 16:1
16:16 20:20
21:2 23:11
**reflects** 40:9
**regarding**
10:18 46:7
**regularly**
28:21
**related** 18:8
**relatively**
34:18
**relitigate** 16:19
**rely** 42:15
**remain** 35:10
36:12
**remaining**
12:14 35:16
**remains** 10:4
15:11
**remove** 16:16
**reorganized**
7:11
**repeat** 10:18
**report** 18:1
22:9,10,22
24:20,24
**reports** 14:15
14:17,17 22:1
22:3,24,25
24:11,14 30:24
30:25 33:6

38:4
**representing**
5:7
**request** 33:9
45:12
**requests** 35:2
**require** 9:25
21:7 25:24
**required** 44:23
**requiring** 34:2
35:1
**reserve** 20:4,5
**resolve** 29:2,3
29:4
**resolved** 29:7
29:12 44:10
**respect** 8:14
11:10 12:4
15:10 20:11
21:2,20 33:12
**respond** 42:25
**responding**
10:16
**response** 10:19
10:20
**responses**
46:21
**rest** 5:18
**retained** 30:14
30:16
**retired** 36:23
**review** 19:15
**right** 5:2,15,20
6:17,21,23
7:16,21 8:13
8:19 9:7,10
18:25 19:11

23:12 25:25
26:1,9 36:4
37:4 43:3 44:3
47:15
**rights** 20:4,5
**road** 3:14
48:21
**roles** 6:20
**roll** 33:1
**room** 5:8
**rothman** 3:10
7:2,7
**ruben** 4:25
**rule** 16:23
18:23 28:7
35:3 45:22
**ruling** 8:18
**run** 35:18,23

**s**

**s** 3:1 5:1
**safe** 15:7,10,15
15:16,23,25
16:3,6,23 17:7
17:10,16,20,25
18:23 19:8,10
19:17,23 20:12
20:21,22 21:10
21:14 22:21
23:6
**sanctions**
46:22
**saying** 19:24
23:9 24:24
25:8 26:16
33:15,17
**says** 46:7

**schedule** 9:12
9:19 12:15,23
14:24 20:25
21:3,13 22:1
23:15,18 29:21
30:4 32:14,16
35:8 36:13,21
39:11 41:9,12
**scheduled** 10:9
31:17,24
**schedules**
41:15
**scheduling**
21:21
**screen** 8:4
**se** 8:10 24:15
**search** 35:22
**searches** 35:18
**second** 13:2
18:2
**secret** 41:13
**see** 5:19 6:2 8:6
27:13 28:25
36:6,10 38:1
41:12
**seek** 31:4
**seeking** 16:18
**seem** 32:10
**seemed** 16:12
**seems** 16:7
**seen** 10:23
**selected** 38:25
**sense** 20:15
**sent** 7:25 8:1
32:9 44:11
**september**
31:1

serve  15:19
served  34:1
service  33:8
ses  8:11
set  16:17 22:6
  22:13 24:5
  30:19,19 32:16
  43:4
setting  9:12
  36:13
settle  11:18
  31:24 37:10
settlement
  37:15,19
several  10:2
severely  30:10
share  42:19
shared  39:12
short  11:23
  17:18 18:22
  39:5
shortly  7:3
  30:16
shove  17:11
show  26:13
showing  25:24
side  21:5,6
  25:11,11,24,24
  26:4,4,18,18
  29:5 42:18,21
sides  24:17,25
  25:2 36:5
signature  48:7
signed  8:7,11
similar  17:23
  27:16

similarities
  26:22
similarly  27:3
  27:20
simultaneously
  15:19
sir  19:21 41:2
sit  26:3
sitting  26:17
situation  25:17
  28:9
six  43:16
skip  12:13
slightly  21:16
slow  29:10,11
small  33:12
  34:18
soft  14:1
solutions  48:20
somebody  23:2
  27:8
sonya  2:25
  48:3,8
soon  21:3
sooner  34:1
sorry  6:11 9:1
  13:3 18:18
  22:17 39:25
  47:1
sort  23:5 25:2
  41:12 42:21
sorts  15:19
sought  16:16
sound  27:4,14
  28:10
sounded  15:24

southern  1:2
spaced  38:18
spare  37:24
speak  7:5 8:6
  19:4,6 31:15
  40:4
speaking  5:21
  6:18 7:6 8:17
  40:13
specific  11:20
  18:16 30:17
speed  27:19
spend  16:2
stacked  31:22
stage  24:5
  25:15,22 45:2
stages  10:10
stan  5:8
stand  13:12
standard  21:21
standing  33:18
stanley  4:8 6:2
  19:6 30:6
  36:14 40:12
start  5:4 15:2
  28:23
started  47:2
starting  5:2
  13:22
starts  39:2
stated  10:15
  45:11
statement
  17:24
statements
  44:25

states  1:1,11
  7:17
statistical  24:3
steven  3:17
stipulate  24:15
  27:11,25
stipulation
  27:3 29:7
stipulations
  29:16
stop  13:1 24:8
street  3:21 4:3
stress  37:20
stressed  37:8
studios  3:13
  14:23
stuff  22:13
subject  8:24
  9:6,10 36:12
submit  13:19
submitted  17:4
submitting
  38:6
subscribers
  8:20 45:12
subsequently
  15:8
substantial
  9:25
successful
  22:15
suggest  18:19
suggested  17:5
  17:25
suggesting
  24:6 33:22

**suggestions**
  26:6 29:1
**suite**  3:14,21
  48:22
**sullivan**  4:23
**summary**
  28:12 39:5
**supposed**  12:3
  33:2
**sure**  5:17 7:5,7
  8:23 23:8
  40:23 47:2
**surprise**  24:20
**surprised**
  17:15
**surprises**
  24:21
**suspect**  26:15
**suss**  44:11

**t**

**t**  48:1,1
**table**  38:19,19
**take**  18:12
  36:12,23 42:3
  44:22 45:18
  46:3,20,20,20
**taken**  10:8
  18:1 33:5
**takes**  24:7
**talk**  22:7 37:12
**talked**  37:15
**talking**  24:19
  40:8 41:3 47:2
**taylor**  4:22
**team**  5:19
  31:14 35:23
  40:20

**teams**  22:20
  29:14
**technical**  24:3
**tell**  11:9 12:7
  13:5,7,16 16:1
  20:14 22:6
  35:17 39:15
  43:6 45:20
**telling**  16:8
  34:3 45:19,24
**ten**  38:25
**tend**  39:3
**term**  18:15
**terms**  9:19
  11:14 34:5
  35:22
**testify**  27:8
**testimony**
  23:23 24:13
  38:9 39:1
**thank**  5:4,13
  5:25 6:4,8,17
  6:20,21 7:4,8
  7:12,15,16,19
  30:5 40:18
  41:8 47:13
**thing**  8:23
  20:19 26:16
  42:20 45:9
**things**  15:5
  27:13 29:6
  36:11,12 42:14
  46:1,2
**think**  6:14 10:2
  10:5,7 11:24
  11:25 12:10
  14:4 17:1,4

20:11,22 22:24
  23:1,7,25 28:1
  36:17,19 38:24
  41:16 42:10
**thinking**  12:11
  12:11 13:7
  23:4,19 26:15
**thinks**  26:6
**thought**  11:11
  14:24 15:9,9
  15:22 17:13,16
  19:16 23:5,8
  37:9,9 41:19
**thousands**  27:4
  27:4,23
**three**  14:20
  23:21 46:6
**thursday**  39:22
  40:9,25 43:5
  43:24
**time**  10:22
  11:9 13:14
  14:9 16:2,20
  19:10,25 34:25
  37:16 38:22
  39:17 40:5,6
  40:22 41:1
  43:4,6,7,8,11
  43:15,17,18
  44:20 47:14
**timed**  13:13
  38:24
**timeframe**
  34:20 36:19
**timely**  33:16
**today**  6:18,20
  9:11 11:20

18:13 20:25
  21:12 37:7,16
  41:19 43:3
  46:15,16,25
  47:14
**together**  28:20
  28:24,25 31:14
**told**  21:22 42:1
**tomorrow**
  33:14 34:20
  36:6 40:15
  42:2
**took**  7:19 11:9
  41:20
**torres**  15:10
  16:17,24 20:20
**toward**  32:3
**track**  12:1,1
  14:11 15:5
**transcribed**
  2:25
**transcript**
  15:23 17:15,17
  19:16 20:6
  23:2 48:4
**transcripts**
  26:13 38:10
  39:12
**trial**  9:24 12:23
  13:6,6,8,11,13
  13:15,20,22
  14:2 15:18
  21:5,7 23:15
  25:8 28:23
  30:10,19,20,22
  31:7,12,16,21
  31:24 32:1,5

| | | | |
|---|---|---|---|
| 32:13 35:12 | 19:12 30:5,6 | **understood** | **virtually** 11:10 |
| 37:18 38:8,9 | 30:13,21 32:6 | 5:20 6:21 20:8 | **voluminous** |
| 38:15,17,25 | 32:11,15,20,24 | 23:8 32:15 | 28:12 |
| 39:2,9,12,13 | 36:14,14,17 | 37:22 | |

**trials** 24:14
38:24
**tried** 11:18
12:10 31:6
**triple** 12:1
14:11
**tropp** 4:6 5:5,6
6:2 8:16,17 9:1
33:10,10,17,22
33:25 34:16
39:3 41:24,24
42:7,12,23
44:15,15 46:13
**true** 18:25
25:20 48:4
**trustee's** 7:17
**try** 7:4 9:20
21:10 22:4,14
29:4,12,15
37:10 40:19
42:13 44:7
**trying** 15:7
42:25
**tuesday** 36:10
40:8,9
**turn** 8:1 25:3
35:5
**turned** 45:12
45:14 46:10,16
**turning** 42:22
**turns** 45:25
**twardy** 4:8 5:8
6:2,18 19:5,6

37:2,12,22,24
39:24 40:1,12
40:12,14,15,18
41:2,6,8 43:25
47:13
**two** 13:10 15:4
16:19 24:10
25:6,8,13 26:1
26:4,18 28:22
29:12 31:21,22
31:23 32:2
38:8 39:8,23
44:16 46:8
**type** 10:11,12
25:9,10,15
**types** 23:21
**typically** 38:24
39:2,6

**u**

**u.s.** 1:23
**ultimate** 14:6
**unclear** 16:9
**under** 15:9
**underlying**
22:2 28:5
**understand**
10:24 26:20
30:21 34:12
35:21
**understanding**
9:5 10:4 14:11
24:24

**undertakes**
10:21
**undertaking**
36:2
**unfortunate**
46:23
**unfortunately**
30:9
**unique** 25:17
**united** 1:1,11
7:17
**unmute** 6:5,9
6:10 7:12
**unmuting** 7:5
**use** 24:4 31:6
**used** 18:15
**useful** 23:25
**using** 2:1,6
13:5
**usually** 21:20
22:7,14 24:23
25:14 39:16

**v**

**verbatim** 19:18
**veritext** 48:20
**version** 25:25
**versions** 25:14
26:4,18
**view** 12:9 18:8
19:15
**views** 17:2
**vince** 4:23

**wait** 28:22
**waited** 16:20
**waiting** 5:18
7:17 11:16
**walking** 24:4
**want** 8:4,14,23
9:7,11 10:10
15:5 16:5 24:8
24:21 27:13
28:17 31:18
37:13 38:1
39:19 40:7,9
41:12 43:4
44:21 45:16
46:19 47:5,9
47:11
**wanted** 25:7
**wants** 46:3
**war** 42:22,24
**washington**
3:6,22
**watch** 26:4
34:13
**watching**
26:18,24 27:14
**way** 16:25 18:5
26:23 29:4
41:21 45:6
**ways** 24:16
28:15
**we've** 10:22
31:24 32:8
33:14 42:14

[wedding - zoom]                                                          Page 18

| | | z |
|---|---|---|
| **wedding**  41:5 | 43:20,24 44:2 | |
| **week**  13:6 | 45:6 | **zebrak**  3:3 7:1 |
| 14:19 29:22 | **worked**  41:16 | **zipes**  4:20 |
| 32:2 38:20 | 41:19 44:8 | **zoom**  2:1,6 8:3 |
| 41:1,12 43:19 | **working**  16:2 | 40:7 44:9 |
| **weeks**  13:11 | 32:8,16 35:12 | |
| 25:9 28:22 | **works**  23:23 | |
| 29:12 31:22 | 24:16 25:12 | |
| 32:2 39:8 | 40:6 43:6,7,12 | |
| **wells**  4:19 | **writing**  42:22 | |
| **went**  13:25 | 42:24 44:25 | |
| **wisconsin**  3:5 | **written**  10:9,11 | |
| **wish**  8:2 | 10:12 13:23 | |
| **wishful**  23:4 | 33:25 39:1,11 | |
| **withdraw**  16:1 | **wrote**  21:22,23 | |
| 16:8 17:11 | 39:16 | |
| 23:11 | | |
| | **x** | |
| **withdrawal** | | |
| 21:2 | **x**  1:4,10 | |
| **withdrawn** | | |
| 20:13,20 | **y** | |
| **withheld**  33:13 | **yeah**  6:11 | |
| **witness**  13:12 | 36:16 40:2 | |
| 31:1 | 43:16 44:5 | |
| **witnesses**  11:6 | **year**  45:13 | |
| 15:1 30:24,25 | **years**  16:19 | |
| 33:2,3,5,5 | 30:7 42:19,19 | |
| 38:10 41:23 | **yesterday**  8:21 | |
| 45:20 | 9:12 10:7,19 | |
| **words**  31:7 | 12:23 15:6,23 | |
| **work**  11:23 | 17:14 19:7 | |
| 12:16 15:3 | 23:2 38:22 | |
| 22:4,8,12,15 | 41:18 | |
| 22:20 23:24 | **yesterday's** | |
| 25:11 28:1 | 20:7 37:8 | |
| 29:15,20 39:10 | **york**  1:2,13 | |
| 41:22,23 43:18 | 4:13 41:6 | |