Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-22476-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    FRONTIER COMMUNICATIONS CORPORATION,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY   10004

14

15                  April 16, 2024

16                  3:00 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

1    **HEARING re Discovery Conference Using Zoom for Government**

2    **(Doc #2323, 2324, 2326, 2327)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **Transcribed by:  Sonya Ledanski Hyde**

Page 3

1    A P P E A R A N C E S :

2

3    OPPENHEIM ZEBRAK, LLP

4         Attorneys for Record Company Claimants

5         461 5th Avenue, 19th Floor

6         New York, NY 10017

7

8    BY:  CARLY KESSLER ROTHMAN

9         LAUREN BERGELSON

10

11   OPPENHEIM ZEBRAK, LLP

12        Attorneys for Record Company Claimants

13        4530 Wisconsin Avenue, NW, 5th Floor

14        Washington, DC 20016

15

16   BY:  MATTHEW J. OPPENHEIM

17        ALEXANDER KAPLAN

18

19   MORGAN, LEWIS BOCKIUS LLP

20        Attorneys for Record Companies

21        101 Park Avenue

22        New York, NY 10178

23

24   BY:  MICHAEL LUSKIN

25

Page 4

1    DAY PITNEY LLP

2         Attorneys for the Debtors

3         225 Asylum Street

4         Hartford, CT 06117

5

6    BY:  MATTHEW J. LETTEN

7         JOSHUA COHEN

8         ELIZABETH ALQUIST

9

10   DAY PITNEY LLP

11        Attorneys for the Debtors

12        195 Church Street, 15th Floor

13        New Haven, CT 06510

14

15   BY:  JONATHAN TROPP

16

17   DAY PITNEY LLP

18        Attorneys for the Debtors

19        One Stamford Plaza

20        Stamford, CT 06897

21

22   BY:  STANLEY A. TWARDY, JR.

23

24

25

1   CULPEPPER IP, LLC

2        Attorneys for Badhouse Studios, LLC

3        75-170 Hualalai Road, Suite B204

4        Kailua Kona, HI 96740

5

6   BY:  KERRY STEVEN CULPEPPER

7

8   AKERMAN LLP

9        Attorneys for Frontier Communications Corp.

10       750 9th Street NW, Suite 750

11       Washington, DC 20001

12

13  BY:  ILDEFONSO MAS

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  All right.  Good afternoon, everybody.

 3    We're on (indiscernible) --

 4              MR. MAS:  Good afternoon, Your Honor.

 5              THE COURT:  -- 20-22476.  It's a discovery

 6    conference.  I have Mr. Twardy's April 11th letter, and

 7    let's begin with that.  Mr. Twardy, you going to begin?  I

 8    --

 9              MR. TWARDY:  I --

10              THE COURT:  -- (indiscernible) letters that have

11    been sent as well for (indiscernible).

12              MR. TWARDY:  Thank you, Your Honor.  Mr. Letten,

13    who is involved on behalf of Frontier, will be handling this

14    part of the argument or hearing today.

15              THE COURT:  Okay.  Mr. Letten, go ahead.

16              MR. LETTEN:  Good afternoon, Your Honor.  Matthew

17    Letten from Day Pitney on behalf of Frontier.  I'm not going

18    to take the opportunity to repeat the arguments in the

19    letter, but I did think that it made sense to address the

20    points raised in RCC's letter.  And to start off by noting

21    that --

22              THE COURT:  No, let's start with the issues you

23    raise in your letter.  That's what this was called about.

24    We are -- we'll talk about the others, but --

25              MR. LETTEN:  Oh.
```

1          THE COURT:  -- I want to deal with the issues

2     first that are raised in the April 11th letter.

3          MR. LETTEN:  To clarify, Your Honor, I was

4     referencing RCC's April 15th letter responding to our

5     request for these documents.

6          THE COURT:  Okay.

7          MR. LETTEN:  And I wanted to point out in terms of

8     what is not being raised or argued by RCC, which is that

9     these requests and the search terms that we've proposed,

10    there's no argument that these are overbroad or burdensome.

11    The arguments that RCC have raised are focused on relevance

12    and privilege.  Now, in terms of relevance, I don't think we

13    could disagree more because the parties are going to have a

14    dispute at trial regarding the applicability of the safe

15    harbor defense.  And part of that dispute is going to be

16    what the safe harbor defense requires and whether Frontier

17    qualifies for it.

18         And our position is that repeat infringer policies

19    that other ISPs had are relevant to many of the

20    considerations under the safe harbor, including what are

21    appropriate circumstances in which an ISP should terminate a

22    customer, when does a customer constitute a repeat infringer

23    that might need to be terminated in order to qualify for the

24    safe harbor.

25         And RCC cites a handful of cases in their letter,

Page 8

1    but none of them actually say that other ISP repeat

2    infringer policies are irrelevant to the safe harbor

3    defense.  Most of the cases are simply silent as to what

4    other ISPs may have done or not done with respect to their

5    own repeat infringer policies.  And the exception is

6    actually the Grande case, which supports our argument and is

7    in our favor.  Because in the Grande case, the district

8    court actually explicitly looked to Cox's policy and

9    compared it to Grande's lack of a policy in determining that

10   Grande could not invoke the safe harbor.  So we think that's

11   actually an example of a case establishing that these types

12   of documents are relevant to our safe harbor defense.

13          Just to address a few other points in their

14   letter, even if they say the documents might be relevant,

15   they suggest that the communications would be hearsay.

16   They're not hearsay.  They're admissions by a party

17   opponent.

18          THE COURT:  Well, hearsay is not -- wouldn't bear

19   on --

20          MR. LETTEN:  It wouldn't.

21          THE COURT:  -- whether or not discovery has to be

22   given.

23          MR. LETTEN:  Exactly because the evidence doesn't

24   need to be admissible for it to be discoverable.  And

25   there's also an argument about, well, we should go out and

Page 9

1    get these documents from the ISPs themselves through third-

2    party discovery.  And what I would say is that we're

3    certainly considering taking third-party discovery from the

4    ISPs, but that does not absolve RCC of producing relevant

5    documents in its own possession, custody, or control.  And

6    indeed, the documents that we might receive from RCC might

7    inform what ISPs we subpoena and what documents we ask for.

8    And frankly, whenever you serve a third-party subpoena, the

9    third party is going to ask you are these documents that you

10   could obtain the litigation through party discovery and have

11   those requests been served.

12           Lastly, just on the point about privilege, the

13   argument is that these search terms and these requests are

14   going to turn up a majority of privileged documents, and

15   that's not an argument that we can test or really probe

16   because RCC hasn't actually run the search terms or reviewed

17   the documents.  And also, what I would say is that just

18   because a request might yield some privileged documents does

19   not mean that it's a request that the party can avoid

20   complying with.

21           And that in our case, Frontier has agreed to run

22   searches and to run search terms that we thought might yield

23   a substantial amount of potentially privileged materials,

24   but we still agree to run them.  And we've agreed to, when

25   required, log those documents.  So for all of those reasons,

Page 10

1    we think that this is a case where to date this is the only

2    discovery dispute that we, Day Pitney, has brought before

3    the Court, and we've done that because we think these

4    documents are important to our ability to present a safe

5    harbor defense.  And we'd ask that the Court compel their

6    production.

7            THE COURT:  All right.  Mr. Oppenheim, do you want

8    to respond?  You're muted.

9            MR. OPPENHEIM:  Apologies about that.  That was

10   probably the best part of my argument.

11           THE COURT:  Famous last words of a judge with Zoom

12   hearings.

13           MR. OPPENHEIM:  If I may, I'm going to make four

14   points, Your Honor.  The first is that there -- the

15   documents they're seeking are legally irrelevant.  The

16   second that the documents they're seeking wouldn't

17   demonstrate an ISP's policies and procedures.  Third, that

18   the -- any internal communications about other ISPs are

19   likely privileged.  And last but not least, we -- and the

20   reason I'm headlining the four arguments before I start is

21   to get to this fourth point, which I will elucidate more

22   later.

23           We don't believe any documents here exist that are

24   non-privileged, so I think we're fighting over a lot of

25   nothing, but it's an important legal issue.  So let me start

Page 11

1    with that issue.

2           THE COURT:  Just give me one moment.  I'm sorry.

3    Go ahead.

4           MR. OPPENHEIM:  So what the -- what Frontier is

5    seeking here are communications that the record companies

6    have had relating to what other ISPs' policies and

7    procedures are.  And they justify it saying that they're

8    looking for documents which will demonstrate benchmarking or

9    an industry standard.  But not a single case that has

10   considered Section 512's safe harbor provisions look to

11   benchmarking for industry standards.

12          In fact, the Second Circuit opinion on this MP3

13   Tunes explicitly dives into the legislative history behind

14   the language in 512 and then turns to the dictionary for

15   what is the normal meaning of the terms in the statute.

16   Other decisions, Cox doesn't look at anything else.  Hot

17   File out of Florida doesn't look at anything else.  And

18   while Grande does compare to the Cox decision, it doesn't

19   compare to any internal Cox documents, doesn't suggest that

20   discovery from any of the parties about other ISPs or

21   discovery from other ISPs would be appropriate.

22          The only thing the Grande case did was say there's

23   no safe harbor here.  And of course given that this is far

24   worse than Cox where they found no safe harbor, it's an

25   obvious conclusion.  That decision cannot be support for the

Page 12

1  proposition that a full-blown discovery effort into what

2  other ISPs' policies and procedures are and that somehow

3  that there's an industry standard, a legal standard here is

4  hollow.

5          THE COURT:  But you know, Mr. Oppenheim, at a

6  prior hearing I believe I asked you and asked the other side

7  whether any -- whether there's any case law that's

8  determined -- you know, how many infringement notices do

9  there have to be before there's reliability.  And nobody has

10 told me about any prior decisions that have set a threshold,

11 whether you've argued that three or more, whether it's

12 three, ten, five, whatever it is, I was obviously -- am very

13 interested whether any other courts have determined what

14 would a reasonable policy be.  And then of course if you've

15 had a policy, was it enforced?

16         So whether it turns out at trial that other ISPs'

17 policies are determinative, relevant, we'll see what the

18 standard is, doesn't indicate whether or not they're

19 discoverable.  Let me ask you this.  What other ISP policies

20 do -- does your client have within its possession?

21         MR. OPPENHEIM:  Well, the only documents that the

22 plaintiffs would have responsive to their requests,

23 privileged or non-privileged, would be documents that they

24 have by virtue of another ongoing litigation against an ISP

25 subject to obviously protective orders, right?  Or to the

Page 13

1   extent that they're engaged in some enforcement effort

2   outside of court.  So there are, believe it or not, ISPs

3   that sit down and have negotiations and mediate these things

4   outside of court and might have some information in the

5   context of those efforts.

6          Otherwise, our clients have not entered into any

7   agreements with ISPs responsive to the document requests as

8   to what would be a responsible or complaint repeater

9   infringer provision.  There are no such documents.

10          THE COURT:  Let me ask my question again.

11          MR. OPPENHEIM:  Yeah.

12          THE COURT:  How many other ISP policies do you

13   have in your possession?

14          MR. OPPENHEIM:  So I'm -- the reason I'm

15   struggling, Your Honor, is the distinction between the

16   policy and the procedure.

17          THE COURT:  Well, let me -- then let me ask it

18   both ways.  How many policies or procedures of other ISPs do

19   you have in your possession?

20          MR. OPPENHEIM:  Other than cases like -- you know,

21   obviously we have the ongoing cases, Cox, which we've listed

22   for Your Honor in the past to the extent we have

23   (indiscernible).

24          THE COURT:  List them for me again.  Because I

25   don't have clearly in mind with respect to the question I've

Page 14

1   just asked how many other ISPs' policies or procedures do

2   you have in your possession.  Possession, custody, or

3   control.  You know, I don't care whether they're sitting in

4   a box in your office or not.

5              MR. OPPENHEIM:  Yeah.  So there's an easy answer

6   and there's a hard answer.  So we have cases, right, which

7   we've described for you and I'll describe again, you know,

8   pending against Grande, which is up on appeal, Cox, which is

9   also on appeal, RCN, which is in the district court, Altice,

10  which is down in Texas, and this case.  And if I've missed

11  something, one of my colleagues will jump in.  I think those

12  are the currently pending cases.  We've previously litigated

13  --

14             THE COURT:  So four plus this case.

15             MR. OPPENHEIM:  I believe so.  We've previously

16  litigated and resolved as against Charter and BrightHouse.

17             THE COURT:  And do you have those in your

18  possession too?

19             MR. OPPENHEIM:  I doubt it because I believe

20  they're -- I doubt it, and I think it's -- there was a

21  confidential settlement agreement that provided for certain

22  issues.  So I don't believe we have that.

23             THE COURT:  Okay.

24             MR. OPPENHEIM:  But Your Honor, everything we have

25  there would be subject to what we obtained in litigation.

Page 15

1    And the reason I hesitated when you asked is because when

2    you asked about the procedures, it's never that there's a

3    single piece of paper or set of papers as to what the

4    procedures are.  So for example, in the Cox case, what we

5    discovered is that after taking dozens of depositions,

6    reviewing lots of documents, we were able to determine what

7    the procedures were over -- and how they changed over time,

8    which was very different than what the policy was.  So it's

9    difficult to say --

10           THE COURT:  Well, I haven't asked about do you

11   have any depositions that you've taken to develop, you know,

12   here's what's on paper, but here's what it was in practice.

13   Is it correct that you have in your possession policies or

14   procedures for Cox, Grande, RCM, and Altice?

15           MR. OPPENHEIM:  I couldn't say for certainty that

16   we do.  We probably -- we have something, Your Honor.  I

17   don't know that it's clean.  But if what we really wanted to

18   get at was to -- if -- so I don't think that we need to look

19   at what other ISPs are doing as a legal matter because I --

20   but I hear Your Honor's not asking about that.  But if what

21   we're -- if we were looking to what other ISPs were doing,

22   then the way to do that is to send subpoenas to other ISPs.

23           THE COURT:  Well, you know, let me deal with that

24   right off the bat, okay?  The fact that documents may be

25   available from third parties, the same documents that you

Page 16

```
1    have in your possession, doesn't mean that I shouldn't order

2    you to produce them.

3              MR. OPPENHEIM:  Of course.

4              THE COURT:  You know, if -- it may be that you

5    have signed protective orders in each of those other cases

6    that require that before you produce materials that have

7    been marked as confidential or highly confidential, that you

8    give them notice.  I don't know whether that's true or not.

9    That wouldn't -- I've had this issue arise in other cases.

10   That wouldn't prevent me from ordering you to produce them,

11   and it wouldn't -- it may be that while other issues were

12   sorted out I might order them produced attorneys'-eyes-only.

13             I'm not making any decisions about that, but the

14   fact that you received documents subject to a

15   confidentiality order in another case doesn't mean that you

16   won't have to produce them here.  I'm not at the point of

17   saying yes produce them, but you know, to use the term in

18   quotes in your April 15th letter about benchmarking, whether

19   benchmarking sets the applicable standard or is evidentiary

20   in support of what the applicable standard ought to be is

21   not an issue for today.

22             I would come back because I did ask both sides at

23   a prior hearing whether there are any decisions that

24   determine how many repeat infringement notices are required

25   before liability.  And I think you told me that there -- you
```

Page 17

1      were not aware of any cases that actually set down such a

2      rule.  That's more or less what I recall.  You may recall it

3      differently, but -- so it seems to me whether it's on a DMC

4      affirmative defense or whether it's affirmative elements of

5      a claim, I'm going to have to make a -- well, let's put

6      aside the affirmative elements for now, but on the

7      affirmative elements of the claim, I'm going to have to make

8      a determination of what were the procedures that Frontier

9      followed.

10            Did they abide by the procedures that they had set

11     down in writing?  Were those procedures reasonable?  Did --

12     you know, if they had a policy, I think somebody mentioned

13     14 infringement notices in the past.  Spread over how much

14     time I don't know, but let's just hypothetically say ten.

15     Well, did they enforce the ten?  I mean, you suggested that

16     they set out some guidelines and then didn't follow them.

17     All of that would be relevant it seems to me to the evidence

18     at trial.

19            I'm not making any determination whether the

20     policies of any of these other, you know, Cox, Grande, RCM,

21     or Altice, whether those set forth, what the Court should

22     consider in setting the applicable standard for this case,

23     that's not today's issue.  So -- but I think that, you know,

24     Day Pitney makes a credible argument that they're entitled

25     to see that if you -- for example, if you received a policy

Page 18

1    in one of these cases that said five infringement notices

2    over -- and set a time period, and they enforced it, and no

3    liability resulted in that case.  It may be probative, okay?

4               I mean, you may have arguments at trial that don't

5    pay any attention to that.  I understand.  I'm not --

6    there's a difference between what's discoverable and what if

7    any weight should be given to it at trial.  But go ahead

8    with your argument.

9               MR. OPPENHEIM:  So I don't -- we may disagree

10   ultimately on what the legal standard is, Your Honor.  And I

11   understand that's for a different day.

12              THE COURT:  I asked you about what the legal

13   standard is before and you said -- you kind of used three or

14   more.  But you've -- okay.  That sounds like maybe a

15   perfectly reasonable -- but you didn't say because there are

16   six cases that say that's reasonable.  You said -- you kind

17   of used that as a benchmark ruling.

18              MAN 1:  Your Honor, if I --

19              MR. OPPENHEIM:  If I believe -- if I may, Your

20   Honor, to separate the issues, there's the safe harbor issue

21   and then there's the --

22              THE COURT:  Yes.

23              MR. OPPENHEIM:  -- knowledge requirement.

24              THE COURT:  Right.

25              MR. OPPENHEIM:  On the safe harbor issue, right,

Page 19

```
 1    it's -- the question is whether or not they have a policy

 2    and they've communicated that policy for dealing with repeat

 3    infringers, including termination in appropriate

 4    circumstances.  The Second Circuit analyzed that in the MP3

 5    Tunes case without looking at any -- what anybody else did.

 6    But let me not ignore what you've just described and what

 7    you're interested in.  They have -- critically here, Day

 8    Pitney has not asked for what you just described.

 9           What they've asked for are communications with

10    online service providers, right, or agreements between the

11    record companies and online service providers.  They have

12    not asked for what you just described, which would be the

13    documents we've obtained in litigation regarding what other

14    ISPs may be doing in terms of policies and procedures.  So

15    our focus on this has been in response to their request.

16    Because the communications -- well, first of all, I don't --

17    again, I don't think there are going to be any

18    communications other than with the -- their own lawyers,

19    i.e. --

20           THE COURT:  Well, that wouldn't be --

21    communications between you and their lawyers wouldn't be

22    privileged.

23           MR. OPPENHEIM:  Right.  Well, our -- the record

24    company's communications with me would be privileged.

25           THE COURT:  Yes, I agree.
```

Page 20

1              MR. OPPENHEIM:  Okay.

2              THE COURT:  Maybe.

3              MR. OPPENHEIM:  Right.

4              THE COURT:  At least presumptively.  Let's put it

5      that way.

6              MR. OPPENHEIM:  Right.  Hopefully they're

7      privileged --

8              THE COURT:  Yeah.

9              MR. OPPENHEIM:  -- but -- so then the question

10     you're raising is are there policies and procedures for

11     other ISPs that have been the subject of litigation that may

12     help inform the Court.  And on that, I mean we could produce

13     -- Cox -- excuse me, Charter and BrightHouse, there's a

14     protective order that required the destruction of all

15     documents at the end of the litigation.  So those documents

16     don't -- or we don't have them.  We'd have to go to --

17             THE COURT:  You hope so.  Put it this way.  I can

18     -- it's been a long time since I've been in practice, but I

19     can remember situations where things that maybe should've

20     been destroyed were --

21             MR. OPPENHEIM:  I will tell you it was a sensitive

22     enough issue that it ended up being something that got a lot

23     of attention.  So --

24             THE COURT:  Okay.

25             MR. OPPENHEIM:  -- if it was not done --

1          THE COURT:  Look, let me just stop you for now.

2     Let's -- for purposes of discussion, let's exclude Charter

3     and BrightHouse.  Okay.

4          MR. OPPENHEIM:  So then the question --

5          THE COURT:  But there's still four others --

6          MR. OPPENHEIM:  -- (indiscernible) --

7          THE COURT:  -- that you gave me the names of.

8          MR. OPPENHEIM:  Right.  So you know, could we try

9     to identify within those cases certain documents?  I mean,

10    the policies are one thing.  The procedures are much harder.

11    The policies we could try to do, but they're all subject to

12    a protective order, so I assume we'd have to give some kind

13    of notice that -- in advance as Your Honor explained before

14    we could produce them.

15         THE COURT:  But let me see if we can just separate

16    this out a little bit.  If you had to take a bunch of

17    depositions to find out what they really did, what their

18    procedures are, that's one thing.  What I'm focused on right

19    now is for Cox, Grande, RCM, and Altice, do you have written

20    documents that purport to be those entities' policies with

21    respect to repeat infringers?  Look, it may be -- and I'm

22    not ruling yet.  I'm going to give them a chance to argue

23    further, but you know, maybe they want the sun, the moon,

24    and the stars, but what I may order you to do is produce

25    copies of written policies that you have in your possession,

Page 22

1    custody, or control from Cox, Grande, RCM, and Altice.

2              So I mean, it's not -- you know, sometimes

3    discovery disputes aren't necessarily binary.  Either give

4    them everything they've asked for or none of what they've

5    asked for.  This is a two-way street.  There -- you know,

6    you in your letter raised lots of issues we'll get to talk

7    about a little bit --

8              MR. OPPENHEIM:  Yeah.

9              THE COURT:  -- when we're done.  So what -- look,

10   I've given this message before.  There's --

11             MR. OPPENHEIM:  We could --

12             THE COURT:  -- a lot to be -- no, stop.

13             MR. OPPENHEIM:  Sorry.

14             THE COURT:  There's a lot to be done in this case.

15   I don't want to be fighting about discovery issues four

16   months from now, okay?  And you know, if you tell me -- if

17   you suggested that you had to take a whole series of

18   depositions to find out what their procedures really were,

19   that's not responsive to the document requests that they've

20   served, okay, in my view.  Go ahead.

21             MR. OPPENHEIM:  I believe, Your Honor, that with

22   respect to Cox, we could identify a handful of documents

23   that would be responsive to what you've described.

24             THE COURT:  Okay.

25             MR. OPPENHEIM:  I -- in Altice -- so I am not

Page 23

1     counsel in Grande, Altice, or RCN, but my clients are

2     parties so I can find out --

3              THE COURT:  Okay.

4              MR. OPPENHEIM:  -- if there are such documents.

5     And if there are, subject to giving notice, we can produce

6     them.  So I wanted to answer your question directly.  So I

7     think I have, but I do have a question back for Your Honor

8     then if I can ask.

9              THE COURT:  Okay.  You ask me, and then I have one

10    for you.  Go ahead.

11             MR. OPPENHEIM:  Does that mean that we could

12    subpoena other ISPs?

13             THE COURT:  No.

14             MR. OPPENHEIM:  Because I think as you can tell

15    from the way this case has proceeded with Frontier, ISPs are

16    incredibly guarded about what their policies are.  And

17    frankly, what they say they are is rarely what they really

18    are.  And so if Your Honor is suggesting that it may be the

19    case that you -- that looking to other ISPs in an industry

20    standard, I think we might very much enjoy the opportunity

21    of issuing a bunch of subpoenas to gather that information.

22    Because it would be very revealing.

23             THE COURT:  I bet your clients would love you to

24    do that.

25             MR. OPPENHEIM:  I'm being upfront about it, Your

Page 24

1    Honor.

2            THE COURT:  Let me ask you this question.  In any

3    of your other cases, has there been discovery of the

4    policies of other ISPs?  In other words, you've had cases

5    against an ISP.  You've obviously sought to discover what

6    their policies were.  You've taken depositions about their

7    procedures.  If there are documents, you've gotten the

8    documents.  But in any of those cases, has one party or

9    another sought discovery, public -- you know when I say

10   public discovery, through service of subpoenas, et cetera,

11   or document requests, or policies of other ISPs?

12           I can't believe that this issue of I'll call it

13   benchmarking for -- without really exploring what it means,

14   but I'd be surprised if that hasn't, in any of the litigated

15   cases, that hasn't come up.

16           MR. OPPENHEIM:  So I don't -- so the music

17   industry has regularly taken the position that it's -- other

18   ISPs are not relevant.  I'm not aware, Your Honor, that it

19   has come up.  It may -- a two-part answer.  It may have come

20   up in the BrightHouse case and the magistrate may have ruled

21   on it, but I -- we certainly didn't produce anything.  If

22   so, we would've won on it.  I can't -- I'm not dead certain.

23           But I will say the one thing that has come up, and

24   I'm forthcoming, many years ago, well before the discovery

25   period, a number of ISPs tried to reach an agreement with

Page 25

1   the movie industry and the music industry.  Not including

2   Mr. Culpepper's clients, but the larger studios.  And there

3   was a lot of discovery fights over those documents, but none

4   of those speak to what the ISPs' standards were.  That was

5   just a -- that was an effort to reach a private agreement,

6   which failed ultimately.

7           MR. LETTEN:  Your Honor, if I could jump in here

8   on a few points, I just -- I think that --

9           THE COURT:  Wait.  Stop.

10          MR. LETTEN:  Okay.

11          THE COURT:  Stop.  I want to make sure Mr.

12  Oppenheim has had a chance to say whatever he wants to say.

13  I'll give you a chance to speak again.

14          MR. OPPENHEIM:  Yeah.  So again, I would come back

15  to I do think that the courts have clearly looked at what

16  other courts have said on the safe harbor, Your Honor.  But

17  I'm not aware that they've sought discovery as is

18  contemplated here.  So I think I've covered the landscape,

19  but I'm happy to answer other questions.

20          THE COURT:  All right.  Just give me a minute.

21  I've actually -- you've pointed to MP3 Tunes.  I've opened

22  the case.  I just want to read it on my other screen what

23  you're pointing to.  Just give me a moment.  What is it in

24  the MP3 decision that you think supports your position?

25          MR. OPPENHEIM:  Actually, it's what isn't in the

Page 26

1     MP3 decision, which is any reference to an industry

2     standard, other ISPs, or anything like that.  If you look at

3     the analysis of -- the Second Circuit was reversing Judge --

4     I believe it was Judge Pauley in his decision because Judge

5     Pauley had ruled that there was a safe harbor.  And the

6     Second Circuit reversed it and held that Judge Pauley's

7     interpretation of what constituted a repeat infringer was

8     inconsistent with both the legislative intent and the

9     language -- the common language of the statute.

10             So nothing in there when they're talking about

11     what constitutes a repeat infringer looks to any industry

12     standard.  They're looking at what's the common

13     understanding of what these things mean.

14             THE COURT:  All right.  Anything else you want to

15     say at this point, Mr. Oppenheim?

16             MR. OPPENHEIM:  Not at this point.  Thank you,

17     Your Honor.

18             THE COURT:  Okay.  Mr. Letten?

19             MR. LETTEN:  Thank you, Your Honor.  I think that

20     the production of policies and procedures from Cox, Grande,

21     RCN, and Altice is a -- certainly a very good start from our

22     perspective, but I wanted to explain why we don't think it's

23     the end, and which is that these four cases that have been

24     cited, these are ISP defendants that RCC decided to sue.

25     And I'd -- I think that if the only picture of what other

Page 27

1    ISPs were doing at the court is presented with is the

2    decision, what's available publicly, and the decision in Cox

3    and Grande and what might be produced regarding RCN and

4    Altice is going to present a slanted view about what other

5    ISPs are doing.  You had a company like Grande, which didn't

6    really have a policy for terminating repeat infringers, and

7    Cox that had a policy and wasn't following it.

8              THE COURT:  Let me interrupt you.

9              MR. LETTEN:  Yeah.

10             THE COURT:  It sounds like you already have the

11   policies of these other ISPs.  Do you?

12             MR. LETTEN:  No, Your Honor.  I'm reading from the

13   Cox and Grande decisions essentially.  That's what we have.

14             THE COURT:  Just to be clear, do you or your

15   client have in your possession, custody, or control any

16   repeat infringer policies of any other ISPs?  Yes or no.

17             MR. LETTEN:  Not to my knowledge.  And I'll say

18   that I mean I'm excluding the -- what's publicly available

19   now, the trial transcripts from Cox and Grande.  And at

20   least Comcast has an online document that's publicly

21   available that it can -- that it calls itself a DMCA policy.

22   But in terms of these sort of internal documents that we're

23   talking about, I'm not aware that my client has any of

24   those.

25             THE COURT:  Okay.

Page 28

1              MR. LETTEN:  And so I think --

2              THE COURT:  Yeah, look, I --

3              MR. LETTEN:  -- limiting it to its

4     (indiscernible).

5              THE COURT:  -- let met just say, I told Mr.

6     Oppenheim I'm -- the issue for me today is not admissibility

7     at trial.  And nothing I've said should suggest that whether

8     you get them from RCC or you get them elsewhere that any of

9     it is going to be admissible at trial.  But I don't view the

10    issue of whether it's discoverable -- it clearly is not.

11    It's not the issue of admissibility.  So...

12             MR. LETTEN:  And that's why I think we would ask

13    the Court --

14             THE COURT:  Let me just say -- make another

15    comment.  You know, for example, if you go out and serve

16    subpoenas on every other ISP you can think of asking for

17    their policies and they object, don't count on getting them,

18    okay?  We're not going off on a detour and frolic about

19    other ISPs.  Okay.

20             MR. LETTEN:  And I think that's part -- that's a

21    large part why we're here.  We're just trying to get the

22    documents that RCC has through a party discovery.  And what

23    I really think, I mean, RCC should search for, we proposed

24    very narrow search terms.  We haven't heard any argument

25    that they were turning tens of thousands or hundreds of

1   thousands of documents.  Besides the documents that they can

2   easily identify from those other litigations, to the extent

3   that the RCC had communications with other ISPs where they

4   sent a demand letter and the ISP said here's our policy, we

5   think we're doing a really good job, and RCC decided not to

6   sue them, I think we would like to see what those other

7   polices are.

8           THE COURT:  Well, I don't think I'm going to give

9   you those, okay?  Let me make -- I don't know whether they

10  exist, but you're not going to get them, okay?  We're going

11  to try this case and not every other case.  And the fact

12  that Mr. Oppenheim and his colleagues or other firms, you

13  know, made demands and settled cases, all well and good.

14  That's not coming in here.

15          MR. LETTEN:  Well, it's not necessarily the fact

16  of the settlement.  I think we're just -- we're interested

17  in what --

18          THE COURT:  You're not going to get them.

19          MR. LETTEN:  -- the other policies are.

20          THE COURT:  I'm just telling you right now.  I'm

21  not ordering the production of what you're asking for beyond

22  written policy and procedure documents.  So if Mr. Oppenheim

23  and his colleagues had to take a dozen depositions pulling

24  teeth to find out what the policies were, that's not what I

25  am considering ordering production of.  If there are

Page 30

1    documents that set forth policies or procedures of Cox,

2    Grande, RCM, or Altice, I'm considering ordering the

3    production of those.  If they're subject to protective

4    orders in other cases, the typical protective order requires

5    notice.  That's not going to bind me, frankly.  I mean, if

6    they want to come in and object to -- we have some

7    objections from Frontier subscribers, for example, about

8    producing PII, but it got ordered produced, okay?

9            MR. LETTEN:  So the -- just the last thing I'll

10   say, and it's not related to the documents necessarily, but

11   to the Court's questions about what cases are out there.

12   And what I would say is that when it comes to internet

13   service providers, there are not a lot of reported cases

14   analyzing when they are liable for secondary -- for

15   contributory copyright infringement or vicarious copyright

16   infringement, and even fewer cases analyzing whether they

17   qualify for the safe harbor.  I think the cases --

18           THE COURT:  What is --

19           MR. LETTEN:  -- that we have are --

20           THE COURT:  Let me ask you this.  You may -- you

21   no doubt have looked at it, and Mr. Oppenheim can address

22   this as well.  Were there jury instructions in Cox with

23   respect to, you know, reasonable policies, repeat

24   infringement policies, et cetera?  Were there jury

25   instructions that dealt with it?

Page 31

1              MR. LETTEN:  That I don't know offhand.  I can

2       tell you that I have read a decent amount of the trial

3       transcript in that case, but not -- I haven't gotten that

4       far.  I don't know if Mr. Oppenheim (indiscernible).

5              THE COURT:  Mr. Oppenheim, are there jury

6       instructions that deal with it?

7              MR. OPPENHEIM:  Not on that, Your Honor.  The

8       Court in Cox determined on summary judgment that there was

9       no safe harbor.  I believe the same was true in Grande.  I

10      don't -- I'm not aware of the safe harbor ever going to

11      either a judge or a jury outside of summary judgment.  And

12      I'll just note as Mr. Letten just described the policies for

13      Cox and Grande are in the trial's transcripts.  So we can

14      pull them out of there probably without having to deal with

15      the protective order issue.  And if he's got the transcript,

16      he frankly already has them.  But we can certainly identify

17      where in the transcripts those exist.

18             For Altice and RCN, Your Honor, those are ongoing

19      cases for which summary judgment I don't believe has been

20      briefed.  There -- I believe it would be incredibly

21      contentious.  I'm not saying necessarily on our side, but on

22      the other side any kind of -- well, and actually our side

23      too.  I can imagine counsel saying we don't want to have to

24      reveal our hand in this case before we have to reveal it in

25      the underlying case.

1            But if Your Honor orders it, we'll ask and we'll

2    see what we can find.  But as I understand it, Mr. Letten's

3    looking for the cases where record companies have said,

4    well, that policy's okay.  And apart from the fact that Your

5    Honor isn't going to order it, I'm not aware that there will

6    be any such agreements or communications as far as I know.

7    The burden -- the only burden with running the search terms

8    is it's going to turn up, I suspect, an enormous number of

9    privileged communications regarding litigations with ISPs

10   over their policies and procedures.  So it's just going to

11   be a privileged log morass.

12            THE COURT:  May I ask whether you tried to

13   negotiate the search terms so that you don't pull, you know,

14   the volume of what you believe to be -- because my general

15   view, Mr. Letten, is I -- I'm reluctant to impose any search

16   terms that are going to lead to hundreds or thousands of

17   privileged documents and expect that a privilege log is

18   going to be prepared with listing them all, okay?

19            And Mr. Oppenheim, have you tried to negotiate

20   search terms with Mr. Letten or his colleagues?  I mean, as

21   a starting point, it sounds like for Cox and Grande you know

22   that there are policy documents.  Maybe you even have them

23   sitting in a drawer in your office.  I don't know.  And it's

24   not going to involve the burden that you've complained

25   about.

Page 33

1           MR. OPPENHEIM:  Your Honor, I'm happy to identify

2    specific portions of testimony and documents from both trial

3    records on Cox and Grande.  We're happy to do that, Your

4    Honor.  And frankly, I'm happy to work with them to run some

5    limited searches so long as we can do kind of exclusions by

6    counsel to avoid logging all of that and work on it.  I

7    honestly do not believe we will find a single document

8    because I am intimately familiar with the record company's

9    enforcement efforts in this area, but I'm happy to look if

10   the Court directs us to do so.

11           THE COURT:  Okay.  What I am directing you to do,

12   and so this -- don't view this as the final ruling on it, is

13   to meet and confer with Mr. Letten or his colleagues and see

14   if you can reach an agreement.  You know, I don't know.  Mr.

15   Letten, have you reviewed the transcripts that Mr. Oppenheim

16   says is relevant?  Their policies are set forth in the

17   transcript.  I don't know whether they are or not.  I don't

18   know whether you've looked.

19           MR. LETTEN:  I can't say that I've --

20           THE COURT:  Okay.

21           MR. LETTEN:  -- reviewed them in their entirety.

22   And I think they would -- it would be the issue of we -- you

23   know, there could be testimony about the policies, but we're

24   just committing to the underlying (indiscernible).

25           THE COURT:  I understand.

1          MR. LETTEN:  Yeah.

2          THE COURT:  I understand.  So have a very prompt

3    meet-and-confer on this issue to the extent -- I want the

4    Cox, Grande, RCM, and Altice, to the extent they exist on

5    paper, policy if they're in your possession, custody, or

6    control, Mr. Oppenheim.  So it's you and your clients.  If

7    you have them, produce them.  If you believe that -- if

8    there's sufficient testimony about it in a transcript that

9    will -- you can talk to Mr. Letten if it's going to avoid

10   having to trigger the protective order provisions of notice,

11   and we're going to do this quickly, okay?  I'm not going to

12   let this hold things up.

13          Again, I'm not at all -- I have my -- I have real

14   reservations of whether any of this is relevant trial

15   evidence, but that's not today's issue.  Okay.  I want the

16   discovery to go forward on it.  Okay.  I do want you to go

17   back and discuss search terms and whether it's through the

18   exclusions.  I don't want to find out the situation is there

19   are thousands of documents between or among counsel that

20   would have to be logged on a privilege log.  This will be a

21   two-way street at some point, okay?  All right.

22          Mr. Letten, are there -- so with respect to -- I'm

23   saying, yes, produce procedures.  Policies, if they're set

24   forth in documents, not if it took depositions to drag out,

25   you know, how do they apply guidelines or policies, well, it

Page 35

1   was in writing and it changed over time, that's not what

2   we're talking about.  We're talking about if there are

3   documents that set forth policies or procedures for repeat

4   infringers in those four cases, they should be produced.  If

5   we have to have another court hearing about it very soon, we

6   will, but I think you ought to be able to work it out.  Were

7   there other issues that you had in your letter?  This is the

8   April 11th letter.

9            MR. LETTEN:  No, Your Honor.

10            THE COURT:  Okay.

11            MR. LETTEN:  I think that covers it, and we

12   appreciate the Court's time on this and --

13            THE COURT:  All right.

14            MR. LETTEN:  -- we'll certainly meet and confer.

15            THE COURT:  So now we will switch to the subject

16   that Day Pitney didn't want to talk about today, okay?  Go

17   ahead, Mr. Oppenheim.

18            MR. OPPENHEIM:  Just --

19            THE COURT:  Do you have a question about the first

20   subject first?

21            MR. OPPENHEIM:  Yes, just one final point.  On RCN

22   and Altice, I do suspect we'll have to give notice under the

23   protective order.  I'm not understanding the order to say

24   that we can't do that as that protective order might

25   require.

Page 36

```
 1              THE COURT:  No.  Talk to Mr. Letten.  If it's --

 2    you know, show him the protective order.  The protective

 3    order is not protected.

 4              MR. OPPENHEIM:  Right.

 5              THE COURT:  Show him the protective order, what

 6    are the procedures in there.  If you have to give notice, do

 7    it promptly.

 8              MR. OPPENHEIM:  Yep.

 9              THE COURT:  And let's move it forward, okay?

10              MR. OPPENHEIM:  Absolutely, Your Honor.

11              THE COURT:  Okay.  So go ahead with your issues,

12    Mr. Oppenheim.

13              MR. OPPENHEIM:  With your permission, Your Honor,

14    I'll invite our association Carly Rothman to raise them in

15    the first instance.

16              THE COURT:  Sure.  Go ahead, Ms. Rothman.

17              MR. LETTEN:  And just, Your Honor, also with your

18    permission, I think another one of my colleagues is going to

19    be addressing these points.

20              THE COURT:  Absolutely.

21              MR. LETTEN:  Thank you.

22              THE COURT:  That's fine.  Go ahead, Ms. Rothman.

23              MS. ROTHMAN:  Thank you, Your Honor.  And thank

24    you for letting us be heard on these issues today.  As Your

25    Honor's aware, the parties have had a long history to get
```

Page 37

1   through many discovery disputes and document productions.

2   And Your Honor's ordered -- has issued orders relating to

3   that, and we understand that Your Honor wants to be kept

4   apprised of the pace and status of discovery, which is why

5   we're raising these issues today.  We still struggle with

6   Frontier's discovery even after our court hearings and Your

7   Honor's clear directives.

8           Just for a little bit of background, on February

9   29th during the court conference, the record companies

10  raised 23 categories of document requests for which no

11  documents had yet been produced.  These were categories for

12  which documents could be found without the use of search

13  terms.  Your Honor ordered that Frontier produce documents

14  in response to four of those categories within seven days,

15  and Frontier represented to the court that they could

16  produce documents relating to the other 19 requests within

17  30 days.

18          But it seems that we still have large gaps in

19  those productions.  Specifically we're missing, you know,

20  entire categories of documents for some of those requests.

21  Frontier has told us that they have produced all non-

22  privileged documents that they could locate through a non-

23  search-term review.  We find that hard to believe, and hard

24  to believe that some of these documents don't exist or

25  couldn't be located.

Page 38

1          And what prompted us to send this letter, Your

2    Honor, is that we had sent Frontier a long email detailing

3    what discovery we thought we were missing asking about what

4    investigation that they have taken.  They responded

5    basically saying that, you know, we're covered.  You

6    shouldn't be measuring our production by the volume but by

7    the undertaking of our investigation.  But that's

8    inconsistent with really what's been produced, so I just

9    want to give a couple of examples.

10          And the first one is the org chart that we've

11    asked for.  Our case won't necessarily turn on the

12    production of an org chart, but it's important for us to see

13    that org chart to understand who the proper custodians are

14    to prepare for depositions, to understand, you know, how the

15    repeat infringer program at Frontier was working.  We

16    appreciate Frontier confirming in its, you know, letter just

17    this morning that they have no org charts.  And you know, I

18    guess we'll have to take them at their word for that, but

19    it's hard to believe a corporation the size of Frontier has

20    no org chart in some form that would be responsive.

21          Another example I want to raise is with respect to

22    the privilege issue.  Frontier has said that it has withheld

23    just one document on the basis of privilege.  They produced

24    a privilege log on March 29th, but that only showed

25    documents that were produced but partially redacted.  So

1   we're not sure exactly what document is being withheld.  But

2   putting that aside, they acknowledged today in an email that

3   the individual responsible for overseeing the repeat

4   infringer program used notebooks regularly.  So they sent us

5   no responsive non-privileged documents left to produce, yet

6   there's, you know, apparently these notebooks that exist,

7   and they apparently haven't finished their review of that

8   notebook, which is -- we're five months into the case and

9   just, you know, learning about these notebooks.  And

10  Frontier apparently is still undertaking a review.

11          So it's unclear why they haven't produced that or

12  at least, you know, put it on a privilege log.  And of

13  course, you know, we don't know the totality of what hasn't

14  been produced, but just these two examples alone, you know,

15  indicate that there are certain documents that haven't been

16  produced.  And it seems like our letters to the court have

17  prompted -- it's kind of the only thing that's prompting

18  Frontier to make these productions.

19          For example, we were asking for documents relating

20  to terminations for non-payment.  We've been seeking those

21  documents for several months, and just this morning after we

22  sent our letter last night they produced a document

23  responsive to that request.  So we just -- we're trying to

24  move discovery along, but we raise these issues for Your

25  Honor just to keep Your Honor apprised of the pace of how

Page 40

```
 1    discovery has been going.  And I can give other examples as
 2    well for categories that have not been produced.
 3              THE COURT:  All right.  Let me hear from Frontier.
 4              MR. LETTEN:  Yes.  Mr. Tropp will address this.
 5              THE COURT:  Okay.
 6              MR. TROPP:  Good afternoon, Your Honor.  Jonathan
 7    Tropp.  I'm sorry I'm a little bit in the dark here, but
 8    hopefully you can see me.  And hopefully it's not
 9    metaphorical.  So let me take up the issues that Ms. Rothman
10    discussed seriatim.  First, with respect to the org charts,
11    it's not the case that Frontier doesn't have any
12    organizational charts whatsoever.  The issue is that the RC
13    are seeking some very specific kinds of org charts related
14    to particular kinds of functions, and Frontier doesn't
15    maintain its organizational charts that way.  We do not have
16    any documents that are responsive to their requests, so
17    that's what we've told them.
18              With respect to this concept of notebooks, Mr.
19    Garcia, who is in-house counsel at Frontier and has a
20    variety of functions, many of them legal and privileged,
21    including overseeing this litigation throughout most of its
22    course, has maintained a series of legal pads with his
23    notes.  One of the hats that he wears is on the DMCA
24    committee, and RCC are seeking what they think exists are
25    "notebooks" related to his performance of that function.
```

Page 41

1          We are not aware of any notebooks related to his

2     performance of that function.  We have a series of legal

3     pads with his handwritten notes related to a variety of

4     functions that he performs and not particularly related to

5     his DMCA role.  We are in the process of reviewing those

6     note -- those legal pads.  Nonetheless, in order to be

7     doubly and triply sure that there is not responsive

8     information that is not privileged, but that process is

9     ongoing.  At the moment, there is nothing to log.

10          By the way, if we did log anything on those legal

11     pads, presumably it would say Paul Garcia's legal pads.  It

12     wouldn't be a very informative log entry.

13          With respect to the other issues that are raised,

14     this document with respect to terminations, Frontier has

15     been producing documents to the best of its ability as fast

16     as it can.  We obtained information for RCC that Frontier

17     does not maintain in the regular course of its business in

18     the form that RCC demanded it.  It took some time to extract

19     that information from Frontier's database.  We explained

20     this to RCC.

21          THE COURT:  May I ask you this?  (Indiscernible).

22     In what format, electronic or paper, does Frontier have

23     records about terminations?  I gather you're extracting

24     data, but what -- explain to me what is the format in which

25     that information is contained.

1           MR. TROPP:  It's a database, Your Honor, that

2     frankly I don't fully understand, but the point is moot

3     because we produced the information that they wanted this

4     morning.  They have it now.  We told them --

5           THE COURT:  How many terminations were there?

6           MR. TROPP:  I don't know the answer to that, Your

7     Honor.  We provided an entire spreadsheet of terminations by

8     month over a course of years.  They have all of that data.

9     We told them last week that it was coming.  The assertion

10    that they only get responsiveness from us when they write to

11    you is incorrect.  We were in the process of providing that

12    and they got it this morning.

13          And so lastly, with respect to the privilege log,

14    there is only one document.  There are multiple copies of

15    it, but only document that we have withheld at this point on

16    the basis of privilege.  I should say redacted.  We produced

17    the document in redacted form.  And as we continue our

18    review of documents and identify additional responsive

19    privileged documents, we will log them to the extent that

20    logging is required.

21          THE COURT:  Let me -- Ms. Rothman, let me ask.

22    What information is it that you want from organizational

23    charts?  So Mr. Tropp says that they don't have

24    organizational charts broken down by function.  What is it

25    -- what's the information that you want?

Page 43

1              MS. ROTHMAN:  We want to understand who was on

2       their DMCA team and what roles they held so that we can

3       understand, you know, how the -- they were functioning and

4       undertaking to review infringement notices and conduct --

5              THE COURT:  So in your discussions with Frontier,

6       have they acknowledged that there was a DMCA team?

7              MS. ROTHMAN:  Yes.

8              THE COURT:  Okay.  Why don't you --

9              MS. ROTHMAN:  And this is --

10             THE COURT:  Why don't you just ask an

11      interrogatory?  Ask that question.  Identify each person who

12      was a member of the DMCA team and what periods did they

13      serve.  You know, one of the things -- it was like --

14      several times -- not faulting you at all, let me make clear.

15      Several prior hearings I said if you're not getting the

16      information, take a 30(b)(6) deposition.  And you know, what

17      Mr. Oppenheim has come and said is yeah, we did, and we

18      found out all this stuff that they didn't -- hadn't given us

19      before.

20             So if -- I'm not going to make them create -- if

21      what you're serving is a document order, I'm not going to

22      make them create documents that don't exist unless --

23      frankly, it's often the most expedient way that they can

24      just solve this issue.  But you know, if what you're looking

25      for is if they've acknowledged there was a DMCA team, serve

Page 44

1    an interrogatory with subparts.  You know, identify each

2    person.  What was the period of time they served?  What was

3    their role in the DMCA team?  Okay?  And better yet, talk to

4    them and see if you can work out how -- okay, you say you

5    don't have an org chart, but we need this information.  Work

6    out how and try and get an agreement how they'll make this

7    information available and when.  I just...

8              MR. TROPP:  Your Honor, if I may, first of all --

9              THE COURT:  You have to identify your -- each time

10   you speak, you need to identify your name.  Okay?

11             MR. TROPP:  Thank you, Your Honor.  I apologize.

12   Jonathan Tropp.

13             THE COURT:  Okay.  Go ahead, Mr. Tropp.

14             MR. TROPP:  We're happy to respond to an

15   interrogatory if it's served.  We would be happy to respond

16   to an email, which we've tried to do every time we've

17   received one.  And we are going to be producing a series of

18   documents through the ESI process that will identify the

19   members of the DMCA team and their role and provide their

20   communications in performing that function.  They're going

21   to get all of this stuff.  It's coming.

22             THE COURT:  When are they going to get it?

23             MR. TROPP:  We are producing on a rolling basis,

24   and we've got a large number of documents to get through.

25   We hope to make a further production in the near term next

Page 45

```
 1   few days, and then more the following week.

 2           THE COURT:  You know, because one of the things --

 3   you know, they're going to decide which members of the DMCA

 4   team they want to depose and when they want to do it.  And I

 5   assume they'll look at the information you give them, and

 6   they'll conclude, well, these three people are we think the

 7   most important, and so those -- we want to take those.  And

 8   what I'm -- I've said this before.  I want this discovery

 9   process to move forward both ways, okay?  So it's a two-way

10   street here.

11           And you're all going to run out of time.  And if

12   you think you're going to run out the clock on the other

13   side, guess again.  And if I find out that you've answered

14   -- you know, responded to a document request that no

15   documents exist, and they take a 30(b)(6) deposition, and it

16   turns out lots of documents exist, you know, things that are

17   available to the Court are things like preclusion orders,

18   and adverse findings, and none of you want to get there

19   either way, okay?

20           And so look, there's a lot of discovery you all

21   need to do within the timeframe that the Court established.

22   And figure out the most expeditious way to do it.  So Ms.

23   Rothman, if they tell you we don't have org charts, well,

24   tell us how you're going to give us the information, okay?

25   You know, frankly, I always found that the most useful thing
```

Page 46

1    is if counsel were professional was informal ways of getting

2    the discovery you want and not have to go through all these

3    hoops and have repeated conferences about it.  Just get it

4    done.  You know, I'm not -- I'm really not being critical on

5    this point.  I just -- you want the information.  What do

6    you want to do with the information?  You want to identify

7    who you want to depose.

8           Yes, you wanted to understand what the policies

9    are and all that if they had any policies.  Were they

10   written?  Did they abide by them?  What's the evidence that

11   shows, yeah, they had this written policy and in three cases

12   out of 100 they enforced it?  And the other 97 they didn't.

13   Okay.  That's what you all are going to want to get to.  So

14   are there other issues you want to raise, Ms. Rothman?

15          MS. ROTHMAN:  Nothing further.  Thank you, Your

16   Honor.

17          THE COURT:  Okay.

18          MR. TWARDY:  Your Honor, Stanley Twardy for

19   Frontier.  Nothing further from Frontier, Your Honor.

20          THE COURT:  Okay.  Mr. Oppenheim?

21          MR. OPPENHEIM:  Nothing further, though I did have

22   a procedure process or --

23          THE COURT:  Sure.

24          MR. OPPENHEIM:  -- administrative question for

25   Your Honor.

Page 47

1          THE COURT:  Go ahead.

2          MR. OPPENHEIM:  I believe you noticed a hearing

3    for the day after fact discovery is supposed to close.  It

4    did not say Zoom on it.  Does that mean you would like us in

5    person, Your Honor?

6          THE COURT:  Yeah, if I didn't say Zoom, I want you

7    here.

8          MR. OPPENHEIM:  Very well, Your Honor.

9          THE COURT:  Zoom works well for things like this,

10   but at some point -- my preference in big cases, this is a

11   big case, is to have in-court hearings.  Mr. Culpepper, is

12   there anything you want to say for today?

13          MS. CULPEPPER:  I don't have anything to add, Your

14   Honor.  I guess we should point out that the same issue

15   regarding Frontier's request for production 33 and 36 has

16   been holding up on our end as well.  Your Honor asked Mr.

17   Oppenheimer about what cases he was involved in.  I'm

18   involved in two cases, one in Colorado against ISP

19   (Indiscernible), and the second in New Jersey against ISP

20   RCN.  Both of those documents regarding their policies are

21   protected to -- are subject to a protective order with

22   attorneys'-eyes-only protections.  I just wanted to raise

23   that issue.

24          Oh, I guess another issue along that line is in --

25   actually in the (Indiscernible) and West case, the defendant

Page 48

1    wanted to depose plaintiffs on this topic for their

2    knowledge of other ISPs' policies, and that request was

3    quashed.

4              THE COURT:  Let me just say, you triggered

5    something in my court.  I'm certainly open -- and you want

6    to discuss in the first instance is attorneys'-eyes-only

7    production.  And to the extent you want to be able to show

8    it to a consultant or something like that, we'll -- you can

9    deal with that specifically in it.  But yes, I do think for

10   competitive reasons otherwise these documents are sensitive

11   documents.  And so I'm certainly open to attorneys' eyes

12   only.  I don't know whether -- I guess it -- we have an

13   existing stipulation that it does have provisions for highly

14   confidential documents.

15             MS. CULPEPPER:  Yes, it does, Your Honor.

16             THE COURT:  You have the vehicle to do it here.  I

17   don't think you're misusing a highly confidential document

18   if you are designating documents and dealing with protective

19   orders in other cases.  You indicate that they'll be

20   designated as highly confidential and attorneys' eyes only.

21   So anything else, Mr. Culpepper?

22             MS. CULPEPPER:  Nothing further from movie company

23   clients, Your Honor.

24             THE COURT:  All right.  Anybody else for today?

25   All right.  Let's keep this moving forward.  Thank you.

Page 49

1          MR. LETTEN:  Thank you, Your Honor.

2          THE COURT:  We're adjourned.

3          MR. OPPENHEIM:  Thank you.

4          MR. TWARDY:  Thank you, Your Honor.

5          MR. TROPP:  Thank you.

6          (Whereupon these proceedings were concluded at

7    4:07 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 50**

```
 1                C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 18, 2024
```

[06117 - answer]                                                                    Page 1

| **0** | **2327** 2:2 | **able** 15:6 35:6 | **ago** 24:24 |
|---|---|---|---|

**0**

**06117** 4:4
**06510** 4:13
**06897** 4:20

**1**

**1** 18:18
**100** 46:12
**10004** 1:13
**10017** 3:6
**101** 3:21
**10178** 3:22
**11501** 50:23
**11th** 6:6 7:2
   35:8
**12151** 50:7
**14** 17:13
**15th** 4:12 7:4
   16:18
**16** 1:15
**18** 50:25
**19** 37:16
**195** 4:12
**19th** 3:5

**2**

**20-22476** 1:3
   6:5
**20001** 5:11
**20016** 3:14
**2024** 1:15
   50:25
**225** 4:3
**23** 37:10
**2323** 2:2
**2324** 2:2
**2326** 2:2

**2327** 2:2
**29th** 37:9
   38:24

**3**

**30** 37:17 43:16
   45:15
**300** 50:22
**33** 47:15
**330** 50:21
**36** 47:15
**3:00** 1:16

**4**

**4530** 3:13
**461** 3:5
**4:07** 49:7

**5**

**512** 11:14
**512's** 11:10
**5th** 3:5,13

**6**

**6** 43:16 45:15

**7**

**75-170** 5:3
**750** 5:10,10

**9**

**96740** 5:4
**97** 46:12
**9th** 5:10

**a**

**abide** 17:10
   46:10
**ability** 10:4
   41:15

**able** 15:6 35:6
   48:7
**absolutely**
   36:10,20
**absolve** 9:4
**accurate** 50:4
**acknowledged**
   39:2 43:6,25
**actually** 8:1,6
   8:8,11 9:16
   17:1 25:21,25
   31:22 47:25
**add** 47:13
**additional**
   42:18
**address** 6:19
   8:13 30:21
   40:4
**addressing**
   36:19
**adjourned**
   49:2
**administrative**
   46:24
**admissibility**
   28:6,11
**admissible**
   8:24 28:9
**admissions**
   8:16
**advance** 21:13
**adverse** 45:18
**affirmative**
   17:4,4,6,7
**afternoon** 6:2
   6:4,16 40:6

**ago** 24:24
**agree** 9:24
   19:25
**agreed** 9:21,24
**agreement**
   14:21 24:25
   25:5 33:14
   44:6
**agreements**
   13:7 19:10
   32:6
**ahead** 6:15
   11:3 18:7
   22:20 23:10
   35:17 36:11,16
   36:22 44:13
   47:1
**akerman** 5:8
**alexander** 3:17
**alquist** 4:8
**altice** 14:9
   15:14 17:21
   21:19 22:1,25
   23:1 26:21
   27:4 30:2
   31:18 34:4
   35:22
**amount** 9:23
   31:2
**analysis** 26:3
**analyzed** 19:4
**analyzing**
   30:14,16
**answer** 14:5,6
   23:6 24:19
   25:19 42:6

**answered**
45:13
**anybody** 19:5
48:24
**apart** 32:4
**apologies** 10:9
**apologize**
44:11
**apparently**
39:6,7,10
**appeal** 14:8,9
**applicability**
7:14
**applicable**
16:19,20 17:22
**apply** 34:25
**appreciate**
35:12 38:16
**apprised** 37:4
39:25
**appropriate**
7:21 11:21
19:3
**april** 1:15 6:6
7:2,4 16:18
35:8 50:25
**area** 33:9
**argue** 21:22
**argued** 7:8
12:11
**argument** 6:14
7:10 8:6,25
9:13,15 10:10
17:24 18:8
28:24
**arguments**
6:18 7:11

10:20 18:4
**aside** 17:6 39:2
**asked** 12:6,6
14:1 15:1,2,10
18:12 19:8,9
19:12 22:4,5
38:11 47:16
**asking** 15:20
28:16 29:21
38:3 39:19
**assertion** 42:9
**association**
36:14
**assume** 21:12
45:5
**asylum** 4:3
**attention** 18:5
20:23
**attorneys** 3:4
3:12,20 4:2,11
4:18 5:2,9
16:12 47:22
48:6,11,20
**available** 15:25
27:2,18,21
44:7 45:17
**avenue** 3:5,13
3:21
**avoid** 9:19 33:6
34:9
**aware** 17:1
24:18 25:17
27:23 31:10
32:5 36:25
41:1

**b**

**b** 1:21 43:16
45:15
**b204** 5:3
**back** 16:22
23:7 25:14
34:17
**background**
37:8
**badhouse** 5:2
**bankruptcy**
1:1,11,23
**basically** 38:5
**basis** 38:23
42:16 44:23
**bat** 15:24
**bear** 8:18
**behalf** 6:13,17
**believe** 10:23
12:6 13:2
14:15,19,22
18:19 22:21
24:12 26:4
31:9,19,20
32:14 33:7
34:7 37:23,24
38:19 47:2
**benchmark**
18:17
**benchmarking**
11:8,11 16:18
16:19 24:13
**bergelson** 3:9
**best** 10:10
41:15
**bet** 23:23

**better** 44:3
**beyond** 29:21
**big** 47:10,11
**binary** 22:3
**bind** 30:5
**bit** 21:16 22:7
37:8 40:7
**blown** 12:1
**bockius** 3:19
**bowling** 1:12
**box** 14:4
**briefed** 31:20
**brighthouse**
14:16 20:13
21:3 24:20
**broken** 42:24
**brought** 10:2
**bunch** 21:16
23:21
**burden** 32:7,7
32:24
**burdensome**
7:10
**business** 41:17

**c**

**c** 3:1 6:1 50:1,1
**call** 24:12
**called** 6:23
**calls** 27:21
**care** 14:3
**carly** 3:8 36:14
**case** 1:3 8:6,7
8:11 9:21 10:1
11:9,22 12:7
14:10,14 15:4
16:15 17:22
18:3 19:5

[case - constituted]

22:14 23:15,19
24:20 25:22
29:11,11 31:3
31:24,25 38:11
39:8 40:11
47:11,25
**cases** 7:25 8:3
13:20,21 14:6
14:12 16:5,9
17:1 18:1,16
21:9 24:3,4,8
24:15 26:23
29:13 30:4,11
30:13,16,17
31:19 32:3
35:4 46:11
47:10,17,18
48:19
**categories**
37:10,11,14,20
40:2
**certain** 14:21
21:9 24:22
39:15
**certainly** 9:3
24:21 26:21
31:16 35:14
48:5,11
**certainty** 15:15
**certified** 50:3
**cetera** 24:10
30:24
**chance** 21:22
25:12,13
**changed** 15:7
35:1

**chart** 38:10,12
38:13,20 44:5
**charter** 14:16
20:13 21:2
**charts** 38:17
40:10,12,13,15
42:23,24 45:23
**church** 4:12
**circuit** 11:12
19:4 26:3,6
**circumstances**
7:21 19:4
**cited** 26:24
**cites** 7:25
**claim** 17:5,7
**claimants** 3:4
3:12
**clarify** 7:3
**clean** 15:17
**clear** 27:14
37:7 43:14
**clearly** 13:25
25:15 28:10
**client** 12:20
27:15,23
**clients** 13:6
23:1,23 25:2
34:6 48:23
**clock** 45:12
**close** 47:3
**cohen** 4:7
**colleagues**
14:11 29:12,23
32:20 33:13
36:18
**colorado** 47:18

**comcast** 27:20
**come** 16:22
24:15,19,19,23
25:14 30:6
43:17
**comes** 30:12
**coming** 29:14
42:9 44:21
**comment**
28:15
**committee**
40:24
**committing**
33:24
**common** 26:9
26:12
**communicated**
19:2
**communicati...**
1:7 5:9 8:15
10:18 11:5
19:9,16,18,21
19:24 29:3
32:6,9 44:20
**companies**
3:20 11:5
19:11 32:3
37:9
**company** 3:4
3:12 27:5
48:22
**company's**
19:24 33:8
**compare** 11:18
11:19
**compared** 8:9

**comcast** 27:20
**compel** 10:5
**competitive**
48:10
**complained**
32:24
**complaint** 13:8
**complying**
9:20
**concept** 40:18
**conclude** 45:6
**concluded** 49:6
**conclusion**
11:25
**conduct** 43:4
**confer** 33:13
34:3 35:14
**conference** 2:1
6:6 37:9
**conferences**
46:3
**confidential**
14:21 16:7,7
48:14,17,20
**confidentiality**
16:15
**confirming**
38:16
**consider** 17:22
**considerations**
7:20
**considered**
11:10
**considering**
9:3 29:25 30:2
**constitute** 7:22
**constituted**
26:7

**constitutes**
26:11
**consultant**
48:8
**contained**
41:25
**contemplated**
25:18
**contentious**
31:21
**context** 13:5
**continue** 42:17
**contributory**
30:15
**control** 9:5
14:3 22:1
27:15 34:6
**copies** 21:25
42:14
**copyright**
30:15,15
**corp** 5:9
**corporation**
1:7 38:19
**correct** 15:13
**counsel** 23:1
31:23 33:6
34:19 40:19
46:1
**count** 28:17
**country** 50:21
**couple** 38:9
**course** 11:23
12:14 16:3
39:13 40:22
41:17 42:8

**court** 1:1,11
6:2,5,10,15,22
7:1,6 8:8,18,21
10:3,5,7,11
11:2 12:5 13:2
13:4,10,12,17
13:24 14:9,14
14:17,23 15:10
15:23 16:4
17:21 18:12,22
18:24 19:20,25
20:2,4,8,12,17
20:24 21:1,5,7
21:15 22:9,12
22:14,24 23:3
23:9,13,23
24:2 25:9,11
25:20 26:14,18
27:1,8,10,14
27:25 28:2,5
28:13,14 29:8
29:18,20 30:18
30:20 31:5,8
32:12 33:10,11
33:20,25 34:2
35:5,10,13,15
35:19 36:1,5,9
36:11,16,20,22
37:6,9,15
39:16 40:3,5
41:21 42:5,21
43:5,8,10 44:9
44:13,22 45:2
45:17,21 46:17
46:20,23 47:1
47:6,9,11 48:4
48:5,16,24

49:2
**court's** 30:11
35:12
**courts** 12:13
25:15,16
**covered** 25:18
38:5
**covers** 35:11
**cox** 11:16,18
11:19,24 13:21
14:8 15:4,14
17:20 20:13
21:19 22:1,22
26:20 27:2,7
27:13,19 30:1
30:22 31:8,13
32:21 33:3
34:4
**cox's** 8:8
**create** 43:20,22
**credible** 17:24
**critical** 46:4
**critically** 19:7
**ct** 4:4,13,20
**culpepper** 5:1
5:6 47:11,13
48:15,21,22
**culpepper's**
25:2
**currently**
14:12
**custodians**
38:13
**custody** 9:5
14:2 22:1
27:15 34:5

**customer** 7:22
7:22

**d**

**d** 6:1
**dark** 40:7
**data** 41:24
42:8
**database** 41:19
42:1
**date** 10:1 50:25
**day** 4:1,10,17
6:17 10:2
17:24 18:11
19:7 35:16
47:3
**days** 37:14,17
45:1
**dc** 3:14 5:11
**dead** 24:22
**deal** 7:1 15:23
31:6,14 48:9
**dealing** 19:2
48:18
**dealt** 30:25
**debtor** 1:9
**debtors** 4:2,11
4:18
**decent** 31:2
**decide** 45:3
**decided** 26:24
29:5
**decision** 11:18
11:25 25:24
26:1,4 27:2,2
**decisions** 11:16
12:10 16:13,23
27:13

**defendant** 47:25

**defendants** 26:24

**defense** 7:15
7:16 8:3,12
10:5 17:4

**demand** 29:4

**demanded** 41:18

**demands** 29:13

**demonstrate** 10:17 11:8

**depose** 45:4
46:7 48:1

**deposition** 43:16 45:15

**depositions** 15:5,11 21:17
22:18 24:6
29:23 34:24
38:14

**describe** 14:7

**described** 14:7
19:6,8,12
22:23 31:12

**designated** 48:20

**designating** 48:18

**destroyed** 20:20

**destruction** 20:14

**detailing** 38:2

**determination** 17:8,19

**determinative** 12:17

**determine** 15:6
16:24

**determined** 12:8,13 31:8

**determining** 8:9

**detour** 28:18

**develop** 15:11

**dictionary** 11:14

**didn't** 47:6

**difference** 18:6

**different** 15:8
18:11

**differently** 17:3

**difficult** 15:9

**directing** 33:11

**directives** 37:7

**directly** 23:6

**directs** 33:10

**disagree** 7:13
18:9

**discover** 24:5

**discoverable** 8:24 12:19
18:6 28:10

**discovered** 15:5

**discovery** 2:1
6:5 8:21 9:2,3
9:10 10:2
11:20,21 12:1
22:3,15 24:3,9
24:10,24 25:3

**documents** 7:5
8:12,14 9:1,5,6

25:17 28:22
34:16 37:1,4,6
38:3 39:24
40:1 45:8,20
46:2 47:3

**discuss** 34:17
48:6

**discussed** 40:10

**discussion** 21:2

**discussions** 43:5

**dispute** 7:14,15
10:2

**disputes** 22:3
37:1

**distinction** 13:15

**district** 1:2 8:7
14:9

**dives** 11:13

**dmc** 17:3

**dmca** 27:21
40:23 41:5
43:2,6,12,25
44:3,19 45:3

**doc** 2:2

**document** 13:7
22:19 24:11
27:20 33:7
37:1,10 38:23
39:1,22 41:14
42:14,15,17
43:21 45:14
48:17

9:7,9,14,17,18
9:25 10:4,15
10:16,23 11:8
11:19 12:21,23
13:9 15:6,24
15:25 16:14
19:13 20:15,15
21:9,20 22:22
23:4 24:7,8
25:3 27:22
28:22 29:1,1
29:22 30:1,10
32:17,22 33:2
34:19,24 35:3
37:11,12,13,16
37:20,22,24
38:25 39:5,15
39:19,21 40:16
41:15 42:18,19
43:22 44:18,24
45:15,16 47:20
48:10,11,14,18

**doesn't** 16:1

**doing** 15:19,21
19:14 27:1,5
29:5

**doubly** 41:7

**doubt** 14:19,20
30:21

**dozen** 29:23

**dozens** 15:5

**drag** 34:24

**drawer** 32:23

| e |
|---|

**e** 1:21,21 3:1,1
6:1,1 50:1

easily 29:2
easy 14:5
ecro 1:25
effort 12:1
  13:1 25:5
efforts 13:5
  33:9
either 22:3
  31:11 45:19
electronic
  41:22
elements 17:4
  17:6,7
elizabeth 4:8
elucidate 10:21
email 38:2 39:2
  44:16
ended 20:22
enforce 17:15
enforced 12:15
  18:2 46:12
enforcement
  13:1 33:9
engaged 13:1
enjoy 23:20
enormous 32:8
entered 13:6
entire 37:20
  42:7
entirety 33:21
entities 21:20
entitled 17:24
entry 41:12
esi 44:18
essentially
  27:13

established
  45:21
establishing
  8:11
et 24:10 30:24
everybody 6:2
evidence 8:23
  17:17 34:15
  46:10
evidentiary
  16:19
exactly 8:23
  39:1
example 8:11
  15:4 17:25
  28:15 30:7
  38:21 39:19
examples 38:9
  39:14 40:1
exception 8:5
exclude 21:2
excluding
  27:18
exclusions 33:5
  34:18
excuse 20:13
exist 10:23
  29:10 31:17
  34:4 37:24
  39:6 43:22
  45:15,16
existing 48:13
exists 40:24
expect 32:17
expedient
  43:23

expeditious
  45:22
explain 26:22
  41:24
explained
  21:13 41:19
explicitly 8:8
  11:13
exploring
  24:13
extent 13:1,22
  29:2 34:3,4
  42:19 48:7
extract 41:18
extracting
  41:23
eyes 16:12
  47:22 48:6,11
  48:20

**f**

f 1:21,25 50:1
fact 11:12
  15:24 16:14
  29:11,15 32:4
  47:3
failed 25:6
familiar 33:8
famous 10:11
far 11:23 31:4
  32:6
fast 41:15
faulting 43:14
favor 8:7
february 37:8
ferguson 1:25
fewer 30:16

fighting 10:24
  22:15
fights 25:3
figure 45:22
file 11:17
final 33:12
  35:21
find 21:17
  22:18 23:2
  29:24 32:2
  33:7 34:18
  37:23 45:13
findings 45:18
fine 36:22
finished 39:7
firms 29:12
first 7:2 10:14
  19:16 35:19,20
  36:15 38:10
  40:10 44:8
  48:6
five 12:12 18:1
  39:8
floor 3:5,13
  4:12
florida 11:17
focus 19:15
focused 7:11
  21:18
follow 17:16
followed 17:9
following 27:7
  45:1
foregoing 50:3
form 38:20
  41:18 42:17

**format**  41:22
41:24
**forth**  17:21
30:1 33:16
34:24 35:3
**forthcoming**
24:24
**forward**  34:16
36:9 45:9
48:25
**found**  11:24
37:12 43:18
45:25
**four**  10:13,20
14:14 21:5
22:15 26:23
35:4 37:14
**fourth**  10:21
**frankly**  9:8
23:17 30:5
31:16 33:4
42:2 43:23
45:25
**frolic**  28:18
**frontier**  1:7 5:9
6:13,17 7:16
9:21 11:4 17:8
23:15 30:7
37:13,15,21
38:2,15,16,19
38:22 39:10,18
40:3,11,14,19
41:14,16,22
43:5 46:19,19
**frontier's**  37:6
41:19 47:15

**full**  12:1
**fully**  42:2
**function**  40:25
41:2 42:24
44:20
**functioning**
43:3
**functions**
40:14,20 41:4
**further**  21:23
44:25 46:15,19
46:21 48:22

**g**

**g**  6:1
**gaps**  37:18
**garcia**  40:19
**garcia's**  41:11
**gather**  23:21
41:23
**general**  32:14
**getting**  28:17
43:15 46:1
**give**  11:2 16:8
21:12,22 22:3
25:13,20,23
29:8 35:22
36:6 38:9 40:1
45:5,24
**given**  8:22
11:23 18:7
22:10 43:18
**giving**  23:5
**glenn**  1:22
**go**  6:15 8:25
11:3 18:7
20:16 22:20
23:10 28:15

34:16,16 35:16
36:11,16,22
44:13 46:2
47:1
**going**  6:7,17
7:13,15 9:9,14
10:13 17:5,7
19:17 21:22
27:4 28:9,18
29:8,10,10,18
30:5 31:10
32:5,8,10,16
32:18,24 34:9
34:11,11 36:18
40:1 43:20,21
44:17,20,22
45:3,11,12,24
46:13
**good**  6:2,4,16
26:21 29:5,13
40:6
**gotten**  24:7
31:3
**government**
2:1
**grande**  8:6,7
8:10 11:18,22
14:8 15:14
17:20 21:19
22:1 23:1
26:20 27:3,5
27:13,19 30:2
31:9,13 32:21
33:3 34:4
**grande's**  8:9
**green**  1:12

**guarded**  23:16
**guess**  38:18
45:13 47:14,24
48:12
**guidelines**
17:16 34:25

**h**

**hand**  31:24
**handful**  7:25
22:22
**handling**  6:13
**handwritten**
41:3
**happy**  25:19
33:1,3,4,9
44:14,15
**harbor**  7:15,16
7:20,24 8:2,10
8:12 10:5
11:10,23,24
18:20,25 25:16
26:5 30:17
31:9,10
**hard**  14:6
37:23,23 38:19
**harder**  21:10
**hartford**  4:4
**hats**  40:23
**haven**  4:13
**headlining**
10:20
**hear**  15:20
40:3
**heard**  28:24
36:24
**hearing**  2:1
6:14 12:6

16:23 35:5
47:2
**hearings** 10:12
37:6 43:15
47:11
**hearsay** 8:15
8:16,18
**held** 26:6 43:2
**help** 20:12
**hesitated** 15:1
**hi** 5:4
**highly** 16:7
48:13,17,20
**history** 11:13
36:25
**hold** 34:12
**holding** 47:16
**hollow** 12:4
**hon** 1:22
**honestly** 33:7
**honor** 6:4,12
6:16 7:3 10:14
13:15,22 14:24
15:16 18:10,18
18:20 21:13
22:21 23:7,18
24:1,18 25:7
25:16 26:17,19
27:12 31:7,18
32:1,5 33:1,4
35:9 36:10,13
36:17,23 37:3
37:13 38:2
39:25,25 40:6
42:1,7 44:8,11
46:16,18,19,25
47:5,8,14,16

48:15,23 49:1
49:4
**honor's** 15:20
36:25 37:2,7
**hoops** 46:3
**hope** 20:17
44:25
**hopefully** 20:6
40:8,8
**hot** 11:16
**house** 40:19
**hualalai** 5:3
**hundreds**
28:25 32:16
**hyde** 2:25 50:3
50:8
**hypothetically**
17:14

**i**

**i.e.** 19:19
**identify** 21:9
22:22 29:2
31:16 33:1
42:18 43:11
44:1,9,10,18
46:6
**ignore** 19:6
**ildefonso** 5:13
**imagine** 31:23
**important** 10:4
10:25 38:12
45:7
**impose** 32:15
**including** 7:20
19:3 25:1
40:21

**inconsistent**
26:8 38:8
**incorrect** 42:11
**incredibly**
23:16 31:20
**indicate** 12:18
39:15 48:19
**indiscernible**
6:3,10,11
13:23 21:6
28:4 31:4
33:24 41:21
47:19,25
**individual** 39:3
**industry** 11:9
11:11 12:3
23:19 24:17
25:1,1 26:1,11
**inform** 9:7
20:12
**informal** 46:1
**information**
13:4 23:21
41:8,16,19,25
42:3,22,25
43:16 44:5,7
45:5,24 46:5,6
**informative**
41:12
**infringement**
12:8 16:24
17:13 18:1
30:15,16,24
43:4
**infringer** 7:18
7:22 8:2,5 13:9
26:7,11 27:16

38:15 39:4
**infringers** 19:3
21:21 27:6
35:4
**instance** 36:15
48:6
**instructions**
30:22,25 31:6
**intent** 26:8
**interested**
12:13 19:7
29:16
**internal** 10:18
11:19 27:22
**internet** 30:12
**interpretation**
26:7
**interrogatory**
43:11 44:1,15
**interrupt** 27:8
**intimately** 33:8
**investigation**
38:4,7
**invite** 36:14
**invoke** 8:10
**involve** 32:24
**involved** 6:13
47:17,18
**ip** 5:1
**irrelevant** 8:2
10:15
**isn't** 25:25
**isp** 7:21 8:1
12:19,24 13:12
24:5 26:24
28:16 29:4
47:18,19

isp's 10:17
isps 7:19 8:4
  9:1,4,7 10:18
  11:6,20,21
  12:2,16 13:2,7
  13:18 14:1
  15:19,21,22
  19:14 20:11
  23:12,15,19
  24:4,11,18,25
  25:4 26:2 27:1
  27:5,11,16
  28:19 29:3
  32:9 48:2
issue 10:25
  11:1 16:9,21
  17:23 18:20,25
  20:22 24:12
  28:6,10,11
  31:15 33:22
  34:3,15 38:22
  40:12 43:24
  47:14,23,24
issued 37:2
issues 6:22 7:1
  14:22 16:11
  18:20 22:6,15
  35:7 36:11,24
  37:5 39:24
  40:9 41:13
  46:14
issuing 23:21

**j**

j 3:16 4:6
jersey 47:19
job 29:5

jonathan 4:15
  40:6 44:12
joshua 4:7
jr 4:22
judge 1:23
  10:11 26:3,4,4
  26:6 31:11
judgment 31:8
  31:11,19
jump 14:11
  25:7
jury 30:22,24
  31:5,11
justify 11:7

**k**

kailua 5:4
kaplan 3:17
keep 39:25
  48:25
kept 37:3
kerry 5:6
kessler 3:8
kind 18:13,16
  21:12 31:22
  33:5 39:17
kinds 40:13,14
know 12:5,8
  13:20 14:3,7
  15:11,17,23
  16:4,8,17
  17:12,14,20,23
  21:8,23 22:2,5
  22:16 24:9
  28:15 29:9,13
  30:23 31:1,4
  32:6,13,21,23
  33:14,14,17,18

33:23 34:25
  36:2 37:19
  38:5,14,16,17
  39:6,9,12,13
  39:13,14 42:6
  43:3,13,16,24
  44:1 45:2,3,14
  45:16,25 46:4
  48:12
knowledge
  18:23 27:17
  48:2
kona 5:4

**l**

lack 8:9
landscape
  25:18
language 11:14
  26:9,9
large 28:21
  37:18 44:24
larger 25:2
lastly 9:12
  42:13
lauren 3:9
law 12:7
lawyers 19:18
  19:21
lead 32:16
learning 39:9
ledanski 2:25
  50:3,8
left 39:5
legal 10:25
  12:3 15:19
  18:10,12 40:20
  40:22 41:2,6

41:10,11 50:20
legally 10:15
legislative
  11:13 26:8
letten 4:6 6:12
  6:15,16,17,25
  7:3,7 8:20,23
  25:7,10 26:18
  26:19 27:9,12
  27:17 28:1,3
  28:12,20 29:15
  29:19 30:9,19
  31:1,12 32:15
  32:20 33:13,15
  33:19,21 34:1
  34:9,22 35:9
  35:11,14 36:1
  36:17,21 40:4
  49:1
letten's 32:2
letter 6:6,19,20
  6:23 7:2,4,25
  8:14 16:18
  22:6 29:4 35:7
  35:8 38:1,16
  39:22
letters 6:10
  39:16
letting 36:24
lewis 3:19
liability 16:25
  18:3
liable 30:14
likely 10:19
limited 33:5
limiting 28:3

line  47:24
list  13:24
listed  13:21
listing  32:18
litigated  14:12
  14:16 24:14
litigation  9:10
  12:24 14:25
  19:13 20:11,15
  40:21
litigations  29:2
  32:9
little  21:16
  22:7 37:8 40:7
llc  5:1,2
llp  3:3,11,19
  4:1,10,17 5:8
locate  37:22
located  37:25
log  9:25 32:11
  32:17 34:20
  38:24 39:12
  41:9,10,12
  42:13,19
logged  34:20
logging  33:6
  42:20
long  20:18 33:5
  36:25 38:2
look  11:10,16
  11:17 15:18
  21:1,21 22:9
  26:2 28:2 33:9
  45:5,20
looked  8:8
  25:15 30:21
  33:18

looking  11:8
  15:21 19:5
  23:19 26:12
  32:3 43:24
looks  26:11
lot  10:24 20:22
  22:12,14 25:3
  30:13 45:20
lots  15:6 22:6
  45:16
love  23:23
luskin  3:24

**m**

made  6:19
  29:13
magistrate
  24:20
maintain  40:15
  41:17
maintained
  40:22
majority  9:14
make  10:13
  17:5,7 25:11
  28:14 29:9
  39:18 43:14,20
  43:22 44:6,25
makes  17:24
making  16:13
  17:19
man  18:18
march  38:24
marked  16:7
martin  1:22
mas  5:13 6:4
materials  9:23
  16:6

matter  1:5
  15:19
matthew  3:16
  4:6 6:16
mean  9:19 16:1
  16:15 17:15
  18:4 20:12
  21:9 22:2
  23:11 26:13
  27:18 28:23
  30:5 32:20
  47:4
meaning  11:15
means  24:13
measuring
  38:6
mediate  13:3
meet  33:13
  34:3 35:14
member  43:12
members
  44:19 45:3
mentioned
  17:12
message  22:10
met  28:5
metaphorical
  40:9
mg  1:3
michael  3:24
mind  13:25
mineola  50:23
minute  25:20
missed  14:10
missing  37:19
  38:3

misusing  48:17
moment  11:2
  25:23 41:9
month  42:8
months  22:16
  39:8,21
moon  21:23
moot  42:2
morass  32:11
morgan  3:19
morning  38:17
  39:21 42:4,12
move  36:9
  39:24 45:9
movie  25:1
  48:22
moving  48:25
mp3  11:12
  19:4 25:21,24
  26:1
multiple  42:14
music  24:16
  25:1
muted  10:8

**n**

n  3:1 6:1 50:1
name  44:10
names  21:7
narrow  28:24
near  44:25
necessarily
  22:3 29:15
  30:10 31:21
  38:11
need  7:23 8:24
  15:18 44:5,10
  45:21

**negotiate**
32:13,19
**negotiations**
13:3
**never** 15:2
**new** 1:2,13 3:6
3:22 4:13
47:19
**night** 39:22
**non** 10:24
12:23 37:21,22
39:5,20
**normal** 11:15
**note** 31:12 41:6
**notebook** 39:8
**notebooks** 39:4
39:6,9 40:18
40:25 41:1
**notes** 40:23
41:3
**notice** 16:8
21:13 23:5
30:5 34:10
35:22 36:6
**noticed** 47:2
**notices** 12:8
16:24 17:13
18:1 43:4
**noting** 6:20
**number** 24:25
32:8 44:24
**nw** 3:13 5:10
**ny** 1:13 3:6,22
50:23

**o**

**o** 1:21 6:1 50:1
**object** 28:17
30:6
**objections** 30:7
**obtain** 9:10
**obtained** 14:25
19:13 41:16
**obvious** 11:25
**obviously**
12:12,25 13:21
24:5
**offhand** 31:1
**office** 14:4
32:23
**oh** 6:25 47:24
**okay** 6:15 7:6
14:23 15:24
18:3,14 20:1
20:24 21:3
22:16,20,24
23:3,9 25:10
26:18 27:25
28:18,19 29:9
29:10 30:8
32:4,18 33:11
33:20 34:11,15
34:16,21 35:10
35:16 36:9,11
40:5 43:8 44:3
44:4,10,13
45:9,19,24
46:13,17,20
**old** 50:21
**ongoing** 12:24
13:21 31:18
41:9

**online** 19:10,11
27:20
**open** 48:5,11
**opened** 25:21
**opinion** 11:12
**oppenheim** 3:3
3:11,16 10:7,9
10:13 11:4
12:5,21 13:11
13:14,20 14:5
14:15,19,24
15:15 16:3
18:9,19,23,25
19:23 20:1,3,6
20:9,21,25
21:4,6,8 22:8
22:11,13,21,25
23:4,11,14,25
24:16 25:12,14
25:25 26:15,16
28:6 29:12,22
30:21 31:4,5,7
32:19 33:1,15
34:6 35:17,18
35:21 36:4,8
36:10,12,13
43:17 46:20,21
46:24 47:2,8
49:3
**oppenheimer**
47:17
**opponent** 8:17
**opportunity**
6:18 23:20
**order** 7:23
16:1,12,15
20:14 21:12,24

30:4 31:15
32:5 34:10
35:23,23,24
36:2,3,5 41:6
43:21 47:21
**ordered** 30:8
37:2,13
**ordering** 16:10
29:21,25 30:2
**orders** 12:25
16:5 30:4 32:1
37:2 45:17
48:19
**org** 38:10,12
38:13,17,20
40:10,13 44:5
45:23
**organizational**
40:12,15 42:22
42:24
**ought** 16:20
35:6
**outside** 13:2,4
31:11
**overbroad**
7:10
**overseeing**
39:3 40:21
**own** 8:5 9:5
19:18

**p**

**p** 3:1,1 6:1
**pace** 37:4
39:25
**pads** 40:22
41:3,6,11,11

paper  15:3,12
  34:5 41:22
papers  15:3
park  3:21
part  6:14 7:15
  10:10 24:19
  28:20,21
partially  38:25
particular
  40:14
particularly
  41:4
parties  7:13
  11:20 15:25
  23:2 36:25
party  8:16 9:2
  9:3,8,9,10,19
  24:8 28:22
past  13:22
  17:13
paul  41:11
pauley  26:4,5
pauley's  26:6
pay  18:5
payment  39:20
pending  14:8
  14:12
people  45:6
perfectly  18:15
performance
  40:25 41:2
performing
  44:20
performs  41:4
period  18:2
  24:25 44:2

periods  43:12
permission
  36:13,18
person  43:11
  44:2 47:5
perspective
  26:22
picture  26:25
piece  15:3
pii  30:8
pitney  4:1,10
  4:17 6:17 10:2
  17:24 19:8
  35:16
plaintiffs  12:22
  48:1
plaza  4:19
plus  14:14
pm  1:16 49:7
point  7:7 9:12
  10:21 16:16
  26:15,16 32:21
  34:21 35:21
  42:2,15 46:5
  47:10,14
pointed  25:21
pointing  25:23
points  6:20
  8:13 10:14
  25:8 36:19
polices  29:7
policies  7:18
  8:2,5 10:17
  11:6 12:2,17
  12:19 13:12,18
  14:1 15:13
  17:20 19:14

20:10 21:10,11
  21:20,25 23:16
  24:4,6,11
  26:20 27:11,16
  28:17 29:19,24
  30:1,23,24
  31:12 32:10
  33:16,23 34:23
  34:25 35:3
  46:8,9 47:20
  48:2
policy  8:8,9
  12:14,15 13:16
  15:8 17:12,25
  19:1,2 27:6,7
  27:21 29:4,22
  32:22 34:5
  46:11
policy's  32:4
portions  33:2
position  7:18
  24:17 25:24
possession  9:5
  12:20 13:13,19
  14:2,2,18
  15:13 16:1
  21:25 27:15
  34:5
potentially
  9:23
practice  15:12
  20:18
preclusion
  45:17
preference
  47:10

prepare  38:14
prepared
  32:18
present  10:4
  27:4
presented  27:1
presumably
  41:11
presumptively
  20:4
prevent  16:10
previously
  14:12,15
prior  12:6,10
  16:23 43:15
private  25:5
privilege  7:12
  9:12 32:17
  34:20 38:22,23
  38:24 39:12
  42:13,16
privileged  9:14
  9:18,23 10:19
  10:24 12:23,23
  19:22,24 20:7
  32:9,11,17
  37:22 39:5
  40:20 41:8
  42:19
probably
  10:10 15:16
  31:14
probative  18:3
probe  9:15
procedure
  13:16 29:22
  46:22

**procedures**
10:17 11:7
12:2 13:18
14:1 15:2,4,7
15:14 17:8,10
17:11 19:14
20:10 21:10,18
22:18 24:7
26:20 30:1
32:10 34:23
35:3 36:6
**proceeded**
23:15
**proceedings**
49:6 50:4
**process** 41:5,8
42:11 44:18
45:9 46:22
**produce** 16:2,6
16:10,16,17
20:12 21:14,24
23:5 24:21
34:7,23 37:13
37:16 39:5
**produced**
16:12 27:3
30:8 35:4
37:11,21 38:8
38:23,25 39:11
39:14,16,22
40:2 42:3,16
**producing** 9:4
30:8 41:15
44:17,23
**production**
10:6 26:20
29:21,25 30:3

38:6,12 44:25
47:15 48:7
**productions**
37:1,19 39:18
**professional**
46:1
**program** 38:15
39:4
**prompt** 34:2
**prompted** 38:1
39:17
**prompting**
39:17
**promptly** 36:7
**proper** 38:13
**proposed** 7:9
28:23
**proposition**
12:1
**protected** 36:3
47:21
**protections**
47:22
**protective**
12:25 16:5
20:14 21:12
30:3,4 31:15
34:10 35:23,24
36:2,2,5 47:21
48:18
**provide** 44:19
**provided** 14:21
42:7
**providers**
19:10,11 30:13
**providing**
42:11

**provision** 13:9
**provisions**
11:10 34:10
48:13
**public** 24:9,10
**publicly** 27:2
27:18,20
**pull** 31:14
32:13
**pulling** 29:23
**purport** 21:20
**purposes** 21:2
**put** 17:5 20:4
20:17 39:12
**putting** 39:2

**q**

**qualifies** 7:17
**qualify** 7:23
30:17
**quashed** 48:3
**question** 13:10
13:25 19:1
20:9 21:4 23:6
23:7 24:2
35:19 43:11
46:24
**questions**
25:19 30:11
**quickly** 34:11
**quotes** 16:18

**r**

**r** 1:21 3:1 6:1
50:1
**raise** 6:23
36:14 38:21
39:24 46:14

47:22
**raised** 6:20 7:2
7:8,11 22:6
37:10 41:13
**raising** 20:10
37:5
**rarely** 23:17
**rc** 40:12
**rcc** 7:8,11,25
9:4,6,16 26:24
28:8,22,23
29:3,5 40:24
41:16,18,20
**rcc's** 6:20 7:4
**rcm** 15:14
17:20 21:19
22:1 30:2 34:4
**rcn** 14:9 23:1
26:21 27:3
31:18 35:21
47:20
**reach** 24:25
25:5 33:14
**read** 25:22
31:2
**reading** 27:12
**real** 34:13
**really** 9:15
15:17 21:17
22:18 23:17
24:13 27:6
28:23 29:5
38:8 46:4
**reason** 10:20
13:14 15:1
**reasonable**
12:14 17:11

[reasonable - safe]                                              Page 14

18:15,16 30:23
**reasons**   9:25
48:10
**recall**   17:2,2
**receive**   9:6
**received**   16:14
17:25 44:17
**record**   3:4,12
3:20 11:5
19:11,23 32:3
33:8 37:9 50:4
**records**   33:3
41:23
**redacted**   38:25
42:16,17
**reference**   26:1
**referencing**   7:4
**regarding**   7:14
19:13 27:3
32:9 47:15,20
**regular**   41:17
**regularly**
24:17 39:4
**related**   30:10
40:13,25 41:1
41:3,4
**relating**   11:6
37:2,16 39:19
**relevance**   7:11
7:12
**relevant**   7:19
8:12,14 9:4
12:17 17:17
24:18 33:16
34:14
**reliability**   12:9

**reluctant**
32:15
**remember**
20:19
**repeat**   6:18
7:18,22 8:1,5
16:24 19:2
21:21 26:7,11
27:6,16 30:23
35:3 38:15
39:3
**repeated**   46:3
**repeater**   13:8
**reported**   30:13
**represented**
37:15
**request**   7:5
9:18,19 19:15
39:23 45:14
47:15 48:2
**requests**   7:9
9:11,13 12:22
13:7 22:19
24:11 37:10,16
37:20 40:16
**require**   16:6
35:25
**required**   9:25
16:24 20:14
42:20
**requirement**
18:23
**requires**   7:16
30:4
**reservations**
34:14

**resolved**   14:16
**respect**   8:4
13:25 21:21
22:22 30:23
34:22 38:21
40:10,18 41:13
41:14 42:13
**respond**   10:8
44:14,15
**responded**
38:4 45:14
**responding**   7:4
**response**   19:15
37:14
**responsible**
13:8 39:3
**responsive**
12:22 13:7
22:19,23 38:20
39:5,23 40:16
41:7 42:18
**responsiveness**
42:10
**resulted**   18:3
**reveal**   31:24,24
**revealing**
23:22
**reversed**   26:6
**reversing**   26:3
**review**   37:23
39:7,10 42:18
43:4
**reviewed**   9:16
33:15,21
**reviewing**   15:6
41:5

**right**   6:2 10:7
12:25 14:6
15:24 18:24,25
19:10,23 20:3
20:6 21:8,18
25:20 26:14
29:20 34:21
35:13 36:4
40:3 48:24,25
**road**   5:3 50:21
**role**   41:5 44:3
44:19
**roles**   43:2
**rolling**   44:23
**rothman**   3:8
36:14,16,22,23
40:9 42:21
43:1,7,9 45:23
46:14,15
**rule**   17:2
**ruled**   24:20
26:5
**ruling**   18:17
21:22 33:12
**run**   9:16,21,22
9:24 33:4
45:11,12
**running**   32:7

|   s   |
|---|

**s**   3:1 6:1
**safe**   7:14,16,20
7:24 8:2,10,12
10:4 11:10,23
11:24 18:20,25
25:16 26:5
30:17 31:9,10

| | | | |
|---|---|---|---|
| **saying** 11:7 | **separate** 18:20 | **signature** 50:7 | **spread** 17:13 |
| 16:17 31:21,23 | 21:15 | **signed** 16:5 | **spreadsheet** |
| 34:23 38:5 | **seriatim** 40:10 | **silent** 8:3 | 42:7 |
| **says** 33:16 | **series** 22:17 | **simply** 8:3 | **stamford** 4:19 |
| 42:23 | 40:22 41:2 | **single** 11:9 | 4:20 |
| **screen** 25:22 | 44:17 | 15:3 33:7 | **standard** 11:9 |
| **search** 7:9 9:13 | **serve** 9:8 28:15 | **sit** 13:3 | 12:3,3,18 |
| 9:16,22 28:23 | 43:13,25 | **sitting** 14:3 | 16:19,20 17:22 |
| 28:24 32:7,13 | **served** 9:11 | 32:23 | 18:10,13 23:20 |
| 32:15,20 34:17 | 22:20 44:2,15 | **situation** 34:18 | 26:2,12 |
| 37:12,23 | **service** 19:10 | **situations** | **standards** |
| **searches** 9:22 | 19:11 24:10 | 20:19 | 11:11 25:4 |
| 33:5 | 30:13 | **six** 18:16 | **stanley** 4:22 |
| **second** 10:16 | **serving** 43:21 | **size** 38:19 | 46:18 |
| 11:12 19:4 | **set** 12:10 15:3 | **slanted** 27:4 | **stars** 21:24 |
| 26:3,6 47:19 | 17:1,10,16,21 | **solutions** 50:20 | **start** 6:20,22 |
| **secondary** | 18:2 30:1 | **solve** 43:24 | 10:20,25 26:21 |
| 30:14 | 33:16 34:23 | **somebody** | **starting** 32:21 |
| **section** 11:10 | 35:3 | 17:12 | **states** 1:1,11 |
| **see** 12:17 17:25 | **sets** 16:19 | **sonya** 2:25 | **status** 37:4 |
| 21:15 29:6 | **setting** 17:22 | 50:3,8 | **statute** 11:15 |
| 32:2 33:13 | **settled** 29:13 | **soon** 35:5 | 26:9 |
| 38:12 40:8 | **settlement** | **sorry** 11:2 | **steven** 5:6 |
| 44:4 | 14:21 29:16 | 22:13 40:7 | **stipulation** |
| **seeking** 10:15 | **seven** 37:14 | **sort** 27:22 | 48:13 |
| 10:16 11:5 | **several** 39:21 | **sorted** 16:12 | **stop** 21:1 22:12 |
| 39:20 40:13,24 | 43:14,15 | **sought** 24:5,9 | 25:9,11 |
| **seems** 17:3,17 | **should've** | 25:17 | **street** 4:3,12 |
| 37:18 39:16 | 20:19 | **sounds** 18:14 | 5:10 22:5 |
| **send** 15:22 | **show** 36:2,5 | 27:10 32:21 | 34:21 45:10 |
| 38:1 | 48:7 | **southern** 1:2 | **struggle** 37:5 |
| **sense** 6:19 | **showed** 38:24 | **speak** 25:4,13 | **struggling** |
| **sensitive** 20:21 | **shows** 46:11 | 44:10 | 13:15 |
| 48:10 | **side** 12:6 31:21 | **specific** 33:2 | **studios** 5:2 |
| **sent** 6:11 29:4 | 31:22,22 45:13 | 40:13 | 25:2 |
| 38:2 39:4,22 | **sides** 16:22 | **specifically** | **stuff** 43:18 |
| | | 37:19 48:9 | 44:21 |

**subject** 12:25
14:25 16:14
20:11 21:11
23:5 30:3
35:15,20 47:21
**subparts** 44:1
**subpoena** 9:7,8
23:12
**subpoenas**
15:22 23:21
24:10 28:16
**subscribers**
30:7
**substantial**
9:23
**sue** 26:24 29:6
**sufficient** 34:8
**suggest** 8:15
11:19 28:7
**suggested**
17:15 22:17
**suggesting**
23:18
**suite** 5:3,10
50:22
**summary** 31:8
31:11,19
**sun** 21:23
**support** 11:25
16:20
**supports** 8:6
25:24
**supposed** 47:3
**sure** 25:11
36:16 39:1
41:7 46:23

**surprised**
24:14
**suspect** 32:8
35:22
**switch** 35:15

**t**

**t** 50:1,1
**take** 6:18 21:16
22:17 29:23
38:18 40:9
43:16 45:7,15
**taken** 15:11
24:6,17 38:4
**talk** 6:24 22:6
34:9 35:16
36:1 44:3
**talking** 26:10
27:23 35:2,2
**team** 43:2,6,12
43:25 44:3,19
45:4
**teeth** 29:24
**tell** 20:21 22:16
23:14 31:2
45:23,24
**telling** 29:20
**ten** 12:12 17:14
17:15
**tens** 28:25
**term** 16:17
37:23 44:25
**terminate** 7:21
**terminated**
7:23
**terminating**
27:6

**termination**
19:3
**terminations**
39:20 41:14,23
42:5,7
**terms** 7:7,9,12
9:13,16,22
11:15 19:14
27:22 28:24
32:7,13,16,20
34:17 37:13
**test** 9:15
**testimony** 33:2
33:23 34:8
**texas** 14:10
**thank** 6:12
26:16,19 36:21
36:23,23 44:11
46:15 48:25
49:1,3,4,5
**that's** 28:20
39:17
**they've** 25:17
**thing** 11:22
21:10,18 24:23
30:9 39:17
45:25
**things** 13:3
20:19 26:13
34:12 43:13
45:2,16,17
47:9
**think** 6:19 7:12
8:10 10:1,3,24
14:11,20 15:18
16:25 17:12,23
19:17 23:7,14

23:20 25:8,15
25:18,24 26:19
26:22,25 28:1
28:12,16,20,23
29:5,6,8,16
30:17 33:22
35:6,11 36:18
40:24 45:6,12
48:9,17
**third** 9:1,3,8,9
10:17 15:25
**thought** 9:22
38:3
**thousands**
28:25 29:1
32:16 34:19
**three** 12:11,12
18:13 45:6
46:11
**threshold**
12:10
**time** 15:7
17:14 18:2
20:18 35:1,12
41:18 44:2,9
44:16 45:11
**timeframe**
45:21
**times** 43:14
**today** 6:14
16:21 28:6
35:16 36:24
37:5 39:2
47:12 48:24
**today's** 17:23
34:15

**told**  12:10
16:25 28:5
37:21 40:17
42:4,9
**took**  34:24
41:18
**topic**  48:1
**totality**  39:13
**transcribed**
2:25
**transcript**  31:3
31:15 33:17
34:8 50:4
**transcripts**
27:19 31:13,17
33:15
**trial**  7:14 12:16
17:18 18:4,7
27:19 28:7,9
31:2 33:2
34:14
**trial's**  31:13
**tried**  24:25
32:12,19 44:16
**trigger**  34:10
**triggered**  48:4
**triply**  41:7
**tropp**  4:15
40:4,6,7 42:1,6
42:23 44:8,11
44:12,13,14,23
49:5
**true**  16:8 31:9
50:4
**try**  21:8,11
29:11 44:6

**trying**  28:21
39:23
**tunes**  11:13
19:5 25:21
**turn**  9:14 32:8
38:11
**turning**  28:25
**turns**  11:14
12:16 45:16
**twardy**  4:22
6:7,9,12 46:18
46:18 49:4
**twardy's**  6:6
**two**  22:5 24:19
34:21 39:14
45:9 47:18
**types**  8:11
**typical**  30:4

**u**

**u.s.**  1:23
**ultimately**
18:10 25:6
**unclear**  39:11
**under**  7:20
35:22
**underlying**
31:25 33:24
**understand**
18:5,11 32:2
33:25 34:2
37:3 38:13,14
42:2 43:1,3
46:8
**understanding**
26:13 35:23
**undertaking**
38:7 39:10

43:4
**united**  1:1,11
**upfront**  23:25
**use**  16:17
37:12
**used**  18:13,17
39:4
**useful**  45:25
**using**  2:1

**v**

**variety**  40:20
41:3
**vehicle**  48:16
**veritext**  50:20
**vicarious**
30:15
**view**  22:20
27:4 28:9
32:15 33:12
**virtue**  12:24
**volume**  32:14
38:6

**w**

**wait**  25:9
**want**  7:1 10:7
21:23 22:15
25:11,22 26:14
30:6 31:23
34:3,15,16,18
35:16 38:9,21
42:22,25 43:1
45:4,4,7,8,18
46:2,5,6,6,7,13
46:14 47:6,12
48:5,7

**wanted**  7:7
15:17 23:6
26:22 42:3
46:8 47:22
48:1
**wants**  25:12
37:3
**washington**
3:14 5:11
**way**  15:22 20:5
20:17 22:5
23:15 34:21
40:15 41:10
43:23 45:9,19
45:22
**ways**  13:18
45:9 46:1
**we've**  7:9 9:24
10:3 13:21
14:7,12,15
19:13 38:10
39:20 40:17
44:16,16,24
**wears**  40:23
**week**  42:9 45:1
**weight**  18:7
**west**  47:25
**whatsoever**
40:12
**wisconsin**  3:13
**withheld**  38:22
39:1 42:15
**won**  24:22
**word**  38:18
**words**  10:11
24:4

[work - zoom]                                    Page 18

| |
|---|
| **work**  33:4,6 35:6 44:4,5 |
| **working**  38:15 |
| **works**  47:9 |
| **worse**  11:24 |
| **would've**  24:22 |
| **write**  42:10 |
| **writing**  17:11 35:1 |
| **written**  21:19 21:25 29:22 46:10,11 |
| **x** |
| **x**  1:4,10 |
| **y** |
| **yeah**  13:11 14:5 20:8 22:8 25:14 27:9 28:2 34:1 43:17 46:11 47:6 |
| **years**  24:24 42:8 |
| **yep**  36:8 |
| **yield**  9:18,22 |
| **york**  1:2,13 3:6 3:22 |
| **z** |
| **zebrak**  3:3,11 |
| **zoom**  2:1 10:11 47:4,6,9 |