# DAY PITNEY LLP

BOSTON   CONNECTICUT   FLORIDA   NEW JERSEY   NEW YORK   PROVIDENCE   WASHINGTON, DC

**STANLEY A. TWARDY, JR.**
Attorney at Law

One Stamford Plaza, 7th Floor
263 Tresser Boulevard
Stamford, CT 06901
T: (203) 977-7368 F: (866) 458-1037
satwardy@daypitney.com

October 9, 2024

<u>VIA E-FILING</u>

Chief Judge Martin Glenn
U.S. Bankruptcy Court, S.D.N.Y.
One Bowling Green
New York, NY 10004-1408

    Re:    <u>In re: Frontier Communications Corp., No. 20-22476-mg</u>

Dear Judge Glenn:

    We write on behalf of Frontier Communications Corporation ("Frontier") in response to the letter of Movie Company Claimants ("MCCs") filed on October 8, 2024 requesting a discovery conference. (ECF No. 2439.) MCCs seek to raise two issues: (1) Frontier's claw back of two privileged communications between Frontier and its outside counsel; and (2) Frontier's declination to answer on grounds of privilege two questions informally posed by MCCs. For the reasons discussed below, neither issue warrants a conference.

### Frontier Properly Clawed Back the Two Privileged Documents

    The two documents at issue are privileged communications between Frontier's in-house counsel and its outside counsel.[1]

    FRONTIER_00037454 – 471 is a 19-page email chain that commences with a September 29, 2020, email from counsel for MCCs, attaching a demand letter concerning some of the claims in suit. Because this and other e-mails early in the chain are not privileged, Frontier produced the document. However, beginning with an e-mail on December 21, 2020 from Frontier's outside counsel at Kirkland & Ellis to Frontier's in-house counsel Paul Garcia and other Frontier outside counsel, the chain comprises only communications among Frontier's lawyers about how to respond to MCCs about their claims. These communications were all

---

[1] Neither document has previously been submitted for the Court's *in camera* review. (*See* ECF No. 2418 (excluding "communications between Frontier and Frontier's outside counsel over which Frontier asserts attorney-client privilege").) Frontier will submit the two documents to the Court *in camera* upon its request.

**DAY PITNEY** LLP

Chief Judge Martin Glenn
October 9, 2024
Page 2

properly redacted as privileged, except one privileged email sent by Mr. Garcia on December 28, 2020 to Frontier's outside counsel that appeared on the cusp of two pages. This privileged email was overlooked and inadvertently produced.[2] Frontier clawed the document back on September 27th, and reproduced it with this email additionally redacted.

FRONTIER_00166797 – 801 is a five-page e-mail chain that culminates in an e-mail from Mr. Garcia to Frontier's IP counsel, Attorney David Weslow at Wiley Rein, with a copy to another Frontier in-house counsel, John Greifzu. The e-mail seeks Mr. Weslow's advice and assistance with respect to a third-party demand letter. Frontier properly clawed back this document as well on September 27th, but reproduced its non-privileged attachment.

Under the Discovery Confidentiality Stipulation and Order:

> ***In addition to*** Federal Rule of Civil Procedure 26(b)(5)(B), Federal Rule of Bankruptcy Procedure 7026, and Federal Rule of Evidence 502, the parties agree that the inadvertent production or disclosure of documents or information subject to the attorney-client privilege, work product immunity, or any other applicable privilege or immunity from disclosure ***shall not*** constitute a waiver of, nor a prejudice to any claim that such or related material is Protected Information, privileged, or protected by the work product immunity or any other applicable privilege, provided that the Producing Party promptly notifies the Receiving Party in writing ***after discovery*** of such inadvertent production or disclosure.

(ECF No. 2423 (emphasis added).) Accordingly, by MCCs' agreement and under this Court's order, the fact that Frontier erroneously produced the documents at issue in April is irrelevant. To the contrary, the order provides that MCCs' motion may not even "assert as a ground for production the fact of the inadvertent production or disclosure." (*Id*.)

MCCs also claim Frontier may not claw back the two documents because it unreasonably delayed doing so after discovering the inadvertent production. However, Frontier did not discover the inadvertent production on September 4 as MCCs claim. At 2:28 a.m. on September 5, MCCs sent Frontier a set of 16 questions and 85 proposed stipulations in a 10-page document. Frontier undertook a time-consuming project to analyze and respond to MCCs' requests. Frontier did not discover the first of the two privileged documents cited within the many proposed stipulations until September 12th, and the second one later still. At the time, Frontier's legal team was engaged in complying with an order to produce other documents and information by September 20th. (*See* ECF No. 2431.) Further, on September 19th, Frontier turned its immediate attention to the Court's orders that Frontier produce hundreds of documents that had been the

---

[2] The chain also includes an e-mail Mr. Garcia sent on December 29, 2020 at 7:16 am that Frontier did not redact and has not clawed back because it has no substantive content.



Chief Judge Martin Glenn
October 9, 2024
Page 3

subject of *in camera* review and that it resubmit others for further review by the Court. (ECF Nos. 2429 & 2430.) In these circumstances, clawing back the two documents within 15 days of discovering their inadvertent production was reasonably prompt, and not a waiver. *See J&J Sports Prods., Inc. v. Patin*, 358 F.Supp.3d 318, 323 (S.D.N.Y. 2019) ("A claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Waiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage.") (cleaned up).

### Frontier Should Not Be Directed to Answer MCCs' Objectionable Questions

In connection with the Court's order permitting MCCs to move for sanctions (ECF No. 2424), Frontier agreed to consider certain questions that MCCs might propound without requiring formal interrogatories. As noted above, MCCs forwarded a set of questions on September 5th. Frontier responded on September 26th. In two cases, however, Frontier declined to respond on grounds of attorney-client privilege and work product.

MCCs asked: "When did Frontier issue a legal hold notice in response to MCCs' demand letter?" This compound question seeks to discover not merely the timing of an event, but the content of a communication; the question concerns a legal hold notice ***directed to*** specific subject matter.

Similarly, MCCs asked: "When did Frontier inform its counsel that it was still deleting IP address assignment records from the RADIUS database?" This compound question too seeks to discover the content of a communication, as it is impossible to answer without regard to the substance of an assumed communication to defense counsel in this case.

Were these questions asked formally, they would be objectionable compound questions, regardless of the privilege and work product protection. *A fortiori*, in the absence of formal interrogatories, there is no basis for MCCs to demand that Frontier answer questions that seek to invade those protections.

\*    \*    \*

Should the Court wish to schedule a discovery conference, we are available at the Court's convenience.

Respectfully submitted,

*Stanley A. Twardy, Jr.*

Stanley A. Twardy, Jr.

cc:    All Counsel of Record