

Matthew Oppenheim
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.3958
matt@oandzlaw.com

***VIA CM/ECF AND EMAIL***                                                                    October 10, 2024

The Honorable Martin Glenn
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

**Re:** *In re Frontier Communications Corp.*, **Case No. 20-22476 (S.D.N.Y. Bankr.)**

Dear Chief Judge Glenn:

On behalf of the Record Company Claimants (the "RCCs") in the above-captioned action, we write regarding Frontier's refusal to produce certain limited documents related to Verizon Communications, Inc.'s ("Verizon") recently announced acquisition of Frontier (the "Acquisition") in a transaction valued at $20 billion.  Specifically, Plaintiffs seek assurances that the recently announced Acquisition does not in any way impact the copyright issues in this case. To that end, Plaintiffs asked Frontier to either (i) stipulate that no part of the Acquisition requires Frontier to change its repeat infringer policy or how Frontier responds to infringement notices, or (ii) produce documents concerning the Acquisition's effect on Frontier's repeat infringer policy or the manner in which Frontier responds to infringement notices.  Frontier has refused to do either of the above.  Accordingly, the RCCs respectfully request that the Court order Frontier to produce its agreement(s) with Verizon and all communications with Verizon (or any other potential third-party acquiror) concerning (i) Frontier's or any potential third-party acquiror's copyright policies, (ii) Frontier's or any potential third-party acquiror's response to infringement notices, and (iii) the RCCs' claims and Frontier's defenses thereto.[1]

## Background

On September 5, 2024, Frontier and Verizon announced the Acquisition. *Verizon to acquire Frontier*, FRONTIER COMMUNICATIONS PARENT, INC, https://newsroom.frontier.com/press-release/verizon-to-acquire-frontier/ (Sept. 5, 2024).  Shortly thereafter, the RCCs requested that Frontier produce (i) "[a]ll communications with any Potential Third-Party Acquiror concerning Frontier's or any Potential Third-Party Acquiror's efforts to comply with the DMCA," and (ii) "[a]ll communications with any Potential Third-Party Acquiror concerning the RCCs' claims and Frontier's defenses thereto."  These documents are responsive to the RCCs' requests for production, including:

---

[1] In July, many of the record companies that comprise the RCCs sued Verizon in the United States District Court for the Southern District of New York for contributory and vicarious copyright infringement.  Compl., *UMG Recordings, Inc., et al. v. Verizon Communications, Inc.*, No. 1:24-cv-05285 (S.D.N.Y. Jul. 12, 2024), ECF No. 1.  The complaint against Verizon asserts claims based on similar legal theories to those the RCCs have asserted against Frontier.  *Id.*

REQUEST NO. 12. All communications with any employee, officer, or director of any other internet service provider regarding alleged copyright infringement and/or the internet service provider's response thereto, including but not limited to communications regarding graduated response programs, repeat infringer policies, and DMCA policies.

REQUEST NO. 27. All documents or communications concerning compliance with or obligations under the DMCA, or copyright infringement occurring or alleged to be occurring over Frontier's network.

In response to Request No. 12, Frontier agreed that it "will produce any non-privileged documents responsive to this request . . . to the extent they exist, since May 1, 2019"; in response to Request No. 27, Frontier agreed that it "will produce any nonprivileged documents regarding compliance with the DMCA . . . to the extent they exist, since May 1, 2019." Frontier's Responses to RCCs' First Set of Requests for Production of Documents at 9, 16.

Frontier refused to produce any documents concerning the Acquisition. When the parties met and conferred, Frontier justified its refusal to produce documents on the following grounds: any communications with Verizon regarding Frontier's DMCA compliance would be cumulative; documents concerning the RCCs' claims and Frontier's defenses thereto were protected work product subject to a common interest privilege; and discovery had closed.

In response, the RCCs offered to forego the discovery if Frontier would stipulate to the following: "Frontier has entered into an agreement to be acquired by Verizon. No part of that agreement provides that Frontier will be changing its repeat infringer policy or the manner in which it responds to infringement notices." Frontier rejected that stipulation. The RCCs then reiterated their requests for documents in light of Frontier's refusal to stipulate; Frontier reiterated its refusal.

## Argument

Frontier's communications with Verizon regarding Frontier's efforts to comply with the DMCA are relevant to multiple key issues. Frontier's discussions with Verizon about how Frontier handles repeat copyright infringement and whether and how the Acquisition requires Frontier to change its policies bears directly on the reasonableness of Frontier's implementation of its repeat infringer policy and Frontier's knowledge of infringement. Indeed, Frontier did not object in discovery to producing communications with other internet service providers on this subject. Similarly, Frontier's communications with Verizon regarding the RCCs' claims are relevant. To the extent Frontier acknowledged the validity of the RCCs' claims to a then-unrelated third party and agreed to change its practices in response to them, such communications show Frontier's awareness of the wrongness of its conduct. Finally, Frontier's communications with Verizon are also relevant to deterrence: if the Acquisition requires Frontier to adopt Verizon's system for processing notices, the factfinder should take that into account in determining a statutory damages award that will deter future infringement.

2

Notably, Frontier refuses to stipulate that "no part of [the Acquisition] provides that Frontier will be changing its repeat infringer policy or the manner in which it responds to infringement notices." It follows that the Acquisition *does* require Frontier to change how it handles copyright infringement. The RCCs and the finder of fact are entitled to know what those changes are and what Frontier and Verizon discussed regarding those changes.

This discovery is not cumulative of prior discovery, as Frontier protests. To the extent the Acquisition requires Frontier to change its repeat infringer policy or how Frontier responds to infringement notices, that is entirely new information not disclosed by any previous discovery. Nor can Frontier avoid production on the basis that fact discovery previously closed. For obvious reasons, the RCCs could not seek these documents before fact discovery closed, and the RCCs sought them immediately upon learning of the Acquisition. Further, fact discovery is currently reopened, allowing time to complete this discovery well before trial.

Frontier's communications are not protected by any privilege or work product protection. Communications made in the context of negotiating the Acquisition are not communications made "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A), and thus are not protected work product. The common interest privilege requires, among other things, that the parties who communicate share a common legal interest and that the communication made be in furtherance of that interest. *In re Velo Holdings, Inc.*, 473 B.R. 509, 514 (S.D.N.Y. Bankr. 2012) (Glenn, J.). Statements made to a counterparty or potential counterparty in the course of negotiating a transaction, where the interests of the parties are necessarily *opposed*, cannot be made in a furtherance of any common interest. In any event, if Frontier seeks to assert a privilege over responsive documents, Frontier cannot simply refuse to produce those documents. Instead, Frontier must log those documents and identify the basis for the privilege assertion so that the parties and the Court can evaluate it.

\* \* \*

For the reasons stated above, the RCCs respectfully request that Frontier be ordered to produce Frontier's agreement with Verizon and all communications with Verizon (or any other potential third-party acquiror) concerning (i) Frontier's or any potential third-party acquiror's efforts to comply with the DMCA, and (ii) the RCCs' claims and Frontier's defenses thereto.

If the Court would like to hear the parties on this matter, the RCCs will be prepared to discuss it at the currently scheduled discovery conference next Tuesday, October 15.

Respectfully submitted,

 */s/ Matthew J. Oppenheim*
Matthew J. Oppenheim