Kerry S. Culpepper (admitted *pro hac vice*)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Email: kculpepper@culpepperip.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, *et al.*[1] | Case No. 20-22476 (RDD) |
| | (Jointly Administered) |

# MOVIE COMPANY CLAIMANTS' MEMORANDUM OF LAW

---

[1] Due to the large number of debtor entities in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://cases.primeclerk.com/ftr. The location of the Reorganized Debtors' service address for purposes of these chapter 11 cases is: 50 Main Street, Suite 1000, White Plains, New York 10606.

1

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................ 2

TABLE OF AUTHORITIES .......................................................................................................... 3

I. INTRODUCTION ...................................................................................................................... 5

II. ARGUMENT ............................................................................................................................. 5

        A.    Frontier had a duty to preserve relevant evidence at least from March 10, 2020. ............................................................................................................................. 5

        B.    MCCs made a preliminary showing of spoliation ...................................... 9

        C.    The Court should order Frontier to produce all internal litigation hold letters it issued during the claim period since MCCs have made a preliminary showing of spoliation ........................................................................... 10

        D.    Frontier should not be permitted to have it both ways .............................. 12

III. CONCLUSION ....................................................................................................................... 12

CERTIFICATE OF SERVICE .................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*After II Movie, LLC v. Wideopenwest Fin., LLC*, Civil Action No. 21-cv-01901-DDD-MEH, Doc. #186, p.4 (D. Colo. Nov. 13, 2023).......................................................................... 11

*Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009)................... 6

*Bagley v. Yale Univ.*, 318 F.R.D. 234, 241 (D. Conn. 2016) ......................................................... 12

*Bmg Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 199 F. Supp. 3d 958, 973 (E.D. Va. 2016) ................................................................................................................................................ 10

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 634 (D. Colo. 2007) ...... 11

*Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022) ...................... 6, 12

*Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ................................................. 5

*In re Frontier Commc'ns Corp.*, 655 B.R. 413, 415 (Bankr. S.D.N.Y. 2023) ........................ 10, 11

*Keir v. Unumprovident Corp.*, No. 02-CV-8781(DLC), 2003 U.S. Dist. LEXIS 14522, 2003 WL 21997747 at *6 (S.D.N.Y. Aug. 22, 2003) ........................................................................... 10

*Peskoff v. Faber*, 244 F.R.D. 54, 60 (D.D.C. 2007) ....................................................................... 6

*Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13cv2493 (KBF), 2014 U.S. Dist. LEXIS 107616, 2014 WL 3844796, at *6, *13 (S.D.N.Y. 2014) ......................................................................................................................... 6

*Sony Music Entm't v. Cox Communs., Inc.*, No. 1:18-cv-950, Doc. #140 (E.D. Va. May 6, 2019) ................................................................................................................................................ 10

*United Illuminating Co. v. Whiting-Turner Contracting Co*, No. 3: 18 CV 327 (RNC), 2020 U.S. Dist. LEXIS 202354, at *11 (D. Conn. Oct. 30, 2020) ................................................... 11

*United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) .................................................. 12

*Warner Bros. Records Inc. v. Charter Commc'ns,* No. 19-cv-00874-RBJ-MEH, 2022 WL 2056394, 2022 U.S. Dist. LEXIS 104655, at *29 (D. Colo. Mar. 24, 2022) ...................... 8

*Warner Bros. Records Inc. v. Charter Communications, Inc.*, No. 1:19-cv-00874-RBJ-MEH, Doc. #182 (D. Colo. June 5, 2020) ................................................................................... 10

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ................................... 9

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 nn.15-16 (S.D.N.Y. 2004) ..................... 11

**Statutes**

17 U.S.C. § 501 ............................................................................................................................... 7

17 U.S.C. § 512 ............................................................................................................................ 8-9

**Rules**

Fed. R. Civ. P. 37 ........................................................................................................................ 6-9

**Other Publications**

The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 Sedona Conf. J. 341, 375 (2019) ................................................................. 7-9

## I.     INTRODUCTION

Pursuant to the Court's Order during the hearing of Oct. 15, 2024, Movie Company Claimants [2] ("MCCs") submit their memorandum.  As stated more fully below, Frontier is obligated to disclose all litigation hold letters it issued during this claim period and the details of its implementation of the litigation holds because Frontier deleted relevant evidence after it was put on notice of litigation and kept deleting right up through close of fact discovery.  Frontier willfully deleted relevant evidence despite receiving: (1) a cease-and-desist letter in March 10, 2020 from MCCs' counsel asserting that Frontier was secondarily liable for its subscribers' infringements; (2) proofs of claims from certain MCCs in June of 2020 asserting that Frontier is secondarily liable for copyright infringement; and (3) discovery requests in Nov. of 2023 for *some of the very data Frontier continued to delete* up through the close of factual discovery in 2024.

## II.     ARGUMENT

### A.     Frontier had a duty to preserve relevant evidence at least from March 10, 2020.

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). When counsel receives a communication explicitly stating a party intends to initiate a lawsuit, the duty to

---

[2] Claimants Voltage Holdings, LLC; Backmask, LLC; Union Patriot Capital Management, LLC; Venice PI, LLC; Bedeviled, LLC; MON, LLC; Colossal Movie Productions, LLC; WWE Studios Finance Corp; TBV Productions, LLC; Definition Delaware LLC; I Am Wrath Productions, Inc.; Hannibal Classics Inc.; Justice Everywhere Productions LLC; Badhouse Studios, LLC; Rise Up, LLC; Status Update LLC; Morgan Creek Productions, Inc.; Shock and Awe, LLC; Fun Mom Dinner, LLC; Dead Trigger Movie, LLC; YAR Productions, Inc.; Gunfighter Productions, LLC; Ace in the Hole Productions, LP; SF Film, LLC; The Rest of Us, Inc.; Killing Link Distribution, LLC; Dallas Buyers Club, LLC; Screen Media Ventures, LLC; Rambo V Productions, Inc.; Millennium Funding, Inc.; Millennium IP, Inc.; LHF Productions, Inc.; UN4 Productions, Inc.; Millennium Media, Inc.; Bodyguard Productions, Inc.; Hunter Killer Productions, Inc.; Fallen Productions, Inc.; HB Productions, Inc.; Laundry Productions, Inc.; Black Butterfly Film, LLC; AMBI Distribution Corp.; Dubious Productions, Inc.; Rupture CAL, Inc.; Future World One, LLC; Groove Tails Productions, LLC; Family of the Year Productions, LLC; Outpost Productions, Inc.; Nikola Productions, Inc.; Eve Nevada, LLC; After II Movie, LLC;  and Wonder One, LLC (collectively, the "Movie Company Claimants").  Counsel will be filing a motion to substitute the Chapter 7 Trustee for the estate of Screen Media Ventures, LLC for Screen Media Ventures, LLC.

preserve is triggered. *See Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022). "Where copyright infringement is alleged, and a cease and desist letter issues, such a letter triggers the duty to preserve evidence, even prior to the filing of litigation." *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009); *see also Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13cv2493 (KBF), 2014 U.S. Dist. LEXIS 107616, 2014 WL 3844796, at *6, *13 (S.D.N.Y. 2014) (cease and desist letter threatening to "seek legal recourse" if recipients failed to comply with demands contained in that letter was sufficient to trigger obligation to preserve documents). The 2006 Advisory Committee comments to Fed. R. Civ. P. 37(e) further prescribe that any automatic deletion feature should be turned off and a litigation hold imposed once litigation can be reasonably anticipated. *See also Peskoff v. Faber*, 244 F.R.D. 54, 60 (D.D.C. 2007).

On Mar. 10, 2020, MCCs sent Frontier a cease-and-desist letter via email to Frontier's designated DMCA email address and certified mail to its legal department ("3-10-2020 demand letter"). The 3-10-2020 demand letter explicitly states: "Cease and Desist of Direct and Contributory Copyright Infringement at Internet Protocol ("IP") addresses…" *See* Doc. #2302-1 at p.2. The 3-10-2020 demand letter made specific factual assertions and demands:

(1) Frontier subscribers at over 89,900 IP addresses pirated copies of MCCs' movies obtained from a piracy website;

(2) Certain MCCs had already filed a lawsuit in the District of Hawaii against the piracy website operator and some of the website's users;

(3) MCCs' agents had sent over 191,300 DMCA notices to Frontier concerning piracy for over 89,900 IP addresses;

6

(4) MCC's agents had sent between 362 and 572 DMCA notices to Frontier for four specific IP addresses;

(5) MCCs believe Frontier is liable for its subscribers' copyright infringements in violation of 17 U.SC §501

(6) Demanded that by April 10, 2020 Frontier terminate all Internet accounts for the IP addresses listed in the letter and for which MCCs' agents sent more than one DMCA notice and pay MCCs a portion of their damages;

(7) Stated that MCCs "will consider any and all legal action necessary to protect their valuable intellectual property rights under federal and state law"; and

(8) Included as an attachment example DMCA notices sent by MCCs' agents concerning piracy of the movies *Once Upon a Time in Venice*, *The Hitman's Bodyguard*, and *Welcome Home* [Doc. #2302 at pp.7-18].

An example from commentary of The Sedona Conference of when an organization has a duty to preserve information is instructive on the issue of whether the MCCs' 3-10-2020 demand letter triggered Frontier's obligation to preserve relevant data:

> Illustration II: An organization receives a demand letter from an attorney on behalf of a client that contains a specific threat of a trade secret misappropriation claim. Furthermore, the organization is aware that others have been sued by the attorney's client on similar claims. Given these facts, there is a credible threat of litigation, and the organization has a duty to preserve discoverable information. The client's duty to preserve arises no later than the date of the decision to send the letter, and, in some circumstances, may arise earlier.

The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 Sedona Conf. J. 341, 375 (2019).

MCCs' 3-10-2020 demand letter made a specific threat that Frontier was liable for copyright infringement for its subscribers' infringements at IP addresses assigned to Frontier's

customers just as in Illustration II.  Further, the MCCs' 3-10-2020 demand letter referred to the litigation in the District of Hawaii.  Accordingly, Frontier had knowledge that others had been sued by MCCs' counsel as pointed out in Illustration II.

Guidance from commentary of The Sedona Conference of factors that may be pertinent to an organization in making a good-faith reasonable evaluation of whether litigation should be reasonably anticipated is also instructive on this issue.  Some of the factors provided by the Sedona Conference are: (i) Whether the organization has knowledge about similar claims; (ii) The relevant experience in the industry with regard to such claims; and (iii) Press coverage regarding complaints against other similarly situated.  *See id.* at 381.  Documents produced by Frontier in discovery show that it had extensive discussions internally and with its outside counsel about ISP copyright infringement lawsuits such as *BMG v. Cox* and *Sony v. Cox* that were widely reported in the press[3].  Documents produced by Frontier in discovery also show that the ISP industry had extensive discussions concerning *BMG v. Cox* style lawsuits.[4]  Frontier even approved an industry amicus brief in support of the ISPs in at least one of these cases.[5]  Accordingly, the 3-10-2020 demand letter triggered Frontier's duty to preserve evidence.[6]

---

[3] *See, e.g.*, FRONTIER_000861 (article to Greifzu discussing Court ordering Cox to pay BMG eight million in attorneys' fees in *BMG v. Cox*); FRONTIER_00092395-FRONTIER_00092397 (email from Frontier's outside counsel to Greifzu concerning Fourth Circuit decision in *BMG v. Cox*; FRONTIER_00086724 (email from Frontier's outside counsel to Greifzu informing of *Sony v. Cox* lawsuit); FRONTIER_00038265 (discussion of *Warner v. Charter*).
[4] *See* FRONTIER_00034272-FRONTIER_00034273 (discussion from USTelecom concerning filing amicus brief in support of Cox in its appeal of *Sony v. Cox*).
[5] *See* FRONTIER_00166880-FRONTIER_00166920 (US Telecom Amicus Brief).
[6] For avoidance of doubt, MCCs intend to argue in their motion for 37(e) sanctions that Frontier's duty was triggered earlier on Sept. 19, 2016 when it received a demand letter from third-party Rightscorp asserting that "we see the same ongoing pattern of infringement on your network that we saw on the Cox network that led to the $25 million judgment for our client BMG." FRONTIER_00032655-FRONTIER_00032658; *See, e.g., Warner Bros. Records Inc. v. Charter Commc'ns*, No. 19-cv-00874-RBJ-MEH, 2022 WL 2056394, 2022 U.S. Dist. LEXIS 104655, at *29 (D. Colo. Mar. 24, 2022) ("Defendant received legal notices in 2012 (unrelated to this case) (the "Rightscorp Hold") prompting Defendant to create a legal hold").

On Mar. 31, 2020, Frontier's in house legal counsel Paul Garcia sent a reply letter to MCCs that: (i) explicitly rejected all demands of MCCs' 3-10-2020 demand letter; (ii) stated Frontier was a conduit service provider covered by Section 512(a) because it regularly terminates customers who violate its repeat infringer policy; and (iii) Frontier would "vigorously defend against claims…and seek…their reasonable attorneys' fees…" Doc. #2302-2 at p.4.  Thus, Frontier recognized that MCCs' 3-10-2020 demand letter explicitly threatened lawsuit, and Frontier stated it would vigorously defend itself and seek its own attorneys' fees.  Because Frontier's own reply letter *also* made a specific threat (of seeking attorneys' fees) and that it would assert its own affirmative defense claim of the Section 512(a) safe harbor just like Illustration II of the Sedona Conference example, Frontier's reply letter also triggered its own obligation to preserve evidence that supported its argument that it is covered by Section 512(a) and eligible for an attorney fee award against MCCs.

**B.     MCCs made a preliminary showing of spoliation.**

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

Spoliation of electronically stored information ("ESI") is governed by Rule 37(e) of the Federal Rules of Civil Procedure, which was amended in 2015 to read as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;

        (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

        (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

    MCCs made a showing in their Aug. 17, 2024 discovery letter that Frontier had never stopped deleting subscribers IP address assignment records older than 18 months right through fact discovery and did not stop deleting system error logs until Mar. 21, 2021. *See* Doc. #2413 at p.2.  In Frontier's Aug. 23 response letter in opposition, it admits that it kept deleting system error log files until Mar 2021. *See* Doc. #2420 at p.3.  Frontier also admitted that it never stopped deleting IP address assignment records. *See id.* ("Frontier could not have seen a reason in 2020 or later to separately preserve RADIUS data for the same purpose")[7].  But Frontier kept deleting this IP address assignment history records even after this Court stated in the Nov. 21, 2023 hearing that it was granting MCCs' motion over Frontier's objections for a Cable Act Order.  *See In re Frontier Commc'ns Corp.*, 655 B.R. 413, 415 (Bankr. S.D.N.Y. 2023).  Frontier's response letter mainly argues that it did not delete this information with intent to deprive MCCs and that MCCs suffered no prejudice.  *See* Doc. #2420 at pp.5-6.  MCCs dispute these points.  However, MCCs have made a preliminary showing of spoliation.

**C.**    **The Court should order Frontier to produce all internal litigation hold letters it issued during the claim period since MCCs have made a preliminary showing of spoliation.**

---

[7] Frontier's excuse that it didn't know subscriber identifications were relevant cannot be taken seriously.  In the ISP lawsuits *BMG v. Cox*, *Sony v. Cox* and *Warner v. Charter* orders for subscriber identifications were issued.  *See Bmg Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 199 F. Supp. 3d 958, 973 (E.D. Va. 2016) ("…BMG did not attempt to gather this evidence from the list of Cox subscribers BMG received during discovery."); *Sony Music Entm't v. Cox Communs., Inc.*, No. 1:18-cv-950, Doc. #140 (E.D. Va. May 6, 2019); and *Warner Bros. Records Inc. v. Charter Communications, Inc.*, No. 1:19-cv-00874-RBJ-MEH, Doc. #182 (D. Colo. June 5, 2020).

The litigation hold letters are discoverable when there has been a preliminary showing of spoliation. *See Keir v. Unumprovident Corp.*, No. 02-CV-8781(DLC), 2003 U.S. Dist. LEXIS 14522, 2003 WL 21997747 at *6 (S.D.N.Y. Aug. 22, 2003)(allowing detailed analysis of emails pertaining to defendant's preservation efforts after finding that electronic records which had been ordered preserved had been erased). *See also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 nn.15-16 (S.D.N.Y. 2004) (disclosing the details of counsel's litigation hold communication after discovering that at least one e-mail had never been produced); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 634 (D. Colo. 2007)(permitting plaintiff to take a Rule 30(b)(6) deposition to explore the procedures defendants' counsel took "to identify, preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the present litigation had began); *United Illuminating Co. v. Whiting-Turner Contracting Co*, No. 3:18 CV 327 (RNC), 2020 U.S. Dist. LEXIS 202354, at *11 (D. Conn. Oct. 30, 2020) (litigation letters may be discoverable upon a finding of spoliation). In a similar copyright infringement case against an ISP, the District of Colorado ordered the ISP Defendant to disclose evidence of legal hold instructions issued to custodians. *See After II Movie, LLC v. Wideopenwest Fin., LLC*, Civil Action No. 21-cv-01901-DDD-MEH, Doc. #186, p.4 (D. Colo. Nov. 13, 2023) (attached as Exhibit "1").

As pointed out above, MCCs have made a preliminary showing of spoliation. Accordingly, MCCs are entitled to discovery of Frontier's litigation hold letters during the claim period. This Court has already determined that the relevant claim period for discovery is from Oct. 14, 2016. *See In re Frontier Commc'ns Corp.*, 655 B.R. 413, 421 (Bankr. S.D.N.Y. 2023). Therefore, MCCs respectfully request the Court to order Frontier to produce all litigation hold letters issued from Oct. 14, 2016 and permit discovery on Frontier's implementation of the holds including Frontier

answering if and when it informed its counsel that it was still deleting IP address assignment records from its RADIUS database. *See* Doc. #2439.

Assuming *arguendo* that MCCs are not entitled to discovery of the litigation hold letters, MCCs are still entitled to discovery on the existence or non-existence and timing of a litigation hold letter. Indeed, a Court can conclude that a party failed to take reasonable steps to preserve ESI when a party failed to timely institute a formal litigation hold. *See Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 177 (S.D.N.Y. 2022). MCCs are also entitled to discovery on whether the litigation holds were properly implemented. *See Bagley v. Yale Univ.*, 318 F.R.D. 234, 241 (D. Conn. 2016) (noting that factors justifying an adverse inference are indefensible failure to issue a litigation hold and failure to properly implement a litigation hold after it was issued).

### D.     Frontier should not be permitted to have it both ways.

Assuming *arguendo* that the Court agrees with Frontier that the existence of the litigation hold letters and its compliance with litigation hold letters is protected from discovery by the attorney client privilege, Frontier should not be permitted to argue in opposition to MCCs forthcoming sanction motion that its counsel properly issued litigation hold letters to which Frontier properly complied. Frontier cannot be permitted to have it both ways and use attorney client privilege as a sword and a shield. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

### III. CONCLUSION

For the foregoing reasons, the Court should order Frontier to disclose all litigation hold letters issued from Oct. 14, 2016 and permit discovery on the details of implementation of the litigation holds including if and when Frontier informed its counsel that it was still deleting IP address assignment records from its RADIUS database.

12

DATED: Kailua-Kona, HI, Oct. 25, 2024.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

## CERTIFICATE OF SERVICE

I hereby certify that on Oct. 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all ECF recipients in the above-captioned matter.

Pursuant to the Case Management Order #1 [Doc. #2229] applying Part VII rules including Fed. R. Bankr. P.7005 to this contested matter – Movie Company Claimants have complied with their service obligations by serving counsel for all Parties in this contested matter pursuant to Fed. R. Civ. Pro 5(b)(2)(E) for service by the above ECF submission.

Dated: Kailua-Kona, HI Oct. 25, 2024

/s/ Kerry S. Culpepper
Kerry S. Culpepper (admitted pro hac vice)
**CULPEPPER IP, LLLC**
75-170 Hualalai Rd., STE B204
Kailua-Kona, HI 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
Emails: kculpepper@culpepperip.com