# EXHIBIT T

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, et al., | Case No. 20-22476 (MG) |
| Reorganized Debtors. | (Jointly Administered) |

### FRONTIER'S SUPPLEMENTAL RESPONSES TO THE MOVIE COMPANY CLAIMANTS' FIRST SET OF INTERROGATORIES TO DEBTOR NOS. 1-19

Pursuant to Federal Rules of Bankruptcy Procedure 7033, including S.D.N.Y. Local Bankr. Rule 7033-1, and Federal Rules of Civil Procedure 33, the Reorganized Debtors (collectively, "Frontier") hereby supplements their responses to the Movie Company Claimants' ("MCC") First Set of Interrogatories to Debtor Nos. 1-19 dated May 11, 2024. Frontier supplements its responses based on negotiations and agreements with MCCs in a collective effort to resolve discovery disputes without burdening the Court. Frontier's responses are based on such information as is reasonably available to it at the time of response. Further independent discovery, independent investigation, legal research and analysis by Frontier or its counsel may supply additional facts, information or documents, or add meaning to known facts, information or documents. Frontier's response is given without prejudice to Frontier's right to provide evidence regarding any subsequently discovered or compiled facts, information or documents, or to supplement or modify Frontier's answers and objections (collectively, "Responses") set forth below.

## GENERAL OBJECTIONS

Frontier makes the following general responses and objections ("General Objections") to each Definition, Instruction and Interrogatory propounded by MCC to Frontier. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar,

or additional objections or partial responses to individual Interrogatories does not waive any of Frontier's General Objections.

1. By responding to these Interrogatories, Frontier does not waive its right to object to the use of the discovery responses at any time or on any ground in this or any other proceeding. In addition, discovery in this action is ongoing and, therefore, Frontier reserves the right to amend any response in light of subsequently discovered facts or based on documents which are not currently in its possession, custody or control.

2. By responding to these Requests, Frontier does not in any way adopt MCC's definitions of words and phrases contained in their Interrogatories. Frontier objects to those definitions to the extent they are inconsistent with either (a) the definitions set forth by Frontier in these responses, or (b) the ordinary and customary meaning of such words or phrases.

3. Frontier objects to the definitions, instructions and individual Interrogatories to the extent that they are vague, ambiguous, overbroad, unduly burdensome, or purport to impose obligations that are inconsistent with or in excess of those obligations required by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of the United States Bankruptcy Court for the Southern District of New York. Frontier will interpret and respond to the Interrogatories in the manner prescribed by the same.

4. Frontier objects to the definitions, instructions and individual Interrogatories to the extent they call for information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege or immunity under federal or state law.

119622315.3

5.  Frontier submits these Responses without conceding the relevancy or materiality of the subject matter of any Interrogatory, and without prejudice to Frontier's right to object to further discovery or to object to the admissibility of any answer at the time of hearing or trial.

6.  Frontier objects to each Interrogatory to the extent it seeks any confidential or proprietary information pertaining to Frontier's businesses, technology, or customers. Such proprietary or confidential information shall be disclosed solely pursuant to the Discovery Confidentiality Stipulation and Order entered into by the Court on December 13, 2023. (Dkt. 2243).

7.  Frontier objects to the definitions, instructions, and the individual Interrogatories as overly broad and unduly burdensome to the extent they require Frontier to provide information beyond what Frontier is able to determine based on reasonable inquiry.

8.  Frontier objects to the definitions of "you," "your," "Debtor," and "Frontier" to the extent that they purport to encompass persons and entities that are legally distinct from Frontier, to the extent that it purports to impose obligations on non-parties to this litigation, and to the extent that it seeks to require Frontier to disclose information that is not in its possession, custody or control.

9.  Frontier objects to the term "User" as vague and ambiguous. Frontier is not able to determine the identity of users of its internet service.

10. Frontier objects to the definition of "Acceptable Use Policy" as vague, ambiguous, overly broad, and as inconsistent with Frontier's own usage of the term. Frontier construes "Acceptable Use Policy" to refer to either or both of its Residential Acceptable Use Policy and its Commercial Acceptable Use Policy.

119622315.3

11.    Frontier objects to the definition of the term "lease log" as vague, ambiguous, and unintelligible.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**

Describe in detail how Frontier was able to identify  REDACTED  as the subscriber at IP address 47.187.5.70 but could not identify all the IP addresses Frontier assigned to [REDACTED] REDACTED and the lease logs in response to discovery requests.

**RESPONSE:** Frontier objects to this Interrogatory as improper, as it seeks discovery about discovery without any sufficient basis to do so. *See, e.g.*, *Kaye v. New York City Health & Hosps. Corp.*, No. 18CV12137JPOJLC, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) ("Where, as here, a party seeks 'discovery on discovery,' that party 'must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.'" (citation omitted)). Frontier further objects to this Interrogatory as directed to subject matter that was raised by MCC to and addressed by the Court, which rejected MCC's demands for sanctions and further discovery.

**SUPPLEMENTAL RESPONSE**: Frontier was unable, at the time MCCs first requested this information in late 2023, to identify all IP address assignments for  REDACTED  from 2021 and earlier because, at that time, Frontier did not maintain those IP address assignment records beyond the 18 month period necessary for its business operations, and MCC did not seek Mr. [REDACTED]'s identity until November 2023, which the Court did not approve until December 2023.

**Interrogatory No. 2:**

Describe in detail how Frontier is able to forward notices alleging copyright infringement or otherwise communicate with a subscriber assigned a certain IP address concerning notices when Frontier does not have any means to identify who is the subscriber such as the subscribers of the 20 IP addresses referred to by Frontier's counsel in Docket Entry 2306.

**RESPONSE:** Frontier objects to this Interrogatory as improper, as it seeks discovery about discovery without any sufficient basis to do so. *See, e.g.*, *Kaye v. New York City Health & Hosps. Corp.*, No. 18CV12137JPOJLC, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) ("Where, as here, a party seeks 'discovery on discovery,' that party 'must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.'" (citation omitted)). Frontier further objects to this Interrogatory as directed to subject matter that was raised by MCC to and addressed by the Court, which rejected MCC's demands for sanctions and further discovery.

**SUPPLEMENTAL RESPONSE**:  Frontier has not always been able to do so. In some circumstances, however, Frontier was able to investigate subscriber identity through manual queries on alternate databases. By 2023, it was no longer possible to do this with respect to older IP addresses.

**Interrogatory No. 3:**

From October 18, 2018 through June 2, 2021, state the number of notices alleging infringement received by Frontier.

**RESPONSE:** Frontier objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices alleging infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not

contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case.

**Interrogatory No. 4:**

Of the number of notices identified in response to Interrogatory 3, state the number of unique customers at issue.

**RESPONSE:** Frontier objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices alleging infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case.

**Interrogatory No. 5:**

Of the number of unique customers identified in response to Interrogatory 4, state the number of these unique customers that were placed in a walled garden more than 3 times.

**RESPONSE:** Frontier objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices alleging infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case.

**Interrogatory No. 6:**

Of the number of unique customers identified in response to Interrogatory 4, state the number of these unique customers that were placed in a walled garden more than 6 times.

**RESPONSE:** Frontier objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices alleging infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects

7

to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case.

**Interrogatory No. 7:**

Of the number of unique customers that were placed in a walled garden more than 3 times identified in response to Interrogatory 5, Identify the customer names and account numbers for the top 100 unique customers by the number of notices received pertaining to the customer.

**RESPONSE:** Frontier objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices alleging infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case.

**Interrogatory No. 8:**

Referring to Exhibits 1-4 of Movie Company Claimants' First Request for Production of Documents, Identify how many of the customers assigned these IP addresses were placed in a walled garden 2 or more times. Note if Frontier cannot identify the customer assigned the IP

address, Frontier should count an IP address placed in a walled garden 2 or more times as a

customer.

**RESPONSE:** Frontier objects to this Interrogatory as overly broad and unduly burdensome, as the

information requested is, to the extent available, equally available to MCC and can be ascertained

by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for

example, to the MariaDB database produced in this case and to Exhibits 1-4 of Movie Company

Claimants' First Request for Production of Documents.

**Interrogatory No. 9:**

Of the number of notices identified in Interrogatory 3, identify the number of notices

concerned allegations of copyright infringement of a Work by file name including the wording

"YTS".

**RESPONSE:** Frontier objects to this Interrogatory as unintelligible. Frontier further objects to

this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will

construe "notices concerned allegations of copyright infringement" to mean and refer solely to

DMCA notices. Frontier also objects because the vast majority of DMCA notices it received

did not contain the information required under 17 U.S.C. § 512(c) – such as contact

information for the claiming party and the verification of a good-faith belief that the

allegations in the notice were true and correct – and that it would therefore be inappropriate

and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier

further objects to this Interrogatory as overly broad and unduly burdensome, as the

information requested is, to the extent available, equally available to MCC and can be

ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers

MCC, for example, to the MariaDB database produced in this case and to documents produced

in this case in FRONTIER-2.

119622315.3

**Interrogatory No. 10:**

Of the number of notices identified in Interrogatory 3, identify the number of notices concerned allegations of copyright infringement of a Work by file name including the wording "RARBG".

**RESPONSE:** Frontier objects to this Interrogatory as unintelligible. Frontier further objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome; Frontier will construe "notices concerned allegations of copyright infringement" to mean and refer solely to DMCA notices. Frontier also objects because the vast majority of DMCA notices it received did not contain the information required under 17 U.S.C. § 512(c) – such as contact information for the claiming party and the verification of a good-faith belief that the allegations in the notice were true and correct – and that it would therefore be inappropriate and unfair to include those notices in any calculation or analysis that MCC undertake. Frontier further objects to this Interrogatory as overly broad and unduly burdensome, as the information requested is, to the extent available, equally available to MCC and can be ascertained by MCC as readily as it can by Frontier. Subject to these objections, Frontier refers MCC, for example, to the MariaDB database produced in this case and to documents produced in this case in FRONTIER-2.

**Interrogatory No. 11:**

State Your average revenue per month for an Internet service subscriber (including residential and business) since October 14, 2016 through June 30, 2021.

**RESPONSE:** Frontier does not maintain this information in the way requested in the ordinary course of business. Average revenues per internet service subscriber per month vary by location, service(s) to which the subscriber subscribes, internet technology (*e.g.*, copper, fiber, wireless), and customer type (residential or commercial), among other things, as well as over time. Frontier therefore objects to this Interrogatory, which would require Frontier to perform substantial

analysis and a large number of calculations, as unduly burdensome and disproportionate to the needs of the case. Subject to its objections, Frontier refers MCC to Frontier's quarterly reports on Form 10-Q, which provide quarterly revenue and number of subscribers and from which an approximate "average" quarterly revenue per subscriber can be calculated.

**Interrogatory No. 12:**

State Your average profit per month for an Internet service subscriber (including residential and business) since October 14, 2016 through June 30, 2021.

**RESPONSE:** Frontier objects to this Interrogatory because the information sought is irrelevant to the claim and defenses in this case. Further answering, Frontier does not maintain this information in the ordinary course of business. Average revenues per internet service subscriber per month vary by location, service(s) to which the subscriber subscribes, internet technology (*e.g.*, copper, fiber, wireless), and customer type (residential or commercial), among other things, as well as over time. Further, Frontier does not track and allocate expenses per subscriber as would be needed to answer this Interrogatory as written. Frontier further objects to this Interrogatory to the extent it seeks information that is more appropriately developed, if at all, during expert discovery. Subject to its objections, and to the extent it is able to do so, Frontier will provide data reflecting calculations of profits per subscriber with respect to certain accounts in connection with which Frontier received DMCA notices.

**Interrogatory No. 13:**

State the average length of time You retain a Customer or User, or the average customer lifetime, for Your internet services, as of each month, quarter, or year (whichever is the smallest time period for which You have information), since October 14, 2016 through June 30, 2021.

**RESPONSE:** Frontier objects to this Interrogatory as overly broad, unduly burdensome, irrelevant, and unintelligible to the extent it seeks the "average length of time You retain a ...

11

User." Frontier further objects to this Interrogatory as unduly burdensome and disproportionate to the needs of the case to the extent it would require Frontier to attempt to calculate this information. Frontier further objects to this Interrogatory to the extent it seeks information that is more appropriately developed, if at all, during expert discovery. Subject to its objections, Frontier refers MCC to documents produced in this case concerning churn rates: FRONTIER_00004138. Further answering, Frontier will provide data reflecting average customer lifetime, to the extent it is able to do so.

**Interrogatory No. 14:**

If you Answer to Request For Admission 1 is anything but an unqualified Admission, please explain when Frontier begin forwarding notices to Northwest Fiber and when Frontier updated the ARIN WHOIS records for the IP addresses it loaned to Northwest Fiber.

**RESPONSE:** Frontier objects to this Request as overbroad, vague, ambiguous, and indecipherable, particularly with respect to the term "notices," which, in contrast to the term "Notices," is not defined. Frontier further objects that this Interrogatory seeks information that is irrelevant to this litigation. Subject to its objections, Frontier states that it began forwarding DMCA notices to Northwest Fiber in or around May 2020 and was unable to update relevant ARIN WHOIS records (*see, e.g.*, FRONTIER_00002315).

**Interrogatory No. 15:**

If you Answer to Request For Admission 6 is anything but an unqualified Admission, please explain why Frontier failed to disclose any IP address assignments from 2021 and earlier to Movie Claimants.

**RESPONSE:** Frontier was unable, at the time MCC requested the information, to disclose IP address assignments from 2021 and earlier because Frontier did not maintain IP address assignment records beyond those for the 18 month period necessary for its business operations

12

and MCC did not seek any Subscriber's identity until November 2023, and the Court did not allow it until December 2023.

**Interrogatory No. 16:**

If you Answer to Request For Admission 8 is anything but an unqualified Admission, please explain why Frontier failed to disclose the identities of the subscribers assigned the 20 IP addresses to Movie Claimants.

**RESPONSE:** Frontier objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of this case. Frontier further objects to this Interrogatory as improper, as it seeks discovery about discovery without any sufficient basis to do so. *See, e.g.*, *Kaye v. New York City Health & Hosps. Corp.*, No. 18CV12137JPOJLC, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) ("Where, as here, a party seeks 'discovery on discovery,' that party 'must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.'" (citation omitted)). Frontier further objects to this Interrogatory as directed to subject matter that was raised by MCC to and addressed by the Court, which rejected MCC's demands for sanctions and further discovery.

**SUPPLEMENTAL RESPONSE:** Subject to the foregoing and its General Objections, Frontier was unable, at the time MCC first requested the information in November 2023, which the Court did not allow until December 2023, to identify certain IP address assignments from 2021 and earlier because Frontier did not maintain those IP address assignment records beyond those for the 18 month period necessary for its business operations.

**Interrogatory No. 17:**

If you Answer to Request For Admission 28 is anything but an unqualified Admission,
please fully explain Frontier's basis for denying and cite Bates Numbers for documents
supporting Frontier's denial.

**RESPONSE:** Frontier lacks knowledge or information sufficient to respond to Request for
Admission No. 28, which concerns the activities of a former subscriber.

**SUPPLEMENTAL RESPONSE**: In his declaration and deposition transcript, Mr. REDACTED
contradicts prior information conveyed by him to Frontier in writing. See Exhibits RX 001 and
RX 003. Mr. REDACTED is unreliable and his contradictory assertions untrustworthy. Frontier
therefore lacks sufficient information to admit or deny Request for Admission No. 28.

**Interrogatory No. 18:**

Set forth a complete statement of Your contention in paragraph 15 of Your Objection
[Doc. #1818] that, "The Claimants cannot establish any direct and actual copyright infringement
by Frontier subscribers, which is a prerequisite to impose any secondary liability on Frontier" and
"If any direct copyright infringement occurred, it was de minimis and not actionable" and in
paragraph 32 that "The Reorganized Debtors also made no profits as a result of the alleged
contributory or vicarious copyright infringement about which the Claimants complain" in light of
(i) multiple Frontier's subscribers admissions under penalty of perjury that they used Frontier's
service to access notorious piracy websites and downloaded and shared copies of movies from
their Internet service with Frontier; and (ii) the Movie Company Claimants and Record Company
Claimants having disclosed the more than 200,000 notices that were sent to Frontier. Your
statement must include each fact, opinion, and inference supporting this contention, each
document (by Bates number) supporting each contention, and each person with firsthand
knowledge or possession of such fact, opinion, or document.

**RESPONSE:** Frontier objects to Interrogatory No. 18 as comprising at least three distinct interrogatories. Frontier further objects to this Interrogatory as unfair and misleading, at least insofar as it asks Frontier to explain a contention(s) made on May 17, 2021 in view of purported evidence presented by MCC more recently. Frontier further objects to this Interrogatory to the extent it seeks to invade work product protection. Frontier further objects to this Interrogatory to the extent it prematurely calls for the disclosure of expert opinion. Frontier further objects to this Interrogatory as vague, ambiguous, and unintelligible, as it is not clear whether MCC wish Frontier to consider the information described in romanettes (i) and (ii) in respect of each of the three contentions at issue, or only the last. Frontier further objects to this Interrogatory as overly broad and unduly burdensome insofar as it purports to require "each fact, opinion, and inference supporting this contention, each document (by Bates number) supporting each contention, and each person with firsthand knowledge or possession of such fact, opinion, or document." MCC bear the burden of proof of their contentions, and Frontier need not identify any evidence or witness to prove what MCC cannot establish. Subject to its objections, Frontier states as follows:

First, MCC is the claimant/plaintiff and bears the burden of proving copyright infringement. Frontier bears no burden of proving a negative. MCC has failed to prove direct copyright infringement, much less secondary liability on the part of Frontier. Frontier refers MCC to Frontier's Omnibus Objection to Certain Disputed Copyright Claims filed on 5/17/21 [ECF No. 1818] and all of the filings Frontier has made in this case, including without limitation the brief in support of Frontier's motion for judgment on the pleadings.

Second, notwithstanding MCC's allegation that "multiple Frontier's subscribers [admitted] under penalty of perjury that they used Frontier's service to access notorious piracy websites and downloaded and shared copies of movies from their Internet service with Frontier," (a) the

Interrogatory does not identify any of these subscribers, and (b) MCC have not deposed any of these purported Frontier subscribers other than REDACTED and REDACTED, Frontier has had no opportunity to cross-examine them, and any admissions they might have made to MCC (whether or not purportedly under penalty of perjury) will be inadmissible at trial. Further, Mr. REDACTED denied engaging in direct copyright infringement.

Third, notwithstanding MCC's allegation that "the Movie Company Claimants and Record Company Claimants [have] disclosed the more than 200,000 notices that were sent to Frontier," a DMCA notice is merely an allegation, not proof of infringement at an IP address, let alone by a subscriber.

Further answering, with respect to Frontier's contention that "[t]he Claimants cannot establish any direct and actual copyright infringement by Frontier subscribers, which is a prerequisite to impose any secondary liability on Frontier," with the possible exception of REDACTED, who was deposed in this case, MCC cannot prove that any file being made available at any IP address, if any, was downloaded by a Frontier subscriber or distributed to the public in whole or in part by a Frontier subscriber. Still further, Frontier directs MCC to paragraphs 15-17 of ECF No. 1818, which set forth the bases for Frontier's contention at the time it was made.

Further answering with respect to Frontier's contention that "[if] any direct copyright infringement occurred, it was de minimis and not actionable," Frontier incorporates its responses above and further directs MCC to paragraph 18 of ECF No. 1818, which set forth the bases for Frontier's contention at the time it was made.

Further answering with respect to Frontier's contention that "[t]he Reorganized Debtors also made no profits as a result of the alleged contributory or vicarious copyright infringement about

119622315.3

which the Claimants complain," Frontier states: (1) Frontier generated no marginal revenue from any infringement of copyrights occurring on its internet service as its sole revenues were derived from providing internet service and Frontier's subscribers and account holders are charged the same rate for using Frontier's internet service regardless of the use(s) made; and (2) Frontier's internet services were not profitable during the relevant period.

**Interrogatory No. 19:**

Fully describe each and every final version of Frontier's Repeat Infringer Policy that was in effect from 10/18/2016 through 7/1/2021 and identify each document (by Bates number) supporting Your description, and each person with firsthand knowledge or possession of such Repeat Infringer Policy.

**RESPONSE:** Frontier objects to this Interrogatory as overly broad and unduly burdensome, as well as vague and ambiguous to the extent it asks Frontier to "describe each and every version of Frontier's Repeat Infringer Policy" and for the identification of "each person with firsthand knowledge or possession" of its policies. Subject to its objections, Frontier directs MCC to, *e.g.*, its Commercial Acceptable Use Policy (*e.g.*, FRONTIER_00000439) and its Residential Acceptable Use Policy (*e.g.*, FRONTIER_00000443). These policies were made publicly available, including to all Frontier Subscribers and account holders.

119622315.3

## <u>VERIFICATION AS TO ANSWERS</u>

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing

answers are true and correct based on information currently available to me.

Executed on August 1, 2024

*Paul R. Garcia*

Paul R. Garcia

119622315.3

Dated: August 1, 2024

REORGANIZED DEBTORS

By: */s/ Stanley A. Twardy, Jr.*
Stanley A. Twardy, Jr.
**DAY PITNEY LLP**
One Stamford Plaza
263 Tresser Boulevard, 7th Floor
Stamford, CT 06901
Tel: (203) 977-7368
Fax: (866) 458-1037

Elizabeth A. Alquist
Matthew J. Letten
**DAY PITNEY LLP**
225 Asylum Street
Hartford, CT 06103
Tel: (860) 275-0137
Fax: (860) 881-2456

Jonathan B. Tropp
Joshua W. Cohen
**DAY PITNEY LLP**
195 Church Street, 15th Floor
New Haven, CT 06510
Tel: (203) 752-5000
Fax: (203) 901-1733

Ildefonso P. Mas (Admitted Pro Hac Vice)
**AKERMAN LLP**
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel: (312) 634 5700
Fax : (312) 424 1900

*Co-Counsel for Reorganized Debtors*

119622315.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2024, the foregoing document was served on counsel of record by email.


*/s/ Jonathan B. Tropp*
Jonathan B. Tropp