**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FRONTIER COMMUNICATIONS CORPORATION, *et al.*,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 20-22476 (MG)<br><br>(Jointly Administered) |

**ORDER COMPELLING PRODUCTION OF FRONTIER'S LITIGATION HOLD NOTICES**

On October 15, 2024, this Court held a hearing (the "Hearing," transcript at ECF Doc. # 2451 ("Transcript")) to address a handful of discovery disputes which arose in the above-captioned action. During the hearing, the Court requested briefing on, among other topics, whether Frontier Communication Corp.'s ("Frontier") internal litigation hold memoranda are privileged. In response, the MCCs filed a brief ("MCC Brief," ECF Doc. # 2454) seeking entry of an order requiring Frontier to disclose all litigation hold notices issued from October 14, 2016 onward and permitting discovery "on the details of implementation of the litigation holds including if and when Frontier informed its counsel that it was still deleting IP address assignment records from its RADIUS database." (MCC Brief at 12.) Frontier in its brief ("Frontier Brief," ECF Doc. # 2453) does not seek specific relief, but argues that its litigation hold memoranda are privileged. Frontier also submitted its litigation hold memoranda which pertain to this case to chambers for *in camera* review, along with updated privilege logs containing the litigation hold memoranda issued in response to the MCCs' and RCCs' claims in this case.

This Order addresses Frontier's claims of privilege over both (1) its litigation hold memoranda and (2) the answer to a question posed by the MCCs: "When did Frontier inform its

counsel that it was still deleting IP address assignment records from the RADIUS database?" (ECF Doc. # 2439). For the reasons discussed below, Frontier's Objection is **SUSTAINED IN PART and OVERRULED IN PART**: Frontier is **ORDERED** to produce redacted copies of those litigation hold memoranda which relate to this case and which it produced to chambers. Frontier's privilege objection to the MCCs' question concerning deletion of data from the RADIUS database is, however, **SUSTAINED**.

## I. LITIGATION HOLD NOTICES

During the course of fact discovery, Frontier refused to answer two questions posed by the MCCs: "When did Frontier issue a legal hold notice in response to MCCs' demand letter?," and, "When did Frontier inform its counsel that it was still deleting IP address assignment records from the RADIUS database?" (ECF Doc. # 2439.) Frontier maintained that answers to those questions were protected by attorney-client privilege and the attorney work-product doctrine. (ECF Doc. # 2440.) At the Hearing, the Court held that "[t]he fact . . . that Frontier imposed a legal hold on documents that relate to claims asserted by the RCC or MCC . . . [is] not" privileged. (Transcript at 16:7-14.) The Court clarified that "information regarding the litigation hold, the scope, the changes to it . . . [w]hen [the holds] were imposed, to whom it was imposed, and what steps were taken" to comply with it is not privileged. (*Id*. at 23:24-24:3; *see also id.* at 24:7-22 ("[E]xcept perhaps if there was a letter from outside counsel to Frontier that addressed the legal issue or the scope of a preservation hold, that letter may or may not be privileged. But a memo within Frontier instructing that a litigation hold be placed, the scope, what documents were to be preserved is not privileged . . . . [W]hat is clear to me is the instruction within Frontier to impose a litigation hold and what documents should be held is not privileged.").) The Court required Frontier to answer the first of the MCCs' questions at the

2

Hearing, and Frontier disclosed that its first litigation hold related to this case was circulated on January 25, 2021. (*Id.* at 18:20-19:2.) Frontier also identified all individuals to whom the January 25 litigation hold was sent, and by whom it was sent (*id.* at 19:10-20:17); it also explained that the scope of the litigation hold changed with time as more hold notices were sent (*id.* at 22:15-19). Frontier maintained privilege over the litigation holds themselves, prompting the Court to order briefing on the matter. (*Id.* 20:21-25:22.)

Along with its brief, Frontier submitted copies of the litigation hold notices related to this case for *in camera* review, along with updated privilege logs which include these litigation hold notices.

Upon review of the litigation hold notices, the Court finds Frontier's claims of privilege are overbroad. Some of the documents contain *some* privileged information that should be protected. Redaction of privileged information rather than wholesale sealing is appropriate. For the most part, the litigation hold notices instruct employees how to comply with retention obligations and do not contain the hallmarks of attorney-client communications or attorney work product. "[W]here a litigation hold notice merely describes document retention practices or instructions for preservation, courts have rejected claims of attorney-client privilege" as "a document is not privileged merely because it was prepared by an attorney for a client"—the document must "contain confidential communication relating to legal advice." *Homeland Ins. Co. of Delaware v. Indep. Health Ass'n, Inc.*, No. 22-CV-00462-WMS-HKS, 2024 WL 4308312, at *7–8 (W.D.N.Y. Sept. 26, 2024) (cleaned up). Frontier's memoranda merely "relate[] to standard document-preservation instructions"—what to preserve, how to preserve it—and so fall outside the scope of the attorney-client privilege. *Id.*; *see also Bagley v. Yale Univ.*, 318 F.R.D. 234, 240 (D. Conn. 2016) (holding that attorney-client privilege does not apply when the

"predominant purpose" of a litigation hold notice "was to give recipients forceful *instructions* about what they must do, rather than *advice* about what they might do" (emphasis in original)). And as for the work product doctrine, it "is not actually a privilege, but rather a qualified immunity from discovery," codified in Fed. R. Civ. P. Rule 26(b)(3), the purpose of which "is to protect an attorney's mental processes so that the attorney can analyze and prepare for the client's case without interference from an opponent." 6 MOORE'S FEDERAL PRACTICE, § 26.70[1] (Matthew Bender 3d ed.). Litigation hold notices that contain instructions and not an attorney's mental impressions are not the kind of attorney work product protected by the doctrine. *See Bagley*, 318 F.R.D. at 240 (finding that litigation hold notices which provide document preservation instructions do not implicate the work product doctrine).

The MCCs, however, ask too much by demanding Frontier's litigation hold notices dating back to 2016. First, while the question of whether Frontier's litigation hold notices *relating to the MCCs' and RCCs' claims in the present case* was clearly teed up by this privilege dispute, the request for documents dating back to 2016 comes as a surprise to Frontier—and one extremely close to the end of fact discovery, which in fact has closed. Second, the MCCs do not explain in their brief why litigation holds *unrelated* to the present case are relevant to their spoliation argument. To ask for unrelated litigation holds from 2016 onward requires a generous reading of the already-generous relevance standard. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (stating that "relevance" under Rule 26(b)(1) of the Federal Rules of Civil Procedure has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). If the MCCs plan to argue in their Rule 37(e) briefing that Frontier was obligated to produce

4

documents from September 2016 onward, they have not done so in their brief and thus have not borne their burden of showing the relevance of their document request.

In issuing this order, this Court does not rule on *when* Frontier was required to implement a litigation hold. This question will be fully addressed in the parties' forthcoming Rule 37(e) briefing, and it would be premature to rule on it now. The Court also does not rule on whether the MCCs made a "preliminary showing" of spoliation by Frontier, as they aver in their brief. (MCC Brief at 9–10.) All questions of spoliation will be addressed after the Rule 37(e) briefing is completed.

The Court reviewed the litigation hold memoranda provided by Frontier and will permit Frontier to redact the following information:

- PRIV00000398: second paragraph at FRONTIER_00166960: redact the last full sentence
- PRIV00000399: first paragraph at FRONTIER_00166961: redact the last full sentence
- PRIV00000401: first paragraph at FRONTIER_00167066: redact the last full sentence
- PRIV00000402: first paragraph at FRONTIER_00167067: redact the last full sentence
- PRIV00000560: first full paragraph on page 1: redact the last full sentence (after "any such Material")
- PRIV00000561: second full paragraph on page 1: redact the last full sentence
- PRIV00001233: redact the cover email (from "From: Garcia, Paul" to "Best, Paul") on page 1 and the last sentence in the first full paragraph on page 2
- PRIV00001234: second full paragraph on page 1: redact the last sentence
- PRIV00001235: redact the cover email (from "From: Garcia, Paul" to "Thanks. Paul") on page 1 and the first full sentence on page 2
- PRIV00001881: redact the bolded sentence which stretches from page 1 to page 2

- PRIV00001882: redact the bolded sentence which stretches from page 1 to page 2
- PRIV00001883: redact the last sentence in the second full paragraph of the litigation hold memorandum on page 1
- PRIV00001884: redact the last sentence of the second full paragraph on page 1
- PRIV00001885: redact the last sentence of the second full paragraph on page 1
- PRIV00001886: redact the last sentence of the second full paragraph on page 1

The Court **ORDERS** Frontier to produce the above-listed documents to the plaintiffs in redacted form.

## II.    RADIUS DATABASE QUESTION

The MCCs again ask too much by seeking to force Frontier to answer the following question: "When did Frontier inform its counsel that it was still deleting IP address assignment records from the RADIUS database?"  This question clearly seeks attorney-client-privileged information, as this information was more than likely conveyed (if it was conveyed) by Frontier to its counsel to enable its counsel to provide legal advice.  *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (stating that the attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice").  To this extent, Frontier's privilege objection to this question is **SUSTAINED.**

**IT IS SO ORDERED.**

Dated:    November 19, 2024
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge

6