UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FRONTIER COMMUNICATIONS CORP., *et al.*,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 20-22476 (MG)<br><br>(Jointly Administered) |

## ORDER ON EVIDENTIARY DISPUTE

The Movie Company Claimants ("MCCs") object (at ECF Doc. # 2482, "MCC Letter") to three excerpts of declarations Frontier relies upon in its response (at ECF Doc. # 2469) to the MCCs' motion for spoliation sanctions (at ECF Doc. # 2464).

First, the MCCs object to the portion of Philippe Levan's declaration (ECF Doc. # 2469-28) in which he states that Frontier's outside counsel David Weslow told him to extend the data retention period for the DMCA Database's Reports table from one day to 12 months. Levan averred that he did not know why this change was made, but "it was not made in connection with any claims or threatened claims against Frontier of which I am aware." (*Id*.) The MCCs claim that Frontier should have provided the underlying communications between itself and Weslow, and argue that Frontier "should not be permitted to argue it changed its retention time based upon advice of outside counsel rather than in response to demand letters without producing the outside counsel communications." (MCC Letter at 1–2.) Frontier explains that it is not putting up an advice-of-counsel defense, but rather merely asserting that "there was no known claim or threat that precipitated the change in its practice. Mr. Levan's discussion in his declaration of a fact that emerged in his deposition – that the change in practice was precipitated by the receipt of guidance from Mr. Weslow – was neither intended to disclose nor to suggest reliance on the content of that advice." (ECF Doc. # 2485.)

"A client who claims that he acted on advice of counsel cannot use the privilege to prevent inquiry into the communications that the client and lawyer had about that advice . . . . There is a compelling notion that the adversary cannot be stonewalled by the simultaneous assertion of the advice of counsel defense and the privilege. Put another way, the attorney-client privilege can be used to shield information, but it cannot be used as a sword against the adversary. If the rule were otherwise, a claim of reliance on counsel would be immune from a showing that, in fact, the defendant had received overwhelming advice to the contrary . . . or that the lawyers' advice was in fact based on misinformation coming from the client." *S.E.C. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 3366491, at *2 (S.D.N.Y. July 27, 2011), *modified on reconsideration sub nom. S.E.C., Inc. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 3841591 (S.D.N.Y. Aug. 18, 2011), *and modified on reconsideration sub nom. S.E.C., Inc. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 4055408 (S.D.N.Y. Aug. 19, 2011).

Frontier is not asserting an advice-of-counsel defense. The fact that it was a lawyer who recommended extending the data retention period is entirely irrelevant to Levan's statement, and Levan is not claiming that he relied on legal advice when extending the duration of the data retention policy in question—rather, the crux of his statement is that the length of retention was extended, and that Levan himself was unaware of a litigation-related reason for this extension. This objection is **OVERRULED**.

Second, the MCCs object to paragraphs 6–8 of the declaration of Albert Mauri (ECF Doc. # 2469-30), in which Mauri, a Frontier employee and part of its cybersecurity team, avers that he reviewed "Frontier's records with respect to any legal holds instituted with respect to Cecilia Stiber, a former Frontier in-house counsel." Mauri states that, at the time of Stiber's departure on April 28, 2017, there was only one legal hold in place involving her, which was

2

"expressly described as a strategic hold" which did not concern copyright or DMCA issues, and which was lifted on September 12, 2017.  (*Id*.)  The MCCs object to this declaration on hearsay and best evidence grounds (Fed. R. Evid. 802 and 1002, respectively), complaining that Frontier has not produced this legal hold or the other records to which Mauri referred.  (MCC Letter at 2.)  Frontier points out that the MCCs never requested legal holds unrelated to this case, but offered to submit the "underlying business record reviewed by Mr. Mauri" into evidence.  (ECF Doc. # 2485 at 3.)

"An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.  If Frontier intends to rely on the content of the legal hold and the document "expressly describ[ing the legal hold] as a strategic hold," it must produce original copies of those documents and submit them into evidence.  Frontier is **ORDERED** to produce those documents to the MCCs and, if it asserts any privilege over these documents or any portion thereof, to submit them to the Court for *in camera* review and to provide the Court and the plaintiffs with an updated privilege log.

Finally, the MCCs object to the use of Appendix C (ECF Doc. # 2469-26) on the grounds that it is not a factual summary under Fed. R. Evid. 1006, but rather "Frontier's inaccurate opinion of each document."  (MCC Letter at 2.)  The MCCs do not explain how Appendix C reflects Frontier's opinions and, if it does, how those opinions are inaccurate.  Appendix C is a summary of subpoenas the MCCs mailed to Frontier's subscribers, the responses the MCCs received, and any further discovery that resulted.  (*See* ECF Doc. # 2485 at 2.)  Frontier offered to make the underlying documents available to the MCCs and to produce them to the Court as well, in order to comply with Fed. R. Evid. 1006.  (*Id*.)

3

The Court has reviewed Appendix C and determined that it is a summary of voluminous materials admissible as evidence under Fed. R. Evid. 1006. Frontier is **ORDERED** to produce the underlying documents to the MCCs and the Court.

**IT IS SO ORDERED.**

Dated:  December 26, 2024
        New York, New York

                                                    /s/ Martin Glenn
                                                    MARTIN GLENN
                                                    Chief United States Bankruptcy Judge