DAY PITNEY LLP

BOSTON CONNECTICUT FLORIDA NEW JERSEY NEW YORK PROVIDENCE WASHINGTON, DC

**STANLEY A. TWARDY, JR.**
Attorney at Law

One Stamford Plaza, 7th Floor
263 Tresser Boulevard
Stamford, CT 06901
T: (203) 977-7368 F: (866) 458-1037
satwardy@daypitney.com

January 17, 2025

**VIA E-FILING**

Chief Judge Martin Glenn
U.S. Bankruptcy Court, S.D.N.Y.
One Bowling Green
New York, NY 10004-1408

Re: In re: Frontier Communications Corp., No. 20-22476-mg

Dear Chief Judge Glenn:

On January 10, 2025, Frontier Communications Corporation ("Frontier") produced to the Record Company Claimants ("RCCs") and Movie Company Claimants ("MCCs") two spreadsheets reflecting the results of Frontier's investigation of certain questions that RCCs had raised concerning RCC124.[1, 2] We believe these spreadsheets – together with documents Frontier previously produced in the course of discovery – provide the best information available concerning the questions RCCs raised regarding RCC124, and we are submitting these two spreadsheets to the Court by email with a copy of this letter.

We understand the Court to have ordered Frontier to produce to RCCs and MCCs the documents and communications comprising Frontier's investigation as well, or to submit those documents to the Court for its *in camera* review. (ECF No. 2488.) To comply with this directive, Frontier is today producing to RCCs and MCCs 33 documents for the period from June 12, 2024, through December 29, 2024, and submitting for *in camera* review to the Court using Box an additional 27 documents from the same period over which Frontier claims the attorney-client privilege and/or work-product protection. We have enclosed a privilege log related to the materials Frontier is submitting for *in camera* review. We will provide the Court with hard copy versions of the documents submitted by Box upon request. Additionally, we have collected documents for the

[1] As the Court is aware, RCC124 is a spreadsheet created by Frontier at RCCs' request, which lists subscribers who (1) received termination letters and (2) for whom Frontier identified an account termination or data disconnect date in its DPI system. Frontier produced this document to RCCs on June 11, 2024.

[2] Frontier had previously anticipated providing this information by January 6, 2025, but on that date, Frontier recognized certain matters requiring additional investigation, which it completed as expeditiously as possible. On January 10, 2025, Frontier produced the two spreadsheets informally, assigning them the document numbers FRONTIER_00179529 and FRONTIER_00179530. We subsequently realized that these numbers were previously assigned to other documents and have reproduced the two spreadsheets with the corrected document numbers FRONTIER_00179941 and FRONTIER_00179942.





period from December 30, 2024, through January 10, 2025, and we will supplement Frontier's production, *in camera* submission, and privilege log as soon as possible.[3]

In distinguishing between documents that Frontier is producing directly to RCCs and MCCs and documents that Frontier is submitting for *in camera* review, Frontier has been guided by the Court's previous orders. (ECF Nos. 2488 & 2489.) Frontier has taken note of the Court's practice of considering each document independently rather than within its document "family." In prior productions, Frontier regarded attachments to a privileged email as privileged in that context (though the same document may have been produced separately if not otherwise privileged). In its Order (ECF No. 2489), the Court frequently sustained Frontier's privilege objections to a parent email while ordering Frontier to produce attachments that the Court deemed not to be privileged. Accordingly, in Frontier's most recent production, we have reviewed each document independently and have produced to RCCs and MCCs documents that would not be privileged standing alone. In doing so, Frontier understands itself to be complying with this Court's Orders (ECF No. 2488 (directing Frontier to "look to [ECF No. 2489] to guide it in making subsequent assertions of privilege or work product") and does not waive any privilege or work product claims.

We recognize and understand that the Court also determined in a previous order that "Frontier waived privilege over fact work product related to the 'matter' of the spreadsheet when it sent the spreadsheet." (ECF No. 2489 at 3.) Notwithstanding the Court's conclusions with respect to certain documents previously submitted, Frontier respectfully asks the Court to evaluate its claims of privilege and work product with respect to the new documents being submitted today in view of the two spreadsheets Frontier has produced disclosing the results of its investigation – *i.e.*, the facts it determined through that investigation. (*See* ECF No. 2476.) The enclosed privilege log identifies document families so that the Court can see which documents reflect, for example, preliminary results of Frontier's investigation that were provided to counsel for advice and guidance in the process of generating the completed results of the investigation. If the Court determines that Frontier should produce additional materials to RCCs and MCCs, Frontier will promptly comply with the Court's order.

Upon completion of the Court's *in camera* review and any supplemental production ordered by the Court, Frontier will make Jesse Ross available to RCCs and MCCs for further deposition to answer to the best of Frontier's ability any remaining questions they may have.

Respectfully submitted,

Stanley A. Twardy, Jr.

Stanley A. Twardy, Jr.

cc: All Counsel of Record

[3] Frontier divided its collection of documents into two batches as this allowed Frontier to collect documents up through December 29, 2024, while its investigation was ongoing.