**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, *et al.*, | ) Case No. 20-22476 (MG) |
| Reorganized Debtors. | ) (Jointly Administered) |

### ORDER GRANTING IN PART THE MCCS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF FRONTIER EXPERTS

Pending before the Court is the Movie Company Claimants' (MCCs) motion *in limine* (the "Motion") seeking to exclude the testimony of four of Frontier Communications Corporations' ("Frontier") experts: Courtney Fletcher, Keith Epstein, Andreas Groehn, and Christopher Sprigman, from, *inter alia*, testifying about events prior to September 2, 2019. Frontier has submitted a response ("Response"), and the MCCs have submitted a reply ("Reply"). For the following reasons, the MCCs' MIL is **GRANTED IN PART**.

## I. BACKGROUND

The following facts are derived from the parties' submissions, including the Joint Stipulation of Facts (ECF Doc. # 2460 ("Joint Stipulation of Facts" or "Joint Stip.")), and this Court's recent Memorandum Opinion on Spoliation Motion (*In re Frontier Commc'ns Corp.*, 666 B.R. 260 (Bankr. S.D.N.Y. 2025), ECF Doc. # 2498, the "Spoliation Opinion").

### A. Deletion of Frontier Data Predating September 2019

Since at least 2016, the MCCs have submitted notices (the "Notices") to Frontier alleging that IP addresses assigned to Frontier's subscribers are being utilized for copyright infringement of the MCCs' works. (Spoliation Opinion at 273; Joint Stip. ¶ 1.) Frontier has historically employed several databases to process Notices, including the Frontier DMCA database (the

"DMCA Database") and the Remote Authentication Dial-In User Service database (the "RADIUS Database").  (Joint Stip. ¶ 3.)

The DMCA Database is comprised of three tables which track certain actions relevant to Frontier's efforts to respond to the Notices: Reports, Notifications, and WG_Intercept. (*Id.*; Spoliation Opinion at 275.)  The Reports table contains records (each, a "Report") of Notices that Frontier received, parsed, and processed "successfully".  (Joint Stip. ¶¶ 3, 5; Spoliation Opinion at 275.)  The Notifications table contains records of e-mail notifications ("Notifications") Frontier attempted to send to subscribers with IP addresses associated with a Notice. (Joint Stip. ¶ 3; Spoliation Opinion at 276.)  The WG_Intercept table contains records of "Walled Garden intercepts" Frontier sought to use on users of IP addresses assigned to accounts subject to a certain threshold number of Notices. (Joint Stip. ¶ 3; Spoliation Opinion at 276.)

In May 2023, Frontier produced the entirety of the DMCA Database.  (Spoliation Opinion at 280.)  The earliest Reports table data Frontier produced is dated September 2, 2019. (Spoliation Opinion at 276.)  The earliest Notifications table data dates back to October 27, 2012 (*id.* at 276–77), and the earliest WG_Intercept table data extends back to August 11, 2017. (*Id.* at 277.)  This Court concluded in the Spoliation Opinion that Frontier appropriately preserved the Records tables. (*Id.* at 287.)

The RADIUS Database contains records tracking IP addresses assigned to customers, by allowing Frontier to determine which cable modem or gateway relates to which IP address at a given time.  (Spoliation Opinion at 274.)  However, as Frontier never maintained records for each and every subscriber in the RADIUS Database, the tracking process is not available for all Frontier subscribers.  (*Id.*)  Until January 2024, Frontier purged IP address assignment records at least two years old from the RADIUS Database; at that time, Frontier shortened the preservation

2

window from 24 months to 18 months. (*Id.*)  This Court concluded in the Spoliation Opinion that Frontier should have preserved RADIUS data beginning on January 25, 2021, if not earlier.  (*Id.* at 286–87.)

### B. Proposed Expert Reports

#### a. *Courtney Fletcher*

Frontier has retained Courtney Fletcher to provide expert testimony regarding Frontier's DMCA Notice Intake and Processing System, maintained in the DMCA Database, and data statistics concerning this system and database. (Ex. 1 to Motion, the "Fletcher Report," ¶ 8.)  Mr. Fletcher purportedly relied upon the following data in preparing the Fletcher Report: (1) scripts used by Frontier's DMCA Notice Intake and Processing system from December 15, 2022 and documents related to earlier changes thereto; and (2) the three tables in the DMCA Database (Reports, Notifications, and WG_Intercepts).  (Fletcher Report ¶ 10.)  Mr. Fletcher acknowledged in a deposition that his analysis was effectively limited to post-September 2, 2019 data:

> Q. … And you explained that you used the data that was provided to you to exclude from those analyses anyone that started service prior to September 2nd, 2019, right?
>
> A. The intent was to really look at a full picture of the subscriber account that had started service after September 2nd. . . .

(Ex. 2 to Motion at 194:9-15.)

#### b. *Keith Epstein*

Keith Epstein is a retired attorney who has been retained by Frontier to opine as to the adequacy of Frontier's responses to copyright infringement notices.  (Ex. 3 to Motion, the "Epstein Report", at 5.)  In preparing the Epstein Report, Mr. Epstein relied in part on the statistical analysis performed by Mr. Fletcher.  (*Id.* at 21.)

3

The Epstein Report expressly limits the scope of its analysis to May 2019 through December 2023. (*Id.* at 5.) Mr. Epstein reiterated this time limitation during his deposition. (Ex. 4 to Motion at 113:10-18.)

### c. *Andreas Groehn*

Andreas Groehn was retained by Frontier to provide statistical analysis regarding the number of Frontier subscribers that were the subject of a DMCA notice. (Ex. 5 to Motion, the "Groehn Report," ¶ 8.) The Groehn Report is based upon data Dr. Groehn received from the three tables maintained in the DMCA Database, along with a dataset purportedly tracking the times that subscribers joined Frontier. (*Id.* ¶ 11.)

The Groehn Report acknowledges the aforementioned date cutoffs associated with the data available from the Reports table, the Notifications table, and the WG_Intercept table. (*Id.* ¶ 12.) Additionally, Dr. Groehn testified that his analysis of infringing Frontier subscribers "only includes records that start in . . . September 2019." (Ex. 6 to Motion at 32:11-20.)

### d. *Christopher Sprigman*

Christopher Sprigman is a law professor who Frontier represents was retained to provide "context on the DMCA's statutory scheme and the real-world practices of online service providers." (Response at 1; *see also* Ex. 7 to Motion, the "Sprigman Report.") Professor Sprigman confirmed during his deposition that he had not reviewed the Notices, and furthermore that he is not opining on "Frontier's system for ingesting or analyzing infringement notices in general." (Ex. 8 to Motion at 167:13-23.)

## C. Argument of MCCs and Relief Requested

The MCCs offer the following respective arguments as relevant to each proposed expert in support of the Motion:

- As to the Fletcher Report, the MCCs assert that Mr. Fletcher relied upon data extending no farther back than September 2, 2019, and therefore his testimony should be limited to the time period **September 2, 2019 – present**. (Motion at 10.)

- As to the Epstein Report, the MCCs assert that Mr. Epstein relied upon the Fletcher Report to support his conclusions, and therefore his testimony should be limited to the same time period: **September 2, 2019 – present**. Alternatively, the MCCs argue that Mr. Epstein's testimony should be limited to the time period **May 2019 – present**, on the basis of Mr. Epstein's representation during his deposition that his analysis was limited to this timeframe. (Motion at 10–11.)

- As to the Groehn Report, the MCCs assert that Dr. Groehn relied upon data from the Reports table in the DMCA Database, and therefore his testimony should be limited to the time period **September 2, 2019 – present**. (Motion at 11.)

- As to the Sprigman Report, the MCCs assert that Professor Sprigman's opinion is "based upon no meaningful data at all specific to Frontier" and should be **excluded in its entirety** as offering a legal conclusion.[1] Alternatively, the MCCs argue that Professor Sprigman's testimony should be limited to the time period **September 2, 2019 – present** due to the limited availability of useful data prior to that period of time. (Motion at 11–12.)

**D. Frontier's Opposition**

With respect to all four experts, Frontier objects to the Motion and the MCCs' requested relief on the basis that any inferences regarding the temporal limitations in scope of each expert report should "go to the weight the Court gives to the experts' testimony, not their admissibility." (Response at 1.) Frontier does not challenge or dispute the experts' stated caveats regarding the temporal scope of their reports, but it claims that these limitations are "not a reason for excluding the experts' opinions." (*Id.* at 2.)

With respect to Professor Sprigman exclusively, Frontier responds that the Sprigman report does not offer legal conclusions, as Frontier argues in detail in its response to the RCC

---

[1] The Record Company Claimants (the "RCCs") have separately filed a motion *in limine* (the "RCC Motion") to preclude Professor Sprigman's testimony, which has been submitted to the Court *in camera*. The MCCs have joined the RCC Motion in full. (ECF Doc. # 2511.)

5

Motion. (*Id.* at 1.) Frontier further claims that "the MCCs provide no reason at all for subjecting Professor Sprigman's testimony to an arbitrary date cut-off." (*Id.* at 2–3.)

### E. MCCs' Reply

In their Reply, the MCCs characterize Frontier's argument as tantamount to a request that the Court go through the "pointless task of weighing the MCCs' evidence against nothing." (Reply at 4.) The MCCs contend that Frontier "concedes the germane facts" set forth in the Motion, and urge the Court to grant the Motion given the absence of "sufficient facts or data" underlying the experts' opinions as to the period pre-dating September 2, 2019. (*Id.*)

## II.  LEGAL STANDARD

Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998). A court considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Further, the court's ruling on a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (internal citation omitted).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9017:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.  As applicable to proffered expert testimony, a judge assumes a "gatekeeping" role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

A trial court must decide whether a qualified expert's testimony rests on a reliable foundation, or it is instead based on "subjective belief or unsupported speculation."  *Id.* at 590.  The court will exclude expert testimony which is speculative or conjectural.  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).  A court may exclude expert evidence where it concludes "that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Finally, Rule 37 of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings through Bankruptcy Rule 7037, permits courts to impose curative measures addressing discovery misconduct, including failure to preserve electronically stored information.  FED. R. CIV. P. 37; 11 U.S.C. § 7037.

### III.    DISCUSSION

The instant dispute between the MCCs and Frontier presents a fundamental threshold question which the Court must resolve at the outset.  In essence, the MCCs posit that any and all expert testimony or opinions relating to spoliated evidence should be excluded outright as inadmissible.  Frontier, on the other hand, assumes that temporal limitations on expert testimony or opinions, even those relating to spoliated evidence, go to the *weight* of the expert's opinion rather than its admissibility.  The Court agrees with the MCCs.  It is uncontroversial that a

7

presiding court may avail itself of many different forms of relief to limit the prejudicial impact of spoliation—and, as the Second Circuit has observed, the court's options include "preventing a spoliator's expert witness from testifying about the spoliated evidence." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 780 (2d Cir. 1999) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719–21 (3d Cir. 1997); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir.1993)). *See also Pyskaty v. Wide World of Cars, LLC*, 2019 WL 917153 (S.D.N.Y. Feb. 25, 2019) (limiting expert testimony to non-spoliated evidence); *Jung v. Neschis*, 2009 WL 762835, at *23 (S.D.N.Y. Mar. 23, 2009) (preventing experts from relying upon spoliated evidence in expert reports).

The exclusion of expert testimony as inadmissible based on missing underlying data is also consistent with Rule 702's requirement that expert testimony be based on "sufficient facts or data." FED. R. EVID. 702(b). If an expert's report or opinion hinges on conclusions derived from specific data, but the relevant data from a given time period has been destroyed or is otherwise missing or nonexistent, it would naturally be inappropriate to permit the expert to testify as to the affected time period. Frontier's citation to *Nike, Inc. v. StockX LLC* for the proposition that "errors in survey methodology properly go only to the weight of the evidence" is inapposite. 2024 WL 3361411, at *4 (S.D.N.Y. July 10, 2024) (citing *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999)). While methodology errors may result in an inordinate focus on certain datapoints over others, they do not necessarily indicate that the opinion or report as a whole is based on "insufficient" data. Reliance on entirely nonexistent data poses completely different concerns and fundamentally undercuts a core requirement of Rule 702. As such, imposing temporal limitations to the expert reports under these circumstances is appropriate and consistent with the Rules of Evidence.

8

While the foregoing conclusions set the stage for the Court's resolution of the Motion, they do not end the inquiry. The MCCs urge the imposition of a blanket prohibition on testimony relating to information pre-dating September 2, 2019. However, this would be an overbroad remedy. The Court in its Spoliation Opinion did not conclude that Frontier destroyed *all* evidence pre-dating September 2, 2019; instead, it analyzed the indicia of spoliation as to each respective Frontier data source. It would be equally inapt to impose temporal exclusions to each expert's report and other testimony without first identifying the data source relied upon by each expert. Accordingly, the Court will analyze the MCCs' arguments with respect to each expert individually.

### A.  Courtney Fletcher

The MCCs assert that the Fletcher Report is based on the three tables in the DMCA Database: (Reports, Notifications, and WG_Intercepts), along with more recent data. The MCCs argue that since Frontier "purged its data, Mr. Fletcher's analysis of the [DMCA Database] tables was limited to the timeframe of September 2, 2019 to March 8, 2024." (Motion at 3.) It should be noted, however, that the Court did *not* find that the Reports table was inappropriately maintained or purged. (Spoliation Opinion at 287.) However, since the Fletcher Report relies upon all three tables from the DMCA Database, and "this data is pulled, in part, from the RADIUS [D]atabase," (*id.* at 275), limiting the temporal scope of the Fletcher Report's reliance on a consistent basis is appropriate. Accordingly, pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 37, applicable here through Bankruptcy Rule 7037, the Court

9

excludes Mr. Fletcher's expert opinion and testimony as to the time period pre-dating **September 2, 2019**.[2]

### B. Keith Epstein

The MCCs assert that Mr. Epstein "relies on the statistical analysis performed by Mr. Fletcher to support his conclusion" in the Epstein Report, and accordingly requests that the opinion and testimony of Mr. Epstein be subject to a commensurate temporal limitation.[3] (Motion at 5.) However, the provision of the Epstein Report cited by the MCCs merely states: "I have also reviewed the expert report submitted by Courtney Fletcher of Guidepost, which further supports the implementation and reasonableness of Frontier's Program. For example . . . ." (Ex. 3 to Motion at 21.) This statement does not support any inference that Mr. Epstein principally relied upon the data used by Mr. Fletcher. Accordingly, the Court declines to impose the temporal limitation requested by the MCCs' upon Mr. Epstein's expert opinion and testimony.[4]

### C. Andreas Groehn

As with Mr. Fletcher, the MCCs assert that the Groehn Report is based upon data Dr. Groehn received from the Reports, Notifications, and WG_Intercepts tables maintained in the DMCA Database. Accordingly, for the same reasons applicable to Mr. Fletcher, the Court excludes Dr. Groehn's expert opinion and testimony as to the time period pre-dating **September 2, 2019**.

---

[2] The Court entered a separate order on April 3, 2025 excluding all evidence of Frontier's handling of repeat infringers after the time period covered by the Prepetition and Administrative Claims Periods. (ECF Doc. # 2519.) That order remains binding, and no temporal limitations applied in this Order disturb the Court's earlier conclusions.

[3] The MCCs alternatively argue that Mr. Epstein's expert opinion and testimony should be excluded except as to the time period May 2019 through the present, on the basis of his deposition testimony consistent with that temporal limitation. However, the Motion does not provide any basis for the Court to conclude that this statement was the result of specific data-purging by Frontier or the absence of relevant data for other reasons. As such, the Court declines to impose any temporal exclusions upon Mr. Epstein's expert opinion and testimony at this juncture.

[4] The Court entered an order on April 3, 2025 separately addressing the admissibility of Mr. Epstein's expert opinion and testimony. (ECF Doc. # 2521.) That order remains binding and nothing in this Order shall be construed to disturb the Court's earlier conclusions with regard to Mr. Epstein's expert opinion and testimony.

### D. Christopher Sprigman

Finally, as to Professor Sprigman, the MCCs seek exclusion of the Sprigman Report in its entirety, as the MCCs view Professor Sprigman's testimony as a "legal opinion" which is "completely devoid of any opinion or data shedding light on the effectiveness of Frontier's repeat infringer practices and policies." (Motion at 6–7.) These challenges to Professor Sprigman's testimony are more fulsomely raised in the RCC Motion and related briefing, and the Court will address them in its ruling on that motion. At this time, therefore, the Court defers consideration of any issues relating to the admissibility of, and limitations upon, Professor Sprigman's expert opinion and testimony.

**IT IS SO ORDERED.**

Dated: April 7, 2025
New York, New York

/s/ Martin Glenn
MARTIN GLENN
Chief United States Bankruptcy Judge