**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRONTIER COMMUNICATIONS CORPORATION, *et al.*, | Case No. 20-22476 (MG) |
| Reorganized Debtors. | (Jointly Administered) |

**ORDER GRANTING IN PART AND DENYING IN PART RCCS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF CHASE PERRY**

Pending before the Court is the RCCs' motion *in limine* ("Motion") seeking to exclude the testimony of Chase Perry, one of Frontier's experts.[1]  Frontier submitted a response ("Response"), and the RCCs submitted a reply ("Reply").[2]  For the following reasons, the RCCs' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.  Perry's Report

Chase Perry was retained by Frontier to provide expert testimony regarding copyright infringement damages issues.  (Perry Rpt. at 3.)  Perry is a Managing Director in the Forensics and Litigation Services practice of the law firm of Weaver & Tidwell, LLP.  (*Id.* at 6.)  He has over 25 years of experience evaluating "financial and economic issues in the context of disputes" and has listed numerous IP- and damages-related publications on his CV.  (Exhibit A to the Perry Rpt.)  Perry has not, however, published research related to the music industry, nor broadband or

---

[1]    Attached as Exhibit 1 to the Motion is the expert report of Chase Perry ("Perry Report").  Attached as Exhibit 2 to the Motion are excerpts from Perry's deposition ("Perry Dep. Tr.").

[2]    The parties submitted these papers to the Court via email, with all parties copied.

telecommunications, nor copyright specifically.  (Perry Dep. Tr. at 22:6–18.)  While he has not

served as an expert in cases involving copyrighted music (Perry Dep. Tr. 11:13–17), he did serve

as an expert in about five cases involving other types of copyright in the past 20 years (*id.* at

10:6–24).

Perry takes as a given that the claimants in this case are pursuing statutory, not actual,

damages.  (Perry Rpt. at 10.)  Statutory damages are awarded per "work" infringed.  (*Id.* at 11.)

A crucial question, then, is what counts as a single "work"—does a single song count if released

separately from the album it is featured on, or does only the album count?  Perry states that it is

his "understanding that the RCCs' sound recordings that are released as compilations may be

considered collectively to be one Work-at-Issue rather than a separate Work-at-Issue for each of

the individual tracks in the compilation."  (Perry Rpt. at 15 (citing 17 U.S.C. § 504(c)(1)).)  Perry

used "[p]ublicly available data from the MusicBrainz website . . . to associate Works-in-Suit

with albums."  (*Id.*)  Using those numbers, "the total number of RCC Works-at-Issue using these

parameters is" somewhere between 2,188 and 2,345.  (*Id.*)

To determine what the statutory award per work allegedly should be, Perry considers two

factors: (1) "economic harm/benefits to the Claimants/infringer and" (2) "the value of the

copyrights."  (*Id.* at 16.)

**B.  RCCs' Argument**

The RCCs' primary argument is that Perry's approach to calculating damages

"contravenes binding Second Circuit law" which provides for separate statutory damages awards

for each sound recording infringed where the sound recordings are individually commercialized,

even where such recordings were released as part of an album or compilation.  In other words,

the RCCs argue that Perry's method of defining "Work-in-Suit" as an album rather than an

20-22476-mg    Doc 2526    Filed 04/09/25    Entered 04/09/25 16:45:09    Main Document
Pg 3 of 15

individual song is barred by *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79,

101 (2d Cir. 2016), which, per the RCC's, held that a single counted as a "work," even if the

single was available on an album.  (Motion at 4.)  The RCCs argue that this case squarely renders

Perry's analysis whether each recording was first issued as a compilation legally irrelevant.  (*Id.*

at 6.)

Second, the RCCs argue that Perry has no relevant expertise concerning the music

industry, let alone how the industry commercializes recordings.   Hence, Perry's opinion is not a

product of his "scientific, technical, or other specialized knowledge," and he cannot offer it, per

the RCCs.  (*Id.* at 6.)

Third, the RCCs argue that there is no evidence that the MusicBrainz data on which Perry

relied is accurate or reliable.  No witness, not even Perry, can testify that the MusicBrainz data is

accurate and reliable.  Perry chose it because it was a "commercially available database" without

restrictions on downloading or scraping data.  (Perry Dep. Tr. 41:9–16.)  Moreover, MusicBrainz

is "user-supported," meaning the data on it could come from anyone.  (*Id.* at 42:4–13.)  Perry's

report does not describe a validation process, and Perry could not testify as to details of a

supposed validation which his team undertook.  (Motion at 7–8.)  Per the RCCs, neither Perry

nor anyone else can establish MusicBrainz's reliability, so Perry's testimony cannot pass muster

under Rule 702.  (*Id.* at 8.)

Fourth, the RCCs claim that Perry's recommendation of a specific statutory damages

award[3] is impermissible because opining on a specific award impermissibly exceeds the expert's

role, which cannot reach ultimate legal conclusions.  (*Id.* at 9.)  They also argue that his opinion

---

[3]    Specifically, his "opinion that the Court should award damages based on the lowest statutory amounts available, *i.e.*, $750 per Work-at-Issue for copyright infringement."  (Perry Rpt. at 29.)

is unreliable because Perry ignores the majority (four out of six) of the statutory damages factors. (*Id.* at 10.)

Fifth and finally, the RCCs argue that Perry's efforts to criticize the legal relevance of other experts' analyses are inadmissible legal opinion. (*Id.* at 11.) Perry intermittently opines that the RCCs' expert's opinions do not "assist in estimating damages in this matter" and "do not reasonably bear on what Frontier should pay in damages." (*Id.* at 11–12 (internal citations omitted).) Perry also states in his report that, "in determining the statutory amount to be applied to each Work-at-Issue, one should consider what would have happened 'but for' Frontier's allegedly unlawful actions - not all unlawful copyright infringement on the Internet." (Perry Rpt. at 22–23.) And he concludes that the RCCs' experts' analyses "[are] not the proof required to justify a statutory award anywhere above the lower end of the range, much less one at the upper end of the range." (*Id.* at 23.). The RCCs take issue with these statements as legal argumentation. (Motion at 11–13.)

### C. Frontier's Opposition

Frontier argues that the RCCs' motion is an attempt to have the Court "decide a significant and highly contested issue" before the trial even commences: "whether each sound recording is a separate work, as the RCCs claim, or whether sound recordings released as compilations (i.e., albums) count as a single work, as Frontier maintains." (Objection at 8.) Frontier claims that the RCCs' description of Second Circuit caselaw on this question is "incomplete and misleading" (*id.*), and it provides an alternative reading of *EMI Christian Music Group*: in Frontier's view, that case holds that "an award of statutory damages for individually commercialized sound recordings *may be permitted* where the copyright holder issued its works separately. It does not hold that damages *must* be awarded on a per-song basis in every case."

(Objection at 9.)  Frontier encourages the Court to follow the interpretation of *EMI Christian Music Group*, or at least wait to resolve this issue until the trial.  (*Id.* at 11.)

Frontier also argues that Perry is qualified to offer a damages opinion in this case, and states that he has extensive experience estimating damages due to IP infringement (including copyright infringement) and providing expert opinions on such issues in court.  (*Id.* at 12.) Frontier argues that Perry need not have specific expertise in the recording industry, since his "opinion is not about *how* recordings are commercialized; rather, his opinion concerns how the fact that a certain number of recordings at issue were released as albums translates into a potential damages analysis," and Frontier points to caselaw to support its claim that a damages expert need not have industry-specific experience to be qualified.  (*Id.* at 12–13.)

Frontier claims that Perry's methodology is reliable.  It notes that the RCCs were asked to provide album information in discovery, but the RCC refused: when asked to identify all works by "artist, track and/or album name," the RCCs provided artist and track information, but no album information.  (*Id.* at 13.)  The RCCs therefore cannot complain about Perry's use of an alternate and publicly-available source of album information.  (*Id.*)  Frontier points to the four-page description of methodology provided by Perry which sets out how song, artist, and album data was matched with track name, artist name, hashtext, and torrent filename data in order to associate Works-in-Suit with albums.  (*Id.* at 14–15; *see also id.* at 16 (describing Attachment C to the Perry Report which provides a list of steps taken to match up the data in the MusicBrainz database to the data of the claimants' works).)  Perry ensured that his analysis was as conservative as possible and resolved ambiguities in favor of the claimants.  (*Id.* at 16.)  Frontier also argues that any issues the Court may have with MusicBrainz (though Frontier purports that it is reliable) go to the weight of Perry's testimony, not its admissibility.  (*Id.* at 15.)

As for the RCCs' argument that Perry impermissibly opines that the Court should award a certain amount, Frontier contests this framing of the report: rather than telling the Court whether and to what extent it should award statutory damages, "Perry's report properly offers helpful information and context" to help the Court determine whether the low end of the statutory damages range is more than sufficient, in case Frontier is found liable. (*Id.* at 18–19.) Frontier cites to numerous instances where Perry denies offering legal opinions. (*Id.* at 19–20.) As for the RCCs' point that Perry only looks at two out of six statutory damages factors set forth in binding Second Circuit precedent, Frontier explains that Perry was focusing his financial analysis on the actual economic impact on the parties, which only pertain to the two factors he discusses. Moreover, his narrow focus on economic impacts further underscores the fact that he is not impermissibly telling the Court to award a specific amount of statutory damages. (*Id.* at 20–21.)

Frontier argues that Perry did not offer legal opinions – he merely acknowledged that there is a significant contested issue of law surrounding work counting, which is to be resolved by this Court. (*Id.* at 5.) All Perry did was provide "alternative damages analyses that may be used depending upon the Court's determination of whether 'compilations count as a single work.'" (*Id.* (internal citation omitted).) And Perry's attacks on the RCCs' damages expert do not count as legal opinions as they are fair critique and rebuttal as to what is relevant to statutory damages. (*Id.* at 21–22.)

**D.  RCCs' Reply**

The RCCs' Reply rehashes the points they made in their Motion. First, they provide further argumentation as to the holding in *MP3tunes* (Reply at 2–4), and in so doing, states that "[t]he facts here align with *MP3tunes*" (*id.* at 4).

## II.    LEGAL STANDARD

A trial court will "exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).  "Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context."  *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

The admissibility of expert testimony is governed by FRE 702, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9017:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FRE 702.  Applying these factors to proffered expert testimony, a judge assumes a "gatekeeping" role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

## III.    DISCUSSION

### E.  Perry Is Qualified as an Expert on Damages

For a witness to render opinion testimony at trial, he or she must be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  This is a "threshold question" that is "important, among other reasons, because an 'expert' witness is permitted substantially more leeway than 'lay' witnesses in testifying as to opinions that are not

'rationally based on [his or her] perception.'" *Nimely v. City of New York,* 414 F.3d 381, 396

n.11 (2d Cir. 2005) (quoting *United States v. Garcia,* 291 F.3d 127, 139 & n.8 (2d Cir.

2002)).  "Therefore, whether a purported expert is qualified under Rule 702 is an inquiry to be

resolved prior to all others." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y.

2015).

        "Courts in this district often describe the analysis of an expert's qualifications as

comprising two subparts . . . .  First, the court must examine the totality of the witness's

background to determine whether he or she exhibits any one or more of the qualifications listed

in Rule 702—knowledge, skill, experience, training, or education—with respect to a relevant

field . . . .  Second, the court compares the area in which the witness has superior knowledge,

education, experience, or skill with the subject matter of the proffered testimony." *Id.* (cleaned

up).  This ensures that the expert's testimony is restricted to "issues or subject matter within his

or her area of expertise." *Haimdas v. Haimdas*, 2010 WL 652823, *2 (E.D.N.Y. Feb. 22, 2010).

However, "[t]he words 'qualified as an expert by knowledge, skill, experience, training, or

education' must be read in light of the liberalizing purpose of the" Federal Rules.  *United States

v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985).  Therefore, experts are not "required to satisfy an

overly narrow test of his own qualifications." *Washington*, 105 F. Supp. 3d at 305.  "If the

expert has educational and experiential qualifications in a general field closely related to the

subject matter in question, the court will not exclude the testimony solely on the ground that the

witness lacks expertise in the specialized areas that are directly pertinent." *Arista Recs. LLC v.

Lime Grp. LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011)

(internal citation omitted).  So, "[i]n considering a witness's practical experience and educational

background as criteria for qualification, the only matter the court should be concerned with is

8

whether the expert's knowledge of the subject is such that his opinion will likely assist the trier

of fact in arriving at the truth." *Lidle ex rel. Lidle v. Cirrus Design Corp*., No. 08 CV. 1253 BSJ

HBP, 2010 WL 2674584, at *3 (S.D.N.Y. July 6, 2010) (internal citation omitted).  Requiring an

expert to have specialized knowledge "in the specific industry in which they purport to opine on

damages . . . clearly runs contrary to the notion that 'the court will not exclude the testimony

solely on the ground that the witness lacks expertise in the specialized areas that are directly

pertinent." *Washington*, 105 F. Supp. at 309.

It appears, from the excerpts of deposition testimony thus far provided to the Court, that

Perry does not have much experience with cases involving the music industry specifically.

However, it is clear from his CV that he has extensive experience assessing damages in IP

infringement cases more broadly.  Under binding precedent in this Circuit, this Court cannot bar

Perry from testifying simply because he does not have experience in one "specific industry," nor

does it wish to—if the Court determines (at a later date, as discussed below) that Frontier's

approach to counting "works" is correct, Perry's analysis may be helpful.

The RCCs' Motion is **DENIED WITH PREJUDICE** on this ground.

**F.  The RCCs' Motion Raises Issues to be Decided After Trial**

The bulk of the RCCs' briefing is devoted to the applicability of various Second Circuit

precedents—most importantly, *MP3tunes*.  (*See, e.g.*, Reply at 2–4.)  The critical question of

what counts as a "work" should not be decided at the motion *in limine* stage, as the Court should

decide this question with the benefit of both full briefing and argumentation, and a full factual

record.  The RCCs' briefs practically admit that the Court needs to examine the factual record to

determine how *MP3tunes* applies in this case.  (*Id.* (discussing how evidence presented at trial

influenced the outcome in *MP3tunes* and distinguishing *MP3tunes* from prior Second Circuit

caselaw on a factual basis and noting that "[t]he facts here align with *MP3tunes*").) It is too early, and the Court does not have sufficient evidence before it, to judge how various precedents will apply to this case. Moreover, "it is inappropriate . . . to seek what is effectively partial summary judgment in the guise of a motion *in limine*." *Torah Soft Ltd. v. Drosnin*, No. 00 CIV. 0676 (JCF), 2003 WL 22024074, at *4 (S.D.N.Y. Aug. 28, 2003); *see also Aktas v. JMC Dev. Co.*, No. 1:09-CV-01436 MAD, 2013 WL 55827, at *3 (N.D.N.Y. Jan. 3, 2013) (same).

The RCCs' Motion is **DENIED WITH PREJUDICE** on this ground.

### G. Court Reserves Judgment on Reliability of Perry's Sources

In assessing reliability, courts should consider "the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing Fed. R. Evid. 702). When evaluating the reliability of an expert's testimony, the court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id*. at 267. Considering the liberal admissibility standards of the Federal Rules of Evidence, exclusion of expert testimony is warranted only when the court finds "serious flaws in reasoning or methodology." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (internal citation omitted).

Courts within and outside of this Circuit have held that "[r]eliability . . . is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced . . . . The district court

10

usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality

of the expert's data and conclusions rather than the reliability of the methodology

the expert employed."  *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir.

2013); *see also Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co*., 769 F. Supp. 2d

269, 285 (S.D.N.Y. 2011) ("Questions over whether there is a sufficient factual basis for an

expert's testimony may go to weight, not admissibility.") (internal citation omitted, cleaned up);

*Adesina v. Aladan Corp*., 438 F. Supp. 2d 329, 341 (S.D.N.Y. 2006) (factual disputes underlying

expert opinions implicate "[w]eight, not admissibility"); *Hangarter v. Provident Life & Acc. Ins.

Co*., 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (holding that challenges to the factual basis of an

expert's opinion go "more to the 'weight' of [the expert's] testimony—an issue properly

explored during direct and cross-examination"); *Children's Broad. Corp. v. Walt Disney

Co.*, 357 F.3d 860, 865 (8th Cir. 2004) ("[T]he factual basis of an expert opinion goes to the

credibility of the testimony, not the admissibility, and it is up to the opposing party to examine

the factual basis for the opinion in cross-examination." (citation and quotation marks omitted));

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("Mere weaknesses in the

factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on

its admissibility.") (internal citation omitted, cleaned up); *Smith v. Ford Motor Co*., 215 F.3d

713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis

and the correctness of the expert's conclusions based on that analysis are factual matters to be

determined by the trier of fact, or, where appropriate, on summary judgment.").  So, "[t]he

grounds for the expert's opinion merely have to be good," but "they do not have to be perfect."

*Cedar Petrochemicals, Inc*., 769 F. Supp. 2d at 287 (internal citation omitted).

Internet sources, including crowd-sourced ones like Wikipedia, are not considered "inherently unreliable" in this Circuit. *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 361 (S.D.N.Y. 2007) (collecting cases citing to Wikipedia); *see also Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 07-CV-0194 (TLM), 2011 WL 13228299, at *2 (D. Conn. Jan. 21, 2011) ("[T]he trial courts of the Second Circuit have rejected attempts to disqualify an expert based on his reliance of internet sources generally, and *Wikipedia* in particular." (emphasis in original)) (collecting cases); *Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Delaware*, No. 06 CIV 12988 SHS RLE, 2009 WL 5173920, at *6 (S.D.N.Y. Dec. 30, 2009) ("On its face, it does not seem that there is a potential for extreme error in Internet and database searching and compiling of results" when the methodology was straightforward.).

Based on the record currently before it, the Court knows very little about MusicBrainz, where the data on it comes from, or whether any entities in the music industry rely on it (a question which goes to the accuracy of the facts on the MusicBrainz site, *not* the methodology which Perry used to analyze it). (We note that there is at least one federal court case which mentions an entity in the music industry using MusicBrainz, *see Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 AJN, 2015 WL 1402049, at *32 (S.D.N.Y. Mar. 25, 2015).) While there may be cause for concern regarding Perry's reliance on the website, especially since he has thus far been unable to provide testimony concerning his team's data validation process, the Court does not have enough information to determine conclusively that the facts underlying Perry's report are so bad that they warrant wholesale exclusion of the report, especially in light of the liberal thrust of the Federal Rules of Evidence.

The RCCs' Motion is **DENIED WITHOUT PREJUDICE** on this ground.

**H. Perry's Testimony on Statutory Damages is Largely Permissible**

Perry does provide some scattered legal testimony throughout his report—specifically, he instructs the Court on how to determine damages under the DMCA. *See* Perry Rpt. at 12 (setting out the "methodology for determining statutory damages under 17 U.S.C. § 504," claiming that it "involves three primary determinations," and setting out some of the "many factors that may be relevant to the Court's decision"); *id.* at 16 ("Whether piracy in general is harmful to the Claimants and the artists they represent is not a relevant question for a damages analysis in this case, but rather what economic harm, if any, is attributable to Frontier."); *id.* at 18 ("[A] proper damages analysis focuses on Frontier's alleged liability, not every alleged infringement by someone using Frontier's Internet services or other Internet users."); *id.* at 21 (stating that certain arguments "do not reasonably bear on what Frontier should pay in damages for its liability in this matter, which is based solely on activities involving the Works-at-Issue on Frontier's Internet service"); *id.* at 22–23 ("[I]n determining the statutory amount to be applied to each Work-at-Issue, one should consider what would have happened 'but for' Frontier's allegedly unlawful actions."). These are legal opinions that exceed the scope of permissible expert testimony, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), and will be struck from the report; Perry is barred from testifying about the methodology for determining statutory damages under the DMCA and factors that go into such a determination.

However, the other portions of Perry's report which the RCCs complain about are not self-evidently legal in nature. Perry does not specify a damages award he thinks is appropriate, and instead simply provides an economic justification for why an award on the lower end of the statutory damages spectrum is appropriate, in his view. (*See* Perry Rpt. at 16–30.) This is permissible expert testimony from a damages expert. He does not, unlike the expert in *Sony*

*Music Ent. v. Cox Commc'ns, Inc.*, testify "outside of the statutory damages framework," No. 1:18-CV-950, 2019 WL 9088257, at *2 (E.D. Va. Nov. 19, 2019), and while he does opine that even the minimal statutory damages award would provide a "windfall" to the claimants (Perry Rpt. at 24)—language which the *Sony Music* court refused to let an expert use—this Court does not view such language as inherently legal in nature, but rather as the natural conclusion of Perry's economic analysis. *See also In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2017 WL 3396433, at *11 (S.D.N.Y. Aug. 8, 2017) (permitting an expert to provide damages calculations with respect to the calculation of statutory damages under the New York General Business Law in the face of a challenge to methodology); *but see Furnituredealer.net, Inc v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2022 WL 891462, at *9 (D. Minn. Mar. 25, 2022) (barring expert from opining on statutory damages because "his opinion on damages can be boiled down to" an interpretation of the statute at issue, and "[i]t is for the Court to determine the relevant legal standards on statutory damages and for the factfinder to determine if those standards are met").

The RCCs' challenge to Perry's methodology misses the mark. Insofar as he provides economic analysis on the two damages factors out of six which he does analyze, his opinion may be helpful to the Court.

## IV.    CONCLUSION

The RCCs' objection to Perry's testimony on statutory damages is **GRANTED IN PART** and **DENIED IN PART**.


**IT IS SO ORDERED.**

Dated:    April 9, 2025
          New York, New York

                            _____/s/    Martin Glenn_____
                            MARTIN GLENN
                            Chief United States Bankruptcy Judge